UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE
2022 NOV 28 AM 10: 34

Ralph Rodriguez, Din # 1 7 A 0 9 2 8
(Plaintiff Being Pro-Se)

-A G A I N S T-

Edward R. Burnett.,et.,al.
Superintendent Fishkill Correctional
(Defendants)

C O M P L A I N T

Civil Rights Act 42 U.S.C 1983
1983, 1985, 1988, 1997(e)
&
American With Disability Act
Title II, and Rehabilitations
Act Section 504,
&
The Religious Land Use and
Institutionalized Persons Act.

(TRIAL BY JURY REQUEST)

Plaintiff Ralph Rodrigue, Din # 17A0928, Whom is the Complainant moving Pro-Se, and is Currently incarcerated at Fishkill Correctional Facility, Address being, P.O Box 307, Beacon, New York 12508, Located in Dutchess County, States and Depose the Following:

## CAUSE OF ACTION

This is an Action to Recover, Compensatory and Punitive Damages, and Mental and Emotional Injuries, Arising from the Defendants violation to Plaintiffs Civil Rights, as Secured under The Constitution Of The United States, Under Section 42 U.S.C 1983, U.S.C 1985, U.S.C 1988, U.S.C 1997e(e), and The Religious Land and Institutionalized Persons Act, and Americans With Disability Act Title II, and The Rehabilitations Act Section 504, and First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments, and Compensation if Applicable for Attorney and Medical Expert fee's. Declaratory Judgement

## JURISDICTION AND VENUE

This Honorable Court has jurisdiction over the Actions Pursuant to 28 U.S.C Sections 1331, 1343(3)(4), and 2201, and This Cause Of Action Arose in the Southern District Of New York State, Therefore Venue is Proper Under U.S.C Section 1391(b).

## PREVIOUS LAWSUITS BY PLAINTIFF

Plaintiff has filed Claim against the "State Of New York", Dealing with some of the Facts within this Claim, in the "COURT OF CLAIMS", but none of the Defendants within this Claim, was included within that Claim, and Plaintiff has yet to receive any Docket Number or Judge assigned or Disposition Rendered.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Pursuant to the Prisoners Litigation Reform Act Section 42 U.S.C 1997. Plaintiff had Attempted to Fully Exhaust Administrative Remedies, in Compliance with the P.L.R.A.

## STATEMENT OF CLAIMS

At All Relevant Times Herein, Defendants were "Persons", for the Purpose of 42 U.S.C Section 1983, and Acted Under Color of Law to Deprive Plaintiff of their Constitutional Rights, as Set Forth in more Details Within.

## PLAINTIFF IS MOVING PRO-SE

Plaintiff is currently incarcerated within the Department Of Corrections, and is not fully familiar with the Law and/or Rules of the Court, and is Humbly Requesting that Any Errors Made, would be excused, or Plaintiff be Given a Chance to Correct those Errors

## IN FORMA PAUPERIS

Plaintiff is Moving in Forma Pauperis, and the Proper Documents are included within this Complaint.

# D E F E N D A N T S

1. Burnett R, Edward (Superintendent Fishkill Correctional), was at all Relevant times an Official Employed by the State Of New York, and D.O.C.C.S, and is being sued in his Individual and Official Capacity.

2. John Doe #1,(Director Of C.E.R.T) was at all Relevant times an Official Employed by the State Of New York, and D.O.C.C.S, and is being sued in his Individual and Official Capacity.

3. Stephen Urbanski (Dep Of Security Fishkill Correctional), was at all Relevant times an Official Employed by the State Of New York, and D.O.C.C.S, and is being sued in his Individual and Official Capacity.

4. Akinola Akinyombo (Dep Of Health Fishkill Correctional), was at all Relevant times an Official Employed by the State Of New York, and D.O.C.C.S, and is being sued in his Individual and Official Capacity.

5. Block (first name unknown)(Sergeant of C.E.R.T), was at all Relevant times an Official Employed by the State Of New York, and D.O.C.C.S, and is being sued in his Individual and Official Capacity.

6. Sally A, Reams (Supervisor Of IGP Fishkill Correctional), was at all Relevant times an Official Employed by the State Of New York, and D.O.C.C.S, and is being sued in her Individual and Official Capacity.

7. C.E.R.T Members John Does 2-8, Numbers 18-42, 13-38, 13-24, 13-59, 13-30, 18-14, 13-74 was at all Relevant times an Official Employed by the State Of New York, and D.O.C.C.S, and All are being sued in their Individual and Official Capacity.

8. Mohammad A, Bhuiyan (Officer Fishkill Correctional), was at all Relevant times an Official Employed by the State Of New York, and D.O.C.C.S, and is being sued in his Individual and Official Capacity.

9. Davachi m, Sullivan (Nurse Practitioner Fishkill Correctional), was at all Relevant times an Official Employed the State Of New York, and D.O.C.C.S, and she is being sued in her Individual and Official Capacity.

10. Cujas Gifty (Nurse Practitioner Fishkill Correctional), was at all Relevant times an Official Employed by the State Of New York, and D.O.C.C.S, and she is being sued in her Individual and Official Capacity.

11. Sangeethe L. Mukkatt (Nurse Practitioner Fishkill Correctional), was at all Relevant times an Official Employed by the State Of New York, and D.O.C.C.S, and is being sued in her Individual and Official Capacity.

12. John Doe # 9 and 10 (Office Of Special Investigation), was at all relevant times an Official Employed by the State Of New York, and D.O.C.C.S, and are being sued in their Individual and Official Capacity.

13. Jane Does 1 - 3, (Office Of Special Investigation), was at all Relevant times an Official Employed by the State Of New York, and D.O.C.C.S, and are being sued in their Individual and Official Capacity.

14. John Doe # 11 (Commissioner Of Corrections), was at all Relevant times an Official Employed by the State Of New York, and D.O.C.C.S, and is being sued in their Individual and Official Capacity.

15. Anthony J. Annucci (Commissioner Of D.O.C.C.S) and at all Relevant times an Official Employed by the State Of New York, and D.O.C.C.S, and is being sued in his Individual and Official Capacity.

16. Kathlleen C. Hochul (Governor Of the State Of New York), was at all Relevant times an Official Employed by the State Of New York, and a Policy maker, whom is being sued in her Individual and Official Capacity.

17. COUNTY OF DUTCHESS, is being sued under Municipal Liability.

18. State Of New York, is being sued under Municipal Liability.

PLAINTIFFS INJURIES, DISABILITY AND MENTAL
HEALTH STATUS

In 2010, Plaintiff was stabbed multiple times, and experienced serious injuries as a result to the abdomen which required several surgical procedures, and a portion of plaintiff's spleen and intestine was removed. Plaintiff was also severely injured with stabbings to both arms and right wrist. The injuries to plaintiffs right wrist and arm included diagnosed nerve, artery and tendon damages which results in ongoing pain, numbness, tingling and weakness in the entire right upper extremity, below the shoulder, and portions of plaintiff right arm muscle was also removed as a result of the injuries. The injuries to plaintiffs left arm consist of a severe injury just above the left arm muscle which also resulted in permanent pain and numbness to both areas of plaintiffs arms.

Plaintiff also suffers from diagnosed severe chronic lower back pain caused by a car accident in the early 2000's that injured plaintiffs lumbar region of the spine, which also caused chronic pain in plaintiffs neck, back, legs and due to plaintiff having flat feet the pain at times due to prelong walking can be severe.

Prior and throughout plaintiffs incarceration plaintiff was diagnosed with bipolar disorder, anti-social personality disorder, anxiety, claustrophobia and depression.

Plaintiffs medical and psychiatric condition substantially limits several major life activities, including but not limited to caring for oneself, eating, sleeping, lifting, communicating, writing, typing, walking for prelong periods, working. Both collectively and individually these physical impairments constitute a Disability under the AMERICANS WITH DISABILITIES

ACT, Title II and section 504 of the Rehabilitating Act.

During the assault on Plaintiff there was also severe damage to the lower jaw which required surgery and has permanent metal installed within plaintiffs jaw.

Defendants were provided notice of the severity of plaintiffs medical condition, mental health and disability and needs on or about September of 2010 under din number 10A4649 and again in 2015 under din number 17A0928, and at points various times during plaintiffs incarceration, and thereafter. Defendants at all time was on notice and made aware of plaintiffs conditions through medical as well as Court documentation from the Social Security Administration, which also included medical contractors and employees of the Department Of Correctional Community Supervision.

Plaintiff has also been diagnosed with hearing impairment which require an hearing aid and certain accommodations, all of which is known to the Defendants.

Despite having full notice and being in possession of medical and court documentation defendants at various points in time acted with DELIBERATE INDIFFERENCE to plaintiffs health, safety and medical needs which together and independently caused plaintiff substantial, severe pain and suffering in direct violation to plaintiffs Constitutional rights under a number of Amendments.

Defendants actions, failure to act and deliberate indifference to plaintiff condition both intentionally or negligently caused plaintiff to suffer severely both physically and mentally,

wherefore plaintiff now moves forward against defendants under 42 U.S.C 1983 and Americans with Disabilities Act Title II and Section 504 of the Rehabilitation Act.

SOCIAL SECURITY ADMINISTRATION

Refer To: [redacted]

Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
5th Floor
300 S State St
Syracuse, NY 13202-2056

Date: March 14, 2013

Ralph Rodriguez
Livingston CORRECTION-
Din # 10A4649
P.O. Box 91
Sonyea, NY 14556

## Notice of Decision – Fully Favorable

I carefully reviewed the facts of your case and made the enclosed fully favorable decision. Please read this notice and my decision.

Although my decision is fully favorable, you have the right to an oral hearing and to examine the evidence on which I based my decision. Please contact the office listed above if you want to have an oral hearing or examine the evidence in your case record.

Another office will process my decision and decide if you meet the non-disability requirements for Supplemental Security Income payments. That office may ask you for more information. If you do not hear anything within 60 days of the date of this notice, please contact your local office. The contact information for your local office is at the end of this notice.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

**Appeals Council**
**Office of Disability Adjudication and Review**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

Form HA-L76 (03-2010)

See Next Page

SOCIAL SECURITY ADMINISTRATION
**Office of Disability Adjudication and Review**

**DECISION**

**IN THE CASE OF** | **CLAIM FOR**

Ralph Rodriguez
(Claimant)

(Wage Earner)

Period of Disability, Disability Insurance Benefits, and Supplemental Security Income

[redacted]
(Social Security Number)

**JURISDICTION AND PROCEDURAL HISTORY**

On April 1, 2009, the claimant filed a Title II application for a period of disability and disability insurance benefits. The claimant also filed a Title XVI application for supplemental security income on April 1, 2009. In both applications, the claimant alleged disability beginning September 19, 2008. These claims were denied initially on May 22, 2009. Thereafter, the claimant filed a written request for hearing on June 20, 2009 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.).* On April 26, 2011, Administrative Law Judge Cofresi held a video hearing (20 CFR 404.936(c) and 416.1436(c)). The claimant appeared in Marcy, NY, and the ALJ presided over the hearing from Jamaica, NY. Charles M. Plotz, an impartial medical expert, also appeared at the hearing. Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative.

Subsequent to the completion of the first hearing, the then-adjudicator determined that a supplemental hearing was required to obtain the testimony of a vocational expert regarding whether there were jobs in the national economy that the claimant could perform with limited use of his right hand and arm. On August 23, 2011, he held a video hearing (20 CFR 404.936(c) and 416.1436(c)). The claimant appeared in Marcy, NY, and the Judge again presided over the hearing from Jamaica, NY. Steven H. Feinstein, an impartial vocational expert, also appeared and testified at that hearing session.

On September 14, 2011, the Judge issued an unfavorable hearing decision, determining that although the claimant was found to be "disabled," it also appeared his disability resulted directly from the commission of a felony for which he was subsequently convicted; therefore, no monthly benefits could be awarded. (Exhibit 3A)

See Next Page

The claimant filed a request for review, and on December 19, 2012, the Appeals Council remanded, directing a re-determination in light of the fact it was unclear from the record exactly when the injuries in question were incurred, in relation to the timing of the commission of the felony. (Exhibit 4A)

This case is thus now before me on that remand from the Appeals Council. The evidence of record supports a fully favorable decision; therefore no supplemental hearing has been held (20 CFR 404.948(a) and 416.1448(a)). In the course of further development of this record, I and my staff have now determined that the convincing weight of the evidence indicates that the injuries, by way of stab wounds, were incurred in a distinct and separate incident, from that during which the claimant some time later responded to that attack with shots fired from a handgun. There was sufficient distance in time between the two events – though they arguably might have been seen by the original adjudicator as involving the same general altercation – to determine that the disabling injuries were incurred separately, and thus resulted in Social Security payable disabilities.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2013. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful review of the entire record, I find that the claimant has been disabled from September 19, 2008, through the date of this decision. I also find that the insured status requirements of the Social Security Act were met as of the date disability is established.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

See Next Page

Ralph Rodriguez (███████████)

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, or work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b) and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

See Next Page

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), I must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

**1. The claimant's date last insured is December 31, 2013.**

**2. The claimant has not engaged in substantial gainful activity since September 19, 2008, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

**3. The claimant has the following severe impairments: status-post surgery to repair penetrating wound to the brachial artery of the upper right arm; and residual restricted use of the right hand and arm. (20 CFR 404.1520(c) and 416.920(c))**

The claimant sustained damage to his right hand as the result of a knife attack that severed arteries, tendons and muscle. This resulted in a permanent loss of fine and gross manipulation skills and the loss of ability to lift more than five pounds and essentially rendered the right hand and arm useless. I find that this impairment significantly limits the claimant's ability to perform basic work activities and is therefore considered severe.

The claimant also alleged having a depressive disorder. Determining whether a mental impairment is severe requires the use of a Psychiatric Review Technique. Four broad functional areas have been identified to rate the degree of a claimant's functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.

See Next Page

Ralph Rodriguez (███████████)                                           Page 5 of 12

In rating the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace),the following five-point scale is used: None, mild, moderate, marked, and extreme. When rating the degree of limitation in the fourth functional area (episodes of decompensation), the following four-point scale is used: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

After we rate the degree of functional limitation resulting from a claimant's impairment(s), we will determine the severity of the claimant's mental impairment(s). If the degree of a claimant's limitation in the first three functional areas is "none" or "mild" and "none" in the fourth area, it will generally indicate that the claimant's impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. If a claimant's mental impairment(s) is severe, a determination will be made if it meets or is equivalent in severity to a listed mental disorder. This is done by comparing the medical findings about a claimant's impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. The presence or absence of the criteria and the rating of the degree of functional limitation will be recorded on a standard document at the initial and reconsideration levels of the administrative review process. The presence or absence of the criteria and the rating of the degree of functional limitation will be recorded in the decision at the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision), and in the decision at the Federal reviewing official, administrative law judge.

The first functional area is activities of daily living. In this area, the claimant has mild limitation. Michael Alexander, Ph.D., the psychiatric consultative examiner, noted in his report of April 24, 2009 (Exhibit 13F) that the claimant is able to dress bathe and groom himself. He takes public transportation independently. The claimant's problem holding things with his right hand does have some impact on his ability to cook, clean and shop but his mother helps occasionally with the cooking and cleaning and Dr. Plotz noted that the claimant can use his left hand without a problem to assist his right hand.

The next functional area is social functioning. In this area, the claimant has mild limitation. The claimant told Dr. Alexander that he does have close friends and is close with his mother sister and brothers in New York.

The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. The mental status examination revealed that the claimant's attention and concentration are intact. He was able to count, perform simple calculations and serial 3s. In addition the claimant told Dr. Alexander that he spends his days watching television and likes to listen to music, which requires concentration.

The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration. Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is non-severe (20 CFR 404.1 520a(d)( 1) and 416.920a(d)(1)).

I am mindful of the Psychiatric Review Technique Form ("PRTF") dated May 19, 2009 that was completed by Dr. A. Stockton, a non-examining consultative examiner (Exhibit 8F). Dr. Stockton opined that the claimant has a depressive disorder NOS that does not satisfy the listing criteria of Section 12.04. He opined that the claimant has a mild limitation in all functional areas and experienced one or two episodes of deterioration. I adopt Dr. Stockton's opinion regarding the claimant's "mild" limitation in the three functional areas but does not agree with his opinion that the claimant had one or two episodes of deterioration because that is not supported by the record.

In the alternative it is noted that if the claimant did have one or two episodes of deterioration and his mental impairment is deemed severe it would not be deemed disabling based on the instant record. The claimant was reportedly depressed over the incident with his wife and another man and the fact that he lost his job. However, the record does not contain any evidence that the claimant sought or received psychiatric counseling or that he is taking any psychotropic medications or anti-depressants. In sum, there is no evidence of any psychiatric treatment in the record. Further, Dr. Alexander, the psychiatric consultative examiner, opined that the claimant is capable of performing at lease unskilled work and his inability to perform some complex tasks independently is due solely to his medical condition not his mental status.

Dr. Stockton also completed a Mental Residual Functional Capacity Assessment dated May 19, 2009 (Exhibit 9F). He opined that that in the three subcategories of Understanding and Memory, the eight subcategories of Sustained Concentration and Persistence and the five subcategories of Social Interaction the claimant had no significant limitations. In the four subcategories of Adaption the claimant's ability to respond appropriately to changes in a work setting and to set realistic goals or make plans independently of others was moderately limited. There were no significant limitations in the remaining two subcategories. I credit Dr. Stockton's assessment of the claimant's limitations all of the subcategories except for the two subcategories of Adaption referenced above. Dr. Stockton is a non-examining consultant who based his opinions on Dr. Alexander's examination. I do not find anything in the record or Dr. Alexander's report that would support Dr. Dr. Stockton's findings of the claimant's moderate limitations in the two subcategories of Adaption. In any event, it is noted that a moderate limitation would not necessarily prevent the claimant from performing job functions. I give significant weight to the remainder of Dr. Stockton's opinion.

See Next Page

Ralph Rodriguez (█████████)                                    Page 7 of 12

The claimant also has the following medically determinable impairments that did not significantly limit his ability to perform basic work related activities for twelve consecutive months and are therefore considered non-severe: status-post surgery to repair sigmoid colon perforation by resection; status-post operation to repair stab wound to the abdomen with colon injuries and liver laceration; status-post open reduction and internal fixation of symphysis fracture of the mandible; status-post right upper median nerve transaction; abductor pollicis, extensor pollicis brevis, extensor pollicis longus tendon transsection; cutaneous nerve transsection; and depressive disorder (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

**5.   The claimant has the residual functional capacity with occupational base eroded to such a significant degree by the restricted use of his dominant right hand that he lacks the ability to perform even sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).**

In making this finding, I considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-6p and O6-3p.

The evidence of record shows that the claimant was born on August 25, 1978 and was thirty years old on September 19, 2008 the alleged onset date and thirty-two years old on April 26, 2011 the date of the hearing. He has a GED Certificate and past relevant work as an environmental service aide in a hospital, which is similar to the job of a janitor.

The claimant testified at the original hearing in this matter that on September 18, 2008, he returned home to find his wife with another man. A fight ensued and the claimant was stabbed in the back, stomach and multiple times in the hands and arms. He stated that he lost half of his intestines and a quarter of his liver as a result of the stab wounds to his back; this is confirmed by the subsequent emergency room records. The stab wounds to his right hand and arm severed tendons, nerves and muscles resulting in permanently limited mobility of the right hand. The claimant said that he cannot move three fingers on his right hand and lacks the ability to grab or hold anything with his right hand and cannot lift more than five pounds.

The claimant also testified that he subsequently was able to get away and retrieve an unregistered handgun he kept in the house, and he then shot the other man twice – neither being a serious wound. He was later arrested and sentenced to three and a half years in prison, after plea-bargaining to attempted assault, a Class C felony.  He is presently serving his sentence.

See Next Page

15

On the day of the incident, September 18, 2008, the claimant was air-lifted to Nassau University Medical Center because he lost so much blood. After admission to the hospital, the claimant underwent numerous operations and was discharged on November 7, 2008. The claimant stated that the worst injuries were to his back because they operated and removed half of his intestines and a part of his liver. After those operations, he developed a post-operative infection in his stomach and they had to perform another operation to remove the infected tissue. He also underwent two operations on his right arm and hand in an attempt to reattach severed arteries and nerves and to repair the tendons. The tendon repair required the removal of muscle which contributed to the reduced use of his hand. The claimant said that the operations on his hand and arm were not successful and that the injuries resulted in the limited use of his right hand which is a permanent condition. The claimant also stated that he is unable to bend because of injuries to his abdomen and stomach and he can no longer digest the proper nutrients needed to sustain a regular active day. He said that he is constantly fatigued, tired and has very limited energy. As a result, the correctional facility where he is incarcerated provides him with nutritional supplements to replace the nutrients that his body can no longer digest. Further, due to the loss of part of his intestines the claimant has to eat small portions because his intestines can get inflamed and swollen resulting in sharp pains in the area of the abdomen and stomach. The claimant testified that before he was incarcerated he was on prescribed pain killers like Lyrica, Percocet, Aprasinol and oxycodone, but when he was in custody the medical facility at the correctional institution discontinued these pain medications.

In response to questions posed regarding psychiatric impairments, the claimant testified that prior to his incarceration he saw a psychiatrist at Woodhull Hospital and received medication but decided that he did not want to pursue psychiatric treatment. At the supplemental hearing on August 23, 2011, the claimant testified that his physical condition had not changed since the last hearing. He confirmed that he is right-hand dominant and that his right hand is "partially dead." He acknowledged that he can brush his teeth and comb his hair but he cannot lift more than five pounds and could pick up only a piece of paper using his pinky finger and one other finger.

After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce most of the alleged symptoms.

Dr. Charles Plotz, the medical expert, was duly qualified and sworn. He testified that he has reviewed the entire record and has sufficient information to render an opinion regarding the claimant's medical status. He noted that the claimant's problems started on September 18, 2008 when he sustained injuries as the result of the stabbing. The most serious injuries were to his intestines and liver that resulted in a partial colostomy, a partial ileostomy and the removal of a piece of his liver. Fortunately, for the claimant the doctors were able to get everything back together again but then he suffered a post-operative infection. Dr. Plotz said that overall the claimant has done very well. He also stated that the claimant was stabbed in the right arm and sustained sufficient nerve damage to the point where it was noted that the claimant was unable to to oppose his thumb to his four fingers and is only able to make a 50% fist. Dr. Plotz testified that for all intents and purposes, the fine motor function of the claimant's right hand is lost forever but his left arm is functioning perfectly well. With the use of both arms he has limitation in lifting and is unable to perform fine functions with his right hand like tying a bow, or zipping a zipper, but he can do that with his left hand.

See Next Page

Ralph Rodriguez ███████████                                    Page 9 of 12

I noted that there was a time when the claimant had severe multiple injuries and was hospitalized on more than one occasion for surgical intervention and post-operative care. Considering the foregoing, I asked the medical expert if there was a time during which the claimant was generally unable to function. Dr. Plotz testified that it would be from September 18, 2008, the date of the incident, to May 1, 2009. He stated that the medical records indicate that by May 1, 2009, the claimant's intestinal problems had resolved and a consultative examination performed on April 30, 2009 gives an estimate of the range of motion of the right arm, the major remaining problem.

The claimant agreed that after May 2009 his intestinal problems had resolved but stated that his right arm has never healed.  Other records confirm this. The records from Nassau University Medical Center (Exhibit 1F) noted the claimant's admission to the hospital on September 18, 2008 and his discharge on November 7, 2008 (Exhibit 1F, page 4). The diagnosis was stab wounds to the right brachial artery and the abdomen with colonic injury. He underwent an exploratory laparotomy with colon resection, small bowel repair and colostomy. He also underwent an operation to for a reduction of internal fixation of the mandible, and right median nerve and artery repair and reversal of colostomy.  At the time of discharge, the claimant received a prescription for Percocet.

Progress notes from Wykoff Heights Medical Center dated March 25, 2009 (Exhibit 2F) show that the claimant complained of pain in his right arm since September 2008. Right arm surgery, ileostomy and bowel resection are noted and the claimant was reported to be taking Vicodin and Percoset.  The pain level was estimated at a steady 7/10. The claimant was given a referral to plastic surgery, pain management and neurology (Exhibit 5F) and placed on Voltram.  At the next visit on April 17, 200 the pain level was rated at 5-7/10 (Exhibit 2F).

The claimant had his first follow up visit at the general surgery clinic of Nassau County Medical Center on December 19, 2008 (Exhibit 7F). The progress note reported that the claimant complained of abdominal pain, occasionally sharp, mostly at the affected wound site. It was also noted that the wound appeared to be healing. The claimant also has a reduced range of motion of the right forearm and second to fourth digits. The claimant testified that at one point he stopped receiving medical attention at Wykoff Heights Medical Center and started treating with Dr. David Carmili (Exhibit 3F) who referred him to a pain management specialist.  Dr. Carmili's progress notes for 2008, prior to the stabbing incident, shows that the claimant complained of back pain and underwent an electrodiagnostic lumbar study to rule-out nerve pathology. The test revealed very severe left upper lumbar nerve sensitivity and moderate sensitivity at the saphenous peroneal nerve and mild left sural nerve sensitivity. Dr. Carmili's notes indicate that he prescribed pain medications and physical therapy for the claimant during visits on November 24, 2008, December 29, 2008, and February 11, 2009, all of which were subsequent to the stabbing incident. In a "Return to Work" note dated December 29, 2008 (Exhibit 6F) Dr. Carmili wrote that the claimant was under his care for refill on medication. He was also under the care of a neurologist, and could not return to work.

Dr. Jerome Caiati, a consultative examiner with a specialty in internal medicine, evaluated the claimant on April 24, 2009 (Exhibit 4F). Dr. Caiati found lumbar spine flexes ninety degrees, extends thirty degrees, lateral flexes thirty degrees and rotates seventy degrees. Right shoulder abducts forty-five degrees. Right elbow flexes one hundred forty degrees, extends one hundred forty degrees. A sensory deficit was noted in the right arm 2 to 3/5. Right and left hips flex one hundred ten degrees, internal rotate twenty degrees. External rotation was ninety degrees. Fine motor activity of the hands showed that the right hand extends perhaps seventy percent but made a fifty percent grip. The claimant is unable to oppose thumbs to the other four fingers. Grip strength is 3 to 4/5 on the right. In addition, he is unable to tie a bow, button a button, zip a zipper and hold large objects using the right hand. The examiner opined marked limitation with the right arm.

I give significant weight to the opinion of Dr. Caiati. He had an opportunity to obtain a complete medical history from the claimant and conduct a thorough physical examination. Further, his opinion is supported by the evidence of record.

After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible.

**6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

At the supplemental (original) hearing, the vocational expert testified that the claimant described his past relevant work as an Environmental Service Aide. However, the Dictionary of Occupational Titles ("DOT") describes the work as Hospital Cleaner. It is assigned DOT code number 323.687-010 and has an SVP of 2 and medium exertional requirement. The vocational expert testified that the job requires frequent reaching, handling, and fingering, occasional bending and crouching and the ability to carry up to fifty pounds occasionally and twenty-five pounds frequently. He stated that based on the claimant's current residual functional capacity assessment he would be unable to perform his past relevant work.

**7.   The claimant was a younger individual age 18-44 on the established disability onset date (20 CFR 404.1563 and 416.963).**

**8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.   Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).**

**10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).**

See Next Page



In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.27. To determine the extent to which the claimant's additional limitations erode the unskilled sedentary occupational base, the Administrative Law Judge analyzed the testimony provided at the original hearing in this matter, by the vocational expert, who was at that time asked whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.

The vocational expert identified the following jobs, appearing initially perhaps possible for such an individual: usher; and surveillance system monitor. But the vocational expert testified that the job of usher requires occasional fingering. I asked the vocational expert if the individual could perform the jobs cited above if he could not lift/carry more than five pounds frequently and occasionally. The vocational expert testified that he could not perform any of those jobs. The jobs at the light exertional level require the ability to lift ten pounds frequently and twenty pounds occasionally. He also noted that the job of surveillance system monitor requires lifting up to five pounds occasionally. The vocational expert testified that the job of usher requires occasional fingering and that they all require the use of both hands.

The vocational expert testified that given all of the factors described above there are no jobs in the national economy that the individual could perform.

Based on the updated testimony of both the vocational expert and the claimant it appears that the deciding factor is the claimant's lack of use of his right hand for lifting and carrying and performing fine manipulations. The jobs cited by the vocational expert have a light and sedentary exertional requirement, which involves a lift/carry component that the claimant is unable to perform. Therefore the right hand impairment is a permanent disability and meets the twelve month durational requirement and based on the testimony of the vocational expert precludes him from all work activity.

The vocational expert responded that given all of these factors there are no jobs in the national economy that the individual could perform.

See Next Page

Ralph Rodriguez ██████████                                    Page 12 of 12

I furthermore note that the vocational expert's responses were in accord with the industry standard reference works, particularly the DOT.

**11.  The claimant has been under a disability as defined in the Social Security Act since September 19, 2008, the alleged onset date of disability (20 CFR 404.1520(g) and 416.920(g)).**

### DECISION

Based on the application for a period of disability and disability insurance benefits protectively filed on March 18, 2009, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act, since September 19, 2008.

As of the application for supplemental security income filed on April 1, 2009, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act.

The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the non-disability requirements for these payments and, if the claimant is eligible, the amount and the months for which payment will be made.

In addition, I note that this case is subject to benefit suspension during the remainder of the claimant's current period of incarceration.

/s/ *Barry E. Ryan*
_____
Barry E. Ryan
Administrative Law Judge

March 14, 2013
_____
Date

20

INCIDENT # 1

1. Plaintiff is an incarcerated individual within the Department of Correction's since 1-10-15, and to date is still incarcerated at Fishkill Correctional Facility.

2. Plaintiff has been at Fishkill Correctional Facility since on or about the end of 2019, and upon entering the facility it was apparent that the facility was unlike any other prison plaintiff has been in.

3. Fishkill Correctional is a medium facility, and is also a mental health facility, where II's (Incarcerated Individuals) can receive the medical and mental care needed, housing II's with mental health levels up to 1-SV, which is one of the worse levels within the D.O.C.C.S.

4. On 12-24-21, an incident had occurred where an II by the name of Christopher Gaudiello, attempted to walk out the facilities front gate, and oddly enough this has happen before in the past.

5. The prison was put on lock-down, and the lock-down was quickly removed the next day because there was no immanent danger or threat to the Security of the facility.

6. The facility was removed from lock-down for the entire weekend of Christmas, and on 12-27-21, by orders of the Deputy of Security Mr Urbanski and the facilities Administration such as Superintendent mr Burnett, for no just cause the facility was put back on lock-down, and C.E.R.T (Correctional Emergency Response Team) was deployed onto the Incarcerated Individual population of Fishkill Correctional.

7. At no time was their a new issue that arose to justify C.E.R.T being sent to the facility because in no way was there

any threat of security and or safety of anyone within the facility.

8. C.E.R.T is a team of officers put together for the purpose of restoring order in a prison where a riot or security was at threat, and at no time was Fishkill Correctional in any chaotic situation.

9. Defendant's Burnett and Urbanski authorizing the deployment of C.E.R.T was done without just cause, and was why the Deputy of Security S. Urbanski was removed from his position and is no longer at Fishkill Correctional Facility.

10. When C.E.R.T arrived at the facility it was mainly formed with officer's from Greenhaven and Sin Sin Correctional Facility, and at all times their intent was malicious, see (Exhibit A).

11. From housing unit to housing unit, from the program building down to the II's living quarters they Destroyed both property of the facility as well as private property see (Exhibit B).

12. Almost every housing unit where II's were they came in and brutally, maliciously attacked and severely injured prisoners.

13. On 12-30-21 at or around 7 am C.E.R.T came into my housing unit, but they had a Deliberated Malicious Indifferent agenda planned out for our unit 9-1(main), because Christopher gaudiello was from my hosing unit.

14. When C.E.R.T came into the unit, they came in screaming and shouting, and before we knew it the officers started attacking us, myself included.

15. By the time plaintiff sat up from my bed I had an officer grab me from my back shirt while another grabbed hold of my neck,

and forcefully lifted me up off my bed and slammed me head first into the floor, and before I knew what happen, I had on or about five officers beating me down, with close fist, all over my body, which included my Head, Back, Face, Ribs, Stomach, legs, and testicles.

16. While the officers was beating me without being provoked or any just cause for there actions, they were beating me for on or about five minutes, and while I was been beaten one of them was making racist remarks, saying "YOU FUCKING SPIK", and while I was being brutally beaten, and assaulted, six other inmates as well was all being brutally beaten as well, and after a few minutes plaintiff screamed out "Im Disable, Im Disable", and shortly after the beating stopped, and I was lifted up off the floor and slammed into the wall, and ordered to keep my hands up, while another officer checked my identification and program card, which states Im "Medical Idle" and Disabled.

17. The officer then told me "just shut the fuck up and stay their with your hands up, and don't look back", because other inmates were being beaten at that time as well, and meanwhile I was severely bleeding through my mouth, nose and head with multiple lacerations throughout my body, and I was then Handcuffed, but the officer who reviewed my identification and info, stated "Take those handcuffs off him, we can't take that one to the box", pointing at me, and the officer took off the handcuffs.

18. Meanwhile the other six prisoners was dragged out the dorm, and all the victims of this brutal assault was either Spanish or Black, not one white inmate was harmed, and the six other inmates was taken to Medical and then S.H.U, but I was left behind.

19. The C.E.R.T team was lead by sergeant BLOCK, from Greenhaven Facility whom is well known for his excessive force and abusive behavior towards inmates, and he had been under investigation a number of times, even said for murdering an inmate in the past.

20. Sergeant Block then said "THAT WAS TO SHOW YOU MOTHER FUCKERS THAT WE RUN THIS SHIT NOT YOU, DON'T MAKE US HAVE TO COME HERE AGAIN OR ONE OF YOU WILL BE DRAG OUT OF HERE IN A BODY BAG", then the OSI personnel who was outside the dorm while all of this assault happened came in and an officer was recording everything after the assault happened, and

they all knew what was going on and did nothing to prevent it.

21. The C.E.R.T team was lead by sergeant Block, and on or about 5 O.S.I (Office Of Special Investigation), along with sergeant Morres, and other sergeants, Lieutenant, from the facility came in and all was present outside the dorm while the C.E.R.T team physically beaten and assaulted me and my piers within the dorm, and stood idle and did nothing knowing we was being beaten and assaulted for no reason other than we was the unit that the inmate who allegedly try to walk out the facility was from see (Exhibit C).

22. The C.E.R.T team that entered my housing unit wore protective gear, which covered most of their body and faces, yet all had numbers assigned to them, and the numbers plaintiff was able to acquire was number 18-42, 13-38, 13-24, 13-59, 13-30, 18-14, 13-74, and all was a part of the brutal assault on me as well as others, and are being named as defenants.

23. The officer who worked my unit officer Bhuiyan A Mohammad, being a defendants as well because at all relevant times he had a duty to protect and could have intervene but failed to, and stated that "He had never seen anything like that before", and failed in his duty to stop a wrong that he knew or should have known was a derivation of plaintiffs rights.

24. All the prisoners including plaintiff was ordered to Strip down to out boxers, and sent to the 7-1 area recreation room, and was ordered to pass a metal detector, and then ordered to stand in front of the windows which was purposely opened with freezing temperatures outside, with our hands above our heads with threats of violence if our hands came down, during which time plaintiff was in severe pain and agony, all while the C.E.R.T team within the dorm unit destroyed the housing unit and all the prisoners personal property, myself included.

25. Plaintiff was forced to stand for hours in front of the freezing temperature while in severe pain, and request for medical attention was ignored, and one of the officers told me "Shut the fuck up before You'll really need medical attention", at which time plaintiff in fear of health and safety complied.

26. After a few hours hours plaintiff having extreme pain especially to the left ankle, back, neck and head, plaintiff almost fell out in pain, and was then that we was all ordered back to the housing unit.

27. Plaintiff being in severe pain was almost unable to walk back to the dorm without assistance, and when I made it back to my cubical, all of my personal property was destroyed, altered and in ruins which included Legal work, sentimental pictures, Letters, electronics, and plaintiff is an artist and paintings and art supplies was ruined, as well as plaintiffs Diary and two books which plaintiff wrote titled "AN INNOCENT MAN SERVING TIME", a reference of all the accounts of what plaintiff had endured while incarcerated and planed on publishing but all the work was ruined and destroyed.

28. At or around 12pm plaintiff went to the housing unit officer Bhuiyan and requested medical attention, and he said "YOU SEE EVERYTHING THAT GOING ON RIGHT, YOU'LL HAVE TO WAIT", an plaintiff was once again denied medical attention, and

It was on or around 5:30 pm when plaintiff seen a lieutenant walking by that plaintiff went and informed him of what had occurred and the lieutenant told the officer to get me an escort and sent to medical, and after about 30 minutes later was escorted to medical.

29. when Plaintiff arrived to medical sergeant Jason I, Riggins came up to me and the escort officer and asked "What happen to him", and plaintiff fully informed the sergeant of what had occurred, and he said "Well someone fucked up, take him up to the ICU", and plaintiff was then escorted to the elevator, and went to the ICU.

30. When plaintiff got to the floor and exited there is a gate that blocks the entrance and a nurse came running down to us, and asked "What's he doing here?", and the escort officer explained to the nurse what was going on, and she said "Look around, I have no more rooms available to place him in, take him back downstairs", and it was then that plaintiff noticed that every room was occupied with severely injured prisoners, and in front of each room was a C.E.R.T officer as well as all throughout the halls, plaintiff then had an anxiety attack and could,t breath and the escort officer told me to "calm

down I'm not going to let anyone touch you while I'm around ok", and the officer took me

back down.

31. Plaintiff was then taken to the Sick-call area, and was seen by nurse Mukkatt L

Sangeetha, See (Exhibit D), and seeing how severely I was injured, and called my primary

health care provider, and I fully explained what had occurred.

32. It was on or around 6:45 am and the housing units lights were off when suddenly,

there was screaming and banging, and when plaintiff got up seen that C.E.R.T had arrived,

they came through housing unit to housing unit, and prior through the windows had seen

inmates kneeling with there hands on top of there heads in boxers, and every now and then

seen C.E.R.T brutally attacking one inmate after another, without just cause, and we

attempted to make outside phone calls to O.S.I, our families, anyone that would be able

to help, but our phones were off.

33. The fear we felt was unlike anything I can explain, as we all heard screams and

cries for help, go unanswered, and you could see terror within the eyes of the inmates

all around us, because we did not know when they were coming but only the fact that they

were, and unfortunately the inmate said to have attempted to walk out the facility was

from my housing unit, and we all knew they were keeping us for last or close to it, and

then they came.

34. There was shouting and they were all dressed in black riot gear, slamming there

sticks into anything they seen, and before plaintiff knew it I was picked up off my bed

slammed head first and beaten down severely for no reason other than being an inmate

within 9-1 housing unit and being of ethnic backround, Hispanic, for all the victims

within my housing unit was ether Black or Hispanic.

35. I informed medical that in no way was those C.E.R.T officers justified in their actions,

nor was the facility in any kind of Security Breach or Security risk, and the only reason

why we was brutally maliciously assaulted was because it was Christmas Weekend and they

were told to come to the facility, by Defendants.

36. I informed the care provider and nurse of all the injuries and informed them that

when I was on the floor, one of the officers took my leg from behind me and twisted it so severely that I could no longer walk, and had severe injury to my head, neck, back, Ribs, Right Arm which the officers twisted behind my back, Legs, Mouth, and left ankle See (Exhibit E).

37. These C.E.R.T officers just came in and started attacking inmates, I was the second closest to the door, and I requested to have pictures taken but was denied, and the only medical care I was given was two ace bands and Aspirin which in no way helped with the pain, and suffering, and an injury report was made and signed by Ms Sullivan, and then I was sent back to my housing unit, without a cane or crutch to help me walk, and all the information I gave the health care provider was either not written or down played as is the Custom with the medical personnel within this facility when an inmate gets assaulted by an Official within the facility.

38. I had to be placed in a wheel chair to get to medical, yet was told to leave on my accord, and even though my injuries was severe enough to have me admitted into the I.C.U there was no room, and being sent back to my housing unit, after I pleaded with them to get me to a hospital, was ignored.

39. Any medical care provider would know or should have known that when there is a severe head injury, there is certain precautions which must be made, and in no way was I taken to get an X-Ray which the facility has on site, or taken to take an M.R.I, which is clear negligence and a deliberate indifference to my medical care and need.

40. The next day officer Alexandra Gibbons worked the unit, and she is well known throughout the facility for her abusive conduct and behavior.

41. I was in my bed with both my leg in an ace Band elevated and right wrist as well, and due to the severity of my medical condition I was forced to use a second mat which another inmate got for me from one of the empty cubes that was available when C.E.R.T took the other six inmates to the R.M.U (Medical).

42. When officer Gibbons was making her round she seen me laying down in severe pain, and seen I had an extra mat and ordered me to get up and remove my mat, and I tried to

explain to her that the mats given to us had no support and I was in need of the extra mat, because the I.C.U was full, but she continued to scream at me and threaten to pull her pin, if I didn't comply, so I got up off my bed and told her I couldn't remove the mat myself and needed help from another inmate, but instead she put on her gloves and took me out to the hallway and had me stand starring at the wall, till she was done removing my mat, but after on or about 15 minutes later due to the pain I fell forward against the wall and injured myself worse, and she was forced to pull her pin and call for a medical emergency, see (Exhibit F).

43. I was then placed in a wheel chair and taken to medical and seen nurse Cujas Gifty Rn # 574, and I fully explained to her what had happened and as stated prior, as a custom and practice of D.O.C. employees not only did she down played my injuries but falsified my medical report,See (Exhibit G).

44. Nurse Gifty then had to make an incident report, and I had requested that she take pictures but she stated that she didn't have the camera, and/or couldn't find it, I then informed her that I severely injured my head again when officer Gibbons had me standing starring at the wall, I had fell head first into the wall and fell down injuring my neck and back making my injuries worse, and she falsified the medical records by saying "I fell on my butt, and no new injuries reported", violating her duty and did nothing to assist plaintiff with his injuries, also failing to take any X-Rays or give me any medical devise to assist with walking and sent me back to my housing unit.

45. When I arrived back to my housing unit, "AGAIN", my personal property was thrown around and my legal documents disordered, done by officer Gibbons, and I made a grievance about her, and multiple inmates seen what had happen and what she did, See (Exhibit H).

46. After both the incidents had occurred I made numerous sick call request, and it wasn't until 1-4-22, that I was finally given "A CRUTCH", to help me walk, and from 12-30-21 to 1-4-22, I was forced to move around without any assistance and was left in severe pain and suffering, showing a direct deliberate indifference to my medical need and care, and it was cruel and unusual punishment to allow me to move around, without any medical

devise, see (Exhibit I).

47. Plaintiff then had to wait till 1-4-22, before an X-Ray was taken, See (Exhibit j), during which time plaintiff was in severe pain, and multiple sick call request was not answered, and plaintiff suffered extreme migraines as well as loss of sleep, loss of appetite, pain to entire body, and fear of retaliation for writing grievances.

48. Plaintiff grieved everything from the assault from C.E.R.T, Lack of proper medical care, Officer Gibbons direct retaliation for plaintiff not being sent to the S.H.U and intentional infliction of pain and suffering, and all the grievances went unanswered or responded to, and when plaintiff sent all the grievances to the superintendent Burnett to inform him of the actions and failure to act upon the I.G.R.C and supervisor me Reams, a letter finally sent to plaintiff stating that the Grievances was untimely, See (Exhibit K).

49. Plaintiff attempted to grieve all the issues and wrote letters to prison officials informing them of the actions of the Grievance Supervisor ms Reams and her failure to file and process inmates grievances with no response, and when plaintiff seen the superintendent on the walkway, informed him personally of his subordinates failure to perform her duty and deny plaintiffs right to a grievance, and was informed by the superintendent to "writ me and I'll look into it", but he never did See (Exhibit L).

50. Plaintiff had been complaining about the Grievance system within Fishkill Correctional overseen by Supervisor ms Reams, and her intentional misconduct and failure to perform her duties which had became a custom and practice within the facility, and her actions are allowed to continue because she stands as a "Shield to Officials", as a form of protection by not filing grievances with excuses that she told plaintiff such as "I DON't KNOW WHAT HAPPENS WITH THE GRIEVANCES FROM THE MAILBOX TO MY OFFICE IT PROBABLY GOT LOST OR MISPLACED", or "MAYBE HAVE HAVE YET TO FILE IT", and then she will wait till the time frame to file a grievance to expire and shot them down.

51. Plaintiff knows full well how important it is to fully exhaust administrative remedies, and to date after four years in Fishkill Correctional plaintiff has yet to win a grievance regardless of evidence of proof brought forward, making the grievance system

within Fishkill Correctional non-existing and inadequate, and multiple letters to the Administration about ms Reams go unanswered and ignored, See (Exhibit M), and multiple complaints and grievances against her also go unanswered or ignored.

52. Once the Phones came back on plaintiff reported everything to O.S.I (Office Of Special Investigations), and on 3-3-22 O.S.I personnel named ms Olson and ms Clock came to speak to plaintiff and plaintiff fully explained everything to the O.S.I officials but to date nothing happened]

53. Plaintiff also filed a "Notice Of Intent", providing the State with full notice of the actions and incidents which had occurred, See (Exhibit N), and informed a vast number of organizations and even the President of the United States, Bidden about the incident with C.E.R.T and how they physically assaulted multiple inmates, See (Exhibit O).

54. The incident that had occurred in my housing unit wasn't an isolated incident and multiple inmates was brutally assaulted or had their Civil Rights violated one way or another, See Exhibit P), and See Green v. Correctional Emergency Response Team, 22-CV-4631(CS) 2022 WL 2160372.

55. Plaintiff wrote the Dep of health Akinyombo informing him of the lack of medical care given, the failure to call plaintiff when a sick call slip was entered, and about ms Sullivan refusing to provide plaintiff with an extra mat or Egg crate, when plaintiff had always had one in every facility and it was deemed a medical necessity and was denied every time, and even a Reasonable accommodation request was made and denied, and even though she provided other inmates with an extra mat or egg crate, she denied plaintiff, stating to me "YOU YOUNG YOU DON 'T NEED ONE OF THOSE", and I reported all of these issues to Akinyombo who did nothing to assist and when I seen him in medical personally informed him, and he still did nothing to assist, See (Exhibit Q).

56. It took plaintiff moths before an M.I.R was given, even though plaintiff had severe, head injury that cause severe migraines and loss of sleep, See (Exhibit R).

57. Plaintiff is also fully disable and suffers from sever neurological damage as well as a vast number of medical issues, See (Exhibit S).

58. Defendants ms Sullivan, Mukkatt, and Cujas and Akinyombo, knew of plaintiffs serious medical need, and knew that plaintiff was disable, both directly and via letters written, and that plaintiff had numerous medical issues, that were severe and failure to provide prompt medical care would cause pain and suffering to both current and future health, and if a reasonable care provider would have diagnosed as mandating treatment that was so obvious that a layperson would have recognized the need for medical assistance beyond "an Ace Band and Aspirin", for plaintiffs serious medical condition of head trauma alone, not including all the other injuries plaintiff suffered.

59. Ms Sullivan, nurse Mukkatt and Cujas acted with intent and/or wanton disregard when providing inadequate medical care which was a wanton disregard to plaintiffs medical need and disability which was akin to criminal recklessness, requiring consciousness of impending harm that was easily preventable, had plaintiff was sent to a hospital.

60. Plaintiff was also treated differently from other similarly situated inmates because when plaintiff was leaving Medical seen another inmate that was injured in another unit and was white be admitted to the I.C.U, as well as other inmates was taken to the hospital, meanwhile plaintiffs pleads to be sent to an Emergency room was ignored, and it was intent because of plaintiff numerous complaints against ms Sullivan, and Akinyombo which was done with the intent to cause further pain and suffering as a form of Retaliation, and due to plaintiffs back round of being disable, ethnic, and race was treated differently as well and defendants knew that if plaintiff was taken to the hospital like other inmates was, due to the disability and medical condition there was a likely chance of the facility being charged more money for plaintiffs serious medical needs and the injuries was serious and there was an excessive risk of harm and degeneration with extreme pain which occurred, which also included loss of weight, sleep, anxiety, depression, and plaintiff could not attend recreation, or walk to the mess hall for meals, and had a mental breakdown which required mental health counseling, due to the fear of further assault, and retaliation, all done due to Deliberate indifference.

61. Defendant Superintendent Burnett, Akinyombo, Gonzalez, and Ms Reams at all times knew

or should have known that plaintiff attempt to grieve every issue within the complaint with no resolution, and because of the direct actions or failure to act by ms Reams, the administrative procedure to exhaust was unavailable, despite what regulations or guidance materials may promise it operates as a simple "DEAD END", and officials unable or consistently was unwilling to provide any relief or assist to aggrieved plaintiffs issues rendering an administrative scheme so opaque that it became practically speaking, "incapable of use", when officials twart inmates from taking advantage of the grievance process, by failing to process grievances and/or misrepresentation and machination rendering the grievance system unavailable, and multiple complaints and court proceedings put officials on notice and there failure to supervise and being in direct notice of the issues makes them liable as well.

62. Defendants also "Failed To Protect", plaintiff because prior to C.E.R.T entering the housing unit 9-1, they already went through a number of housing unit and in almost every housing unit an inmate was assaulted, maliciously and it was known that they created a situation and or condition that posed a substantial risk of serious harm to plaintiffs health and safety, and was Deliberate indifference by defendants to not intervene or attempt to stop this malicious assault, and was a direct disregard to the risk C.E.R.T imposed to plaintiffs well being, and defendant Burnett was within the facility when this assault on plaintiff and the inmates took place, see (Exhibit T).

63. Plaintiffs injuries was severe and the unequal treatment of plaintiff resulted from intentional or purposeful discrimination based on race and ethnic back round because not one white inmate was harmed or their property destroyed like plaintiffs, being treated differently while under the same situation, which was intentional and purposefully done so "Arbitrary" and was "Irrational treatment", and there was no "State legitimate interest such as keeping the prison safe and orderly", and no reasonable explanation can be given for their actions.

64. The prison officials who injured plaintiff was done so "Malicious and sadistic", and the force used was so bad it was beyond excessive, and officials force was not "a Good

Faith Effort to maintain or restore discipline", as well, but was rather used with the intent of causing harm to plaintiff, and at no time was there a riot or other major prison disturbance, nor was there any violently or disruptive behavior by plaintiff or the inmates within the unit, and no purpose other than to harm inmates and was the reason why the Deputy Of Security defendant Urbanski was removed from the prison, and superiors present made no attempts to decrease the amount of force used.

65. cert   is authorized and maintained by the Director of C.E.R.T, Commissioner Anthony J. Annucci, and actions have long been known by complaints, grievances and Legal actions.

66. When Plaintiff attempted to file an "Inmate Claim Form", for the damages done to plaintiffs personal property See (Exhibit B), prison officials failed to process the claim form that was submitted on 1-3-22, and after weeks of waiting multiple letters was sent about the claim, and in getting no response, plaintiff submitted a second claim form with a letter informing officials that a second claim form is being sent because of no response to the first one, and informed them that it was filed timely, but was "Denied as being Late", as is the custom and practice of Fishkill officials, failing to properly process vital documents.

67. Plaintiffs property damages consisted of Vital Legal documents being used in a Court proceeding being, claimants "Direct Appeal to the instant criminal matter for which Claimant is incarcerated for", stating full innocence due to a mistaken identity, and attempts to recover these vital documents being, Sworn affidavits of two jurors at trial, and only one was recovered, See (Exhibit U), pictures, Court minutes that took years to acquire, trial exhibits, case law, notes and legal references, all being used on claimants "Pro-Se Supplemental Brief", and all were vital issues that could no longer be argued and plaintiff was forced to move forward on Appeal absent these vital critical issues, due to defendants action of interference with court proceeding, access to the court and spoilation of evidence.

68. Defendants Deliberate intentional destruction of claimants personal property, and failure to preserve property that was vital to a pending foreseeable litigation, wasn't

the only personal property destroyed, Ruined, damaged and missing, and property such as Personal paintings plaintiff made as a form of expression to being wrongfully confined, a detailed diary of the 8 years spent in prison, 2 books written second"The Doomsday Virus", both which plaintiff intended to have published was destroyed and items such as religious books, and a Shrine with Jesus and items on it was ruined, pictures and letters from my father whom had passed away a year and a half ago due to covid-19 that held sentimental value and caused severe emotional distress and depression, including phone numbers was all ruined with paint used from plaintiff art supplies that was also destroyed, depriving plaintiff of Liberty and property without due process of the law, and inmates within the dorm didn't have their propert ruined like claimant being done so Deliberately done, also damage religious books and shrine infringed on claimants right to practice religion, being unable to re-create the shrine due to fear of retaliation and further damages done to religious items, pictures and books, that was no longer readable, placing substantial burden.

69. The Superintendent Burnett, Director of C.E.R.T and Defendants had all "Conspired", against plaintiff and other inmates within the housing unit and/or facility, being state and private actors who were in "Concert", to inflict an unconstitutional injury, and "Overt Acts Done" in furtherance of that Goal to cause damages to plaintiff.

70. An "Express or Tacit", agreement to inflict harm on plaintiff and other inmates within the housing unit, was done so with certainty because when C.E.R.T came into the Housing unit sergeant Block had a list in his hand of inmates, all of whom was assaulted by his "express orders", with him saying "Take that mother fucker down", "That one to", sending C.E.R.T to attack plaintiff and other inmates being, Bailey din # 06A0218, Roberts din # 07a5834, Guman din # 18B1705, Wilder din # 11A4027, Boyd din # 18A3735, Maginn din # 20A1584, all of use being Black or Hispanic and not one white inmate was physically assaulted or have there property ruined, destroyed or missing, and all the names within the list was victims of malicious, brutal assaults, done so with intent and deliberate indifference to plaintiffs Disability and medical condition, showing that officials

planned on having certain inmates targeted.

71. Almost every victim of this assault within my housing unit had some type of Grievance, Court Proceedings, Complaint or had mental issues such as Wilder, but in no way was C.E.R.T justified in there actions, and not one official attempted to intervene.

72. Sergeant Block was also not the only official with this list of names but also another sergeant that was present within the unit, and plaintiff was informed that the officers within the facility known as "The Beat Up Squad", had met up with C.E.R.T officials and gave them some of the names on the list, See (Exhibit V), to inquire on who should be targeted Maliciously, Sadistically and intentionally to cause harm to plaintiff, and Specifically two of the officers of the Beat Up squad is known as "Paul E, julien and J. Scott", known for there excessive use of force and multiple Grievances and complaints that Supervisor knew of at all times of there conducts and action, so severe that they include killing inmates within the facility see exhibit u.

73. Defendants had conspired to stop plaintiffs attempts to acquire information to proceed on a claim against defendants, such as "Forging Documents", "Forging Medical Records", "Falsifying Disciplinary Tickets against inmates who was assaulted", and when plaintiff attempted to receive documents such as Two injury reports dated 12-30-21 and 12-31-21, these documents which plaintiff seen signed by medical care personnel is suddenly "Gone", along with "Grievances" sent to ms Reams, See (Exhibit W), showing a series of attempts to acquire information pursuant to "the Freedom Of Information act", from prison officials whom also conspired with defendants to make disappear and/or act like they don't exist, to cover up the actions of defendants, and plaintiffs injuries, which has long been a custom and practice of prison officials within Fishkill Correctional facility, which has also been a long common practice and unwritten rule that is so widespread within the facility, that Defendants knew was happening threw Grievances, complaints and Court litigations on Defendants and there violation of inmates Civil Rights within Fishkill.

74. Plaintiff would also like to rely on Civil Case Law against the named defendants who's actions and failure to act has long been known by there Supervisors, Superintendent and Commissioner as well as Director of C.E.R.T, putting on full notice of defendants

illegal actions and failed to remedy a wrong they knew was occurring and intervene, Supervise and are fully responsible for the actions that occurred being both directly and indirectly involved, please see

Green v. Correctional Emergency Response Team, 22-CV-4631(CS) 2022 WL 2160372, Houston v. Capra, 20-CV-2135(VB) 2022 WL 748260, Thompson v. Booth, 16-CV-3477(KMK) 2018 WL 4760663, Wilson v. Snyder, 9:19-CV-420(DNH/CFH) 2019 WL 8192227, Lurch v. Bui, 9:19-CV-895(DNH/DJS) 2020 WL 1169364, Harrell v. New York State D.O.C.C.S, 15-CV-7065(RA) 2019 WL 3821229, Armand v. Simonson, 12-CV-7709(KMK) 2016 WL 1257972, Kendall v. Cuomo, 12-CV-3438(ALC)(RLE) 2013 WL 5425780, Shaw v. Ortiz, 15-CV-8964(KMK) 2016 WL 7410722, O'Connor v. Featherston, 01-CV-3251(HB) 2003 WL 554752, Abdallah v. Ragner, 12-CV-8840(JPO) 2013 WL 7118083, Jackson v. Jackson, 97-CV-1592(LAK) 15 F.Supp.2d 341 (1998), Showing with Certainty that Defendants knew of this facility, its Officers and Officials had long been violating the Civil Rights of Inmates within the facility, and did nothing to remedy the situation, including the Actions of C.E.R.T, and defendants are also liable under the Monell Claim.

75. The following defendants Governor Kathlleen C. Hochul, State Commission Of Corrections Chair and Commissioner, Department Of Correction Community Supervision Commissioner Anthony J. Annucci and Fishkill/Dutchess Senatorial Judicial District representative, all are responsible under a Claim of Municipal liability, by creating a custom or policy both written and unwritten that is "A Widespread Practice That, Although Not Authorized by written Law or Express municipal Policy, is So Permanent and Well Settled as to Constitute a Custom or Usage With tthe "Force Of Law", being the Power given to C.E.R.T who's violations of Plaintiff and multiple inmates Civil Rights do unchecked, and is the "Direct Moving Force", behind the Constitutional Deprivation, that has occurred time and time again, for example multiple complaints from prisoners in Clinton Correction, after two inmates escaped and C.E.R.T entered the Facility and Assaulted numerous inmates. See N.Y.Correct.Law 137(5)McKinney(2014), Stating "NO INMATE SHALL BE SUBJECTED TO ANY DEGRADING TREATMENT, AND NO OFFICER OR EMPLOYEE SHALL INFLICT ANY BLOWS, UPON ANY INMATE UNLESS IN SELF-DEFENSE, OR TO SUPPRESS A REVOLT OR INSURECTION.



76. The policy created by defendants authorizes C.E.R.T to enter into prison facility, but allows for there actions to go unchecked, and Complaints, Grievances and litigations against C.E.R.T and the officers within them almost receive no reprimand or have to answer to there wrongdoing, because each and ever C.E.R.T officer is completely Covered from head to toe, in protective Gear only showing there eyes, and the only way to identify them is by the numbers they wear on there chest that no inmate can identify because at all times we are ordered not to look at them with the use of force if inmates do, and its clearly apparent why they cover there face and identity, and its because of there abusive malicious attacks on innocent prisoners such as plaintiff.

77. These procedures are authorize by defendants who are well aware of there long history of abuse on inmates, which goes against directives stating that "No officer can use force on an inmate unless its to restrain", yet this rule is never followed, and all an officer has to say is "Stop Resisting", meanwhile an inmate is covered by multiple officers and are being assaulted, as a cover up for there action as justification, and if that were true, then why are victims of there assault such as plaintiff had scars and bruises consistent with the use of full blown fist.

78. C.E.R.T has long been known throughout the prison system for there excessive force and abusive actions, and although certain situation require actions to restore order such as Riots and to restore prison Security, it still should not be used as a form of justification for there actions, and Deliberate indifference to prisoners health and safety.

79. There is a "Casual Nexus", between Defendants custom of permitting its officers to mistreat and abuse prisoners, and if the Defendants including Dutchess County had "Responded Adequately", to the numerous complaints made, and the County was on full notice including its politicians because multiple inmates were sent to the Out Side hospital and Informed Hospital officials of the abuse and excessive force that had occurred long before, C.E.R.T had entered plaintiffs housing unit, and something could have been done to prevent it.

80. Correctional Officials has for far to long been allowed to abuse prisoners and was tolerated by defendants, a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to Deliberate Indifference to the rights of those who come into contact with the Municipal employees, and a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware.

81. A vast number of prisoner who was assaulted 12-27-21 to on or about 1-3-22, was admitted to the county hospital, and as a former employee of Coney Island Hospital for almost 10 years knows its standard practice for the care provider to document what caused patients injuries and are duty bound to report any and all acts of violence which include the breaking of laws, and even prior to the incident which occurred on the dates stated plaintiff has been at Fishkill Correctional for over 4 years and had seen a vast number of officers excessive force on inmates to the point of victims being sent to the county of Dutchess/Fishkill hospitals and reports along with complaints by these inmates family were made and ignored or negligently disregarded by Government officials and Policy-Makers.

82. After claimant was injured, and after numerous sick call request made it took months before an M.R.I was done, and after repeated request to have physical therapy, it also took months before claimant was seen by the therapist and multiple sessions was ordered for the severity of claimants condition.

83. Claimant also has severe nerve damage and requested a "Tens Unit", and didn't receive one till the end of August of 2022, and medical kept giving claimant permit receipts stating that claimant had a tens unit, ones again defendants created false records in an attempt to cover up the lack of medical care given timely for claimants sever injuries.

84. Claimant suffered extreme pain and suffering due to defendants actions and deliberate indifference to claimants medical need, as well as suffered loss of Sleep, Anxiety, Depression, loss of weight, extreme fear of Retaliation, Mental Anguish, and claimant seen a mental heath care provider to inform them of claimants mental deterioation, as well as physical.

85. Claimant also suffered from swelling of the right wrist and left ankle and foot and discoloration, severe migraines, neck pain, back pain, leg pains, pain to the ribs and

jaw, pain at times that was crippling as well as stress and spiritual problems, and all attempts to receive prompt adequate care was ignored, delayed or refused which included request to be sent to a hospital.

86. Claimants pain was so sever that plaintiff could not attend meals, recreation, could not access the law library, and all request to get an extra mat or egg crate to help relieve the pain was denied which included "Reasonable Accommodation Request", denying plaintiff of a program, service and/or activities, being unable to attend Mess hall, Church Services, Library and Law Library Services, Medical Care, everything claimant was denied due to the issues stated within claimants claim, due to defendants direct and indirect actions.

87. Claimant also had dizziness, change in eyesight due to bad headaches, mood changes, feelings of confusion, chest pain and pressure, burning numbness and tingling feelings to right wrist and left ankle, upset stomach, shakiness, feelings of tired and weakness, joint pain, feeling nervous and excitable, irritation, and cold sweats swelling and bruises to leg, ankle, wrist, all due to the deliberate indifference to claimants medical need and care, also due to the direct actions of C.E.R.T's intentional malicious assault on claimant, done so deliberately to cause harm, and the inactions of defendants to intervene and superiors.

88. N.Y.Correct.Law 137(5) McKinney 2014, States "NO INMATE SHALL BE SUBJECTED TO DEGRADING TREATMENT, AND NO OFFICER OR OTHER EMPLOYEE, SHALL INFLICT ANY BLOWS, UPON ANY INMATE, UNLESS IN SELF_DEFENSE, OR TO SUPPRESS A REVOLT OR INSURRECTION", making a showing that there Exist Clearly Establish Law, that Defendants violated with a Sufficiently Culpable State Of Mind, with the intent to Cause Harm, in "Deliberate Indifference", to Claimants Health both Future and Current, as well as Safety.

89. New York State Constitution Article I Section V, also protects inmates from Cruel and Unusual Punishment, which Defendants Violated, and Full Knowledge was at all times known of C.E.R.T and there Excessive Force amongst inmates through multiple complaints and court Proceedings that Claimant has sighted within Claim and can be relied on as Factual, See Osterhoudt V. City Of New York, No. 10-CV-3173, 2012 WL 4481927 at *1 (E.D.N.Y. Sep.27,2012

90. the C.E.R.T Defendants was not officials within the Facility, but officials was with them from the Facility being Fishkill Correctional, and assisted them with the conspiracy to cover up all the unlawful acts, and the Superiors within the Facility, was on notice of the unconstitutional acts, and was "Deliberately Indifferent", to plaintiffs Rights, by failing to Supervise of intervene in "Any Way", and allowed for the violent acts to continue unchecked.

91. The Medical Department along with the Administrative personnel within the Defendants listing all had personal involvement with the unlawful acts, and assisted with the Falsifying documents, Down Playing injuries, failing to document and take pictures of the injuries and Denied plaintiff in going to an outside hospital in an attempt to cover up the damages done, which included Conspiracy.

92. The County of Dutchess was on notice of the incident that was occurring and includes the Governor, Commissioner of D.O.C.C.S, and all defendants named through reports made, court proceeding held against the C.E.R.T officials and Director, and the incident was so widely known that the News Media was outside the facility, and the incident was posted online, and although plaintiffs attempt to call and report these unconstitutional acts to officials was hampered because the phones was shut down, officials from within the Facility was reporting the wrong and was the reason why the media was put on notice.

93. The C.E.R.T team was all from different prisons, and was not the same municipal entity, and the Municipal defendants was "Grossly Negligent in training its prison officials as well as being grossly negligent in managing their subordinates, and are liable because they created a policy or custom under which unconstitutional practices occurred or allowed such customs or policies to continue and failed to act.

94. Officers from the County was put on notice of the unconstitutional acts which had occurred and failed to intervene, and prisoners being sent to the hospital from the facility, also put Superiors on notice of the acts that had injured plaintiff and nothing was done to intervene, making them "Personally Involved", by failing to act, and or report the wrong being done, and Defendants all conspired to cover up the severity of the incident

95. After the assault, Battery and Excessive Force that severely injured Plaintiff, it had took days for the medical department to take X-Rays, and Months before an M.R.I was done, and Physical therapy was given, along with months without a Tens unit, to assist plaintiffs Medical Care and Needs.

96. During the severe delay in medical care and treatment plaintiff had went through severe Pain and suffering, and after the physical therapy was over, plaintiff had attempted to go to the Gym to continue the physical therapy treatment as instructed by the Doctor D, but was denied entry into the gym, multiple times, and to date, plaintiff has never been allowed into the Facilities Gym.

97. Plaintiff then attempted to go into the Recreational Yard, to go into the weight shack and was also denied by multiple Correctional officers and had Grieved the officers and the situation being Grievance number 0291-22, and included the officer mukalister, whom was one of the many South Yard Officers that denied plaintiff, and plaintiff to date has never entered the Gym or South Yard Weight shack in violation of Plaintiffs American With Disability Act Title II, and Rehabilitations Act Section 504, and was denied a program, service and activity, by officials within the facility, and the Grievance just like all Grievances was denied and a "DEAD END", following all the procedures to the Grievance Program with no resolution, because the Grievance system is non available, corrupt and inadequate.

98. Plaintiff had been a Protestant from birth, and had always conducted in that strong particular Belief, and practiced in the Faith that "The Lord Jesus Christ is our Lord & Savior, and sacrificed himself to save us ALL", and attended Religious Services often, and Prayed Daily in front of a Shrine, with a painting of Jesus Christ holding his heart, and a Crucifix, and Cup of Holy Water, Fruits and Rosary, along with pictures of loved ones, and Religious books and Written Scriptures, Passages and Prayers from the Bible.

9 9. Due to Defendants Actions in Destroying and Damaging everything mentioned of Plaintiffs Religious items, they placed a "Significant Burden and Pressure" which had directly coerces the Religious adherent to conform plaintiffs behavior accordingly so, that as a Result, Pressure and Fear of being assaulted again and having the Religious

items and shrine damaged and destroyed as well, forced Plaintiff to "Forego Religious precepts, and Adherent from engaging in Conduct Both Important to, the Adherent and Motivated by Sincere Religious Belief, that Practice of Plaintiffs Faith was Fetther, and Abandoned, as so, not to have Plaintiffs Sacred Religious items, Books, Pictures, notes, Scriptures and Painting Damaged and Destroyed AGAIN, and all together Stopped Plaintiff from Practicing in this Belief, being Protestant".

100. Defendants actions was so "Disturbing", that had there been pictures of the damages and destruction done, the Court would have Ruled immediately against defendants, and there acts were so that the cup of holy water had a "Glob of Spit and Chew", for Chewing Tobacco in it!

101. The Damages of plaintiffs personal property that even Legal mail and personal pictures were also damaged, and for anyone to be so disrespectful towards any persons Religious items the way that defendant C.E.R.T did, makes a "Clear Showing Of The Type Of Monsters they are", and deserve what ever this honorable court deems just and proper and Plaintiff is in hopes and Prayers that an "Example Be Made", of them to Deter anyone else who decides to put on a Badge from D.O.C.C.S, as a way to satisfy their unethical Conduct that included Assaulting innocent Human Beings, Stripping away Our Constitutionally Protected Rights that our Founding Fathers Guaranteed "Every American Citizen, Whether a Incarcerated Individual or Not", and make them think twice before doing so.

Wherefore, in closing Plaintiff would like to address the fact that the Defendants named whom were in the facility, as the Correctional Emergency Response Team, had entered the facility, and was at all times capable of "Stopping, intervening, or voice the wrong being done, or at the very least report the the C.E.R.T's actions to a higher authority to put a STOP to the malicious assault on the prison population and FAILED IN THERE DUTY TO ENSURE THE SAFETY OF ALL PRISONERS WITHIN THERE CARE, CUSTODY AND CONTROL", and from the date of 12-27-21 to on or about 12-31-21, these defendants stood idly by and watched as these Unconstitutional Acts were being committed, and are responsible, all the same as they themselves assaulted Plaintiff, for if they had done their duty, once these wrongs was being done, plaintiff would have never been Severely injured, that to date plaintiff has nightmares of the assault and lives in constant fear while being incarcerated.

## Cause Of Action # 8 (42 U.S.C.A 1997e(e)

Prison Litigation Reform Act

Mental and Emotional Injuries

Under the Prison Litigation Reform Act, it states that First, the Court must ask: Whether administrative remedies in fact "Were Available" to the Prisoner.

Claimant had shown through Exhibits, Sworn Affidavits, and allegations that must be taken as true, that the Grievance program within Fishkill Correctional is inadequate and had made a custom of defendants to "choose" the grievances they wish to answer and provide grievance numbers to, acting as a "Shield", to officials within the facility from actions brought fourth by incarcerated individuals, and there has been multiple case's brought fourth alleging the same allegations as claimant, of the Inmate Grievance system within Fishkill Correctional being "Corrupt and Inadequate", See Thompson V. Booth, 16-CV-03477 (PMH) 2021 WL 918708, Shaw V. Ortiz, 15-CV-8964(KMK) 2016 WL 7410722, O'Connor V. Featherston, 01-CV-3251(HB) 2003 WL 554752, Abdallah V. Ragner, 12-CV-8840(JPO) 2013 WL 7118083, all Civil Rights 1983 cases alleging the same facts about the Grievance System here at Fishkill, failed to file, ignored and never responded to claimant's Grievances.

Second the Court should also inquire whether the defendants own actions inhibiting the inmates exhaustion of remedies may estop one or more of the defendants from raising the claimants failure to exhaust as a defense.

Third if the Court finds that administrative remedies were available to claimant, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but the claimant nevertheless did not exhaust available remedies, the Court "Should Consider", whether their existed "Special Circumstances", had been plausibly alleged that justify the claimants failure to comply with the administrative procedural requirements.

What constitutes justification in the PLRA context "Must Be Determined By Looking At The Circumstances", which might understandably lead usually uncounselled prisoner to fail to grieve in the normally required way. See Woodford V. Ngo, 548 U.S. 81, 90, 126, S.Ct. 2378, 2386, 165 L.Ed. 2d 368, 387 (200).

Claimant must show a "Physical Injury", in order to recover damages for "Mental and or Emotional Injuries", under Section 1997e(e), and the injuries must be more than "De Minimis", which claimant has clearly stated within the claim, in details of the injuries sustained, which required numerous medical attention, medication, physical therapy as well as mental health counseling, after claimants Assault and Deliberate indifference of the Defendants. One appeals Court have held that injuries does not even need to be observable or diagnosed, or required treatment by a medical care professional, to meet the 1997e(e) standard, See Oliver V. Keller, 289 F.3d 623, 628 (9th Cir 2002), and while other Courts have found some what small injuries to be actionable under Section 1997e(e), See Sanders V. Day, No. 5:06-CV-280 (HL), 2008 U.S Dist. LEXIS 21713, at *4 (M.D.Ga. Mar.19, 2008), as well as a mixture of injuries short of visible damages to body parts have been held to satisfy Section 1997e(e) as well, See Ziemba V. Armstrong, No. 3:02-CV-2185(DJS), 2004 U.S. Dist. LEXIS 432, at *7(D.Conn. jan. 14, 2004).

The District Court has found the "Physical", to mean of or relating to the body, and "Injury", to mean an act that damages, harms or hurts an unjust or undeserved infliction of suffering or harm, which all above occurred to Claimant by the defendants Directly, intentionally and Negligently, See Waters V. Andrews, No. 97-CV-407, 2000 U.S. Dist. LEXIS 16004 at * 25 (W.D.N.Y Oct. 16, 2000).

A Code Of Ethics for IGRC staff and prisoner representatives, Clerks and Chairperson has been established to strengthen the credibility and effectiveness of the IGP, which the n Defendants violated, See N.Y.Comp. Codes R. & Regs. tit.7, 701.6(f)(1) Department Of Corrections and Community Supervision, Directive No. 4040, Inmate Grievance Program(IGP) 701.6(f)(1)(2016), and prohibits IGRC members from preventing a prisoner from filling a Grievance, which Defendants have done, numerous times.

In 1979, Congress set out a Minimum Standards for formal inmates grievance procedures to help reduce the Large numbers of prisoner Civil Rights cases that was waiting to be heard See S.Rep. No.96-416, at 34 (1978), and 28 C.F.R 40.1-40.10(2016), but in no way was it created to be used as a "Shield" for prison officials to have legitimate Civil



Rights Cases thrown out, Due to the Misconduct of Prison officials, that was at all times known or Should have been known by their Superiors, whom Conspired with their Subordinates to help in preventing Legal actions against Prison Officials, making it a policy that was so wide spread that it became a custom, that the Governor, Commissioner and Chair Of the Department Of Corrections allowed to continue, despite the numerous Complaints, Grievances and Court Actions that put them on full notice, and Failed in their Duty to insure this Wrong Doing was put to an "End".

Claimant is Fully aware of the P.L.R.A and how vital it is to attempt to Grieve each and every issue written within this Complaint, but due to the actions of said Defendants was unable to utilized the Grievance System, and a Clear Showing of Mental and Emotional Damages have been shown with a Physical Injury done to Claimant that was not "De Minimis".

CAUSE OF ACTION #
UNDER THE
First, Fifth, Sixth
Fourteenth Amendments

First Amendment Retaliation Claim

Access to the Court- Legal Mail/Documents
Freedom Of Speech/Expression

Fifth Amendment Procedural Due Process

First and Sixth Amendment Right to Petition the Court/Access to the Court

Fourteenth Amendment Claims Due Process Clause - Procedural Due Process

Deprivation of Life, Liberty and Property

To State a First Amendment Claim for Retaliation, a Prisoner must Demonstrate, that he was engaged in Constitutionally protected activity and that Defendants took adverse actions against the Plaintiff and there was a casual connection between the protected activity and the adverse action in the alleged conduct was substantially motivated by the protected activity, See Espinal V. Goord, 558 F.3d 119, 128 (2d Cir 2009).

Although a Claim of Retaliation by prisoners are reviewed closely due to actions by prison officials may be manipulated to form a basis for retaliation, yet a complaint that alleges facts giving rise to a colorable suspicion of retaliation, will support at least Documentary Discovery and should not be Dismissed, See Andino V. Fischer, 698 F.Supp.2d 362, 382 (S.D.N.Y. 2010).

Plaintiff has stated that during Defendants entering of claimants dorm, that a list was held with the names of individuals who were targeted, and plaintiff never having a Disciplinary infraction while in Fishkill Correctional of any tier 3 infractions over a four year time frame, and is known for exercising his constitutional Right to petition the court for the wrong doing of correctional officials and grieving them when they "act outside their scope of duty", and was the main reason for the assault by the Defendants.

This interest is protected by the first amendment for "Access to the Court", and the Defendants actions were motivated or substantially caused by this exercise of that right, and Defendants actions "Viewed in Totality of Claim", can effectively be plausibly seen as chilled the exercise of plaintiffs First Amendment, See Mesa V. City Of New York, No. 09-CV-10464 (JPO), 2013 WL 31002 at *23 (S.D.N.Y. Jan. 3, 2012).

The First Amendment also protects Plaintiffs Right to "Expression of Art Work", and Defendants destruction of plaintiffs art work in by itself is a first Amendment violation, See Brock V. Correctional Emergency Response Team, No. 18-CV-3814, 2018 WL 6433907, and the Court has recognized that "Art Work, like other non-verbal forms of expression, may constitute free speech purposes, See Serra V. United States General Svcs. Admin, 847 F.2d 1045, 1048 (2d Cir. 1988), and Plaintiffs Books that was written and intended to be published that were destroyed was also a protected right under the First

Amendment.
Moreover Defendants destruction and lost of Plaintiffs legal documents which had impeded an Active Court proceeding, See People V. Rodriguez, Ralph, App. Div. Docket No. 2016-12401, Queens County. Ind. No. 771/15, is also protected by the First Amendment.

Defendants actions in destroying not only legal documents but legal mail as well is also Protected under the Sixth and First Amendment as well because Legal Mail is protected through the "Right to Petition the Government", and "Right to Access the Courts", See Proudfoot V. Williams, 803 F.Supp 1048, 1052 (E.D.Pa. 1992), and Plaintiff has a Right to use the mail, and absent that mail, See Jones V. Brown, 461 F.3d 353, 358 (3d Cir 2006).

The Due Process Clause of the Fourteenth Amendment says that the State "Cannot, Deprive Any Person of Life, Liberty or Property without", Due Process Of The Law, and there was no "Rational Connection Of Legitimate Government Interest", in Defendants actions, See Turner V, Safley, 482 U.S 78, 87, 89 S.Ct. 2254, 2261, 96 L.Ed.2d 64, 77-79 (1987), and also includes the Fifth Amendment, whereas "The Deprivation Occurred Without Enough Procedural Protection", See Sandin V. Conner, 515 U.S 472, 484, 115 S.Ct 2293, 2300, 132 L.Ed.2d 418, 430 (1995), under "Procedural Due Process", and Defendants actions were a "Deliberate Decision", to deprive Plaintiff of Liberty or Property, See Daniels V. Williams, 474 U.S 327, 330-32, 106 S.Ct 662, 664-65, 88 L.Ed.2d 662, 668 (1986).

Wherefore Defendants actions and Failure to Act, including Superiors who was aware of these Constitutional Violations, and failed to oversee, Train and intervene as well as insure of Procedural Protections, in that these acts by Defendant C.E.R.T was well known through Court Proceeding, Complaints, Grievances and Lawsuits of their Actions and Constitutional violation to Countless Prisoners including Plaintiff and to date, even after Years of successful litigations against them, "Continue to Deprive", prisoners of multiple Constitutional Rights, such as what Plaintiff has submitted within this Claim, and a "STOP to their violations Must be made", to ensure the Protection of prisoners and Plaintiffs Rights are upheld.

CAUSE OF ACTION #
UNDER THE FOURTH AMENDMENT

The Scope of the Intrusion

The Type Of Search

The Manner in Which the search was Conducted

The Justification for initiating the Search

The Place in Which the Search was Conducted

Bodily Privacy violation

Unreasonable Search

It has for over twenty five years that "The maintenance of prison security is not burdened unduly by the recognition that inmates do retain a limited right to bodily privacy", see Covino V. Patrissi, 967 F.2d 73, 78 (2d Cir 1992), there is no current Supreme Court decisions calling that holding into doubt, and reiterated today that inmates retain a limited right to bodily privacy under the Fourth Amendment.

The Court in analyzing a violation of the Fourth Amendment Right, Courts assessing an inmates claim that officers infringed plaintiffs right to bodily privacy, must undertake a two-part inquiry, First the Court must determine whether the inmate has "exhibited an actual, subjective expectation of bodily privacy, and plaintiff had satisfied this inquiry when the C.E.R.T team that invaded the prison did so without justification or just cause, and should have never even been in this facility, and when plaintiff was assaulted and had my clothes ripped off my body and left naked on the floor with my boxers barley still on, and then searched by the officers without any Legitimate penological purpose for the strip search of plaintiff this inquiry had been satisfied.

The Second part of the inquiry is "Whether the prison officials has sufficient justification to intrude on plaintiffs Fourth Amendment Rights", and this requirement is also satisfied because in no way was plaintiff in suspicion, or in a situation that required being assaulted and plaintiffs clothes being ripped off, and the C.E.R.T team that entered the facility had no just cause or probable reason to their actions, and proof of this is satisfied because the Dep Of Security Urbanski, was forced to resign and/or retire because of the incident that occurred within plaintiffs claim.

In the instant case the Court must also consider 1) The Scope of the particular intrusion, 2) The manner in which it was conducted, 3) The justification for initiating it and 4) the place in which it is conducted, See Harris V. Miller, 818 F.3d 49 (2016).

In Regards to the scope of the intrusion, plaintiff was left naked on the floor, in the middle of the dorm while being assaulted, and after thrown on the wall with my genital area out until an officer lifted up my boxers, but prior to female O.S.I personnel Defendants were in the dorm, seeing everything.

The type of search, involved plaintiffs clothes being stripped off and was naked on the ground as officers physically assaulted plaintiff without just cause, and a strip search that involves strangers peering without consent at a naked individual, and in particular at the most private portions of that persons body is a serious invasion of privacy, See Florence V, Bd. Of Chosen Freeholders, 566 U.S--, 132, S.Ct. 1510, 1526, 182 L.Ed.2d 566 (2012).

The manner in which the search was conducted was severely unprofessional, see Cf. Grummett V. Rushen, 779 F.2d 491, 496 (9th Cir 1985), and Way V. Cty. Of Ventura, 445 F.3d 1157, 1160 (9th Cir 2006), and the Courts ruled that a search "Must Be Done In A Reasonable Way", See Bell V. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

The justification for initiating the search, the Courts state that officers must provide a justification that is supported by "Record Evidence", See CF. Florence, 132 S.Ct at 1518, and plaintiff had no contraband, was under any suspicion, and other than the actions of C.E.R.T and the procedures in place that authorized them to enter the jail without just cause was the result of defendants violation of plaintiffs constitutional rights, wherefore due to the facts stated in the claim, the Fourth Amendment claim should be allowed to continue.

CAUSE OF ACTION #

Eighth Amendment Of The United States Constitution For,

Deliberate Indifference To A Serious Medical Need

Cruel and Unusual Punishment

Excessive Force

Failure to Protect From Prison Officials

Claimant has raised multiple violations under the Eighth Amendment of the Constitution that include, Deliberate Indifference to Serious Medical Need, Excessive Force By Prison Officials, and Failure to Protect From Prison Officials.

The Eighth Amendment prohibits the infliction of "Cruel and Unusual Punishment", U.S Const. Amend.VIII, and courts have construed the Eighth Amendment to protect prisoners rights to adequate medical care, see Estelle V. Gamble, 429 U.S. 97, 106 (1976), and to be free from the excessive physical force by prison officials, see Whitley V. Albers, 475 U.S. 312, 320-21 (1986), and to be protected from violence by others, see Farmer V. Brennan, 511 U.S. 825, 833 (1994).

To state a claim for violations of any or all of these Eighth Amendment Rights claim, plaintiff must "plausibly allege an objective Component", that deprivation of rights was objectively serious, and a "Subjective Component", that the prison official acted with requisite "Mens Rea", see Salahuddin V. Goord, 467 F.3d 263, 279-80 (2d Cir.2006) and Wright V. Goord, 554 F.3d 255, 268 (2d Cir. 2009) and Hayes V. N.Y.C. Dep't Of Corr., 84 F.3d 614, 620 (2d Cir 1996).

Claimant had stated that each Official and Government official defendants through the officials own individual actions, has violated the Constitution, see Tangreti V. Bachmann, 983 F.3d 609, 616 (2d Cir. 2020).

Defendants delay of over 10 hours to provide medical care that was serious to a disabled prisoner with severe injuries was deliberate indifference to a medical need, and when claimant did get medical attention, nothing more that an ace band and aspirin was given, and a reasonable medical care provider would have gotten immediate medical emergency care from an outside hospital knowing that claimant being severely injured and disabled with severe medical needs and an Head injury could have caused death, degeneration and the unwanton infliction of pain, if the medical needs were not properly met, and it was Deliberate indifference to not admit claimant to the I.C.U or do anything more than the care provided.

Defendants actions were subjective recklessness, see Salahuddin V. Goord, and issues is

not of the medical care claimant wanted but the medical needs of injuries that were severe, and claimant being denied access to a service of medical care was also a violation to the Americans With Disability Act Title II, and Rehabilitations Act Section 504.

Claimant had prior to incarceration which defendants at all times aware of multiple surgery which included loss of half claimants intestine, half his right arm muscle removed and severe nerve damages, including severe Back pain with diagnosed degenerative conditions, that was not at all considered when defendants seen claimant, all done so with malice for claimants constant writing up of defendants and there inadequate medical care.

Defendants officer Bhuiyan A, Mohammad was the housing unit officer at the time of the incident on 12-30-21 and did nothing to intervene or defuse the situation as well as the sergeant Sarah Morris neglecting there duties and obligations.

Sergeant Block ordering of the C.E.R.T defendants to maliciously attack claimant for "NO REASON AT ALL", with the intention to cause harm was Deliberate and Intentional.

Defendants delayed medical care of over five days to give claimant a crutch to assist with walking, and over or about four months to get physical therapy, and over about two weeks for an X-Ray and Moths before an M.R.I, and Eight months to receive a "Tens Unit", was "Deliberate Indifference" to claimants serious medical need.

Failure to protect claimant by the housing unit officer or Sergeant that was present was also "Deliberate Indifference" to plaintiffs Health and Safety, and Sergeants Block ordering of the Assault on Claimant was done so with intent, and violated claimants right from Cruel and Unusual punishment, as well as to be free from assault by prison officials, without "Any Just Cause".

The excessive force on claimant was severely excessive "in light Of" contemporary standards of decency, See Hudson V. McMillian, 503 U.S. 1, 8 (1992), and when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated, regardless of whether or not significant injury is evident, see Hudson V, McMillian, 503 U.S at 9.

Defendants acted with "Wantonness in light of the particular circumstances surrounding

the challenged conduct" and in no way was it taken "in a Good-faith effort to maintain or restore discipline, to serve a legitimate penological objective", and is why claimant had no disciplinary infraction, because there actions were not justified and was done so to maliciously and sadistically to cause harm to claimant, see Matthews V. N.Y.D. dep't of Corr. & Cmty. Supervision, 2020 WL 1030647, at *6 (N.D.N.Y Mar.3, 2020).

Claimant not receiving any Pain medication consistent with the severity of injuries, as well as receiving no medication for Migraines, medication for Nerve damages, ten's Unit, Icy Hot cream, or any other medication that a reasonable doctor would have given caused all of the symptoms previously stated, and because claimant is not a doctor, can not specify what medications should have been given, but was done so with "Deliberate indifference to a serious medical need, including all the reasons stated within the claim, was a Direct violation to claimants Constitutional Right Under the Eight Amendment.
See Also N.Y.CORRECT.LAW 137(5) McKinney(2014), stating "NO INMATE SHALL BE SUBJECTED TO DEGRADING TREATMENT, AND NO OFFICER OR OTHER EMPLOYEE, SHALL INFLICT ANY BLOWS, UPON ANY INMATE UNLESS IN SELF-DEFENSE OR TO SUPPRESS A REVOLT OR INSURRECTION", which defendants violated and in no way had any reasonable justification for their actions.

Officials knew of a big risk to plaintiffs safety and failed in its duty to protect, See Lewis V. Richards, 107 F.3d 549, 553-54 (7th Cir 1997).

Delay in treatment also caused serious consequences that contributed to the exacerbation of plaintiffs Health and Diagnosed Medical Condition and Disability, See Tyler V. Smith, 458, F.appx 597, 598 (9th Cir 2011).

Defendants Sullivan, Mukkatt and Gifty being the Nurses who seen plaintiff after the injury and incident occurred failed to properly investigate enough to make an informed judgement, See Tillery V. Owens, 719 F.supp 1256, 1308 (W. D. Pa 1989), and in Response to Plaintiffs Complaints of Medical problems they failed to properly treat, See Gonzalez V. Feinerman, 663 F.3d 311, 314 (7th Cir 2011), and in not ordering Diagnostic test when Plaintiff had Severe injuries, See Perez V. Anderson, 350 F. App'x 959, 961-62 (5th Cir 2009).

Nor did the Medical staff send Plaintiffs to the Hospital and/or to see a Speacialist knowing full well that due to Plaintiffs Medical Health and Disability would cause severe pain and injuries such as the wanton infliction of suffering, See Greeno V. Daley, 414 F.3d 645, 655 (7th Cir 2005), ignoring "Obvious Conditions", and making medical decisions based on "Non Medical Factors", such as "Lack of Staff", See Casey V. Lewis, 834 F.supp 1477, 1547-48 (D.Ariz 1993), and because of Plaintiffs Complaints and Grievances had intentionally avoided sending Plaintiff to the Hospital, take pictures of the injuries, and give adequate treatment, as a form of "Punishment", doing so with a Culpable State of mind, See Hartsfield V. Colburn, 371 F.3d 454, 457 (8th Cir 2004).

Also due to the prisons Health Care Systemic Deficiencies all amounted to Deliberate indifference to Plaintiffs Serious Medical Needs and/or Condition, See Harris V. Thigpen, 941, F.2d 1495, 1505 (11th Cir 1991), and the issue such as Shortage of Staff also had Contributed to the Course of treatment the medical care providers had provided, and Chose was "Medically Unacceptable" in light of the Circumstances, and they "Chose" this course in Conscious disregard of an excessive risk to Plaintiffs health, safety, disability, and condition, See Rosado V. Alameida, 349 F.supp 2d 1340, 1344-45 (S.D.cal 2004).

Wherefore for all the reasons stated within Plaintiffs Complaint and Cause of Action, had provided enough information to satisfy both the "Subjective" and "Objective", prongs to state a violation to Plaintiffs Civil Rights being violated under the Eighth Amendment Of the Constitution.

The Second Circuit Defined a serious medical need as a "Condition of urgency, one that may produce death, degeneration, or extreme pain and Defendants actions and Medical Deliberate indifference to plaintiff medical needs and delayed response satisfied these requirements.

CAUSE OF ACTION # UNDER THE
NINTH AMENDMENT

Under the Ninth Amendment For the Violations of Rights Guaranteed by the United States Constitution and/or Federal Law.

The Ninth Amendment to the United States Constitution provides that "The Enumeration in the Constitution, of Certain Rights, Shall Not be Construed to, deny, or Disparage others retained by the people".

The Court has held that the Ninth Amendment "is not an independent source of the Constitutional Rights that may be asserted in a civil Rights action, and cannot serve as the basis for a 1983 Claim", because such a Claim must be the basis on the violation of a Right Guaranteed by the U.S. Constitution and/or "Federal Law", See Newman V. Annucci, No. 3:17-CV-0918 (LEK/DEP), 2018 WL 4554494, at *8 (N.D.N.Y. Sept. 12, 2018).

Based on the Courts ruling it states that the Ninth Amendment can not serve as the Basis for a 1983, but can be the basis for claims under well established Federal Laws, such as the Americans With Disabilities Act Title II, and the Religious Land Use and Institutionalized Persons Act, for the Defendants Violation of Claimants Federal Rights Under these two Federal Laws, and based on the information within the Claim, makes a plausible showing that these rights were violated, and the Ninth Amendment can be applied and ensure that the enumeration in the Constitution of "Certain Rights", can not be Construed to, deny or disparage others retained by the people, and due to the fact that claimant is an individual whom is incarcerated, does not strip any American of being considered "The People", and although there is no current case law that can be used as an example, it must start somewhere, and based on the facts of claimants Claim, and the multiple violations of Different Constitutional and Federal Law violations, should be considered.

The Court had stated that the Ninth Amendment does not create Substantive Rights beyond those conferred by Governing Law, See Martinez-Rivera V. Sanchez Ramos, 498 F.3d. 3, 9 (1st Cir 2007), wherefore if an accumulation of Rights being violated that consist of State and Federal Law, as well as State and Federal Constitutional laws, then the Ninth Amendment should be considered as a "Cumulative Factor", to be applied, with a respect to a given set of Circumstances to ensure these Rights are never Disparage and enforced.

To determine the number (enumerate) in a particular way or with respect to a given set of Circumstances (Construed), and Rights have been Degraded (Disparage) Ninth Amend, Applies.

CAUSE OF ACTION #
UNDER THE FOURTEENTH AMENDMENT

EQUAL PROTECTION CLAIM

The Equal Protection Clause, requires the State to treat all similarly situated people equally, See City Of Cleburne V. Cleburne Living Ctr, 473 U.S 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

To prevail on an Equal Protection Claim brought under Section 1983 Plaintiff must allege plausibly showing that the Defendants acted with an intent or purpose to discriminate against them based upon membership in a protected class, See Thornton V. City Of St. Helens, 425 F.3d 1158, 1166 (9th Cir.2005)( Quoting Lee V. City Of Los Angeles, 250 F.3d 668, 686 (9th Cir 2001).

More specifically, the Equal Protection Clause "Bars the Government from selective adverse treatment of individuals compared with other similarly situated individuals if such treatment was based on Impermissible Considerations such as Race, Religion, Intent to Inhibit or Punish the Exercise of Constitution Rights, or Malicious or Bad Faith Intent to Injury a Person, See Bizzarro V. Miranda, 394, F.3d 82, 86 (2d Cir. 2005)

Thus Plaintiff had provided enough facts within the Claim showing that Plaintiff was treated Differently than others similarly situated as a result of intentional purposeful discrimination, See Gilliam V. Baez, 15-CV-6631 (KMK), 2017 WL 476733, at *7 (S.D.N.Y. Feb. 2, 2017).

The Equal Protection Clause of the Fourteenth Amendment was established to ensure that such treatments as Defendants actions and Failure to act rose to the level of a Constitutional violation, and prisoners similarly situated as Plaintiff was indeed treated Differently, See Allen V. Cuomo, 100 F.3d 253, 260 (2d Cir 1996).

Plaintiff had pleaded facts that would plausibly suggest that the Correctional Officials had targeted Plaintiff due to his Race and failed to provide the proper medical care due to Plaintiffs exercise of Constitutional Protected Rights, and their actions was nothing short of malice and Deliberate Indifference.

Wherefore Plaintiffs Claim in totality would provide the Court with a Plausible basis of a violation to the Equal Protection Clause.

CAUSE OF ACTION . Under the First Amendment and
RELIGIOUS LAND USE AND
INSTITUTIONALIZED PERSONS ACT of 2000
(RLUIPA 42 U.S.C 2000cc-cc5(2012)

Prohibition from Burdening a Persons Freedom To Exercise Religion

Commerce Clause Jurisdiction

First Amendment Freedom Of Religion

Claimant is a Protestant, and this religion is held sincerely and Defendants actions had caused claimant a "Substantial Burden", in the free exercise of this strongly held belief.

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C 2000 cc-cc5(2021), Protects institutionalized persons who are unable freely to attend to their Religious needs, and are therefore dependent on the State and/or Governments "Permission" and "Accommodation" for exercise of their religion, See Lutter V. Wilkinson, 544 U.S. 709, 721, 125 S.Ct 2113, 161 L.Ed 2d 1020(2008).

Specifically RLUIPA prohibits the State or Government from burdening a prisoners freedom to exercise claimants religion unless it can demonstrate that the burden "is in the Furtherance of a compelling State or Government interest", and "Is the least restrictive means of furthering that compelling State or Government interest", See 42 U.S.C 2000cc-1a

A plaintiff alleging a RLUIPA violation must first show that the challenged conduct Substantially Burden claimants sincerely held religious beliefs, See Singh V. Goord, 520 F.Supp. 2d 487, 498 (S.D.N.Y 2007).

Within Claim Defendants Destruction of claimants Jesus Shrine, religious offerings, religious books, Paintings, and Religious notes, placed a Severe Burden on Claimants ability to exercise the religion, and fear to attempt to re-create claimants Shrine and paintings due to retaliation and further damages to the remaining religious Books and items was a Direct result of Defendants, Malicious Actions.

Once Claimant has demonstrated the "Existence Of A Substantial Burden", on the exercise of a religion, the Burden then Shifts to the Defendants to establish that the Challenged Actions or Policy furthers a Compelling State interest in the "Least Restrictive Manner" See 42 U.S.C 2000bb-1(b) and See Muhammad V. City Of New York Dep't Of Corrections, 904 F.Supp. 161, 188-89 (S.D.N.Y. 1995).

The RLUIPA places a "Much Higher", Burden on defendants than the analysis under the First Amendment Of the Constitution, which requires only that a "Burden", be "Reasonably Related To Legitimate Penological Interests," See PUGH V. Goord, 571 Supp. 2d 477, 503-04 (S.D.N.Y) Defendants had no such Penological Interests, and violated Claimants Rights under RLUIPA.

Defendants Actions placed a Burden on other inmates as well, during the Defendant action

Cause Of Action Under The
Americans With Disability Act
Title II, and The Rehabilitation
Act Section 504

Claimant is an individual with a Disability

Claimant is Qualified to Participate in/or Receive the Benefits Of the Service, Program or Activity within the Prison that Discriminated against Claimant

Claimant was Excluded From Participation in/or Denied the Benefits of the Service, Program, or Activity, and/or was Discriminated against.

This Exclusion, Denial of benefits, or Discrimination was Because Of Claimants Disability.

Claimant incorporates by reference in the allegations set fourth in paragraphs 1 - above as though fully set forth herein that:

At the time Claimant was taken into Custody of Defendants, Claimants Physical Condition was such that Claimant suffered from a physical impairment that Substantially Limited Claimants Life Activities, including but not limited to Caring for oneself, eating, sleeping, walking, lifting, communicating, writing, typing, and working.

These physical impairments constitute Disabilities Under The Americans With Disabilities Act Title II, and The Rehabilitation Act Section 504.

Defendants were provided notice of claimants medical condition on or about, January. 10, 2015, and thereafter through Medical Records in the Possession, Custody, or Control of Defendants or its agents.

Defendants Failed to provide for procedures by which D.O.C.C.S officials might evaluate Claimants request for Reasonable Accommodations and improperly Denied Accommodation request without adhering to the requirements of 42 U.S.C 12102 and Section 504, both Directly, indirectly and negligently, also with failure to properly train and oversee defendants, causing both directly and indirectly the wrong stated within Claim.

Defendants also Failed to provide Claimant with these Reasonable Accommodations Despite having knowledge of Claimants Disability Directly and indirectly, with documentation that at all times within the possession of Defendants and Medical care providers.

As a result of defendants Failure both Directly and indirectly allowed for the denial of Reasonable accommodations for Claimants Disabilities, Claimant Suffered Harm.

Exclusion was also made due to Claimants Disability, and all attempts to resolve these issues were ignored or negligently allowed to continue due to Defendants Failure to properly train, and oversee the action and/or inactions of there subordinates and prison officials, and this Honorable Court has jurisdiction over all claims made herein. complain

The Prison receives Federal Financial assistance to the program, services and activities that claimant was denied also, Claimant was Qualified to receive these benefits.

Claimant was denied College Classes See Love V. Westville Corr. Ctr, 103 F.3d 558, 558-59



(7th Cir 1996), and Claimant was also denied and Discriminated against access to Medical Care, See Roop V. Squadrito, 70 F. Supp. 2d 49 (D. Me 1999), and Law Library See Love V. Westville Corr. Ctr. 103 F.3d 558, 558-59 (7th Cir 1996).

Claimant Suffers from the following body systems, Neurological, Digestive, Arm impairment and Mental and emotional impairment, including Opiate dependency, Bipolar Disorder, Depression, Anxiety, all of which is documented and know or should have been known by Defendants and Superiors.

Wherefore Claimants Protected Rights under the A.D.A Title II and Section 504 of the rehabilitation act was violated by defendants.

CAUSE OF ACTION #
UNDER (SUPERVISOR LIABILITY)

The Supervisors After Learning Of A Violation To Plaintiffs Rights, Failed To Remedy A
Wrong

The Supervisors Created a Custom Or Policy, Under Which Plaintiffs Constitutional Rights
Were Violated And/Or Allowed Such Custom Or Policy To Continue

The Supervisors Were Grossly Negligent In That They Did Not Adequately Supervise The
Subordinates Who Violated Plaintiffs Rights

A Supervisory Official who caused or participated in a violation of Plaintiffs Constitutional Rights, may be held liable under Supervisory Liability, and can only be charged with Responsibility for lower officials acts if they were personally involved in them.

A Supervisor is considered to be "Personally Involved" in the Constitutional violation if,

(1) The Supervisor, after learning of a violation of plaintiffs rights, failed to remedy the wrong, OR

(2) The Supervisor Created a Policy or Custom under which which, claimant Constitutional rights were violated, or allowed such a policy or custom to continue, OR

(3) The Supervisor was "Grossly Negligent", in that they did not Adequately Supervise the subordinate who violated claimants Rights, See Williams V. Smith, 781 f.2d 319, 323-24 (2d Cir 1986).

To show that the Supervisor was liable under any of the above situations, plaintiff must show that the Supervisor acted with "Deliberate Indifference", See Green V. Branson, 108 F.3d 1296, 1302 (10th Cir 1997), and See Poe V. Leonard, 282, F.3d 123, 140 (2d Cir 2002)

The Second Circuit has applied a lower standard in cases involving a Supervisors Deficient Management of staff or failure to respond to Constitutional violations, holding that the Supervisor "Need Only Have Been Grossly Negligent", See Wright V. Smith, 21 F.3d 496, 510 (2d Cir 1994).

The Supervisors "Failed to Act to Remedy a Wrong", and "Exhibited Deliberate Indifference", to Plaintiffs Rights by failing to act on information indicating that unconstitutional acts were occurring See Colon V. Coughlin, 58 F.3d 865, 873 (2d Cir 1995

The Supervisors also showed "Deficient Management Of Subordinates", when Defendants knew of past misconducts and failed to take action, See Estate of Davis by Ostenfeld V. Delo, 115 F.3d 1388, 1396 (8th Cir 1997), failed to prevent the violations, See Bryant V. McGinnis, 463 F.Supp 373, 387 (W.D.N.Y 1978), failed to train staff to avoid such

violations, See Gilbert V. Selsky, 867 F.Supp 159, 166 (S.D.N.Y 1994), and failed to properly supervise Staff to ensure they follow policies, See Taylor V. Mich. Dept. Of Corr, 69 F.3d 76, 80-81 (6th Cir 1995).

Municipal or Local Government Liability, can also be found liable both "Direct" and "Indirect", by showing, "DIRECTLY"

(1) A Policy or Custom of the Municipality caused plaintiffs Rights to be violated, See Oklahoma City V. Tuttle, 471 U.S 808, 823, 105 S.Ct 2427, 2436, 85 L.Ed.2d 791, 804(1985) and,

(2) The Policy was Created by Someone who is a Final Policy maker for the Municipality, See Pembaur V. Cincinnati, 475 U.S 469, 481-83, 106 S.Ct 1292, 1299-1300, 89 L.Ed.2d 452, 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. And "Indirectly" in two ways,

(1) Failure to Train, Supervise, or Discipline, See City Of Canton V. Harris, 489 U.S. 378, 388, 109 S.Ct 1197, 1204, 103 L.Ed.2d 412, 426 (1989), and

(2) Inadequate Screening, See Bd. Of The County. Comm'rs V. Brown, 520 U.S 397, 411, 117 S.Ct 1382, 1392, 137 L.Ed.2d 626, 644 (1997).

Plaintiffs Claim viewed in "Totality", can make a plausible showing that Supervisors acted with "Deliberate Indifference", to plaintiffs Constitutional Rights being violated, and Municipal and or Local Government was liable for their failure to ensure that such violations to plaintiffs rights would not have occurred and had actual knowledge that Defendants actions were foreseeable and has been an ongoing practice and custom, and failure to ensure that such policies were in place to prevent these violations that has been long occurring was in place, and/or if such policy exist that failure to ensure such policies were followed was their failure to perform their duties, cause such violations to plaintiffs rights, wherefore "Supervisor Liability", and "Municipal and or Local Government", should be held liable.

CAUSE OF ACTION #

**MUNICIPAL LIABILITY**

Claim for the "Existence of an official Policy and/or Custom, that caused injury and a "Direct Causal Connection" between the Policy or Custom and the Deprivation of Plaintiffs Constitutional Rights

In order to sustain a Claim for relief pursuant to Section 1983 against a Municipal Defendant, Plaintiff must show the "Existence of an Official Policy or Custom that Caused injury and a Direct Causal Connection Between that Policy or Custom, and the Deprivation of a Constitutional Right".

A Plaintiff may satisfy the "Policy or Custom" requirement by alleging one of the Following:

(1) a formal policy endorsed by the municipality, (2) actions taken by Government officials responsible for establishing the municipal policies that caused the particular deprivation in question, (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a Supervising policy-maker must have been aware, or, (4) a Failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to "Deliberate Indifference", to the rights of those who come into contact with the municipal employees, Brandon V. City Of N.Y, 705 F.Supp.2d 261, 276-77 (S.D.N.Y. 2010).

In addition a plaintiff must establish a causal link between the municipality's policy, custom or practice and the alleged constitutional injury, See Roe V. City Of Waterbury, 542 F.3d 31, 37 (2d Cir 2008).

Plaintiff has shown that through its "Deliberate Conduct", the Municipality was the moving force behind the alleged injury, Due to the "Widespread Practice so consistent that although not expressly authorized, constitutes a custom or usage of which a Supervising Policy-Maker must have been aware of", and through the "Multiple Suits filed against C.E.R.T and Officials regarding there violent acts and conduct, and through the "Deliberate Indifference", of the Municipality has failed to Supervise C.E.R.T official or train them properly, most of whom are "Regular Correctional Officers from Correctional Facilities not trained to properly conduct the actions authorized by Trained C.E.R.T officials, See Tieman V. City of Newburgh, No. 13-Cv-4178, 2015 WL 1379652 at *12 (S.D.N.Y. Mar.26,2015).

The "Causal Connection - an Affirmative Link" between the Municipal policy and the

Deprivation of plaintiffs Constitutional Rights, is not a mere instance of a single act by a mere employee of the municipal, but multiple claims against C.E.R.T and the policy and customs both unwritten and written, allowed for Defendants to enter into "ANY PRISON WTIH FULL AUTHORITY UNCHECK", and the customs of long known practices of violently assaulting inmates that pose no threats just be simply "SCREAMING OUT STOP RESISTING", as authority to inflict harm against prisoners unprovoked has long been an ongoing practice, and has been so widespread that "Each and every single event that consisted of C.E.R.T entering a prison facility, claims of excessive force and assault and battery soon after gets filed, making a clear showing that the policy that defendants are authorized to work under is the direct cause of plaintiffs injuries, and was the failure of the policy makers themselves for failing to correct this long standing custom, that can be attributed to the policymakers, See Brogdon V. City Of New Rochelle, 200 F.Supp.2d 411, 427 (S.D.N.Y. 2002).

This "Custom" need not receive formal approval by the appropriate decision makers, and may "Fairly Subject the Municipality to Liability on the theory that relevant practice is so widespread as to have the FORCE OF LAW", See Kucharczyk V. Westchester Cty, 95 F.Supp.3d 529, 539 (S.D.N.Y. 2015), See also Tieman 2015 WL 1379652 at *16, to prevail on this theory of municipal liability, custom at issue is permanent and well-settled, that almost every prisoner within D.O.C.C.S is aware of the Damage defendants are capable of and will conduct.

Plaintiffs reference to multiple cases involving defendants and the particular case before the Court is "Facts", to support an inference of County Policy, practice, and custom, that violates the Constitution under the Eighth Amendment, Fourteenth Amendment, and State Law written within Claim, and was aware that this Unconstitutional acts were occurring when even Correctional Officials was reporting the Widespread assault and abuse to the "Media", whom of which was "In Front Of Fishkill Correctional Facility", with cameras and reporting was made online, and the County and Policy makers was on notice when prisoners was sent to the Emergency Room within the County Hospital and informed

authorities of the Uncostitutional Acts that went uncheck, and allowed to continue violating plaintiffs Constitutional Rights and was the Direct Cause of all the Damages done to Plaintiff both physically and mentally.

For all the reasons said within Plaintiff Claim and Cause Of Action the Defendants should be found liable under Municipal Liability and the Claims move forward, taking into acount that Plaintiff is Pro-Se and do not have Access to vital Documents and or Evidence and is not fully familiar with the law.

# EXHIBIT

# A

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

The White House of the United States
Biden Administration
Attention: Joe Biden
1600 Pennsylvania Ave, NW
Washington, DC 20500

9590 9402 6221 0265 5463 51

2. Article Number *(Transfer from service label)*

7015 0640 0003 4581 0169

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature

X ☐ Agent ☐ Addressee

B. Received by *(Printed Name)* RECEIVED

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

JAN 8 REC'D

MSOD MAIL OPERATION

3. Service Type

- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

USPS TRACKING #

9590 9402 6221 0265 5463 51

9-1

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Ralph Rodriguez din# 17A0928
Fishkill Correctional facility
P.O Box 1245
Beacon, NY 12508

Ralph Rodriguez
Din#: 17A0928
Fishkill Correctional Facililty
P.O. Box 1245
Beacon, New York 12508

NEW YORK STATE )
)
COUNTY OF DUTCHESS)

VOLUNTARY AFFIDAVIT

On or about December 24, 2021, there was allegations that an inmate had attempted to escape walking up to the front gate but was quickly apprehended.

The facility was closed down that day and reopened the next day being Saturday and Sunday, and on Monday December 27, 2021, the facility was locked down and C.E.R.T was called in. At no time was there just cause for their deployment.

When C.E.R.T had arrived at Fishkill they went from housing unit to housing unit severely assaulting inmates, destroying property and violating inmates constitutional protected rights. I myself was severely beaten and was a victim of their unjust and unprovoked actions.

I was then stripped down to my boxers and taken to the rec. area located on 7-1 and kept in front of the open windows in freezing temperature for hours along with my housing unit.

Sworn to by me

Ralph Rodriguez, 17A0928

SWORN TO BEFORE ME
THIS 31st DAY OF August, 2022

NOTARY PUBLIC

JESSICA STARSIAK
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Orange County
01ST63[illegible]68
MY COMMISSION EXPIRES 09/30/2023

subject: Mass Assault on the inmate population at Fishkill Correctional Facility by C.E.R.T (Correctional Emergency Response Team)

Dated January 4, 2022

Ralph Rodriguez Din# 17A0928

My name is Ralph Rodriguez din# 17A0928, and I am an inmate at Fishkill Correctional Facility. I was arrested on 1-10-15, under indictment number 771/15, pleading not guilty, under false identification due to a severely suggestive show-up, that was conducted minutes after the crime of Robbery. I was held handcuffed, surrounded by multiple officers, with stolen property left directly in front of me. The victim was in a squad car, opposite end of a two way street, and stated on trial that "the cops told me to identify (mr Rodriguez) during the show-up", see trial minutes II. 90-91 dated September 26-30, IND#. 771/15, queens County. The arresting officer made an "arrest report", under penalty of perjury, and when he testified in trial, his testimony was completely fabricated from his arrest report. This was done purposely to take away my presumption of innocence, and make me look guilty of a crime I did not commit. During trial, on the record, both the victim and arresting officer was found to make numerous inconsistent testimony, by the trial judge Honorable Leslie G. Leach. I was denied an Expert Witness on "Weapon Focus", even though the victim admitted in trial "I was scared and in shock", see trial minutes II.61. I am fully disable, and can't fully use my right hand. The robber on video

clearly used both his hands during the robbery. I didn't have on the same clothes as the robber, nor was i the same height, me being 5,5 and he being almost six feet tall. Five bags full of stolen property was taken from the store Game Stop. When the officers seen me picking up some games from the floor that was dropped by the robber, i was tackled to the ground and accused of the robbery, even though I didn t have the 5 bags of items. During trial at deliberation i was winning 7-5 the first day, yet due to prosecutorial misconduct i was found guilty. The D.A ms Reid violated the courts Sandavol Ruling, giving the jury information that was prohibited, and no judge instructions where made to correct the violation. Multiple violations where made in an effort to find me guilty, even though the D.A knew both the witness and arresting officer was lying on the stand. I was even forced to pick out my jurors the first day wearing prison clothes. My case was littered with procedural and legal violations, yet i was still found guilty. I was given twelve years for a Robbery in the second degree, non violent with five years post. It has been well over seven years and still my direct appeal has not been done by the Legal Aid Society, to prove my innocence. I have been wrongful convicted of a crime I did not commit. I am a 43 year old man and prior to the incident that made me fully disabled, I use to work at Coney Island Hospital as an Environmental Service Aid. I have never been accused of or found guilty of the crime of robbery. The legal system has failed me, as well as countless others. The purpose of me including this in my sworn affidavit is to show, how severely the legal system

as well as D.O.C is in need of prison reform and change. Sadly to say, my horrors didn't end at the courts. During my time at Rikers Island I was subjected to numerous Federal Civil Rights Violations, as well as Americans With Disabilities Act Title II violations, see Rodriguez V City Of New York 15-CV-07945 (ALC) 2018 WL 1276826, Southern District. After I was sentenced I was put on the Draft, being sent up north. I was placed in Five Points Correctional Facility, which is a max. My horrors continued once again, and both my Federal Civil Rights and Americans With Disabilities Act Title II was violated, see Rodriguez V Thoms, et al. 20-CV-751, Western District. I stayed in Five Points for a few years before I was drafted once again to Fishkill Correctional Facility. Fishkill Correctional is a Medium level prison with well over 1200 inmates. The facility is a mental health prison as well as a medical facility. Once again My Federal and Disabilities civil rights was violated, and still to this day is being violated. Which brings us to the events that occurred on 12-24-21. On that date, Christmas Eve, an inmate named Christopher Gaudiello din# 15A1608, attempted to walk out the facility through the front gate but was quickly apprehended. Oddly enough this has happen in the past, due to inmates mental instability, being a level one mental heath prison. The prison was put on lockdown for that day only, and the lockdown was quickly removed the next day, due to there being no ongoing security or safety threat, within the facility. We remained off of lockdown the entire weekend, but as soon as Monday came December 27, without just cause the facility was put back on

lockdown, and C.E.R.T (Correctional Emergency Response Team), was deployed upon our facility. C.E.R.T is a well known team comprised of some of the toughest officers within the department of corrections, from numerous facilities. C.E.R.T is rarely deployed, because they are used only in emergencies, and anything but an emergency was occurring at Fishkill. This team of officers are well known within D.O.C due to the damage and multiple claims that came from the Clinton Correctional facility, after those two inmates had escaped. Unlike Clinton which is a max, the inmate at Fishkill never made it past facility grounds. O.S.I (Office Of Special Investigations), which is a branch of D.O.C that is "suppose to assist", inmates if possible with multiple claims from Officers assault on an inmate, to the misconduct of civilian staff. This same department of personnel, was with C.E.R.T, and stood idly by, watching as they deliberately, sadistically, maliciously, brutally, attacked, assaulted and injured a vast majority of Fishkills inmate population, including myself. There actions was made in bad faith, and there sole purpose was to make the inmate population pay for the mishaps of one man, Gaudiello. Who are we "inmates", suppose to turn to for help, and assistance when the same people whom are suppose to insure our safety and acts of violence from occurring, when they where the same people that stood idly by watching as we got brutally assaulted. Multiple inmates where sent to the medical I.C.U, and out side hospital with severe injuries. C.E.R.T came, and from building to building, dorm to dorm. worked there way throughout the facility. Destroying and assaulting whom they felt deem to, with no,

repercussions of any kind. When C.E.R.T got to my housing unit 9-1, on 12-30-21, they had a deliberate indifference agenda planned out for our housing unit, because Christopher Gaudiello was from my dorm. There actions had absolutely no legitimate penological justification. They came in at or around 6:45 am, screaming and shouting, lead by sergeant Block from Greenhaven facility. Sergeant Block is a well known sergeant, whom has a record of excessive use of force, and complaints. The team that entered my unit where officers from the Greenhaven and Sing Sing Facility. Almost all where well over six feet tall, dressed in all black full riot gear. They came ready to execute there agenda, which was to physically assault us, with no probable cause. The officers number that i have been able to acquire, that entered my housing unit was numbers 18-42, 13-38, 13-24, 13-59, 13-30, 18-14, 13-74. These are only a few of about over fifty officers, that entered my unit. By the time i stood up off my bed, i had an officer take me by my neck, while another grabbed my back, lifting me up off the ground and slamming me head first into the concrete, in boxers only. Suddenly I had about five officers jump me at the same time, hitting me in full force with close fist, for an extended period of time. They severely injured my Head, Neck, Ribs, Arm, Wrist, knee and ankle. As they beat me one of the officers grabbed me by my left ankle twisting it to the point of nearly breaking. While another officer grabbed me by my arm and wrist twisting it in the same manner behind my back, causing me severe pain and suffering. They continued to beat me, and that was when i screamed out "Im disable, Im disabled". After a few

more seconds of assault, one of the officers lifted me up off the
floor, and slammed me face first into the wall, and handcuffed
me.  Another  officer  went  into  my  cube  and  checked  my
identification and medical status. Seeing i am fully disabled he
ordered the officer to take off those handcuffs", which he did. I was
brutally  assaulted  in  2008,  being  stabbed  multiple  times,
severely injuring and making me fully disabled. I have severe
nerve and tendon damage to my right wrist, and my right arms
bicep was partially removed. I lost one third of my intestin, and
a piece of my liver. I had my jaw shattered, and my back was
severely injured as well. All these injuries are documented, and
within the D.O.C records, as well as documentation within the C.O
bubble. After the officer uncuffed me, he slammed me against the
wall, again telling me "just shut the fuck up", which i did in
severe pain and traumatized. While these things where happening
to me, six other inmates was being severely assaulted as well.
Those inmates names where, Bailey din# 06A0218, Roberts din#
07A5834, Guzman din# 18B1705, Wilder din# 11A4027, Boyd din#
18A3735, and Maginn din# 20A1584. All these inmates where taken
out the unit severely injured, barely able to walk and taken to
medical I.C.U. I was the only inmate left behind, due to my
disabilities. The dorm was told to strip down to our boxs and
keep our hands above our heads, with promises of being brutally
assaulted if they came down. We was escorted to 7-1, and placed
in front of the widely open windows, making us freeze, for hours.
The room was freezing and the weather outside was extremely cold.
People driving by the facility could see all of us through the

windows, adding insult to injuries, and those pictures is all
over facebook online. I was severely injured, and could barely
stand. We stood like that in front of the wide open window, with
our hands above our head, while C.E.R.T destroyed our housing
unit, and our personal property, including our legal documents.
When they where finished we was escorted back to our dorm, and
told to sit down on our beds, hands still on top of our heads.
Sergeant Block then said, "that was to teach you a lesson, you
dont run this prison we do, dont make me have to come back here
or things will be worse, now you can clean up this fucking mess",
and the C.E.R.T team left. The dorm was destroyed. Pipes was cut
off, holes were made in the wall, windows where broken out, and
almost everyones property was destroyed or mixed up. The officer
who worked my unit was officer Paz, and he himself couldnt
believe what happened. I told Paz I needed medical attention, but
couldnt get any till over about 6pm. When i was escorted to
medical, and went upstairs to the I.C.U the nurse, came running
towards me and the officer, asking "why is he here, theres no
more room, take him down to sick call". I was seen in sick call,
and only given, two ace bands, and to come back during the week.
I had received below minimum standard of care, but i was able to
make an injury report of what happened. On 1-4-22, i went to take
a number of X-Rays, for my Head, Neck, Back, Arm, Wrist, Ribs,
Ankle and knee. Till today nothing has been done, other than what
is mentioned within this statement. What had occurred here at
fishkill correctional was not only an abuse of power, but
malicious, and intentional. Nearly every one of our

constitutionally protected rights where violated, and are still being violated. These actions that where authorized by the Superintendent, Commissioner, and others, was not only heinous, disturbing, and sadistic, but unacceptable. Our Constitutional rights are not abandoned and left in the front gate upon entering any Correctional facility. What occurred here at Fishkill was more than cruel and unusual punishment, but inhumane. I am respectfully requesting that the authority figures chosen, for the people, by the people, do something about what had occurred!! Humbly requesting that everyone who had a part in this mass assault on the inmate population at fishkill, be held accountable for their actions, and be prosecuted to the full extent of the law, including those whom stood idly by, and did nothing to stop this mass assault, and that includes O.S.I. Anyone in a position of power that can do something should, or they can be held accountable as well.

Respectfully submitted, Ralph Rodriguez din# 17A0928

Sworn Affidavit of x Ralph Rodriguez

1-4-22

U.S. Postal Service
CERTIFIED MAIL® RECEIPT
Domestic Mail Only 17A0928

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

7015 0640 0003 4581 0169

| | |
|---|---|
| Certified Mail Fee $ 3.70 | Postmark Here |
| Extra Services & Fees (check box, add fee as appropriate) | |
| ☐ Return Receipt (hardcopy) $ | |
| ☐ Return Receipt (electronic) $ | |
| ☐ Certified Mail Restricted Delivery $ | |
| ☐ Adult Signature Required $ | |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $ 1.56 | |
| Total Postage and Fees $ 2.36 | |

Sent To: The White House of the United States
Street and Apt. No., or PO Box No.: 1600 Pennsylvania Ave, NW
City, State, ZIP+4®: Washington, DC 20500

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

# EXHIBIT B

| NEW YORK STATE Corrections and Community Supervision | GRIEVANCE NO. FCF 0147-22 | DATE FILED May 16, 2022 |
|---|---|---|
| INMATE GRIEVANCE PROGRAM | FACILITY FISHKILL CORRECTIONAL FACILITY | POLICY DESIGNATION Institutional |
| | TITLE OF GRIEVANCE MISSING ART ITEMS | CLASS CODE 30 |
| SUPERINTENDENT | SUPERINTENDENT'S SIGNATURE [signature] | DATE July 13, 2022 |
| GRIEVANT RODRIGUEZ, R. | DIN 17A0928 | HOUSING UNIT MB-09-126 |

Grievant's action requested is denied with clarification.

Grievant is advised that an investigation has been conducted by the Office of the Deputy Superintendent for Security. It was revealed that grievant received 11 canvasses on 4/6/22 and 1 catalog on 4/8/22 from Dick Blick. Staff have gone on records to state that all items that were received from Dick Blick and listed on the Package Room form were issued to grievant.

vlr

xc: DSS Churns (w/case file)

## APPEAL STATEMENT

If you wish to refer the above decision of the Superintendent please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal.* Please state why you are appealing this decision to C.O.R.C.

Grievant appeals to CORC because the Company Dick Blick sent a detailed listing of all items sent and received within this facility, and only canvas boards where given to grievant. Receipt and proof is within file. So all other items sent and charged to grievant was missing. Reimbursement of $100 requested

[signature] 7-19-22

GRIEVANT'S SIGNATURE — DATE

[initials] 8-8-22

GRIEVANCE CLERK'S SIGNATURE — DATE

* An exception to the time limit may be requested under Directive #4040, section 701.6(g).

FORM 2133 (02/15)

FORM 1421 (10/14)
Page 1

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
INMATE CLAIM FORM

DEP. S... FOR AD... SERVICES

FACILITY CLAIM # 0510 - 0221 - 21
FAC ID# SEQ. NUM. YR.

PART1: INMATE IDENTIFICATION AND DESCRIPTION OF LOSS

| 1. INMATE'S NAME | 2. DEPT. ID# | 3. FACILITY NAME | 4. CELL/BLOCK | 5. DATE |
|---|---|---|---|---|
| Ralph Rodriguez | 17A0928 | Fishkill Correctional | 9-1 Main | 2-15-22 |

6. DESCRIPTION OF LOSS (INCLUDE PARTIES INVOLVED AND OTHER PERTINENT DATA NECESSARY TO THE SETTLEMENT).

On 12-30-21 the housing unit was searched and partialy destroyed by (C.E.R.T), and I as well as six other inmates were brutally assaulted. When I got back to my cubical bed 20 almost all my property was destroyed and ruined. The housing unit itself was also severely damaged from sink pipes, windows, stove, Hot pot etc. I have included this incident to show and prove how badly things were destroyed. All my legal documents were torn up, crumbled and ruined with syrup and other things. my radio, headphones, beard trimmer, hearing Aid, Alarm clock, Clothes, sneakers, books and also I have an Art permit and all my paint, paintbrushes and Canvas boards were destroyed, Food + Cosmetics.

PART 2: EVALUATION SCHEDULE

| ITEM NAME AND DESCRIPTION | ORIG. COST | AGE | CONDITION | DEPRECIATION | REIMBURSEMENT REQUESTED | Do not write in shaded space |
|---|---|---|---|---|---|---|
| 1. Legal documents including all my trial minutes - discovery - motions - Appeal | $ 1000 | 6 | Great | none % | $ 1000 | |
| 2. Art supplies - Paint - Paint brushes, Canvas | $ 250 | 12 (1) months | Good | $100 % | $ 100 | |
| 3. Radio | $ 55 | 8 years | Great | $15 % | $ 40 | |
| 4. sneakers (3) Pairs | $ 150 | 1-2 years | Good | $ 50 % | $ 100 | |
| 5. Clothes (4) shirts | $ 120 | 1-2 years | Good | $ 20 % | $ 100 | |
| 6. Beard trimmers | $ 35 | 2 years | Great | $ 5 % | $ 30 | |
| 7. Commissary Food | $ 75 | New | New | none % | $ 75 | |
| 8. Commissary Cosmetics | $ 25 | New | Good | $5 % | $ 20 | |
| 9. Head phones | $ 30 | [illegible] | Good | $5 % | $ 25 | |
| 10. Books (4) | $ 100 | 3 | Good | $25 % | $ 75 | |
| BALANCE BROUGHT FORWARD FROM CONTINUATION SHEETS | | | | | $ | |
| TOTAL | | | | | $ 1575 | |

Resubmitted

*Certification of Items and Values: I hereby certify that the listed personally-owned items and values are just, true, and correct and that the amounts claimed herein are considered to be legal claim against the State of New York.*

CLAIMANT'S SIGNATURE [signature] 2-16-22

FORM 1421 (10/14)
Page 2

Please refer to this number in all correspondence.

FACILITY CLAIM # 050 - 0221 - 21
FAC ID# SEQ. NUM. YR.

## PART 3: FACILITY INITIAL REVIEW

*I have personally reviewed this claim and examined damaged items (as available).*

☐ REJECTED * This claim has been rejected for the following reason(s) and is being returned to the claimant.

☐ 1. Claim value not reasonable or realistic.
☐ 2. Claim items not adequately described. Give more detail.
☐ 3. Claim articles do not indicate age/condition at time of loss.
☐ 4. No depreciation for use, age or wear indicated.
☐ 5. Claim value not substantiated with copy of invoice.
☐ 6. Other (specify): ____________________

*This claim may be resubmitted with additional information or documentation to correct the deficiencies checked.

☐ APPROVED This claim is approved/approved in part. Claimant is offered reimbursement in the amount of $ ______

☒ DISAPPROVED This claim is disapproved for the following reason(s). Claimant may appeal (see Part 4).

☐ 1. Evidence indicates that the claimant is substantially responsible for the loss or damage.
☐ 2. Evidence indicates that the facility was not at fault or in any way responsible for the loss or damage.
☐ 3. The evidence does not indicate that the claimant owned or possessed the article(s) in question.
☒ 4. Other (specify): Untimely

Explanation: per Directive 2733 "within five (5) days of loss" Claim should be filed. It has been over 2 months. Since the incident where loss was alleged.

NAME/TITLE S. Frost DSA SIGNATURE [signature] DATE 3/9/22

## PART 4: APPEAL

If dissatisfied with the initial review, the claimant may appeal by completing this section and forwarding this form to the Superintendent.

Statement (optional): ____________________

CLAIMANT SIGNATURE ____________________ DATE ______

## PART 5: APPEAL REVIEW

Superintendent (up to $500)/ Div. of Budget and Finance, Office of Inmate Accounts (over $500)

☐ APPROVED In the amount of $ ______

☐ DISAPPROVED A claim may be filed in the NYS Court of Claims. Your claim must be filed and served within 120 days of the date of this final determination, as required by law.

COMMENTS: ____________________

NAME ____________________ Supt./ Div. of Budget & Finance / Inmate Accts. SIGNATURE ____________________ DATE ______

FORM 1421 (10/14)
Page 1

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

# INMATE CLAIM FORM

FACILITY CLAIM # [ ]-[ ]-[ ]
FAC ID# SEQ. NUM. YR.

## PART1: INMATE IDENTIFICATION AND DESCRIPTION OF LOSS

| 1. INMATE'S NAME | 2. DEPT. ID# | 3. FACILITY NAME | 4. CELL/BLOCK | 5. DATE |
|---|---|---|---|---|
| Ralph Rodriguez | 17A0928 | Fishkill Correctional | 9-1 | 1-3-22 |

6. DESCRIPTION OF LOSS (INCLUDE PARTIES INVOLVED AND OTHER PERTINENT DATA NECESSARY TO THE SETTLEMENT).

On 12-30-21 C.E.Rt came into my housing Unit 9-1, and physically assaulted me, and ruined and destroyed over half my property, which included my Legal papers, Books, personal pictures, personal letters, Religious items such as Books, notes, shrine, pictures, they also broke my radio, headphones, art supplies that included paint that they spilled all over my belongings and ruined paintings as well as my Diary and two books I had written and wanted to publish. There actions were beyond ethical and justified, and I would like to be reimbursed for the items that can.

## PART 2: EVALUATION SCHEDULE

| | ITEM NAME AND DESCRIPTION | ORIG. COST | AGE | CONDITION | DEPRECIATION % | REIMBURSEMENT REQUESTED | Do not write in shaded space |
|---|---|---|---|---|---|---|---|
| 1. | Typewriter | $ 425.95 | 3 mont | New | 25.95 | $ 400 | |
| 2. | Books personal & Religious | $ 100 | 2 years | wear | 50 | $ 50 | |
| 3. | Art supplies paint, brushes, painting | $ 250 | 1 year | used | 200 | $ 200 | |
| 4. | radio Sangean | $ 79.99 | 1 year | New | 9.99 | $ 70 | |
| 5. | headphones behringer | $ 50 | 1 year | new | 5.00 | $ 45 | |
| 6. | Legal Documents | $ 500 | 8 years | / | / | $ 500 | |
| 7. | personal clothes shirts | $ 150 | 1 year | new | 20.00 | $ 130 | |
| 8. | Sneakers (2) paint on them | $ 160 | 1 year | new | 20.00 | $ 140 | |
| 9. | watch cassio (broken) | $ 50 | 1 year | new | 5.00 | $ 45 | |
| 10. | Fan | $ 20 | 1 year | new | 5. | $ 15 | |

BALANCE BROUGHT FORWARD FROM CONTINUATION SHEETS $ 1,595

TOTAL $

*Certification of Items and Values: I hereby certify that the listed personally-owned items and values are just, true and correct and that the amounts claimed herein are considered to be legal claim against the State of New York.*

CLAIMANT'S SIGNATURE [signature] 1-2-2022

C.L. 1 of 2

FORM 1421 (10/14)
Page 2

Please refer to this number in all correspondence.

FACILITY CLAIM # [ ] - [ ] - [ ]
FAC ID# SEQ. NUM. YR.

PART 3: FACILITY INITIAL REVIEW

*I have personally reviewed this claim and examined damaged items (as available).*

☐ REJECTED * This claim has been rejected for the following reason(s) and is being returned to the claimant.

☐ 1. Claim value not reasonable or realistic.
☐ 2. Claim items not adequately described. Give more detail.
☐ 3. Claim articles do not indicate age/condition at time of loss.
☐ 4. No depreciation for use, age or wear indicated.
☐ 5. Claim value not substantiated with copy of invoice.
☐ 6. Other (specify): ____________________

*This claim may be resubmitted with additional information or documentation to correct the deficiencies checked.

☐ APPROVED This claim is approved/approved in part. Claimant is offered reimbursement in the amount of $ [ ]

☐ DISAPPROVED This claim is disapproved for the following reason(s). Claimant may appeal (see Part 4).

☐ 1. Evidence indicates that the claimant is substantially responsible for the loss or damage.
☐ 2. Evidence indicates that the facility was not at fault or in any way responsible for the loss or damage.
☐ 3. The evidence does not indicate that the claimant owned or possessed the article(s) in question.
☐ 4. Other (specify): ____________________

Explanation: ____________________

NAME/TITLE ____________________ SIGNATURE ____________________ DATE __________

PART 4: APPEAL

If dissatisfied with the initial review, the claimant may appeal by completing this section and forwarding this form to the Superintendent.

Statement (optional): ____________________

CLAIMANT SIGNATURE ____________________ DATE __________

PART 5: APPEAL REVIEW Superintendent (up to $500)/ Div. of Budget and Finance, Office of Inmate Accounts (over $500)

☐ APPROVED In the amount of $ [ ]

☐ DISAPPROVED A claim may be filed in the NYS Court of Claims. Your claim must be filed and served within 120 days of the date of this final determination, as required by law.

COMMENTS: ____________________

NAME ____________________ Supt/ Div. of Budget & Finance / Inmate Accts. SIGNATURE ____________________ DATE __________

 Corrections and Community Supervision

KATHY HOCHUL
Governor

ANTHONY J. ANNUCCI
Acting Commissioner

To: **RODRIGUEZ, RALPH- 17A0928**

HU: **MB-09-120**

From: Deputy Supt. Administration

Subject: Claim # **050-0221-21**

Date: March 10, 2022

---

Your claim has been DENIED. Untimely – Per Directive 2733 "within five (5) days of loss" claim should be filed. It has been over two (2) months. Since the incident where loss was alleged.

If you want to appeal, will need to fill out Part 4 on the claim form and return original to the Superintendent for review.

Thank you.

Cc: File

# EXHIBIT C

DATE 12.30.21 TOUR 1 POST 91

SUPERVISOR SGT. M. Jones

C.O. ASSIGNED M. Jaquet

FAK + Narcan Sealed

ALL POST ORDERS READ & UNDERSTOOD INITIALS MJ

DIRECTIVES REVIEWED & UNDERSTOOD INITIALS MJ

# All times times are Approximate #

10:30PM C.O. on Duty with all state equipment Present & Accounted for, verbal census (27)

10:35PM Initial Rounds Made, Fire & Safety check completed

11:00 Count called into W/C office, W/C accepts count

11:10P 7-2 Rec Rds

11:30PM Rounds Made, As Per Base, count is clear @ this time.

12:00AM Rounds Made.

12:30AM Rounds Made.

1:00AM Rounds Made.

1:15A 7-2 Rec Rds

1:30AM Count taken 27-27 W/C Accepts Count

2:00AM Rounds Made

2:15A Sgt M Jones V/A Rds Log Reviewed

2:30AM Rounds Made.

3:00AM ~~Count~~ Rounds Made.

3:30AM Count taken 27-27 C.O. Hugh Accepts

3:35A 7-2 Rec Rds

4:00AM Rounds Made

4:30AM Rounds Made.

5:00AM Rounds Made.

5:15AM Count taken 27-27 W/C Accepts count.

Tour I continued 12.30.21

5:20 AM 7-2 Rec. Roles

5:20 Sgt M. Jones U/A Roles

5:30 AM Rounds Made.

6:00 AM Rounds Made.

6:30 AM C.O. OFF Duty END OF Tour 27-27-0

DATE 12/30/21 TOUR (II) POST 9-1

SUPERVISOR Sgt: Morres

C.O. ASSIGNED M. Bhuiyan

FAK: Sealed

ALL POST ORDERS READ & UNDERSTOOD INITIALS

DIRECTIVES REVIEWED & UNDERSTOOD INITIALS

6:37 Sgt [illegible] U/A [illegible]

6:45 AM C.O M Bhuiyan on post with all state issued equipment, Fire & safety check, Bar & hammer. and tool inventory check completed. Verbal census is (27). Rounds made. All appears safe & secure Att

6:56 AM Late entry: Count taken, total 27, IN-27, out-Ø. Count clear via Fishkill Bane.

7:00 AM Rounds made.

7:15 AM CERT Team in unit to search the all cubes & Rooms.

8:50 AM CERT Team done their searching. unit clear. (6) incarcerated individual out of unit by CERT.

9:00 AM Rounds made.

9:30 AM Rounds made

10:00 AM Rounds made

10:30 AM Rounds made

11:00 AM Nurses in Unit to Serve the insulin. Rounds made.

11:05 AM Incarcerated Individual Rodriguez, DIN# 17A-0928 inform me, he got heard during the CERT Team Action, He wants to go clinic. I notified the clinic & Sgt Morris.

11:30 AM Count taken, Total (27) IN-(21) out-(6) [illegible]

Count Accepted by W/e

Continue to page 13 →

→ Continue from page 12, Tour II, Thursday, 12/30/21.

12:00pm Rounds made — chow serve here —
12:08PM Count clear via Fishkill Base. —
12:30 PM Rounds made, All appears Safe & secure at+ —
1:00pm Rounds made, —
1:30 PM Rounds made. —
2:00 PM Rounds made —
2:30PM C.O. [illegible] off post

DATE 12/30/21 TOUR III POST [illegible] HUS

SUPERVISOR [illegible]

C.O. ASSIGNED J SERRINSTEN

[illegible]

ALL POST ORDERS READ & UNDERSTOOD INITIALS [initials]

DIRECTIVES REVIEWED & UNDERSTOOD INITIALS [initials]

2:30 CO J SERRINSTEN ON POST
300 Round Made.
320 Round Made.
3:45 pm [illegible] u/A round, Female announced. Spoke with staff. I/I's can utilize showers, hot pot and toasters. No phone/Kiosk and kitchen —
3:59 pm LT. [illegible] [illegible] TDS [illegible] —
4:00 Round Made chow (21)
405 CENSUS — 21 — 21 — 0 (5 [illegible])
430 Round Made chow (21)
4:35 pm [illegible] u/A round. Spoke with staff —
502 Rounds Made.
530 Rounds Made.
600 Rounds Made
629 Rounds Made.
705 Rounds Made,
731 Round Made. — Phones — Kiosk ON 15 MIN
8:20 pm [illegible] u/A round. All appear secure —
835 Round Made,
900 CENSUS — 21 - 21 — 0 (5 [illegible])
930 Round Made. The count is clear
1000 Round Made
1030 CO OFF Post

14

DATE 12-31-21 TOUR I POST 91

SUPERVISOR Sgt. Jone

C.O. ASSIGNED R Deshon

ALL POST ORDERS READ & UNDERSTOOD INITIALS RD
DIRECTIVES REVIEWED & UNDERSTOOD INITIALS RD

10:30pm CO RDeshone on post w/ all State issued equipment. Female announced on unit. Tool inventory checked, Fire and Safety check completed FAK sealed [redacted]. Verbal census 21 given.

11:00 pm Rounds made, count taken 21,21,0, and Called into LT. Hunter and accepted

11:12 pm Count Clear via base

11:30 pm Rounds made

12:00 am Rounds made

12:05 A Sgt M Jones via Role Phone Last quest

12:30 am Rounds made

1:00 am Rounds made

1:30 am Rounds made count taken 21,21,0 and Called into LT. Hunter and accepted

2:00 am Rounds Made

2:30 Am Rounds Made.

3:00 AM Rounds Made

3:30 AM Rounds Made, count taken 21,21,0, and Called into LT. Hunter and accepted.

4:00 Am Rounds made.

4:30 Am Rounds made

5:00 Am Rounds made

5:05 Sgt M Jones via Role

5:15 am Rounds made Count taken 21-21-0 and called into Lt. Marco AWC Desk and accepted

5:30 Am Rounds made count clear via base

6:00 Am Rounds made

6:30 Am Rounds made

6:30 Am Count taken 21,21,0 and called into AWC and accepted

6:51 AM Count is clear & correct via base

7:15 Am CO Deshone off Post.

DATE 12/31/21 TOUR II POST H.U 9-1

SUPERVISOR Moores 47

C.O. ASSIGNED M Scott

FAK+NARCAN Sealed

ALL POST ORDERS READ & UNDERSTOOD INITIALS MS

DIRECTIVES REVIEWED & UNDERSTOOD INITIALS MS

7:15 Am C.O M. Scott on Post w/ all state issue equipment. Verbal census giving of 21-21-Ø. Rounds made on unit.

7:30 Am Rounds made on unit.

8:00 Rounds made on unit.

8:00 am A/S A/C Moores affirmed.

8:04 Out Meds on the unit and giving to II.

8:30 Rounds made on unit.

9:00 Rounds made on unit

9:30 Rounds made on unit

10:00 Rounds Made on unit

10:30 Rounds made on unit Chow was brought to unit and giving out.

11:00 Rounds Made on unit.

11:30 Count taken total 21 IN 21 out Ø w/c accepted count Rounds made.

12:00 Rounds made on unit

12:15 pm A/S A/C Moores affirmed

12:30 Rounds Made on unit.

1:00 Rounds made on unit.

1:30 Rounds made on unit

2:00 Rounds made on unit.

2:30 C.O M. Scott off post

# EXHIBIT D

FORM 3105 (11/11) STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

AMBULATORY HEALTH RECORD PROGRESS NOTE

| Name | DIN | Date of Birth | Facility Name |
|---|---|---|---|
| Rodriguez, Ralph | 17A0928 | 8/25/24 | Esc |

Subjective: 43 y/o c/o good pain + swelling R neck

Last Name: Rodriguez, Ral

DIN: 17A0928 Location:

Date: 10/18/21 Time: 10:10A

Objective: c cough + phlegm [illegible] 159.5, 98/, 18 neck soft [illegible]

Provider Orders: smokes 10 rolly/day 15-20 yrs

Assessment: lungs clear, chest xray 3/5/17 neg. hx of childhood asthma

Plan: suspect chest xray today [illegible] LBP refused ESI, refused lidocaine patch

LB refused pain tx c [illegible] smoking cessation

Diflucan gel 4 grams [illegible]

Signature/Provider # [signature] 4 [illegible] RN Transcribing Order/Provider #/Date/Time [illegible]

Subjective: Esc Inmate was brought down

Last Name: Rodriquez

DIN: 17A0928 Location: 9/1 - Clinic

Date: 12/30/21 Time: 4:30 pm

Objective: to the clinic for evaluation

Provider Orders: Ace wrap applied to (L) ankle and right wrist.

Assessment: "I was jumped by the cert in the morning"

1-2 (+) edema noted on the (L) ankle. c/o pain. Pedal

Plan: pulse (+). Bruising to [illegible] right wrist and (L) upper arm

Toes warm & mobile. Encouraged elevation. Ace wrap applied to (L) ankle. Ice applied. Encouraged NWB (L) ankle. Seen by NP-Sullivan

Signature/Provider # Mulcahy 576 RN Transcribing Order/Provider #/Date/Time 12/30/21 4:30 PM

Subjective:

Last Name

DIN Location

Date Time

Objective:

Provider Orders:

Assessment:

Plan:

Signature/Provider # RN Transcribing Order/Provider #/Date/Time

Continue entry into next box if necessary.

# EXHIBIT E

HSPM 7.16
Attachment A

*STATE OF NEW YORK*
*DEPARTMENT OF CORRECTIONAL SERVICES*
DIAGNOSTIC TESTING NOTIFICATION
(NOTIFICACIÓN DE PRUEBA DE DIAGNÓSTICO)

NAME (Nombre) Rodriguez Ralph DIN 17A0928

FACILITY (Institución) FCF CELL LOCATION (Ubicación de la Celda) B-9-1-20

REVIEWED BY (Revisado por) M. SULLIVAN-DAVACHI, NP (name & provider #) DATE (Fecha) 5/25/2[illegible] (MM/DD/YY)

THIS IS TO INFORM YOU THAT THE RESULTS OF THE TESTING CHECKED BELOW:
(Sirva éste para informarle que los resultados de la prueba identificada a continuación)

X-RAY (Rayos-X) ____ LAB TESTING (Prueba de Laboratorio) ____ OTHER (Otro) headache medication

PERFORMED ON (Ejecutada en) ____ WERE REVIEWED BY A PRIMARY CARE PROVIDER. (la revisó un professional del cuidado primario.)

____ NO ACTION IS REQUIRED AT THIS TIME. (No se exige acción en este momento.)

✓ REPORT TO ~~SICK CALL~~ pharmacy [illegible] (Repórtese a Cita por Enfermedad.)

____ FOLLOW UP WILL BE ARRANGED WITH A PRIMARY PROVIDER. (Se harán arreglos para seguimiento con un professional del cuidado primario.)

✓ FOLLOW UP WILL BE ARRANGED WITH A SPECIALIST. (Se harán arreglos con un especialista.) Pain mgt

I ordered back brace X large - keep pink copy until they call you & give you the brace, then pink copy to officer yellow for your record
- next time please use sick call for issues rehab

DO NOT FILE IN AHR
(No archive en el AHR)

FORM 3105 (11/11) STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

**AMBULATORY HEALTH RECORD PROGRESS NOTE**

| Name | DIN | Date of Birth | Facility Name |
|---|---|---|---|
| Rodiguez Ralph | 17A0928 | 8/25/78 | FCF |

**Subjective:** 43 y/o male c injury (L) ankle, (R) wrist + R ribs

Last Name: Rodriguez Ralph
DIN: 17A0928 Location:
Date: 01/09/21 Time: 10:40am

**Objective:** On Shin 12/30/21 during Facility lockdown. (L) ankle less extremity but tender

Provider Orders:

**Assessment:** Xrays were read ok for Fx but await official radiology report

**Plan:** no work x 6 weeks
- no cane available for CC
1 crutch fitted + given to pt

Continue Ace wrap + all Rx

Signature/Provider # [signature] 469 RN Transcribing Order/Provider #/Date/Time

**Subjective:**

Last Name: Rodriguez, R
DIN: 17A0928 Location:
Date: 1-13-22 Time: 1pm

**Objective:** NO SHOW SICK CALL

Provider Orders:

**Assessment:**

**Plan:**

Signature/Provider # [signature] RN 497 RN Transcribing Order/Provider #/Date/Time

**Subjective:**

Last Name:
DIN: Location:
Date: Time:

**Objective:**

Provider Orders:

**Assessment:**

**Plan:**

Signature/Provider # RN Transcribing Order/Provider #/Date/Time

Continue entry into next box if necessary.

 Corrections and Community Supervision

KATHY HOCHUL
Governor

ANTHONY J. ANNUCCI
Acting Commissioner

April 1, 2022

DIN 17A0928 RODRIGUEZ, Ralph
CELL MB-09-120

**Re: FOIL Log No. FCF- 0086-2022**

Dear R. Rodriguez:

This is in response to your New York State Freedom of Information Law request for "Copy of 9-1 Log book for 12/30/21 and 12/31/21."

I received your letter stating you never received your documents. Enclosed is another copy of those documents I have already sent. You also stated I charged you twice for medical documents. This office does not provide medical documents, nor did I have any on file for you. You must write to Medical Foil about that issue.

Regards,

F. Wilbur, OAII/FOIL
Fishkill Correctional Facility
18 Strack Dr.
Beacon, NY 12508

CC: FOIL Records

If you do not agree with any part of this decision, you may appeal by writing the Office of the Counsel & FOIL Appeals Officer, NYS Department of Corrections and Community Supervision, The Harriman State Campus, 1220 Washington Avenue, Albany, New York, 12226-2050.

In appeal correspondence, please clearly note your name, DIN number, facility from which records were requested, and the FOIL Log Number provided.

# EXHIBIT
# F

DATE 12/31 TOUR 3 POST Q1

SUPERVISOR [illegible]

C.O. ASSIGNED [illegible]

ALL POST ORDERS READ & UNDERSTOOD INITIALS [illegible]

DIRECTIVES REVIEWED & UNDERSTOOD INITIALS

Jewels announced. C.O. Gibbons on post w/ state issue equipments listed above. Verbal census 21, rounds confirmed. Fire & safety daily checklist. Visual on bars. All appears normal all.

300 Rounds made all

Jarean appears seal w/ 1st aid kit.

316 Insulin announced (2) to RHU

330 Rounds all

400 Count taken 21 : 21 : 0

406 Lt. Hunter accepts count

430 Rounds all

500 Rounds all

Kitchen, phones, [illegible], rec are open all

506 Code [redacted] individual Rodriguez 17A0928

530 Code [redacted] clear rounds all escorted to the RHU.

600 Rounds (9) sign for chow all

625 (9) individuals escorted to chow by CO's Scott J & Bauer all

640 All individual escorted back from chow

700 Rounds supplies given (1) soap & (1) toilet paper given to each individual (21) total each.

Errors, meds Ø.

730/py Tour 3 continued 16/31/2 17

█████████████████████████████

add to census from Hu 17/19

█████████████████████████████

Hor Round

Clic rep ███████████████ on
unit left at paypd.
800 Rounds Call 1 stp 2 wash
Incarcerated individual Rodriguez
1740/20 returns to unit.
830 Rounds Call
910 count in progress 23:23:0
915 co. Bermon accepts call
929 count clear vic base tas all
1000 Showers stop Sink Kitchen
closed call
1030 Round Call
1100 count taken 23:23:0

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

# EXHIBIT G

FORM 3105 (11/11)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

**AMBULATORY HEALTH RECORD PROGRESS NOTE**

| Name | DIN | Date of Birth | Facility Name |
|---|---|---|---|
| Rodriguez, Ralph | 17A0928 | 8/25/73 | [illegible] |

**Subjective:** 43 y.o. m [illegible] c/o [illegible]
R wrist Pain + left ankle pain

**Objective:** mild swelling R wrist [illegible] during search by Cert team

**Assessment:** R/o left ankle [illegible]
R/o R wrist fx

**Plan:** d/c
- analgesic balm [illegible] PRN x 2
- continue c Tylenol

Ace wrap R wrist + L ankle

elevate left ankle

cool compress [illegible]

Last Name Rodriguez, Ralph
DIN 17A0928 Location
Date 12/30/21 Time 4:30pm
Provider Orders: Facility lockdown

Signature/Provider # [signature] 469 RN Transcribing Order/Provider #/Date/Time

**Subjective:** Code called. This writer responded to 9-1. Inmate observed sitting on floor. States C.O. made him stand for

**Objective:** 20 minutes, he got tired and plopped down to floor. No new injuries sustained.

**Assessment:** AAOX3. VS 146/113, 109, 20, 97.2 spo2 98%. landed on Buttocks. Denies hitting head.

**Plan:** As per Dr. Hasen, offer inmate crutches, instruct in use of same. Advise him to drop sick call slip, see provider monday. Inmate refused crutches, claims he is fine, able to ambulate s̄ difficulty. Displays ability to

Last Name Rodriguez, Ralph
DIN 17A0928 Location CC
Date 12-31-21 Time 6pm
Provider Orders: Coping Ineffective Individual

Signature/Provider # RN Transcribing Order/Provider #/Date/Time

**Subjective:** ambulate independently s̄ difficulty. States he will see provider on monday. This writer offered to re-wrap ace to

**Objective:** (R) wrist, (L) ankle. Inmate refused. Inmate left RMU ambulating s̄ difficulty.

**Assessment:** [signature] RN 524 Chart to provider for review.

**Plan:**

Last Name ↓
DIN ↓ Location ↓
Date Time
Provider Orders:

Signature/Provider # RN Transcribing Order/Provider #/Date/Time

Continue entry into next box if necessary.

RALPH RODRIGUEZ
DIN# 17A0928
FISHKILL CORRECTIONAL FACILITY
P.O BOX 307
BEACON, NEW YORK 12508

3-1-22

Dear John Morley

I am writing to you because on 12-30-21 and 12-31-21, I was severly injured by the Correctional Officers while in my housing unit 9-1 main. The officers were from C.E.R.T on 12-30-21 and On 12-31-21 the officer was ms Gibbon Alexandra Ayana whom action severly injured me as well. I requested a foil request for my injury report and madical records for both days and I was writen back by Foil ms Gardner Anita H that both my injury reports were missing and not found. The sergeant on staff at medical that day was suppose to secure those injury reports and insure they were reported and failed to. I did recieve the medical records and on the medical record dated 12-31-21 all the information that the nurse ms Cujas Gifty N was completely fabricated and not correct. I had informed her clearly that while having severe injury to my ankle that was aced band up, and not being able to walk officer Gibbons told me to get off my bed because I had a double mattress and to stand staring at the wall, which I did so while in severe pain and after 20 minutes I had fell down injuring my head, neck back and further injuring my injuries.

She ms Gifty put in my medical records that I had fell in my buttox and did not hit my head and had no new injuries, all of which was a complete lie, she violated her medical oath as well as the HIPPA law, and I had already wrote a grievance but the grievance program here run by ms Reams is also corrupt, and

E-76

and job is to hide and cover up the wrong that the staff here
at fishkill does.  I am moving forward on a 1983 claim against
the facility and all the personnel involved with the misconduct
I had mentioned within this letter and writing you for assistance
and to insure that my records reflect the facts of what happen
and my injuries, and to possibly investigate why both my inury
reports are gone.  Please see Magalios v Peralta Southern Distric
New york 19-CV-6188 Febuary 10,2022 in this case against fishkill
correctional officers it was found that staff at fishkill was
covering up the wrongful acts done by their staff and also was
falsifiying records just like whats happening to me now.

I am humbly requesting you investigate the matter and inform the
proper personnel to look into the matter as well.

Im sorry to have to burden you with this issue but what is going
on in this facility is severe and cant be ignored.

Respectfully

RALPH RODRIGUEZ

C.C sent to Superintendent
            Dep of health
            Albany Chief Medical Officer
            Governor of the state of new york

E-77

I have provided the medical records I recieved and a letter from foil stating that my injury report dont exist.

Now the medical records clearly shows I went to medical with a code green and was escorted by an officer, and if you review the medical documents youll see that the 12-31-21 report had been fabricated to reflect no new injuries and states I didnt hit my head and I fell on my buttox, all witch is a lie, I clearly stated I hit my head and have sworn affidavits by other inmate who seen me get injured. and youll see the dates have been falsified as well and should reflect the correct injuries, also the medical report dated 1-13-22 states that "no show sick call" at no time was I called and at no time didi I refuse any sick call callout. Can you please look into the matter of what I have stated in this letter and inform the proper personnel of these actions.

E-78

Ralph Rodriguez
Din# 17A0928
Housing unit 9-1
Fishkill Correctional facility

Akinyombo 2-28-22

I am writing to you because on 2-28-22 I got copies of my medical Records dated 12-30-21 and 12-31-21. The nurse who seen me on 12-[illegible]-21 when I arrived to medical on a Code Green Completely falsified my medical Records. She was clearly told I had fall down and hit my head and injured my back, neck and head and put in my record that "Denies hitting Head" "landed on Buttocks" "No New injuries sustained" These are all lies and I have witness statements and wrote a grievance. I am writing to inform you of her actions, and will be naming her as a defendant in my lawsuit for attempting to cover up and hide my true injuries. I will be expecting a response from you about this and request an investigation against her. I will be forwarding this letter and all the information to the proper authorities. Please do not ignore this [illegible] ... make an appointment to see [illegible]

Ralph Rodriguez
Din# 17A0928
Housing Unit 9-1
Fishkill Correctional facility

2-28-22

IGRC

2-28-22 I

I am writing this grievance because on dated 12-30-21 and recieved copies of my medical Records the record dated 12-31-21. Upon Review of the records the record dated 12-31-21 was falsified. On 12-31-21 I had been injured due to officer Gibbons malice recless intent knowing I was already seriously injured the day prior and she had me stand in front of the hallway wall with a multitude of injuries which also included a leg injury for 20 minutes and I fell down hitting my head and injuring my back. The nurse put down in the Ambulatory Health record progress note that "Denies Hitting head" "landed on buttocks" "NO new injuries sustained" all this information is false. I Hit my head on the wall and injured my Neck, Back and head as well as further injured my leg and ankle. The nurse was white woman with blond hair and an accent. She Completely falsified my medical records, and will be including her in my Claim. Nurse gifty CUJas N RN# 574

Resolution Seeking To have my medical Records to reflect the Real Injuries to my Ambulatory Health Record Progress note to be corrected and for the nurse to be reprimanded for her illegal actions. I wish to be Present at the IGRC Hearing.

(C.CT)



**ALLEN RILEY**
Chairman

**THOMAS J. LOUGHREN**
Commissioner

**YOLANDA CANTY**
Commissioner

September 21, 2022

Mr. Ralph Rodriguez
DIN# 17A0928
Fishkill Correctional Facility
P.O. Box 1245
Beacon, New York 12508

Dear Mr. Rodriguez:

This is in response to your letter received by the Commission on September 14, 2022.

Please be advised that the Commission of Correction has forwarded your complaint letter to the Office of Special Investigations for review and handling.

Please be further advised any future correspondence regarding this matter should be addressed directly to the Office of Special Investigations. You may write to them at the following address:

Chief of Investigations / Office of Special Investigations
NYS Department of Corrections and Community Supervision
State Campus, Building 9
Albany, New York 12226

Sincerely,

Bureau of Field Operations
16707

 # Corrections and Community Supervision

KATHY HOCHUL
Governor

ANTHONY J. ANNUCCI
Acting Commissioner

April 6, 2022

Ralph Rodriguez, 17-A-0928
Fishkill Correctional Facility
271 Matteawan Road
P.O. Box 1245
Beacon, NY 12508-0307

Dear Mr. Rodriguez:

Acting Deputy Commissioner Moores has asked me to respond to your recent letter.

The Division of Health Services has investigated your concerns with the Health Services staff at Fishkill Correctional Facility. I have been advised that the issue to which you refer is being addressed through the grievance process. Please be advised that Department of Corrections and Community Supervision, Directive # 4040 Incarcerated Individual Grievance Program (IGP), provides incarcerated individuals with an orderly, fair, and simple method of resolving grievances pursuant to Correction Law. The directive makes no provision for an incarcerated individual to refer grievances directly to Central Office.

It is suggested that you continue to bring your medical concerns to the attention of the health care staff using the existing sick call procedure. I am sure they will make every effort to address your needs.

Sincerely,

Susanna Nayshuler
Regional Health Services Administrator
Division of Health Services

# EXHIBIT H

To whom it may concern, 1-4-22

I am R. Rodriguez (17A0928) neighbor at Fishkill correctional Facility. On 12-31-21, I saw Officer Gibbons go to Rodriguez cube while he was laying down from injuries prior and start to harass him. She told him to remove one of his mats, and as he tried to explain his medical condition I heard her say, "I already know what happened to you, because I read the log book, and I don't care." I saw her then remove his mat, and while he tried to explain to her that she was taking his issued mat, she told him to follow her. She then took him out to the hallway and had him stare at the wall for over 20 minutes, knowing he had injuries to his ankle and leg. After over 20 minutes, he fell down yelling out in pain and a Code Green (medical emergency) was called. He was wheeled out in a wheelchair to the medical clinic. I saw as he passed me that he had a big red mark on his forehead, and he looked to be in a lot of pain.

William Stepnowski 19R1343
William Stepnowski 19R1343

Affidavit of Aheem Cordes DIN 21B0836

I am in the 9-1 housing unit in the main building here at the Fishkill Correctional Facility. Mr. Rodriguez, DIN 17A0928 is also in the housing unit.

On December 31st 2021 officer Gibbons happened to be working in the unit during the shift 14:30-22:30. Ms. Gibbons had an attitude and was doing things that were outside of things in her job description. She (Ms Gibbons) nitpicked with several individuals about several things that was not outside of DOCCS Directives, or the Facility Rules.

At one point in time officer Gibbons approached Mr. Rodriguez asking him to remove one of his mattresses. Mr. Rodriguez attempted to inform her of his medical condition, she did not allow Mr. Rodriguez to continue speaking. Raising her voice several octaves while speaking she told Mr. Rodriguez "I already know what happened to you. I've read the log book and I don't care." She then ~~[illegible]~~ proceeded to remove the mattress on her own. Mr. Rodriguez was left with a mattress that was less than ½ inch thick. When Mr. Rodriguez began to protest this, Ms. Gibbons instructed him to follow her. She instructed him to stand and face a wall for 20 minutes, she told him if he didn't do it she would pull her pin and then have him brought to the box. Ms Gibbons violated DOCCS policy and Correction Law, specifically NY CORREC § 137 Program of treatment, Control and discipline at Correctional Facilities subd. 5 which states "no ~~individual~~ incarcerated individual in the care or custody of the department shall be subjected to degrading treatment..." Mr. Rodriguez fell and hit his head on the wall and there was a "code green" called and Mr. Rodriguez was taken to medical.

A Cordes 21B0836

E-54

 **Corrections and Community Supervision**

**KATHY HOCHUL**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

April 6, 2022

DIN 17A0928 RODRIGUEZ, Ralph
CELL MB-09-120

**Re: FOIL Log No. FCF- 0088-2022**

Dear R. Rodriguez:

This is in response to your New York State Freedom of Information Law request for "Copy of search receipt dated 12/30/21, any and all documents in regard to the CERT Team that entered your housing unit on 12/30/21- names, numbers, SGTs., as well as OSI Personnel, Copy of Audio/Video that was taken that same date."

Please be advised, we conducted a diligent search, and the Department does not appear to have any responsive records. We are not required to create a document if it does not already exist.

There is no cube/search receipt on file for you for the requested date 12/29/21; 12/30/21 and 12/31/21 dates were all checked as well. There are no responsive records for the rest of your request. The Freedom of Information requires that we provide access to existing documents maintained by or on behalf of the Department. It does not require that we prepare responses to specific questions.

I have also enclosed a copy of your statement, which reflects you were only charged **one** time for your request.

Regards,

F. Wilbur, OAII/FOIL
Fishkill Correctional Facility
18 Strack Dr.
Beacon, NY 12508

CC: FOIL Records

---

If you do not agree with any part of this decision, you may appeal by writing the Office of the Counsel & FOIL Appeals Officer, NYS Department of Corrections and Community Supervision, The Harriman State Campus, 1220 Washington Avenue, Albany, New York, 12226-2050.

In appeal correspondence, please clearly note your name, DIN number, facility from which records were requested, and the FOIL Log Number provided.

# EXHIBIT I

NEW YORK STATE | Corrections and Community Supervision

**MEDICAL DEVICE PERMIT**

**DATE:** 1/4/21

**Inmate Name:** [illegible] **DIN:** [illegible] **Housing Unit** [illegible]

Starting Date: [illegible] Ending Date: [illegible] ☐ 1 Month ☐ 3 Month ☐ 6 Month

- ☐ Cane
- ☒ Crutches # 1
- ☐ Ace Bandage
- ☐ Elastic Back Support
- ☐ Elastic Knee Support
- ☐ Elastic Ankle Support
- ☐ Knee Brace - Type: ____
- ☐ Special Clothing ____
- ☐ Other: ____
- ☐ Shoulder Immobilizer/Sling
- ☐ Ten's Unit
- ☐ Hearing Aid
- ☐ Shoe Inserts

**Medical Staff Signature:** [illegible]

White: Medical Records Yellow: Program Committee Pink: Housing Unit Officer Gold: Inmate

(01/18) Fishkill Correctional Facility, 18 Strack Drive, Beacon, NY 12508-0307 I (845) 831-4800 I www.doccs.ny.gov

NEW YORK STATE | Corrections and Community Supervision

**MEDICAL DEVICE PERMIT**

DATE: 4/4/22

**Inmate Name:** Rodriguez Bal... **DIN:** ... **Housing Unit:** ...

Starting Date: 4/4/22 Ending Date: ... ☐ 1 Month ☐ 3 Month ☐ 6 Month

☒ Cane
☐ Crutches
☒ Ace Bandage x2
☐ Elastic Back Support
☐ Elastic Knee Support
☐ Elastic Ankle Support
☐ Knee Brace - Type:
☐ Special Clothing:
☐ Other:

☐ Shoulder Immobilizer/Sling
☒ Ten's Unit
☐ Hearing Aid
☐ Shoe Insterts

**Medical Staff Signature:** ...

White: Medical Records Yellow: Program Committee Pink: Housing Unit Officer Gold: Inmate

(01/16) Fishkill Correctional Facility, 18 Strack Drive, Beacon, NY 12508-0307 | (845) 831-4800 | www.doccs.ny.gov

NEW YORK STATE | Corrections and Community Supervision

**MEDICAL DEVICE PERMIT**

**DATE:** [illegible]

**Inmate Name:** [illegible] **DIN:** [illegible] **Housing Unit:** ____________________

Starting Date: [illegible] Ending Date: [illegible] ☐ 1 Month ☐ 3 Month ☐ 6 Month

☐ Cane
☐ Crutches
☐ Ace Bandage
☐ Elastic Back Support
☐ Elastic Knee Support
☐ Elastic Ankle Support
☐ Knee Brace - Type: ____________________
☐ Special Clothing: ____________________
☐ Other: [illegible]

☐ Shoulder Immobilizer/Sling
☐ Ten's Unit
☐ Hearing Aid
☐ Shoe Insterts

**Medical Staff Signature:** ____________________

**White: Medical Records** **Yellow: Program Committee** **Pink: Housing Unit Officer** **Gold: Inmate**

(01/16) **Fishkill Correctional Facility, 18 Strack Drive, Beacon, NY 12508-0307 I (845) 831-4800 I www.doccs.ny.gov**

NEW YORK STATE | Corrections and Community Supervision

**MEDICAL DEVICE PERMIT**

DATE: 7/20/22

Inmate Name: Rodriguez, R DIN: 17A0928 Housing Unit: MB-9-2

Starting Date: 7/29/22 Ending Date: 1/29/23 ☐ 1 Month ☐ 3 Month ☑ 6 Month

- ☐ Cane
- ☐ Crutches
- ☐ Ace Bandage
- ☐ Elastic Back Support
- ☐ Elastic Knee Support
- ☐ Elastic Ankle Support
- ☐ Knee Brace - Type:
- ☐ Special Clothing:
- ☐ Other:
- ☑ Shoulder Immobilizer/Sling
- ☐ Ten's Unit
- ☐ Hearing Aid
- ☐ Shoe Insterts

**Medical Staff Signature:** [signature]

**White: Medical Records** **Yellow: Program Committee** **Pink: Housing Unit Officer** **Gold: Inmate**

(01/16) **Fishkill Correctional Facility, 18 Strack Drive, Beacon, NY 12508-0307 | (845) 831-4800 | www.doccs.ny.gov**

# EXHIBIT
# J

**INCARCERATED INDIVIDUAL PASS** DATE: 1/4/22

NAME: Rodriguez NO.: 17A0928

FROM: 9-1 BY.: Henning

ISSUED AT 10:00 (AM PM) (TIME) SIGNATURE

| | | | |
|---|---|---|---|
| TO: X ray Rm | ARR | | |
| (1) | LEFT | | |
| TO: | ARR | | |
| (2) | LEFT | | |
| TO: | ARR | | |
| (3) | LEFT | | |
| TO: | ARR | | |
| (4) | LEFT | | |
| RETURNED AT (AM PM) | | | |

VOID 2, 3, 4, IF NOT USED AT THIS TIME OF ISSUE

ATTACH CALL SLIP TO BACK OF PASS OR

PER PHONE REQUEST BY: X-Ray tech Aponte

REASON:

I27A (08/21) 1847368

HSPM 7.16
Attachment A

*STATE OF NEW YORK*
*DEPARTMENT OF CORRECTIONAL SERVICES*
DIAGNOSTIC TESTING NOTIFICATION
(NOTIFICACION DE PRUEBA DE DIAGNOSTICO)

NAME Rodriguez, Ralph (Nombre) DIN 17A0928

FACILITY FCF (Institucion) CELL LOCATION MB-9-1-20 (Ubicacion de la Celda)

REVIEWED BY M. Sullivan (Revisado por) (name & provider #) DATE 11/10/22 (Fecha) (MM/DD/YY)

THIS IS TO INFORM YOU THAT THE RESULTS OF THE TESTING CHECKED BELOW:
(Sirva este para informale que los resultados de la prueba identificada a continuacion)

X-RAY ✓ (Rayos-X) LAB TESTING ____ (Pueba de Laboratorio) OTHER ____ (Otro)

PERFORMED ON 11/9/22 (Ejecutada en) WERE REVIEWED BY A PRIMARY CARE PROVIDER. (la reviso un professional del cuidado primario)

✓ NO ACTION IS REQUIERED AT THIS TIME.
(No se exige accion en este momento.)

____ REPORT TO SICK CALL
(Reportese a Cita por Enfermedad.)

____ FOLLOW UP WILL BE ARRANGED WITH A PRIMARY PROVIDER.
(Se haran arregios para seguimiento con un professional del cuidado primario.)

____ FOLLOW UP WILL BE ARRANGED WITH A SPECIALIST.
(Se haran arregios con un especialista.)

DO NOT FILE IN AHR
(No archive en el AHR)

# EXHIBIT K

SWORN AFFIDAVIT

I'm making this sworn affidavit for Ralph Rodriguez, in reference to the Inmate Grievance Program, here in Fishkill Correctional, overseen under the Supervision of Sally Reams (IGPS).

I have written a number of Grievances dealing with issues that needed to be addressed urgently such as Medical not giving me the proper medical needed, as well as a number of other vital issues, and to date, more than half of the Grievances I have written has went ignored and when I write letters in reference to those Grievances, ms Reams fails to respond.

from what I have seen sine entering this facility, the IGP seems to only answer only certain Grievances while ignoring the more vital issues, and even when my Grievances do get responded to and regardless of the information i provide of proof given during the Inmate Grievance hearing, I have yet to win any Grievance, making the IGP and IGRC obsolete and severely inadequate, for example, I had went to a Grievance Hearing in regards to me being placed into the M.A.T program pursuant to the new executive law 631, and I had requested to be placed into the program as an American with Disability Act Title II, and shown documentation that an "Opiate Abuse is a Disability", and provided it to the Grievance committee, and the Director from medical said that an Opiate Addiction is not a disability, in complete contradiction to medical expert opinions, and my Grievance was denied, proving the the Grievance System here at Fishkill is non existing and unavailable for inmates to address vital issues.

Affidavit of

X[signature]

Eric Lindemann 21A0705
10-15-22

STERLING STEVENS
16A2565
FISHKILL CORRECTIONAL FACILITY
P.O. Box 1245
BEACON, NY 12508

11-25-21

RE: Sworn Affidavit

I Sterling Stevens am writing this Sworn Affidavit stating that as an Incarcerated Individual at Fishkill Correctional Facility the Grievance System in this Facility, overseen by the I.G.P. Supervisor Ms. Reams is Corrupt. Grievances here go unfiled, missing, ignored, and last manipulated by Committee Member who try to discourage an Individual's Goal of exhausting their Administrative Remedies. The Grievance System here is in direct Violation to Directive 4040 and, the ability to access the Courts.

The abilit to exhaust is non-existent. STERLING STEVENS

CC: To Whom it may Concern
File

E-38

Sworn Affidavit

I am writing this sworn affidavit in regards to the I.G.R.C (I.G.P), program here at Fishkill Correctional facility, overseen by Ms Sally Reams.

The program run by her is completely inadequate and nonexisting to the extent that Ms Reams, would Choose the Grievances she wish to files, and completely ignore others in violation to the rules and directive 4040, 4041.

Her actions and failure to act prevents inmates from exhausting their administrative Remedies, and complaints about her to the Administration goes unanswered and ignored as well. This is a sworn testimony of the way the Grievance System is ran here at Fishkill Correctional Facility.

Respectfully Submitted by,

[signature]

Marcus Gamba 17A2851

# SWORN AFFIDAVIT

I am making this sworn affidavit on the behalf of Ralph Rodriguez, in regards to the Inmate Grievance System here at Fishkill Correctional Facility.

There has been multiple times I had submitted Grievances that was ignored and unanswered, and Complaints about the IGRC goes unanswered by Administration.

In no way does the IGP follow the rules and Directives 4040, 4041. Since my time here at Fishkill Correctional there has only been one IGRC voting and it is suppose to be held every six months, and the members who work at the IGRC are not members voted by the inmate population, and that is because they work for ms, Reams and are not for the inmates.

The same IGRC reps have been there for years and by Directive can only serve for a six month period at a time and then a vote is suppose to be made and never once is any of those members chosen by the inmate population proving that the IGP is corrupt.

This is done purposely to persuade inmates to sign off on grievances and not allow the inmates within Fishkill to Exhaust Administrative Remedies.

Respectfully Submitted by,

A. Cordes

Akeem Cordes 21B0836

Ralph Rodriguez
Din# 17A0928
Housing unit 9-1
Fishkill Correctional facility
P.O Box 307
Beacon, NY 12508

IGRC 3-7-22

I am writting this grievance because on 12-31-21 officer Gibbons direct retaliation for me filing grievances and reporting C.E.R.T assaulting me. Her malicious act caused me to get injured and I filed a grievance on 1-3-22 and again on 1-7-22 with no responce. I filed an appeal to the Superintendent on 2-7-22 and still got no responce. I am now requesting an appeal to C.O.R.C for failure of the IGRC to respond to my grievances

Resolution Seeking: To have all my grievances Sent to C.O.R.C for investigation and actions.

X [signature]

C.C.

FORM 2131E (REV. 6/06)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

# INMATE GRIEVANCE COMPLAINT

Grievance No.

Fishkill Correctional CORRECTIONAL FACILITY

Date 2-21-22

Name Ralph Rodriguez Dept.No. 17A0928 Housing Unit 9-1 main

Program medical Idle AM medical Idle PM

*(Please Print or Type - This form must be filed within 21 calendar days of Grievance Incident)**

Description of Problem: (Please make as brief as possible) I have writen a grievance on 12-30-21 and on 12-31-21 The First was me being brutally assulted by C.E.R.T and severely injured the Second on officer Gibbons direct retaliation causing me to be again severely injured. A month later I got no resonance for both and appealed to the superintendent. Now of 21 days after that I've receved no Respone and now appeal both grievances To C.O.R.C

Grievant Signature Ralph Rodriguez

Grievance Clerk Date: 2-21-22

Advisor Requested ☐ YES ☒ NO Who:

Action requested by inmate: Grievance dated 12-30-21 and 12-31-21 to both be appealed to C.O.R.C Copies of all documents are in plantiffs files, IGRC fails to Respond to grievance IGRC supervisor Sally leams will be named as well as defendant in suit. For failure to do her duties and in violation of D.O.C.C.S Directives 4040, 4041

This Grievance has been informally resolved as follows:

This Informal Resolution is accepted:
(To be completed only if resolved prior to hearing)

4.C.1 of 2

Grievant Signature Date:

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).

*An exception to the time limit may be requested under Directive #4040, section 701.6(g).

FORM 21311E (9/12) STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

# INMATE GRIEVANCE COMPLAINT

**Grievance No.**

Fishkill CORRECTIONAL FACILITY

Date: 12-31-21

Name: Ralph Rodriguez Dept. No.: ______ Housing Unit: 9-1

Program: MI AM MI PM

***(Please Print or Type – This form must be filed within 21 calendar days of Grievance Incident)****

Description of Problem: (Please make as brief as possible) On the above date officer Gibbons worked my housing unit, and because I had two mattress for "medical reasons," she took me out my dorm into the hallway and told me to stare at the wall. I tried to explain to her that C.E.R.T had severly injured me and I couldnt stand but she threaten to pull her pin so I complied and after 20 minutes I fell down hurting my neck, back, head and knee. A Code Green was called and I was sent to medical because of her malicious retalitory intent.

Grievant Signature: Ralph Rodriguez

Grievance Clerk: ______ Date: ______

Advisor Requested ☐ YES ☒ NO Who: ______

Action requested by inmate: to report her actions of negligence, retaliation and malicious intent on a fully Disabled inmate with medical limitations of being unable to stand for prelong period of time and that was prior to CERT injuring me severly, including an ankle, leg injury.

The Grievance has been formally resolved as follows:

This Informal Resolution is accepted:
(To be completed only if resolved prior to hearing)

Grievant Signature: ______ Date: ______

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).

* An exception to the time limit may be requested under Directive #4040, section 701.6(g).

E2

FORM 21311E (9/12) STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

# INMATE GRIEVANCE COMPLAINT

**Grievance No.**

Fishkill CORRECTIONAL FACILITY

Date: 12-31-21

Name: Ralph Rodriguez Dept. No.: ______ Housing Unit: 9-1

Program: MI AM MI PM

***(Please Print or Type – This form must be filed within 21 calendar days of Grievance Incident)****

Description of Problem: (Please make as brief as possible) On 12-30-21 C.E.R.T came into my housing unit and Brutally maliciously assaulted me and six other inmates. They severly injured my Neck, Back, head, knee, wrist, ankle, Ribs and head. They destroyed my legal papers as well. An officer dressed in all black Riot gear grabbed me by my neck threw me on the floor and five others jumped me and in no way was they provoked. I am fully Disable and there actions was purely malicious

Grievant Signature: [signature]

Grievance Clerk: ______ Date: ______

Advisor Requested ☐ YES ☐ NO Who: ______

Action requested by inmate: To Report there actions, and have documentation on the Record.

The Grievance has been formally resolved as follows:

This Informal Resolution is accepted:
(To be completed only if resolved prior to hearing)

Grievant Signature: ______ Date: ______

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).

* An exception to the time limit may be requested under Directive #4040, section 701.6 (g)

Ralph Rodriguez
Din# 17A0928
Housing unit 9-1
Fishkill Correctional facility
P.O Box 307
Beacon NY 12508

1-7-22

IGRC

I am writting this grievance "Again" because I wrote one on or about 1-3-22, and still have not got any responce and was informed that the IGP supervisor Ms Reams is throwing out Grievances dealing with the C.E.R.T Incident.

On 12-30-21 CERT came into my housing unit and assaulted seven of the inmates, myself was included I was jumped by five officers for no reason at All, and was brutally assaulted. They hit me a number of times with close fist injuring my Neck, head, back, wrist (Right), Ankle (Left), Ribs and I am severely injured, and wish to report these actions to exhaust my administrative Remedies.

Resolution seeking: To Report the fact I was Brutally assaulted and Injured by C.E.R.T on 12-30-21

x [signature]

C.C.I

Ralph Rodriguez
Din# 17A0928
Housing Unit 9-1
Fishkill Correctional facility
P.O Box 307
Beacon NY 12508

1-7-22

IGRC

I am writting this grievance a "Second time" because I.g.R.C has failed to respond to my first grievance. On 12-31-21 officer Gibbons worked my housing unit and seen me laying on my bed in pain because the day prior I was assaulted by C.E.R.T and had two ace bands on my leg and wrist. There was no Room in the ICU so I was sent back to my dorm and I had to use a second mat to support my back and injuries. Ms Gibbons seen my second mat and told me to get up and took me out to the hallway and ordered me to stand in front of the wall and stair at it till she is done messing up my cubical Area. After 20 minutes I fell down hitting my head and injuring my neck, back, head and further injuring my injuries. Her actions was in retaliation to me filling out a grievance and Due to her neglegence and malice I was injured again.

Resolution Seeking: To Report her actions of retaliation and malice so she can be reprimanded and fired.

(c.c)

x [signature]

Ralph Rodriguez
Din# 17A0928
Housing unit 91
Fishkill correctional facility
P.O Box 307
Beacon, NY 12508

IGRC

2-7-22

I am writting this grievance because on 12-31-22 ms Gibbons malice actions towards me in retaliation of me writting grievances caused me to be injured again and a grievance along with a Civil Complaint under §75(1)(2)(3) was filed against her. IGRC had failed to respond and so I am writting to have my grievance forwarded to the Superintendent Burnett.

Resolution seeking: To have my grievances appealed to the superintendent.

X [signature]

C.C.I

Ralph Rodriguez
Din# 17A0928
Housing unit 9-1
Fishkill Correctional facility
PO Box 307
Beacon NY 12508

2-7-22

IGRC

I am writting this grievance because on or about 1-3-22 I filed a grievance about C.E.R.T Brutally assaulted me on 12-30-21 and severely injured me, and I have received no responce from IGRC and am now appealing to the Superintendent for failure to respond.

Resolution Seeking: To have my grievance answered and responded to

x [signature]

CCI

Ralph Rodriquez
Din# 17A0928
Housing unit 9-1

IGRC

2-24-22

I am writing this grievance because On 12-30-21 and 12-31-21 I was injured and a Code Green was called on both dates an Injury report was made and a request for a copy for those reports was made and the Foil personnel F. Wilbur has informed me that she can not locate both the injury Reports. Sergeant Gibson was the officer who was present on both incidents and seen me and how severely I was injured. my medical Records have all the information and nurse Mukkatt made the reports in front of my provider ms Sullivan. Yet They can not be found

Resolution seeking: To have my injury report Located as soon as possible.

c.c) of 7/

Ralph Rodriguez
Din# 17A0928
Housing Unit 9-1
Fishkill Correctional facility

IGRC

2-28-22

I am writing this grievance because on 2-28-22 I recieved copies of my medical Records dated 12-30-21 and 12-31-21. Upon Review of the records the record dated 12-31-21 was falsified. On 12-31-21 I had been injured due to officer Gibbons malice recless intent knowing I was already seriously injured the day prior and she had me stand in front of the hallway wall with a multitude of injuries which also included a leg injury for 20 minutes and I fell down hitting my head and injuring my back. The nurse put down in the Ambulatory Health record progress note that "Denies Hitting head" "landed on buttocks" "NO new injuries sustained" all this information is false. I Hit my head on the wall and injured my Neck, Back and head as well as further injured my leg and ankle. The nurse was white woman with blond hair and an accent. She Completely falsified my medical records, and will be including her in my Claim.
Nurse gifty CUJAS N RN# 574

Resolution Seeking: To have my medical Records to reflect the Real Injuries to my Ambulatory Health Record Progress note to be corrected and for the nurse to be reprimanded for her illegal actions. I wish to be Present at the IGRC Hearing.

(LCT)

Ralph Rodriguez
Din # 17A0928
Housing unit 9-1
Fishkill Correctional facility
P.O Box 307
Beacon, NY 12508

IGRC 3-7-22

I am writting this grievance because on 12-31-21 officer Gibbons direct retaliation for me filing grievances and reporting C.E.R.T assaulting me. Her malicious act caused me to get injured and I filed a grievance on 1-3-22 and again on 1-7-22 with no response. I filed an appeal to the Superintendent on 2-7-22 and still got no responce. I am now requesting an appeal to C.O.R.C for failure of the IGRC to respond to my grievances

Resolution Seeking: To have all my grievances Sent to C.O.R.C for investigation and actions.

X [signature]

C.C

Ralph Rodriguez
Din# 17A0928
Housing unit 9-1
Fishkill Correctional facility
P.O Box 307
Beacon, NY 12508

IGRC

3-7-22

I am writting this grievance because on 12-30-21 I was assaulted by C.E.R.T and wrote a grievance. That grievance was not answered so on 1-7-22 I wrote a second grievance with still no responce. On 2-7-22 I wrote a grievance to appeal to the superintendent with still no responce, and now I'm writting another grievance to appeal to C.O.R.C for failure to respond. I know how to exhaust my administrative remedies and am following all the steps and the IGRC supervisor ms Reams is hindering my attempts to exhaust violating directive 4040 and 4041.

Remedy requested: To have all my grievances sent to C.O.R.C and to report ms Reams failure to perform her duty and attempts to hinder plaintiffs Administrative Remedies

x [signature]

C.C. 1

Ralph Rodriguez
Din# 17A0928
Housing unit 9-1

3-10-22

IGRC

I am writting this grievance because I got a letter from IGRC regarding grievances I submitted "timely" about me being assaulted on 12-30-21 and getting Injured on 12-31-21 yet IGRC supervisor ms Reams "Claims" she never got it, and responded to the grievances saying they are untimely. I kept copies of everything and notified a number of organizations and law firms about the IGRC at fishkill being Corrupt and inadequate. I have multiple sworn affidavits from inmates whom stated the same issue about ms Reams failing to submit grievances Claiming "they could have gotten lost." All grievances were submitted timely, letters was written to IGRC and Administration, that went unanswered.

Resolution Seeking: For all my grievances to be filed timely and not be ignored, then claimed not received

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

**FISHKILL CORRECTIONAL FACILITY**

**GRIEVANCE RECEIPT NOTIFICATION**

**TO:** Rodriguez, R 17A0978
(NAME / DIN #)

**FROM:** Grievance Office

**DATE FILED:** 9/13/2022

This is to inform you that the below referenced grievance has been received by the Grievance Office and filed on the date noted above.

**GRIEVANCE #** 2291-22

**CODE** 7

**TITLE** Denied Gym/Weight Shack

Ralph Rodriguez
Din # 17A0928
Housing Unit 9-1
Fishkill Correctional Facility
P.O Box 307, Beacon New York 12508

9-20-22

"G R I E V A N C E"

I am writing this Grievance because on 9-13-22, I had filed a Grievance against an Officer Alexandra Gibbons, for "HARASSMENT", Grievance # 0292-22, Code 49, and on 9-16-22, I was interviewed by Lieutenant Stephen Carlesimo, and fully explained the situation about his officer and her illegal actions and harassment towards me, including the Fact that this Officer Gibbons has had "Multiple Complaints and Grievances" against her and to date nothing has been done about her unprofessional Conducts and violating the Code of ethics.

Today on 9-20-22 while I was at work at the Law Library, Officer Gibbons had entered my housing Unit "Screaming and Shouting Where is he? Where is he?" Looking all around the unit for me, in a hostile manner, and seeing I was not at the unit entered my room.

When I got back to my unit multiple inmates told me of her actions and when I got to my room I had seen that my personal belonging was thrown around, and she was not my housing unit officer nor was she authorized to do a search in my room or be in it, and did not leave any search receipt, and her actions was done in Direct "RETALIATION", for me writing a Grievance against her in direct violation to D.O.C.C.S Directive 4040 and 4041 IGP.

I had quickly called O.S.I and informed them of the situation and spoke to an O.S.I officer Oliver who took down the information and made the complaint.

I was informed by this O.S.I officer to write another Grievance and if "ANY MORE RETALIATION IS DONE TO ME REPORT IT AGAIN, AND THE PROPER MEASURES WILL BE TAKEN", and so I am now following his instructions as well as informed Lieutenant Carlesimo as well, because this officer Gibbons has been known to set inmate up, and/or send other officers after inmates as Retaliation, wherefore if anything else should occur the proper chain of command has been followed, and something about her unethical conduct can be addressed by the proper superiors and measures can be taken, to stop these illegal actions.

RESOLUTION SEEKING; To have this officer leave me alone and stop harassing and retaliating against me because she is mentally unstable. Respectfully submitted by

Ralph Rodriguez
Din # 17A0928
Housing Unit 9-1
Fishkill Correctional Facility
P.O Box 307, Beacon New York 12508

9-20-22

Dear Lieut. Carlesimo Stephen

I am writing to you because on 9-16-22 I was interviewed by you in regards to my Grievance against Officer Alexandra Gibbons, Grievance # 0292-22 for Harassment, and when we Spoke, I had fully informed you of the situation and was in hopes that the issue could be resolved without any further situations but that does not seem to be the issue, because to day Officer Gibbons came into the housing unit screaming and shouting "where is he", in a severely aggressive manner, and although I was not at the housing unit, because i was at work at the law library, multiple inmates had told me, and when I got to the unit, and entered my room, my personal belonging were thrown around, and she had entered my room without me being present and did not had any authorization to do so because I did not have any search receipt, and she was not my housing unit officer.

I had called O.S.I and reported her actions to a Mr Oliver who made a complaint file, and today received a letter from the commissioner stating that he had forward my issues as well to O.S.I for further investigation, because now she is "Retaliating", against me for writing a Grievance against her, and my attempts to resolve this issue, had proved worthless, wherefore, I am being forced to move forward on another grievance against her, because of this issue, of "Retaliation", and am writing to inform you of what had occurred and am in hopes that, the discussion we had, of me just wanting her to leave me alone, does not seem to be working, and her entering my room without me or anyone present is severely burdensome because Officer Gibbons "Can Put Anything In My Room", in an attempt to "Set Me Up", and this issue is getting worse not better. Im sorry to burden you with this issue, but as stated before, "This Is Not My Fault, And She Is Not Stable", and am reporting her actions of retaliation once again, putting you on full notice of her actions

C. 1 of 4 Dep of Security Superintendent

Respectfully Submitted, [signature]

# EXHIBIT L