Ralph Rodriguez
Din # 1740928
Housing unit 9-1
Fishkill Correctional

4-20-22

Superintendent

I am writing to you because of the
incident that had occurred to me last
year regarding C.E.R.T and the Grievance
department failing to process my Grievances
and my Injury report dated 12-30-21 and
12-31-21, both being suddenly lost see
attachment.

I am writing to inform you that
whats been going on with falsafying
of documents and failure to process
grievances, and medical assisting with
cover-up is a "Consiracy", and is
against the law.

As the Superintendent it is your
duty to investigate these issues and to
ensure this is put to a stop, and all
letters I've written to you goes unanswered
and ignored, including letters written to the
administrative staff, so Im ensuring your "on
Notice", of all these corrupt acts, X _____

cc 1 of 3

Ralph Rodriguez
Din # 17A0528
Housing unit 9-1
Fishkill correctional facility
P.O Box 307
Beacon, NY 12508

Dear Superintendent (Burnett)                    3-7-22

I am writing to you because on 12-30-21 and on 12-31-21 I was injured due to the malicious intentional acts of C.E.R.T and officer Gibbons and I filed a grievance on 1-3-22 and again on 1-7-22 with no response. I then filed a grievance to appeal the issue to the superintendent on 2-7-22 with again no response and on 3-7-22 I filed a grievance to have all my grievances appealed to C.O.R.C for failure of the IGRC to respond. The Supervisor ms Reams has intentionally failed to respond to my grievances or any letters I have written her. She is in violation of the directive 4040 and 4041. failing to perform her duties as The IGRC supervisor and is attempted to hinder my exhution of my administrative Remedies. I am writing to you about this matter, and am including all my grievances so you can investigate why ms Reams is not answering any of my grievances and why she is attempting to conceal what happens to the inmates when C.E.R.T assaulted

I am sending to you a copy of all my grievances to put in file to ensure I had attempted to exhaust my administrative remedies and to have you investigate why ms Reams has failed to file any of my grievances in violation of Directive 4040 and 4041.

Mr Burnett far to often ms Reams actions and failure to perform her duties as the ZGRC Supervisor is a big problem and her actions and failure to act will be including her as a defendant in my claim As the Superintendent I'm humbly requesting you investigate the matter, and move forward accordingly to ensure inmates have an ZGRC program that addresses our issues and problems and not just disregard our grievances and violate our constitutional right to petition the CCI court. thank you for your time respectfully [signature]



# Corrections and Community Supervision

**KATHY HOCHUL**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

TO:  RODRIGUEZ, R., # 17A0928  9-1

FROM: S. Reams, IGP Supervisor

SUBJECT:  Late Complaint

DATE:  3/10/22

Please be advised that in accordance with Directive # 4040, section 701.5, a, 1: "an inmate must submit a complaint to the clerk within 21 calendar days of an alleged occurrence on an Inmate Grievance Complaint Form (Form # 2131).  If this form is not readily available, a complaint may be submitted on plain paper.  The Complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility."  Note:  Exceptions to this time limit or any appeal time limits may be approved by the IGP supervisor under section 701.6 (g).

In accordance with Directive # 4040, section 701.6, g, 1, ii, "an inmate may pursue a complaint that an exception to the time limit was denied, by filing a separate grievance."

It is also noted that in accordance with Directive # 4040, 701, g, 1, I, a: "The IGP supervisor may grant an exception to the time limit for filing a grievance based on mitigating circumstances (e.g., timely attempt to resolve a complaint informally by the inmate, etc.).  **An exception to the time limit may not be granted more than 45 days after an alleged occurrence."**

Your issue concerns an incident dated 12-30-21, which makes this complaint too late to accept for processing.  As I stated to you today in the IGRC office area, any incarcerated individual assigned to the general population may follow up on any complaint that they state they have submitted, by asking the housing unit officer to call the IGRC office and then coming directly to the IGRC office. At this time, the incarcerated individual may hand deliver a copy of the allegedly submitted complaint or they may sit down and write another one in the IGRC office.  It is advisable to follow up on a complaint, directly with the IGRC office in a timely manner, due to the 21 day time limit from the date of incident to file a complaint.


cc:  file

# EXHIBIT
# M

SWORN AFFIDAVIT

I am a inmate at Fishkill Correctional Facility and have multiple medical condition that consist of injuries to my right shoulder, left ankle/leg as well as mental health issues all requiring medication and the medical providers within this facility is severely inadequate. Failing to provide the proper medication and are Deliberately Indifferent to my as well as countless other inmates within this facility. I was approved to get medical boots well over a year ago and was fitted in October of 2021 and to date I have still not received my medical boots. I am suppose to also get surgery on my shoulder, which should have been done months ago, and to date I still have not gotten it. Numerous sick call request goes unanswered, and when I do get called nothing is done to help me with my pain and suffering. The medical staff and providers are Deliberately Indifferent to my medical needs, and grievances are ignored and do nothing to assist. Fishkill Correctional is a Medical facility, and there standard of care is below minimum standard of care and negligence is a common occurrence.

Respectfully submitted by

James Haney #08A4896
James Haney 2-2-22

Im a inmate incarcerated a Fishkill Correctional Facility, and have severe medical issues, which include CROHNS DISEASE, and the facility has been giving me a different medication than what Ive always taken. This medication has severe side effects and causes me severe pain and suffering, all my attempts of getting my proper medication has failed and the medical staff has been Deliberately Indifferent to my medical needs and condition. I am making this sworn affidavit to R. Rodriguez so he can inform the proper authority and or Courts of this facilities actions and failure to act.

Respectfully submitted

x Damel Thomas
Print

x Damel Thomas
Sign

2-5-22

# EXHIBIT N

STATE OF NEW YORK : COURT OF CLAIMS

                                   NOTICE OF INTENTION
                                     TO FILE A CLAIM

Ralph Rodriguez Din# 17A0928

                                     INDEX NO. _____

           -against-

THE STATE OF NEW YORK

TO THE ATTORNEY GENERAL OF THE STATE OF NEW YORK

    I, Ralph Rodriguez_____, intend to file a claim against the State of New York, pursuant to Sections 10 and 11 of the Court of Claims Act.

    I reside at Fishkill Correctional Facility, P.O. Box 1245, Beacon, New York 12508.

    For the time being, I am representing myself.

    The time and place where my claim arose and the nature thereof are as follows: On 12-30-21 C.E.R.T (Correctional Emergency Response Team), Came into my housing Unit 9-1, and Deliberately, Sadistically, Maliciously, brutally, attacked and assaulted seven inmates within my unit, myself included. There actions had absolutely no legitimate Penological Justification, and was a deliberate indifference to my Federal and civil rights, as well as my Americans with Disabilities Act title II rights. They physically assaulted me severely injuring my Head, Neck, Back, Ribs, Arms, Wrist, Knee, and Ankle. I am Fully Disable, and there actions was Completely Unjustified

DATED: BEACON, NEW YORK

                                       _____
                                       Claimant

1 - 10 - 22

* If you need more lines to complete the facts of your notice of Intention use additional paper.

VERIFICATION

**STATE OF NEW YORK**
**COUNTY OF DUTCHESS**

I, _Ralph Rodriguez_, being duly sworn, state:
I am the <u>Claimant</u> in this action. The foregoing <u>Notice of
Intention To File A Claim</u> is true to my own knowledge, except as
to matters therein stated to be alleged on information and
belief and as to those matters I believe to be true.

SWORN TO BEFORE ME THIS 10th
DAY OF January , 20 22

NOTARY PUBLIC

JESSICA STARSIAK
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Orange County
01ST6395368
MY COMMISSION EXPIRES 09/20/2023

**AFFIDAVIT OF SERVICE**

**STATE OF NEW YORK**
**COUNTY OF DUTCHESS**

_Ralph Rodriguez_, being duly sworn, deposes and says:

1.  I am the <u>Claimant</u> in the instant action and am over 18 years of age.

2.  On the _10_ day of _January_, 20 _22_, I served the within <u>Notice of Intention To File A Claim</u> upon:

| | |
|---|---|
| The Attorney General | One (1) copy by certified mail, |
| State of New York | return receipt requested |
| The Capitol | |
| Albany, New York 12224 | |

by depositing a true copy of the within in a properly addressed wrapper with postage paid and forms attached for certified mail, return receipt requested, in an official depository under the exclusive care and custody of the New York State Department of Correctional Services.

SWORN TO BEFORE ME THIS _10th_
DAY OF _January_, 20 _22_

NOTARY PUBLIC

JESSICA STARSIAK
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Orange County
01ST6398368
MY COMMISSION EXPIRES 09/30/2023

# EXHIBIT

# O

Ralph Rodriguez

Din # 17A0928

Fishkill Correction Facility

P.O Box 307

Beacon, New York 12508


To Whom It May Concern

My name is Ralph Rodriguez and I am an inmate at Fishkill correctional Facility, under Din number 17A0928, and I am a fully Disable inmate.

I am writing to you because on 12-24-21 an inmate within this facility allegedly attempted to walk out the facility, and we was put on lock down for no more than 24 hours, and the very next day we was off lockdown, and the facility continued to move along as normal. This is a medical and mental health facility, and things such as this has happened in the past. Yet on 12-27-21 the Facility was put back on lockdown and C.E.R.T was deployed unto our facility. At no time was there any Security Risk or issue deeming there deployment justified, and when they arrived here, they went from housing unit to housing unit, destroying property of the state, and severely injuring multiple inmates.

I myself was on of these inmates, and on 12-30-21, C.E.R.T came into my housing unit on or about 6:45 am. Prior to there arrival the phones were shut off, and we could see from our windows inmates being kept in the Mess Hall area with their hands above their heads in boxers, and every now and then an inmate would be brutally assaulted. We could hear form our dorms Screams and cries for help that went unanswered, and any attempts to call or inform the authorities of this violent Civil Rights violation went unanswered. The inmate who attempted to walk out the facility was from my housing unit, and each and every inmate within my housing unit was littered with fear, because we knew that when they did come, they had something extra planned for us, because it was said by the staff that "We Ruined there Christmas Weekend". When they arrived to my housing unit the lights were of and they came in screaming and shouting banging there night sticks into whatever they seen.

①

Immediately without just cause or reason, they started to attack multiple inmates, and I was one of the inmates closest to the door, and as I sat up immediately after they came in I was grabbed from behind my neck and back, lifted off my bed and brutally assaulted by on or about five C.E.R.T officers who was dressed in all black wearing protective gear. While I was being assaulted, I was hit with full closed fist and kicked with there army boots, and as I was being assaulted for about 3-5 minutes One of the officers was saying as he hit me "You Fucking Spick", and that when my leg was pulled from behind me and twisted the opposite way, as well as my arm and wrist. I have severe medical issues and my right hand is disable, as well as had numerous surgery, and have neurological damages, and I screamed out in pain and said "IM DISABLE, IM DISABLE", and after a few more hits later I was lifted up off the floor and slammed face first into the wall, and an officer cuffed me and another was checking my ID and medical documents. During this time six other inmates were also being brutally assaulted as well, and injured. The officer who checked my identification then said "Take those cuffs off him", and they did and the officer holding me said "Just Shut The Fuck Up and Don't Move", which I complied with. I was bleeding through my mouth and head, and they had injured my Head, Neck, Back, Ribs, Legs, Left Ankle, Hands and Wrist, and I was in Severe Pain and Suffering. During this time, all the other inmates whom was also bleeding was dragged away and sent to medical, all being given disciplinary tickets , as a form of justifying their actions, but in no way was any of inmates resisting or failed to follow orders, this was a mass assault on the inmate's within this facility. I myself was never given any Disciplinary ticket, because they could not justify there brutal assault on me, because of my Disablity.

It took me well over 10 hours before I was given any medical attention, and when I did make it to medical, in no way was I given any proper care. I was given aspirin and two ace bands and was suppose to be placed into I.C.U but because every room was occupied by an inmate, there was no room for me, so I was sent back to my housing unit, limping and in severe pain.

I made a number of Grievances that went unanswered and made a number of complaint consisting of

President Joe Bidden, Law Department of the White House

Department Of Justice, Complaint Number 147143-GCP

Department Of Correctional, Community, Supervision, In Albany

Division Of Human Rights

Correctional Association Of New York (C.A.N.Y)

Now I am respectfully Requesting that a Complaint be made on my Behalf with your Department/Organization, and or Grievance be made.

I am also respectfully requesting Pursuant to the "Freedom Of Information Act", Any and All Complaints or Grievances you may have on file, in regards to C.E.R.T, D.O.C.C.S, and Fishkill Correctional Facility, that you may have on file, including any Investigation reports made, against these entities.  ( For Excessive Force, and Civil Rights Violations)

I am requesting this information because I am currently pursuing a Civil Rights Claim, against multiple Defendants for the incident that had occurred Please See Rodriguez v. Burnett,et..al., 7:22-CV-02198(PMH), and was granted to proceed "IN FORMA  PAUPERIS", and any fee's that may be required can be directed to the "PRO-SE DEPARTMENT", Southern District Of New York, using my claim number.

Im sorry with having to burden you with this issue, but what had occurred here at Fishkill Correctional was unjustified and a Brutal Assault on myself as well as Countless others, and Civil Rights Violations such as these should never go unanswered or brushed under the table, just because we are Incarcerated Individuals of the state, for we are still someones father, Brother, Uncle, Son, Grandson, etc, and are still Civilians of the United States of American with Rights, that should never be violated.

Thank you for your time, and I am in hopes of receiving the information I requested as well as getting a Complaint number, and this incident brought to light, Respectfully your,

CRT Complaint Records



# U.S. Department of Justice
# Civil Rights Division

*Washington, DC 20530*

May 23, 2022

Ralph Rodriguez Din #17A0928
Fishkill Correctional Facility
P. O. Box 1245
Beacon, NY 12508

Dear Ralph Rodriguez Din #17A0928,

Thank you for your letter on January 25, 2022. Your report number is 147143-
GCP. Please refer to it if you write us in the future. This letter will tell you how
the Special Litigation Section will review your report and what other options you
may choose to pursue.

The Special Litigation Section only handles cases that arise from widespread
problems that affect groups of people. We do not assist with individual
problems, except as noted below. In general, we cannot help you recover
damages or any personal relief. Nor can we assist in criminal cases, including
wrongful convictions, appeals or sentencing. We also cannot assist with issues
involving federal facilities or federal officials.

There are only two areas in which the law allows us to investigate and address
individual incidents:

- if you are being prevented from practicing your religion in a prison, jail,
  mental hospital or other facility operated by or for a state or local
  government; or
- if you have encountered a physical obstruction or experienced force or the
  threat of force when accessing a reproductive health care facility or
  religious institution.

Each week, we receive many reports of potential violations. We analyze this
information to help us select new cases or pursue existing cases. We will review

Ralph Rodriguez #17A0928
Fishkill Correctional Facility



1/14/2022
Dear Mr. Rodriguez,

Thank you for contacting The Correctional Association of New York
(CANY)! CANY is the only independent organization in New York with authority under state law to
monitor prisons. Under state mandate, we visit prisons, meet with incarcerated persons, correctional
officers, and NYS DOCCS officials and report on conditions of confinement to the Commissioner, state
legislators, and the public. While we do not have the authority to dictate changes within the system or
provide individual legal assistance, we engage in a variety of advocacy strategies to promote
improvements across the entire prison system. The information we receive from you and others helps
keep us in touch and informed with what is happening on the inside. All that you and others share helps
ensure that policy-makers and the public hear the voices of those most impacted by the prison system.

Although we cannot provide individual advocacy, we do keep track of many different issues in prisons,
as reported to us by people inside and as observed on our facility visits. If you would like to be placed on
a visiting list for future visits by CANY, please let us know.

We also may share the information provided to us with legislators or the public to assist with advocacy
efforts and uplift the voices of those who are incarcerated. Names and any other information that could
be used to identify a person **will not** be shared. If a person does not want us to share anything they have
written, they can write to us and let us know. Anyone is welcome to continue reporting to us even if
they do not want their experiences to be shared or publicized.

Upon release, you may reach out to us via phone at **212-254-5700**  or continue to write to us. Please feel
free to share our contact information with others, which is listed below.

Enclosed with this letter are the following:
☒ **Action Guide** with some information and contacts regarding different areas of concern and how to
address them through administrative/grievance processes, as well as information on organizations that
can provide individual advocacy.
☒ **Information** about the activities of CANY and how else you could engage in prison advocacy.

Thank you,

Correctional Association of New York

**Please note our new address:**
**Correctional Association of New York**
**Post Office Box 793**
**Brooklyn, NY 11207**

**We accept collect calls: (212) 254-5700**
**info@correctionalassociation.org**
**www.correctionalassociation.org**



**NEW YORK STATE** | **Division of Human Rights**

**KATHY HOCHUL**
Governor

**MARIA L. IMPERIAL**
Acting Commissioner

January 13, 2022

Ralph Rodriguez #17A0928
Fishkill Correctional Facility
PO Box 1245
Beacon, NY 12508

Dear Mr. Rodriguez,

We are in receipt of your letter dated January 4, 2022.  Your inquiry does not appear to fall within the jurisdiction of this agency.  We have taken the liberty of forwarding your letter to Prisoner's Legal Services of New York for their recommendation.

You may contact them directly at:

Prisoner's Legal Services of New York
10 Little Britain Road, Suite 204
Newburgh, NY 12550

I hope this information is helpful to you.

Sincerely,

Manny Kottaram
Bureau of External Relations



*TASC is sponsored by the Administration on Intellectual and Developmental Disabilities (AIDD), the Substance Abuse and Mental Health Services Administration (SAMHSA), the Rehabilitation Services Administration (RSA), the Social Security Administration (SSA), and the Health Resources Services Administration (HRSA). TASC is a division of the National Disability Rights Network (NDRN).*

January 20, 2022

**LEGAL MAIL**

Ralph Rodriguez DIN: 17A0928
Fishkill Correctional Facility
Box 1245
Beacon, New York 12508

Dear Ralph:

Thank you for your recent request for information.  The National Disability Rights Network (NDRN) is the membership association for the nationwide network of federally-mandated Protection & Advocacy (P&A) agencies that operate in each of the states and territories.

To this end, NDRN does not provide direct legal services to individuals.  However, you may contact your state P & A for assistance or information regarding disability-related matters.

You can contact the P &A in your state at:

Disability Rights New York
725 Broadway, Suite 450
Albany, NY  12207

| **Phone:** | (518) 432-7861 | **Toll Free:** | (800) 993-8982 |
|---|---|---|---|
| **TTY:** | (800) 993-8982 | | |
| **FAX:** | (518) 427-6561 | | |
| **Web Page:** | www.drny.org | | |

P&As provide legal representation, information and referral services, and other assistance to individuals with all types disabilities.  These agencies, however, are restricted in the specific types of services they are able to provide individuals, based on eligibility requirements in federal law and a set of priorities for services that has been specified for the P&A by the local disability community.

For more Information on NDRN and P&As, please visit www.ndrn.org .

Sincerely, Elijah Henderson

# SIVIN, MILLER & ROCHE LLP

Attorneys at Law
20 Vesey Street
Suite 1400
New York, New York 10007

**Glenn D. Miller**
**Edward Sivin***
**David Roche**

Phone:  **(212) 349-0300**
Fax:      **(212) 406-9462**

---------------
**Clyde M. Rastetter**

*also member of NJ Bar

September 8th, 2022

**VIA LEGAL MAIL**
Ralph Rodriguez (DIN#: 17-A-0928)
Fishkill Correctional Facility
271 Matteawan Road, P.O. Box 1245
Beacon, NY 12508

Re:  Incident on December 30th, 2021

Dear Mr. Rodriguez,

Unfortunately, we have determined that we are not in a position to represent you in connection with a claim or lawsuit to recover damages for injuries you sustained at Fishkill Correctional Facility on December 30th, 2021. We are a small firm and are necessarily limited in the number and types of cases we can take on. Our decision does not mean that your case does not have merit. **Therefore, if you still are interested in pursuing a claim or lawsuit, I suggest that you immediately contact another lawyer.** If and when you have access to telephone use, one such way to pursue finding another lawyer would be to contact the New York State Bar Association Lawyer Referral Service at 1(800) 342-3661 or Prisoners' Legal Services of New York Albany Office (518) 438-8046 and explain your situation.

In the meantime, I enclose herewith a summary of time limitations that apply to claims and lawsuits brought by inmates in New York State correctional facilities as well as all documents related to your case.

Very truly yours,

Stephanie Leibowitz
Paralegal

/sl
encl.



**Commission of Correction**

**ALLEN RILEY**
Chairman

**THOMAS J. LOUGHREN**
Commissioner

**YOLANDA CANTY**
Commissioner

September 15, 2022

Ralph Rodriguez
DIN #17A0928
Fishkill Correctional Facility
PO Box 307
Beacon, NY 12508

Re: FOIL #000011-091522

Dear Ralph Rodriguez:

The New York State Commission of Correction received a public information request from you on September 14, 2022. Your request mentioned:

"a copy of any and all complaints or grievances on file in regards to CERT, DOCCS and Fishkill Correctional Facility including any investigation reports made against these entities".

With regard to your request for any grievances on file regarding to CERT, DOCCS and the Fishkill Correctional Facility, the Commission has conducted a diligent search for records and was not able to locate any records responsive to your request.

With regard to your request for all complaints on file regarding CERT, DOCCS and the Fishkill Correctional Facility, the Commission cannot, under its current system of recordkeeping, retrieve relevant complaints by such a specific complaint subject. As such, it is the opinion of Counsel's Office that, pursuant to Public Officers Law §89(3), you have not "reasonably described" the records sought in the above Freedom of Information Law request, and the same is therefore denied.

Pursuant to Public Officers Law §89(4)(a) you have 30 days to submit a written appeal of this determination to:

> State Commission of Correction FOIL Appeals Officer
> Alfred E. Smith State Office Building
> 80 South Swan Street, 12th Floor
> Albany, NY 12210

Sincerely,

Records Access Officer

# EXHIBIT P

On 12-30-21 at around 7:00am CERT (Correctional Emergency Response Team) came into my housing unit, which is 9-1, and severely assaulted 7 inmates. One of them was my neighbor, Ralph Rodriguez DIN 17A0928 and for no reason violently and maliciously assaulted him. One officer had grabbed him by his head and at the same time another grabbed him by his neck. At that point a third officer grabbed Mr. Rodriguez' arm and pulled him out of his cube, at which point those three officers who were manhandling him were joined by two more officers and began hitting him repeatedly with with closed fists. Mr Rodriguez was yelling out, "I'm disabled, I'm disabled!" They still continued the assault for almost a full minute before they stopped. One of the officers took his ID out to check it and saw his medical limitations and told the officer who had him against the wall to "uncuff him and let him go" Because of the fact that he in no way provoked the attack they then left him alone. He was severely injured and didn't even receive medical attention finally until after 6pm, almost a full twelve hours later. This is my sworn affidavit.

1-1-22

William Stepnowski 19R1343

William Stepnowski 19R1343

<u>Affidavit</u>                                          1/1/2022


On December 30, 2021 a little after 7AM a CERT (Corrections Emergency Response Team) comprised of Corrections Officers from at least 3 other prisons, stormed into my housing unit which is 9-1 and immediately began barking orders and brutally assaulting many people. Seven people were brutally assaulted, one of those seven individuals being Ralph Rodriguez DIN 17A0928.

With malicious intent several members of the CERT squad grabbed Mr. Rodriguez and for no reason and without provokation began assaulting him. They pulled Mr. Rodriguez out of his Cube. The first and second officers grabbed him by his head and neck, and a third member grabbed him by the arm, then these three members of the CERT squad were joined by two other officers who all commenced pounding on Mr. Rodriguez with closed fists. Mr. Rodriguez was yelling "I'm disabled, I'm disabled" while being assaulted. He was then handcuffed after being brutalized. The assault on Mr. Rodriguez continued for a full minute after he yelled "I'm disabled". After Mr. Rodriguez was handcuffed an officer took his ID to check his name and saw that he had medical limitations and was in fact disabled and instructed the officer still holding him to uncuff him and let him go. Mr. Rodriguez did not receive medical attention until after 6PM.


X ___ A. Cordes 21B0836

X ___ A. Cordes

Andrew Mullings
Din#: 02A2656
Fishkill Correctional Facility
P.O. Box 1245
Beacon, New York 12508

NEW YORK STATE    )
                 )
COUNTY OF DUTCHESS  )

<u>VOLUNTARY AFFIDAVIT</u>

      I, Andrew Mullings, DIN#: 02A2656, hereby depose and say the following:

      On or around December 24, 2022 allegation was made that an incarcerated individual ("I/I") named Christopher Gaudiello attempted to escape from Fishkill Correctional Facility ("I/I"). Based on this allegation, a Correctional Emergency Response Team ("CERT") and other units were brought in at Fishkill on or around December 27, 2022 to search the entire facility.

      On December 29, 2021, CERT Officers entered my housing unit (10-2) and took me out of my room and forcefully stripped me down to my underwear and they opened all the windows in my housing unit rec. area and then placed me and other I/Is to remain standing in the very cold weather for hours where my body was being assault by the cold. The CERT Officer at this time was physically beating another I/I across from me.

      As a result of the CERT Officers exposing me in the cold, I got sick and was hospitalized after I was diagnosed for bilateral pneumonia, bilateral pulmonary embolism, respiratory failure, and for chest discomfort.

      I sworn this statement to be true to the best of my knowledge.

Sworn to by me,

_____
Andrew Mullings, 02A2656

Sworn To Before Me,
This 31st Day Of August 2022

_____
Notary Public

JESSICA STARSIAK
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Orange County
01ST6352608
MY COMMISSION EXPIRES 09/30/2023

# EXHIBIT Q



**Corrections and Community Supervision**

**KATHY HOCHUL**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

TO:        Ralph Rodriguez      17A0928      9-1- 126

FROM:    L. Malin, Deputy Superintendent for Programs *L. Malin*

RE:        Response to your letter

DATE:    September 20, 2022

I am writing in response to your letter dated 10/16/22 regarding a reasonable accommodation for an "Egg Crate" or having an "Extra mat pass".

Please be advised that I did not receive a reasonable accommodation from you for these items.

As per Directive 2614, the items you are asking for are not considered a reasonable accommodation.  As per directive 2614, section II B, requests for medical treatment, permits or anything required for activities of daily living are not considered reasonable accommodations and may not be requested through the reasonable accommodation process.  Requests for such items must be made through the facility Medical department.

CC:    DSH Jackson
        DSP File
        Guidance File

Revised (7/11)
Form #2614B
COPY LOCALLY
AS NEEDED

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

**REQUEST FOR REASONABLE ACCOMMODATION**

FISHKILL CORRECTIONAL

Correctional Facility

| Inmate's Name | DIN# | Data |
|---|---|---|
| Ralph Rodriguez | 17A0928 | 12-28-2019 |

**INMATE'S REQUEST**

I request reasonable accommodation to participate in the following program and/or service:

medical equipment request

I am limited in my ability to (explain disability or limitation): fully Disable, limited to No use of right arm, and severe neck and back problems along with a host of different issues

The accommodation requested is: An "Egg Crate" for my back to help elevate pain

(Sign and forward to the Deputy Superintendent for Program Services) _Ralph Rodriguez_
Inmate's Signature

**REC'D BY DSP**

J Wise (DSP Name)     (Signature)     Date 12/28/1

**MEDICAL VERIFICATION**

Disability Pt claims back + neck Pain  Egg crate mattress topper "TOPPER"

Functional limitations has been found not to be effective + Considia Embarzey "A FIRE HAZARD

No medical verification is on file. Follow-up appointment scheduled?  ☒ yes  ☐ no

Date inmate notified of pending medical evaluation/consult:  Denied

M. Sullivan FNP-BC (Medical staff name - title)     (Signature) AVIAN ZATO     Date 2/18/20

**REASONABLE ACCOM. DETERMINATION**

The above requested reasonable accommodation has been  ☐ Approved  ☐ Modified  ☐ Denied

The specific accommodations approved are:

Explanation of modification or denial:

(Inmate's Signature)     (DSP or designee signature)     Date

**INMATE RECEIPT**

☐ I agree   ☐ I disagree with this determination.

I understand my right to file a grievance in accordance with Directive #4040, "Inmate Grievance Program"

Signature _____   Date _____

Original - Guidance Folder
Copies - Inmate, Superintendent, Medical, Parole, ADA Coordinator (Central Office)



RECEIVED
OCT 12 2018
DSA/DSP

Form 2612B (4/15)
Page 1

PHOTOCOPY LOCALLY AS NEEDED

STATE OF NEW YORK – DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

REQUEST FOR REASONABLE ACCOMMODATIONS FOR INMATES WITH SENSORIAL DISABILITIES

Date 10-1-2018

Inmate's Name _Ralph Rodriguez_ DIN _17A0928_ Facility _Five Point Correctional_

☐ I do not request reasonable accommodations

☒ I request reasonable accommodations as indicated below for the following program or service: _hearing impairment requesting Alarm for Count and program_

Check to indicate request

| HEARING IMPAIRMENT | | | VISUAL IMPAIRMENT | | |
|---|---|---|---|---|---|
| Requested | | Approved | Requested | | Approved |
| ☐ | Qualified Sign Lang. Interpreter | ☐ | ☐ | Large Print | ☐ |
| ☐ | TTD/TTY | ☐ | ☐ | Orientation & Mobility Instruct | ☐ |
| ☐ | Telephone Amplifier | ☐ | ☐ | Mobility Assistants/Sighted Guide | ☐ |
| ☐ | Closed Caption Television | ☐ | ☐ | Guidance Cane | ☐ |
| ☐ | Sound Amplification Systems | ☐ | ☐ | Support Cane | ☐ |
| ☐ | Hearing Aids/Batteries | ☐ | ☐ | Braille Print | ☐ |
| ☐ | Notification Systems | ☐ | ☐ | Braille Equipment | ☐ |
| ☐ | Visual Smoke Detector | ☐ | ☐ | Magnifiers | ☐ |
| ☐ | Preferred Seating | ☐ | ☐ | Tape Player/Cassettes | ☐ |
| ☒ | Shake Awake Alarm | ☒ | ☐ | Lamp | ☐ |
| ☐ | Pocket Talker | ☐ | ☐ | Visor/Sunglasses for indoor use | ☐ |
| | | | ☐ | Other | ☐ |

_Ralph Rodriguez_                  _S. Candight, DSP_                  _RP_
(Inmate's Signature)                  (Staff Name/Title)                  (Staff Signature)

MEDICAL VERIFICATION (Use established definitions)
☐ Severe Visual Impairment (V230)   ☐ Legally Blind (B240)   ☒ Non Significant Hearing Loss (HL30)   _Has hearing aids shake awake appropriate_
☐ Hard of Hearing (HL20)   ☐ Deaf (HL10)
☐ No Medical Verification on File Follow-up Appointment Necessary? ☐ Yes ☐ No

_Km Saloti MP_                  _Km Saloti MP_                  _10-4-18_
(Medical Staff - Name/Title)            (Med. Staff Signature)                  (Date)

Return this form to the Staff member whose name appears next to the inmate's signature above.

REASONABLE ACCOMMODATION DETERMINATION
The reasonable accommodations requested above have been:
☒ Approved as requested
☐ Modified - accommodations which have been approved are marked above
☐ Denied
☐ Pending medical verification
EXPLANATION of modification or denial:

_A Crawford_                  _A Crawford_                  _10-12-18_
(DSP or designee)                  (Signature)                  (Date)

This section is to be completed by the inmate.
☒ I agree   ☐ I disagree with this determination
☐ I want to meet with the Superintendent or designee during this review.
☐ I want to have an interpreter with me or other assistive device during this meeting.

_Ralph Rodriguez_                  _10-12-2018_
(Inmate's Signature)                  (Date)

**NEW YORK STATE** | **Corrections and Community Supervision**

**ANDREW M. CUOMO**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

TO:          Inmate

FROM:        Five Points Medical Department

SUBJECT:     New Permit / Annual Renewal Permit

Original Start Date: _____

Current Start Date: _____

Permit Duration: _____

Permit Expiration Date: _____

---

*Handwritten form (top right):*

Five Points Correctional Facility
Medical Permit-Health Services
Inmate Name _____ DIN# _____
Location _____
_____ cane, crutches-to be returned _____
_____ brace, sling, splint, cast
Description _eggcrate permit_
MISC _____
RN Signature _____ Date 9/17/18
Expiration Date 9/16/19

*Handwritten form (middle right):*

Five Points Correctional Facility
Medical Permit-Health Services
Inmate Name Rodriguez, Ralph
DIN# 17A0928   Location _____
_____ cane, Crutches-to be returned _____
_____ brace, sling, cast
Description (1) eggcrate mattress
MISC _____
RN Signature _____ Date 9/25/19
Expiration date 9-12-20

---

Inmate Name: _____

Din #: _____

Housing Location: _____

The above inmate has been evaluated and there is a medical need for:   ☐ RA   ☐ MED

_____

_____

_____

_____          _____
Facility Health Services Director/Designee          Date

Reviewed and Approved:

_____          _____
Deputy Superintendent for Security          Date

I acknowledge receipt of the permitted item described above.  I understand I will be responsible for its proper use.  Any misuse or damage caused by my negligence may result in revocation of the permitted item, financial reimbursement and disciplinary action.

_____          _____
Inmate Signature          Date

Cc: Block 1st Officer     Medical Records Office     Medical File     RA File (if appropriate)

FP164 (03/17)

# EXHIBIT
# R

Ralph Rodriguez

Din # 17A0928

Fishkill C.F Unit 9-1

4-25-22

To Ms Sullivan

I am writing to you because it's been well over four months since I was injured by the C.E.R.T team on 12-30-21, and todate I have yet to receive my ten's unit, or have my MRI.

I would like to also like to see you again as soon as possible because last time we met last month you didn't get to cover all my medical issues because you said you was only going to deal with two issues when I seen you. I am still having severe pain in my left ankle, neck, back and now at night my left hip is giving me severe problems and pain, being unable to sleep.

Can you please put me on a call out because it makes no sense to go to sick call if their not going to do anything to help or address my issues. Thank you for your time, Respectfully

Ralph Rodriguez

C.C II's File

Mr. Rodrigue   5/2/22   MRI Very soon
You are Scheduled for. There are massive back log
Please be patient
in hospitals. Thanks
                    Sulla

HSPM 7.16
Attachment A

*STATE OF NEW YORK*
*DEPARTMENT OF CORRECTIONAL SERVICES*
DIAGNOSTIC TESTING NOTIFICATION
(NOTIFICACION DE PRUEBA DE DIAGNOSTICO)

NAME _Rodriguez  Ralph_ DIN _17A5928_
(Nombre)

FACILITY _FCF_ CELL LOCATION _MB-9-1-26_
(Institucion) (Ubicacion de la Celda)

REVIEWED BY _M. Sullivan_ DATE _FCF_
(Revisado por)   (name & provider #) (Fecha)   (MM/DD/YY)

THIS IS TO INFORM YOU THAT THE RESULTS OF THE TESTING CHECKED BELOW:
(Sirva este para informale que los resultados de la prueba identificada a continuacion)

X-RAY_____    LAB TESTING_____    OTHER _Open MRI_
(Rayos-X)       (Pueba de Laboratorio)   (Otro)

PERFORMED ON_____    WERE REVIEWED BY A PRIMARY CARE PROVIDER.
(Ejecutada en)                      (la reviso un professional del cuidado primario)

_✓_ NO ACTION IS REQUIERED AT THIS TIME.      No Fracture – mild Swelling
(No se exige accion en este momento.)             continue with
                                                     physical therapy

_____ REPORT TO SICK CALL
(Reportese a Cita por Enfermedad.)

_____ FOLLOW UP WILL BE ARRANGED WITH A PRIMARY PROVIDER.
(Se haran arreglos para seguimiento con un professional del cuidado primario.)

_____ FOLLOW UP WILL BE ARRANGED WITH A SPECIALIST.
(Se haran arreglos con un especialista.)

DO NOT FILE IN AHR
(No archive en el AHR)

#4411500255

**QUEENS RADIOLOGY, P.C.**
23-08 30th Avenue
Astoria, NY 11102

Ph: (718)726-2000

Fax: (718)728-2724

July 17, 2013

Patient:          Ralph Rodriguez
Date of Exam:     07-17-2013
Patient ID #:     MR008199
Date of Birth:    08-25-1978
Referring Doctor: Panagiotis Zenetos, M.D.

## MRI OF THE LUMBOSACRAL SPINE

Multiplanar and multisequence MRI examination of the lumbosacral spine was performed.

There is straightening of the lordosis compatible with muscular spasm. The vertebrae are normal in height and signal. There is interspace narrowing and dehydration at L5-S1. The conus medullaris and cauda equina are unremarkable.

The L1-L2 and L2-L3 interspaces are without evidence of bulge or herniation.

At L3-L4, there is a broad based disc bulge with a left paracentral component and left sided neuroforaminal narrowing.

At L4-L5, there is a central and left paracentral herniation with bilateral neuroforaminal narrowing and lateral recess stenosis – left greater than right. There is bilateral facet arthropathy and relative spinal stenosis present.

At L5-S1, there is a central disc herniation with bilateral neuroforaminal narrowing and lateral recess stenosis – left greater than right.

## IMPRESSION:

1. Muscular spasm.
2. Interspace narrowing and dehydration at L5-S1.
3. Broad based disc bulge at L3-L4 with a left paracentral component and left sided neuroforaminal narrowing.
4. Central and left paracentral herniation at L4-L5 with bilateral neuroforaminal narrowing and lateral recess stenosis – left greater than right. Associated spinal stenosis and bilateral facet arthropathy are also appreciated.
5. Central disc herniation at L5-S1 with bilateral neuroforaminal narrowing and lateral recess stenosis – left greater than right.

Thank you very much for allowing me to participate in the care of your patient.

*Daniel Schlusselberg MD*

Daniel Schlusselberg, M.D.

DS:lg  15-00667249.doc



## Upstate Radiology, PC
## Open MRI of Elmira

**Patient's Name:** Rodriguez, Ralph
**Patient Account #:** 207832
**Date of Service:** 04/16/2019 (Elmira)
**Date of Birth:** 08/25/1978
**Referring Physician:** Jayson Perez NP
**Exam:** MRI of the Lumbar Spine

HISTORY: Low back pain.

EXAMINATION: MRI scan of the lumbosacral spine.

There is slight loss of the normal lordotic curvature consistent with some paraspinal muscle spasm. No signs of any fractures or osseous lesions identified.

The L1-2, L2-3, L3-4 disc space levels are normal.

At L4-5, there is some mild desiccation and minimal disc bulging. There is a left lateral disc protrusion extending into the inferior aspect of the left L4-5 neural foramina below the level of the exiting nerve root.

At L5-S1, there is mild desiccation and minimal disc bulging.

There is interfacet edema between the posterior articular surfaces which can be a source of low back pain related to inflammation between those posterior articulations. This is most notable at the L5-S1 level.

IMPRESSION:

Interfacet between the posterior articular surfaces, most prominent at the L5-S1 level. Some mild disc bulging at the L4-5 and L5-S1 levels.

CONTINUED ON PAGE TWO

JUN 2 6 2019

The Health Information contained in this Fax/Report is Highly Confidential. It is intended for the exclusive use of the addressee. It is to be used only to aid in providing specific healthcare services to this patient. Any other use is a violation of Federal Law (HIPAA) and will be reported as such.

751 East Church Street Elmira, NY 14901          Tel. (607) 767-1122 Fax: (607) 767-1121

**Patient's Name:  Rodriguez, Ralph**          -2-
**Date of Service:  04/16/2019 (Elmira)**
**Exam:  MRI of the Lumbar Spine**

There is a left lateral disc protrusion at the L4-5 level with some disc material extending into the inferior aspect of the left L4-5 neural foramina below the level of the exiting nerve root.

Dictated by:  G. Michael Maresca, MD on 04/16/2019 at 10:13:59
Electronically Approved by:  G. Michael Maresca, MD
Signed on:  04/16/2019 10:27:08

Job Number:  1772718



JUN 2 6 2019

The Health Information contained in this Fax/Report is Highly Confidential.  It is intended for the exclusive use of the addressee.
It is to be used only to aid in providing specific healthcare services to this patient.  Any other use is a violation of Federal Law
(HIPAA) and will be reported as such.

# EXHIBIT

# S

# NYC HEALTH+ HOSPITALS

Insurance: Self Pay

07/18/2016

## RODRIGUEZ, RALPH

NYSID: 09508908N BookCase: 4411500255
Facility Code: AMKC Housing Area: RR
37 Y old Male, DOB: 08/25/1978
Account Number: 278427
1017 SENECA AVE, 1FL, QUEENS, NY-11385

Appointment Facility: West Facility

Appointment Provider: Olga Segal, MD

### Current Medications

**Taking**
- Gabapentin 400 MG Capsule Total Dose: 400mg Three Times a Day, stop date 10/10/2016, KOP: No, Drug Source: Pharmacy
- BusPiRone HCl 15 MG Tablet Total Dose: 30mg Twice a Day, stop date 07/23/2016, KOP: No, Drug Source: Pharmacy, Notes: Pharmacy
- Vistaril 50 MG Capsule Total Dose: 50 mg At Bedtime, stop date 07/23/2016, KOP: No, Drug Source: Pharmacy, Notes: Pharmacy
- Prozac 20 MG Capsule Total Dose: 50 mg At Bedtime, stop date 07/23/2016, KOP: No, Drug Source: Pharmacy, Notes: Pharmacy

### Past Medical History

Permanent RIGHT RADIAL NERVE INJURY resulting in permanent extension of Thumb, Index and partial Right 3rd finger and decrease sensation in 2010.....

### Allergies

N.K.D.A.

### Reason for Appointment

1. Nerve Injury

### History of Present Illness

**Notes::**

37 yo RH HM with PMHx psych hx, substance use, LBP s/p MVA 2008 and 2010, RUE and LUE stab wounds 2010 with RUE chronic nerve injury, on Lyrica, Dilaudid, Morphine, Oxycodone, Trazodone, presented on 2/10/15 for initial evaluation of chronic RUE nerve injury (cont Lyrica 150bid, referral for RUE splint, not interested in PT), and f/u 11/2/15 (wants to change Lyrica to GBP 300bid), and f/u 4/11/16 (increase GBP 300tid to 400tid, new referral for RUE splint for BVH Ortho), and f/u 7/18/16 (GBP up to 600tid, still awaiting splint).

Referral: Pt with h/o multiple stab wounds in 2010 with h/o nerve damage to RUE on multiple pain medications.

Pt was stabbed multiple times, including abdomen (had 1/2 intestines removed and a 1/4 of spleen was removed), as well as R-wrist "was chopped" with "nerves and tendons destroyed" and only able to move/flex his R-D4/5 but not D1/2/3 with numbness/tingling in R-D1/2/3. Pt was also stabbed in R-arm, had to have muscle removed, "nerve, vein, and artery was clamped and replaced". Pt has chronic weakness in the entire RUE (except at R-shoulder) with difficulty lifting/bending elbow, grip, and generalized painful tingling with any movement. Pt was also stabbed in the LEFT upper ant arm with pain and focal numbness/pain in the area of stabbing without any LUE weakness. Pt was also stabbed in Left trunk multiple times.

Pt reports lower back "lumbar bad discs" s/p MVA in 2008 and again in 2010 with chronic LBP radiating down into b/l buttocks and b/l leg and worsened by staying in any fixed position for prolonged period of time. No focal LE weakness. Pt reports also occasional neck stiffness/cracking from MVA ,but much improved since the initial injury adn no weakness.

Pt denies B/B issues (occasional constipation), but no incontinence.

Pt has had several EMG/NCS of b/l UE and was diagnosed with nerve damage of multiple nerve in his RUE>LLE, pt is on disability. Pt received therapy in the past and was told "there is nothing more to do" for his chronic nerve condition adn damage.

Pt was on Lyrica 150mg x 2 tab bid (300mg BID), Morphine 60, Dilaudid, Oxycodone 30, and Trazodone, since 2010, given by his Pain

https://chsricbpdlb.riepf.com/mobiledoc/jsp/catalog/xml/printChartOptions.jsp?encounterI...   7/29/2016

DEF 000019

review today, including disability documents dated March 14, 2013, as well asn an excerpt from a medical note stating meds: Oxycodone 30mg, Lyrica 150 bid, Skelaxin, Flexeril 10mg, as well as an incomplete Operative Report dated 10/3/2008 with post-op diagnosis: RUE median nerve transection, ABP/EPL/EPB tendons transsection, cutaneous nerve transsection".

## Examination

General Examination:
GENERAL APPEARANCE: well-developed, no acute distress.
NECK: GENERAL:-, supple, no carotid bruit.
HEART: HEART SOUNDS:-, normal S1S2.
Neurological:
CORTICAL FUNCTIONS: alert and oriented X 3, comprehension and language intact.
CRANIAL NERVES: same II-XII normal bilaterally.
MOTOR STRENGTH: still unchanged again RUE: with extensive surgical/traumatic scars in R-ant forearm/ant arm region and R-ant/lateral region with pronounced focal atrophy as well as diffuse atrophy, with D 5/5, B 4, T 3-4-, WE/WF 3- and pain limited, very limited mvmt D1/2/3 and unable to oppose digits, and 2-3 in D4/5 with clawing (non-fixed contractures), thenar>hypothenar atrophy, low tone. LUE: focal scar in L-ant arm with 5/5 in D, B, T, WE, WF, grip, APB, opponens, intrinsics and no atrophy, normal tone. No scapular winging b/l. Neck with full ROM and no TTP. B/l LE 5/5 in IP, Q, H, AT, PF, no atrophy, normal tone.
SENSORY: still again decreased sensation to all modalities with dysesthesia in entire RUE, intact throughout LUE and b/l LE. No neck/spinal TTP. Questionable mildly +SLR b/l. + abd scar.
REFLEXES: again RUE with 0 throughout, LUE 1+ in B, T, BR, b/l P 2+ and b/l A 1+, with babinskin negative b/l..
TREMORS: absent.
COORDINATION: same finger to nose normal bilaterally with no dysmetria.
GAIT AND STATION: steady, Romberg was negative.
SPEECH: normal.
MUSCLE BULK: atrophy .
PRONATOR DRIFT: not present .

## Assessments
1. Nerve injury NOS - 957.9

## Treatment

### 1. Nerve injury NOS
Stop Gabapentin Capsule, 400 MG, Total Dose: 400mg, Orally, Three Times a Day, 90 days, KOP: No, Drug Source: Pharmacy
Start Gabapentin Capsule, 300 MG, Total Dose: 600mg, Orally, Three Times a Day, 90 days, Drug Source: Pharmacy
Notes: 37 yo RH HM with PMHx psych hx, substance use, LBP s/p MVA 2008 and 2010, RUE and LUE stab wounds 2010 with RUE chronic nerve injury, on Lyrica, Dilaudid, Morphine, Oxycodone, Trazodone, presented on 2/10/15 for initial evaluation of chronic RUE nerve injury (cont Lyrica 150bid, referral for RUE splint, not interested in PT), and f/u 11/2/15 (wants to change Lyrica to GBP 300bid), and

---

Patient: RODRIGUEZ, RALPH    DOB: 08/25/1978    Progress Note: Olga Segal, M D    07/18/2016
*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

DEF 000021

# EXHIBIT
# T

# EXHIBIT U



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS  CRIMINAL  TERM  PART 24
-----------------------------------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK,

                           Plaintiff,

            -against-                              **AFFIDAVIT**

                                        Indictment No. 771-2015

RALPH RODRIGUEZ,

                    Defendant.
-----------------------------------------------------------------------

State of New York     )
                      ) : ss
County of Queens      )


        RYAN HUMPHREY, being duly sworn, deposed and states under the penalties of perjury as
follows:


I.      I served as Juror Number 10 on the aforementioned trial.


2.      Following the conclusion of the trial, Judge Leach and Mr. Rodriguez' defense

        counsel came into the deliberation room and spoke to the entire jury for several

        minutes at which time we informed them both that at the conclusion of the first

        day of jury deliberations the jury was split 7 votes to 5 in favor of an acquittal.

3.      More specifically, at the conclusion of the first full day of deliberations, the jury

        was split 7 votes to 5 in favor of acquittal on Count 1 (Robbery in the Second

        Degree), Count  2 (Grand Larceny in the Fourth Degree), and Count 3 (Criminal

        Possession of a Weapon in the Third Degree).  With respect to Count 4 (Resisting

        Arrest) the jury was split 10 votes to 2 votes in favor of acquittal at the end of the

        first day of deliberations.

4.      The biggest issue in the case was not whether a robbery occurred but whether Mr.

Rodriguez was correctly identified as the person that committed the charged offenses. Although there was certainly corroborating evidence consistent with guilt, there was also a great deal of corroborating evidence which supported Mr. Rodriguez' innocence.

5.  Ultimately, the jury found Mr. Rodriguez guilty on all counts. Since the verdict was announced, I have thought often whether Mr. Rodriguez was accurately identified as the person responsible for the robbery of the Game Stop store.

6.  I have been advised that the defense was precluded from calling an expert in the field of eyewitness identification. Specifically, the defense sought to have the eyewitness identification expert testify in the areas of weapon focus; event stress; event duration and that eyewitness confidence is a poor predictor of identification accuracy. I am of the opinion that given the conflicting corroboration (both in favor of guilt and innocence) that existed in the case, that the eyewitness identification testimony would have been helpful and useful in this case.

DATED:    Queens, NEW YORK

February 3, 2017

_Ryan Humphrey_

RYAN HUMPHREY

SWORN TO AND SUBSCRIBED BEFORE ME THIS 3 DAY OF FEBRUARY 2017

PHILIP M. ROSEMAN
Notary Public, State of New York
No. 01RO6195360
Qualified in Queens County
Commission Expires Oct 20, 2012

NOTARY PUBLIC

# EXHIBIT
# V

**News**Room

8/27/15 Reuters News 20:41:06

Reuters News
Copyright (c) 2015 Thomson Reuters

August 27, 2015

U.S. prosecutors join probe into New York inmate's death

NEW YORK, Aug 27 (Reuters) - Federal prosecutors have joinedan investigation into the death of a New York prison inmate whowas involved in a confrontation with guards at the **FishkillCorrectional** Facility in April.

U.S. Attorney Preet Bharara of New York said on Thursday hisoffice is working with the local district attorney in DutchessCounty, New York, to investigate the April 21 death of SamuelHarrell.

Lawyers for Harrell's family have said he was beaten todeath by corrections officers.

The New York Times, which earlier this month was the firstpublication to document Harrell's death, reported that inmatesat Fishkill described a pattern of brutality by officers at themedium-security prison in Beacon, 65 miles (105 km) north of NewYork City.

The New York State Police began looking into the death onthe night of April 21, when Harrell was pronounced dead at alocal hospital.

Harrell, who suffered from bipolar disorder, got into aconfrontation with officers when he announced he was going homedespite having years left on his sentence for a drug conviction,the Times reported.

He was beaten by as many as 20 officers and either thrown ordragged down a staircase, inmates who witnessed the incidenttold the newspaper. Some of the guards were part of a groupinmates called the "Beat Up Squad," the newspaper reported.

Corrections officers called an ambulance but did not mentionthe fight to medics, speculating instead that he had overdosedon drugs, the Times said. The county medical examiner ruledHarrell's death a homicide, according to the Times.

The Department of Corrections and Community Supervision didnot immediately comment on Bharara's statement. Earlier thismonth, a spokesman said the agency was working with stateauthorities to investigate the incident.

A lawyer for Harrell's family could not immediately bereached for comment.

In June, New York City agreed to institute reforms at thetroubled Rikers Island jail complex to resolve civil claimsbrought by Bharara's office that guards regularly usedunnecessary force against inmates. [ID:nL1N0Z828G]

(Reporting by Joseph Ax; Editing by Mohammad Zargham) ((joseph.ax@thomsonreuters.com; 1-646-223-6594 1-917-848-0813;Reuters Messaging: joseph.ax.thomsonreuters.com@reuters.net))

Keywords: USA NEW YORK/PRISON

---- Index References ----

# New York Times

Late Edition

Today, partly sunny, warm, humid, high 84. Tonight, partly cloudy, warm, humid, low 74. Tomorrow, clouds and sun, warm, humid, high 83. Weather map is on Page B10.

NEW YORK, WEDNESDAY, AUGUST 19, 2015     $2.50

## Prison Guard 'Beat Up Squad' Blamed in Death

### INMATES' ACCOUNT

#### No Officers Punished Amid an Inquiry in New York State

By MICHAEL WINERIP
and MICHAEL SCHWIRTZ

On the evening of April 21 in Building 21 at the Fishkill Correctional Facility, Samuel Harrell, an inmate with a history of erratic behavior linked to bipolar disorder, packed his bags and announced he was going home, though he still had several years left to serve on his drug sentence.

Not long after, he got into a confrontation with corrections officers, was thrown to the floor and was handcuffed. As many as 20 officers — including members of a group known around the prison as the Beat Up Squad — repeatedly kicked and punched Mr. Harrell, who is black, with some of them shouting racial slurs, according to more than a dozen inmate witnesses. "Like he was a trampoline, they were jumping on him," said Edwin Pearson, an inmate who watched from a nearby bathroom.

Mr. Harrell was then thrown or dragged down a staircase, according to the inmates' accounts. One inmate reported seeing him lying on the landing, "bent in an impossible position."

"His eyes were open," the inmate wrote, "but they weren't looking at anything."

Corrections officers called for an ambulance, but according to medical records, the officers mentioned nothing about a physical encounter. Rather, the



Samuel Harrell, an inmate at a Beacon, N.Y., prison, who died in April, with a niece.

Continued on Page A20



s Israel in a Bind

on-
ore experts on bioethics, was unnecessary because Israel already al-

### Trump Paints G.O.P. in Corner



Case 7:13-cv-07662-KMK   Document 98   Filed

Top, a memorial program for Samuel Harrell, 30, who died after a confrontation with officers at the Fishkill Correctional Facility in Beacon, N.Y. Right, his sister, Crista Harrell, left, and his wife, Diane.



# Prison Officer 'Beat Up Squad' Is Blamed in an Inmate's Death

From Page A1

records, they told the ambulance crew that Mr. Harrell probably had an overdose of K2, a synthetic marijuana.

He was taken to St. Luke's Cornwall Hospital and at 10:18 p.m. was pronounced dead.

In the days since, state corrections officials have provided only the barest details about what happened at the medium-security prison in Beacon, N.Y., about 60 miles north of New York City. Citing a continuing investigation by the State Police, officials have declined to comment on the inmate's account of a beating.

An autopsy report by the Orange County medical examiner, obtained by The New York Times, concluded that Mr. Harrell, 30, had cuts and bruises to the head and extremities and had no illicit drugs in his system, only an antidepressant and an enlarged heart. The cause of death, the autopsy report said, "following physical alteration with corrections officers while in a prone position, due to cardiac arrhythmia, the autopsy report said.

The manner of death: homicide.

## Previous Reports of Violence

No officers have been disciplined in connection with the death, officials said. A check of death records from the term that indicates the death occurred "at the hands of other people, but it does not necessarily mean a crime was com-



The Fishkill Correctional Facility, a medium-security prison where Mr. Harrell was serving a drug sentence.

JOSHUA BRIGHT FOR THE NEW YORK TIMES

said. "You're a big guy and you let these people literally kill you."

The inmates said that during the encounter, an officer they identified as Raheen McNeil appeared to have a medical emergency. Mr. Fanton, who later identified Officer McNeil through a Facebook photo, said he saw the officer "drop to the floor, and was gasping for air and grabbing his chest."

Officers went to attend to Officer McNeil as soon as he was carried out on a stretcher, inmates said.

## Identifying the Guards

While Mr. Harrell lay on the floor, officers periodically walked by, kicking him and telling him, Mr. Camera said.

Most of the inmates could identify the officers by last names only, which they spelled in a variety of ways in their affidavits. In the lexicon of New York State employees, the inmates said there are several Fishkill officers who appeared to match the guards most often named by the inmates as being directly involved in the encounter. They are Thomas Dickenson (named by 10 of the inmates), John Yager (10), Officer McNeil (six), Bryan Ball (five) and a white woman they knew only as "Ms. B?" (four).

A colleague also identified the ranking officer at the scene as Sgt. Jose Cuadrado. Reached by telephone, Sergeant Cuad-

The Fishkill Correctional Facility, a medium-security prison where Mr. Harrell was serving a drug sentence.

## Mental Illness

# EXHIBIT W

 **NEW YORK STATE** | **Corrections and Community Supervision**

**KATHY HOCHUL**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

February 16, 2022

DIN   17A0928         RODRIGUEZ, Ralph
CELL   MB-09-120

**Re:   FOIL Log No. FCF- 0047-2022**

Dear R. Rodriguez:

This is in response to your New York State Freedom of Information Law request for "Copy of Injury Reports made on 12/30/21 and 12/31/21."

Please be advised, we conducted a diligent search, and the Department does not appear to have any responsive records.  We are not required to create a document if it does not already exist.

Regards,

F. Wilbur, OAII/FOIL
Fishkill Correctional Facility
18 Strack Dr.
Beacon, NY 12508

CC:   FOIL Records

---

If you do not agree with any part of this decision, you may appeal by writing the Office of the Counsel & FOIL Appeals Officer, NYS Department of Corrections and Community Supervision, The Harriman State Campus, 1220 Washington Avenue, Albany, New York, 12226-2050.

In appeal correspondence, please clearly note your name, DIN number, facility from which records were requested, and the FOIL Log Number provided.

## DEMAND FOR TRIAL BY JURY

102. Plaintiff Humbly Request a Trial by Jury, for all the issues raised within the Claim and Cause of Action, that are both to be included as "The Claim", in its Entirety.

## PRAYER FOR RELIEF

103. WHEREFORE, Judgement Should Be Entered In Favor Of Plaintiff And Against All The Defendants, As Follows:

(a) Compensatory Damages Against All Named Defendants In The Amount To Be Determined.

(b) Punitive Damages As Against All Named Defendants In An Amount To Be Determined.

(c) Mental and Emotion Damages As Against All Named Defendants In An Amount To Be Determined.

(d) Reasonable Attorneys Fees, Together With Cost and Disbursement, Pursuant To The Americans With Disability Act Title II, And Rehabilitations Act Section 504, AND Section 1988, As Well As This Honorable Courts Discretion.

(e) Pre-Judgement Interest As Allowed By Law.

(f) Declaratory Relief, REQUESTING THAT THE "CORRECTIONAL EMERGENCY RESPONSE TEAM", BE IMMEDIATELY INVESTIGATED, BAND FROM ENTERING ANY CORRECTIONAL FACILITY UNTIL PLAINTIFFS CLAIM HAS BEEN HEARD BEFORE A TRIAL, AND THE POLICY, CUSTOM AND AUTHORITY AUTHORIZING C.E.R.T BE REVIEWED BEFORE CONGRESS AND A SUPERVISING GOVERNMENTAL AGENCY THAT IS "NOT AFFILIATED WITH THE DEPARTMENT OF CORRECTIONS", BE AUTHORIZED TO SUPERVISE C.E.R.T DIRECTLY DURING ANY AND ALL DEPLOYMENT".

(g) Such Any Other Relief This Court Deems Just And Proper.

Plaintiff Humbly Request That This Honorable Court Please Excuse Any Errors Made As Plaintiff Is Pro-Se, And Is Not A Lawyer Or Fully Familiar With The Law Or Rules Of Court

RESPECTFULLY SUBMITTED BY

11-23-22

(74)

## VERIFICATION

STATE OF NEW YORK )
               ) s.s. :
COUNTY OF DUTCHESS)

_Ralph Rodriguez_ being duly sworn, deposes and says that he is the Petitioner in the within proceeding and that he has read the foregoing Petition and knows the contents thereof; that the same is true to his own knowledge except as to matters therein stated to be alleged on information and belief, and that as to those matters he believes it to be true.

SWORN TO BEFORE ME THIS _21_

DAY OF _October_, 20_22_

_____
NOTARY PUBLIC

AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
                  ) s.s. :
COUNTY OF DUTCHESS)

Ralph Rodriguez being duly sworn, deposes and states:

1.    I am over the age of 18 and reside at Fishkill Correctional
Facility, P.O. Box 1245, Beacon, New York 12508-8245.

2.    On 11-23-22 , I served the within: §1983 Federal
Civil Rights claim

upon:
Southern District of NY          and     State of NEW York
500 Pearl Street                         Office of the Attorney
New York, NY 10007                       General
at the following address:                Capitol Building
                                         Albany, NY 12224

by depositing a true copy of the within in a post paid properly
addressed wrapper, in an official depository under the exclusive
care and custody of the Department of Correctional Services of New
York.

_Ralph Rodriguez_

SWORN TO BEFORE ME THIS _____
DAY OF _____, 20____

_____
        NOTARY PUBLIC

Ralph Rodriguez
Din# 17A0928
Fishkill Correctional facility
P.O Box 307
Beacon NY 12508



Legal
Mail

NEW YORK Southern District
Daniel Patrick Moynihan US Courthouse
Pro-se Department
500 Pearl Street
New York, NY 10007

RECEIVED
NOV 28 2022
PRO SE OFFICE

USMPS
SDNY