UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RALPH RODRIGUEZ,

       Plaintiff,

-against-

EDWARD R. BURNETT et al,

       Defendants.

**OPINION & ORDER**

22-CV-10056 (PMH)

PHILIP M. HALPERN, United States District Judge:

  Ralph Rodriguez ("Plaintiff") brings this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, predicated upon violations of the First, Fourth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, which occurred during his confinement at Fishkill Correctional Facility ("Fishkill"). The matter proceeded initially against eleven named employees and several other John and Jane Doe employees of the New York State Department of Corrections and Community Supervision ("DOCCS") in their individual and official capacities, the County of Dutchess, and the State of New York. (Doc. 2, "Compl." at pp. 3-4).

  The Court, in a February 1, 2023 Order, dismissed all claims against the State of New York, Commissioner Annucci, and Governor Hochul. (Doc. 6). The remaining Defendants are Edward Burnett, Stephen Urbanski, Akinola Akinyombo, Michael Blot a/k/a Sgt. Block ("Blot"), Sally A. Reams, Mohammad A. Bhuiyan, Mahnaz Sullivan-Davachi ("Sullivan"), Oujas Gifty, Sangeethe L. Mukkatt, Robert Mitchell, Richard Flanagan, Jonathan Franco, Angel Matos, Vincent Santiago,

Jean Marc Oge, Jason Crofoot, Carlton Garrett, Christopher Ciaccio, Shawn Hanley, Alexis Cherry, Jan Okusko, and Aleshia Rose (collectively, "Defendants").

Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on September 12, 2023. (Doc. 43; Doc. 44, "Def. Br."). Plaintiff filed opposition on October 13, 2023 (Doc. 46; Doc. 47, "Pl. Br."), and Defendants' motion to dismiss was fully briefed with the filing of their reply memorandum of law on October 26, 2023. (Doc. 48).[1]

For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff alleges that he was assaulted by several officers of DOCCS Correctional Emergency Response Team ("C.E.R.T.")—namely Flanagan, Franco, Matos, Santiago, Oge, Crofoot, and Garrett (together with Blot, the "C.E.R.T. Defendants")—conducting a raid on his housing unit at Fishkill on the morning of December 30, 2021 (the "C.E.R.T. Raid"). (Compl. ¶¶ 13-15). He alleges that he was lifted out of his bed, "slammed . . . head first into the floor" and beaten with closed fists all over his body. (*Id.* ¶ 15). Six other Black or Spanish inmates were attacked at the same time. (*Id.* ¶ 18). Plaintiff alleges that Blot led the C.E.R.T. Raid and made disparaging and racist remarks to Plaintiff during the assault. (*Id.* ¶¶ 16-17, 19-21). Plaintiff further alleges that five Office of Special Investigation ("OSI") officers—Ciaccio, Hanley, Cherry, Okusko, and Rose ("OSI Defendants")—were present outside the dorm during the assault and did

---

[1] With respect to Defendants Matos and Hanley, service was accepted on behalf of both Defendants and was deemed complete for Hanley as of July 26, 2023 (Doc. 29) and Matos as of August 16, 2023. (Doc. 42). Defense counsel did not appear or move on behalf of Matos or Hanley. (Doc. 43; Doc. 53). Accordingly, Matos and Hanley are currently in default and not a part of this motion practice.

2

nothing to stop it. (*Id*. ¶ 21). Plaintiff similarly alleges that his housing unit officer, Bhuiyan, was present but did not intervene. (*Id*. ¶ 23).

Plaintiff alleges that the C.E.R.T. Defendants ripped off his clothes during the raid, left him naked on the floor with only his boxers on, and then searched him. (*Id*. at p. 51). Plaintiff also alleges that his personal property was destroyed during the C.E.R.T. Raid—namely, his legal documents, letters, artwork, electronics, art supplies, a diary, two books written by Plaintiff, and his shrine which contained numerous religious items. (*Id*. ¶¶ 27, 68).

Plaintiff allegedly suffered injuries to the left ankle, back, neck and head. (*Id*. ¶ 26). At around 12:00 pm., Plaintiff asked Bhuiyan for medical attention and was told to wait. (*Id*. ¶ 28). Plaintiff was escorted to medical at about 6:00 p.m. and was examined by Nurses Mukkatt and Sullivan. (*Id*. ¶¶ 28, 31, 37). Plaintiff alleges that Nurse Sullivan gave him two bandages and an Aspirin and completed an injury report. (*Id*. ¶¶ 37, 39). On January 4, 2022, he was given a crutch to help him walk and an X-ray was performed. (*Id*. ¶¶ 46-47).

## **STANDARD OF REVIEW**

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations . . . in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## **ANALYSIS**

Plaintiff proceeds under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (alteration in original)). The Court construes Plaintiff's Complaint as asserting the following claims for relief: (1) retaliation and denial of access to courts in violation of the First Amendment; (2) unreasonable search in violation of the Fourth Amendment; (3) excessive force, failure to intervene, and deliberate indifference in violation of the Eighth Amendment; (4) violation of the Ninth Amendment; (5) denial of equal protection rights in violation of the Fourteenth Amendment; (6) religious freedom violations under the First

Amendment and RLUIPA; (7) disability discrimination and failure to accommodate pursuant to the ADA and Rehab Act; and (8) supervisory liability.[2]

### I. Group Pleading

As a threshold matter, Defendants argue that each of Plaintiff's claims (except for the unreasonable search claim) is impermissibly based on group pleading. (Def. Br. at 10). Plaintiff responds that he clearly identified by badge number the C.E.R.T. team members who entered his housing unit, assaulted him, and destroyed his property (Compl. at ¶¶ 22, 24), and argues that he could not possibly have identified which of the C.E.R.T. Defendants took what specific action because each wore "riot gear that completely covered their entire body and [a] black mask that covered their face" during the raid. (Pl. Br. at 10). Under these circumstances, the Court agrees with Plaintiff that reference to the C.E.R.T. Defendants collectively is sufficient to withstand a motion to dismiss on personal involvement grounds. *See Gomez-Kadawid v. Lee*, No. 20-CV-001786, 2022 WL 676096, at *7 (S.D.N.Y. Feb. 3, 2022) ("a motion to dismiss for group pleading may fail when, 'even though the plaintiff refers to defendants generally rather than a particular defendant individually, it is sufficiently clear that in the particular factual context of [the] case . . . the complaint furnishes adequate notice for initial pleading purposes of plaintiff's claim of wrongdoing.'") (citing *Arias v. E. Hartford*, No. 3:20-CV-00895, 2021 WL 3268846, at *4 (D. Conn. July 30, 2021)); *see also Messina v. Mazzeo*, 854 F.Supp. 116, 125-26 (E.D.N.Y. 1994).

### II. Personal Involvement

Defendants argue that Plaintiff fails to plead the personal involvement of Reams, Mitchell, or Akinyombo in any of the claims for relief. (Def. Br. at 3). Plaintiff responds that he sufficiently

---

[2] On February 1, 2023, the Court dismissed Plaintiff's Ninth Claim for Relief for municipal liability against Dutchess County. (Doc. 6).

alleged personal involvement in that he informed Akinyombo of complaints made against the Fishkill medical staff and that Akinyombo was responsible for overseeing them. (Pl. Br. at 12). Plaintiff also alleged that Mitchell, the Director of C.E.R.T., "was directly responsible for overseeing his subordinates' actions . . . ." (*Id*. at 12). Finally, Plaintiff alleged that Reams "conspired with officials" to deprive Plaintiff of his constitutional rights. (*Id*. at 12-13). These allegations are insufficient to sustain a § 1983 claim against these Defendants. *See Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017); *Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009); *see also Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Therefore, all claims are dismissed to the extent they are asserted against Reams, Mitchell, or Akinyombo.

### III.     First Claim for Relief: Retaliation in violation of the First Amendment

Plaintiff's First Claim for Relief alleges retaliation and denial of access to courts in violation of the First Amendment. (Compl. at pp. 47-49). Defendants move only to dismiss Plaintiff's retaliation claim. Specifically, Plaintiff alleges that the C.E.R.T. Defendants assaulted him and destroyed his personal property—including legal documents, letters, artwork, electronics, art supplies, a diary, and two books written by Plaintiff—in retaliation for his prior lawsuits and grievances. (*Id*. at ¶ 27).

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Handle v. Alexander*, No. 10-CV-09235, 2011 WL 1226228, at *2 (S.D.N.Y. Mar. 22, 2011) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). Defendants argue that Plaintiff's retaliation claim fails because he did not establish a causal connection. (Def. Br. at 16). The Court agrees.

Plaintiff states that at the time of the C.E.R.T. Raid, he was "known for exercising his constitutional [r]ight to petition the court for the wrong doing of correctional officials and grieving them . . .," and that this was the "main reason for the assault by the [C.E.R.T.] Defendants." (Compl. at p. 48). Plaintiff does not specifically identify any grievances or civil lawsuits he instituted against correctional officers. Nor does Plaintiff allege that the C.E.R.T. Defendants were aware of or involved in any prior grievances or lawsuits he had filed. These vague and conclusory allegations do not constitute a plausible retaliation claim against the C.E.R.T. Defendants. *See Thomas v. DeCastro*, No. 14-CV-06409, 2018 WL 1322207, at *10 (S.D.N.Y. Mar. 13, 2018) (dismissing retaliation claim which was based on "entirely conclusory" allegations and plaintiff's belief that defendants colluded to punish him). Plaintiff's First Claim for Relief is dismissed to the extent it is based on a claim for retaliation.

IV. <u>Second Claim for Relief: Unreasonable Search in violation of the Fourth Amendment</u>

The Court construes Plaintiff's Second Claim for Relief as a claim for unreasonable search in violation of the Fourth Amendment based on the C.E.R.T. Defendants' strip search of Plaintiff in his cell during the C.E.R.T. Raid. (Compl. at pp. 50-52).

"While 'the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell,' 'inmates retain a limited right of bodily privacy under the Fourth Amendment.'" *Baltas v. Jones*, No. 21-CV-00469, 2023 WL 8827880, at *17 (D. Conn. Dec. 21, 2023) (citing *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016)). When evaluating an inmate's claim that an officer infringed his right to bodily privacy: "(1) [f]irst, the court must determine whether the [prisoner] has exhibit[ed] an actual, subjective expectation of bodily privacy; and (2) second, the court must determine whether the prison officials had sufficient justification to intrude on [the inmate's] [F]ourth [A]mendment rights." *Singleton v. City of New*

8

*York*, No. 20-CV-08570, 2022 WL 4620174, at *9 (S.D.N.Y. Sept. 30, 2022) (citing *Harris*, 818 F.3d at 57). "A strip search violates the Fourth Amendment 'if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish.'" *Id*. (citing *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006)).

Plaintiff alleges that his clothes were ripped off during the assault, he was left naked on the floor with his boxers barely on, and the C.E.R.T. Defendants searched him "without any [l]egitimate penological purpose for the strip search . . . ." (Compl. at p. 51). These allegations, accompanied by the physical abuse and racial slurs Plaintiff allegedly endured during the C.E.R.T. Raid, are sufficient at this stage to plead that the search was not reasonably related to any legitimate penological interest. *See i.e. Jean-Laurent*, 438 F. Supp. 2d at 323. Accordingly, Plaintiff has stated a plausible claim for unreasonable search against the C.E.R.T. Defendants in violation of the Fourth Amendment.

V.  Third Claim for Relief: Deliberate Indifference in violation of the Eighth Amendment

Plaintiff's Third Claim for Relief advances three separate violations of the Eighth Amendment: (i) excessive force; (ii) failure to intervene; and (iii) deliberate indifference to serious medical needs.[3] (Compl. at pp. 53-57). Defendants move only to dismiss the deliberate indifference claim.

---

[3] While Defendants acknowledge in briefing that the Complaint alleges the use of excessive force (Def. Br. at 7), Defendants do not address excessive force or failure to intervene as independent claims for relief. The Complaint states that Plaintiff "has raised multiple violations under the Eighth Amendment of the Constitution that include, Deliberate Indifference to Serious Medical need, Excessive Force By Prison Officials, and Failure to Protect From Prison Officials." (Compl. at p. 54). Indeed, the gravamen of the Complaint is the alleged physical assault on Plaintiff during the C.E.R.T. Raid. Therefore, the Court construes the Third Claim for Relief as alleging claims for excessive force and failure to intervene, as well as deliberate indifference to serious medical needs, under the Eighth Amendment.

"The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 844 (1994)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104 (alteration in original)). "A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test." *Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4 (S.D.N.Y. Sept. 8, 2020). Generally, as explained by this Court previously:

> [t]he first prong is objective and requires that the alleged deprivation in medical care be sufficiently serious. A deprivation in medical care is sufficiently serious if (1) the prisoner was actually deprived of adequate medical care and (2) the inadequacy in medical care is sufficiently serious. The latter inquiry contemplates a condition of urgency that may result in degeneration or extreme pain.
> . . . .
> The second prong of the deliberate indifference test under the Eighth Amendment is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. A defendant had a sufficiently culpable state of mind if he acted or failed to act while actually aware of a substantial risk that serious inmate harm will result.

*Id.* at *4-5 (internal citations and quotation marks omitted).

Defendants advance three arguments with respect to Plaintiff's claim for deliberate indifference: (i) the claims are duplicative of Plaintiff's claims in a prior suit; (ii) Plaintiff fails to plead an objectively serious medical risk; and (iii) Plaintiff fails to plead deliberate indifference by any Defendant. (Def. Br. at 12-16; Reply at 3-4).

With respect to Defendant's argument that Plaintiff fails to demonstrate an objectively serious medical risk resulting from the C.E.R.T. Raid (Def. Br. at 14-16), Plaintiff responds that

10

his medical needs were sufficiently serious and that the exhibits attached to the Complaint support his position. (Pl. Br. at 16). The Complaint alleges that following the C.E.R.T. Raid Plaintiff was in "extreme pain especially to the left ankle, back, neck and head" and "was almost unable to walk . . . without assistance." (Compl. ¶¶ 26-27). A medical record attached to the Complaint shows that Plaintiff was treated for bruising on the day of the C.E.R.T. Raid. (*Id*., Ex. D).[4] While Plaintiff's alleged injuries are described in vague terms, the Court, construing the facts in Plaintiff's favor and considering the brutality of the alleged assault (Compl. ¶¶ 15-16), finds these injuries sufficient to meet the first prong.

Defendants also argue that Plaintiff fails to demonstrate that they acted with a sufficiently culpable state of mind. (Def. Br. at 15). Plaintiff responds that the prison officials involved knew about and ignored an excessive risk to his health and safety. (Pl. Br. at 16). The Court agrees with Defendants.

Plaintiff alleges that he should have received medical assistance after the C.E.R.T. Raid beyond the bandages and Aspirin provided by Nurse Sullivan, such as stronger pain medication or an immediate X-Ray or M.R.I. (Compl. ¶¶ 28, 31, 37, 58-59; *id*. at pp. 55-56). Medical records attached to the Complaint confirm that Plaintiff was treated with ice and bandages (*id*., Ex. D) and that Nurse Sullivan ordered Plaintiff an X-ray which was performed on January 4, 2022 (*id*., Ex. J). Defendants argue that Plaintiff's dissatisfaction with Sullivan's treatment does not demonstrate deliberate indifference. (Def. Br. at 15). The test for deliberate indifference to a serious medical

---

[4] On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken . . . ." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) (explaining that a court may consider "statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit"). The Court may therefore consider the medical records attached to the Complaint.

11

need under the Eighth Amendment, laid out *supra*, exists with a caveat: "a prisoner is not entitled to the best healthcare possible or even to a choice among available treatment modalities." *Robinson v. Wolf-Friedman*, No. 18-CV-02409, 2019 WL 4640236, at *6 (S.D.N.Y. Sept. 24, 2019) (internal quotation marks omitted). "Indeed, prison officials and medical officers have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). Here, Plaintiff's allegations that Nurse Sullivan should have done more to treat his injuries than provide bandages and Aspirin is not sufficient to establish a culpable state of mind. *See Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."). Accordingly, Plaintiff fails to satisfy the second prong.[5]

Defendants further argue that there are no facts to suggest that either Blot or Bhuiyan was subjectively reckless in their denial of medical care. (Def. Br. at 44). Plaintiff responds that both were aware of his medical needs prior to entering the housing unit. (Pl. Br. at 16). With respect to Bhuiyan, Plaintiff alleges that he requested medical attention from Bhuiyan after the C.E.R.T. Raid and that Bhuiyan told him to wait. (*Id.* ¶ 28). Plaintiff does not otherwise allege that Bhuiyan knew of a serious medical risk or disregarded such a risk. Moreover, Plaintiff does not allege that he requested medical care from Blot, let alone that he was denied medical care. Therefore, Plaintiff has not met the subjective prong as to either Blot or Bhuiyan.

---

[5] Though Plaintiff identifies Nurses Mukkatt and Gifty as having failed to provide prompt medical care (Compl. ¶ 58), Plaintiff does not allege in sufficient detail that Mukkatt or Gifty saw him after the C.E.R.T. Raid, became aware of a serious medical risk, and deliberately disregarded that risk. The Third Claim for Relief against them is dismissed.

12

Accordingly, Plaintiff's Third Claim for Relief for deliberate indifference is dismissed.[6]

### VI. Fourth Claim for Relief: Violation of the Ninth Amendment

Plaintiff's Fourth Claim for Relief alleges violation of the Ninth Amendment. (Compl. at pp. 58-59). The Ninth Amendment cannot serve as the basis for a § 1983 claim. *See Lloyd v. Lee*, 570 F. Supp. 2d 556, 566 (S.D.N.Y. 2008). Accordingly, Defendants' motion to dismiss is granted as to the Fourth Claim for Relief.

### VII. Fifth Claim for Relief: Denial of Equal Protection in Violation of the Fourteenth Amendment

Plaintiff's Fifth Claim for Relief alleges violation of his equal protection rights pursuant to the Fourteenth Amendment on the basis that the C.E.R.T. Defendants targeted him in the assault because he is Hispanic. (Compl. at pp. 60-61; Pl. Br. at 21-22). Plaintiff alleges that the C.E.R.T. Defendants attacked only Black or Hispanic inmates, not White inmates, and used racial slurs against him during the assault. (Compl. ¶¶ 16, 70). These allegations which involve physical abuse are sufficient to sustain an equal protection claim at this stage. *See Nova v. Smith*, No. 19-CV-00072, 2019 WL 13417142, at *4 (N.D.N.Y. Feb. 27, 2019); *see also Baskerville v. Goord*, No. 97-CV-06413, 2000 WL 897153, at *3 (S.D.N.Y. July 6, 2000) ("Mere verbal abuse or the use of racial slurs or epithets reflecting racial prejudice, although reprehensible, does not form the basis of a claim pursuant to § 1983 . . . Where, however, such statements are shown to be connected with physical injury, a § 1983 claim may indeed lie."). Accordingly, Defendants' motion to dismiss the Fifth Claim for Relief is denied.

---

[6] Given the conclusions reached herein, the Court need not address Defendants' argument that Plaintiff's deliberate indifference allegations against Sullivan are duplicative of those asserted in Plaintiff's prior litigation. (Def. Br. at 13).

VIII.   Sixth Claim for Relief: Violation of the First Amendment and RLUIPA

Plaintiff asserts in his Sixth Claim for Relief that the C.E.R.T. Defendants' destruction of religious items on a shrine in his prison cell constituted a violation of his free exercise rights under the First Amendment and RLUIPA. (Compl. at pp. 62-63).

"The religion clauses of the First Amendment, applicable to the states through the Fourteenth Amendment, provide that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'" *Kravitz v. Purcell*, --- F.4th ----, 2023 WL 8177114, at *4 (2d Cir. Nov. 27, 2023). Alleged violations of the right to free exercise, in the prison context, are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* (quoting *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 349 (1987)). Accordingly, a prisoner's First Amendment right to the free exercise of his religious beliefs may only be infringed to the extent that such infringement is reasonably related to legitimate penological interests. *Id.*; *see also Turner v. Safley*, 482 U.S. 78, 89 (1987); *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989). "In short, to assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate penological objectives." *Kravitz*, 2023 WL 8177114, at *11.

A RLUIPA violation, on the other hand, requires a showing that "the challenged conduct substantially burdened his sincerely held religious beliefs." *Lloyd v. City of New York*, 43 F. Supp. 3d 254, 263 (S.D.N.Y. Aug. 4, 2014); *see also Kravitz*, 87 F.4th at 125-126 ("an inmate does not need to establish a substantial burden in order to prevail on a free exercise claim under § 1983" but "[RLUIPA] requires a substantial burden inquiry.").

Here, Plaintiff alleges the C.E.R.T. Defendants destroyed the shrine—including "a painting of Jesus Christ holding his heart, and a Crucifix, and Cup of Holy Water, Fruits and Rosary . . . and Religious books and Written Scriptures, Passages and Prayers from the Bible." (Compl. ¶¶ 68, 98-99). Defendants do not challenge that Plaintiff's religious beliefs are sincerely held, so the Court's assumes sincerity for the purposes of this Motion. *See Porter v. Bunch*, No. 16-CV-05935, 2019 WL 1428431, at *15 (S.D.N.Y. Mar. 29, 2019). Defendants argue, however, that Plaintiff has failed to allege *how* the C.E.R.T. Defendants' actions burdened his religious practice as a Protestant. (Def. Br. at 21) (emphasis in original). Plaintiff alleges that he "[p]rayed [d]aily in front of [his] Shrine," that the shrine was destroyed, and that he was afraid to re-create the shrine for fear that it would be destroyed again. (Compl. ¶¶ 68, 98-99). Plaintiff further alleges that the destruction of these items "all together Stopped Plaintiff from Practicing in []his Belief, being Protestant." (*Id.*). The Court understands Plaintiff as alleging that the loss of his shrine infringed on his daily prayer practice. Moreover, Defendants do not assert any legitimate penological interest in destroying Plaintiff's shrine. At this stage of the litigation, Plaintiff has plausibly stated a claim under the First Amendment and RLUIPA.

Accordingly, Defendants' motion is denied as to the Sixth Claim for Relief.

IX.     Seventh Claim for Relief: Failure to Accommodate under ADA and Rehab Act

Plaintiff's Seventh Claim for Relief asserts claims for failure to make a reasonable accommodation for Plaintiff's disability in violation of the ADA and Rehab Act. (Compl. at pp. 64-66). Defendants argue that this claim for relief is duplicative of claims asserted in Plaintiff's earlier filed action—namely, the alleged denial of an extra mattress or egg crate mattress as a reasonable accommodation. *See Rodriguez v. Burnett*, No. 22-CV-02198, 2023 WL 3902705, at *5 (S.D.N.Y. June 7, 2023). (Def. Br. at 13). Plaintiff indicates in Opposition that the only reason

15

he included allegations about the need for an egg crate mattress in this action to show that Defendants "knew about their subordinates actions and failed to respond." (Pl. Br. at 14). Defendants construe this as an admission that Plaintiff is not seeking redress for disability violations. (Reply at 3). The Court is not convinced that Plaintiff intends such an admission. Plaintiff goes on to argue that the pending claim is not duplicative of his earlier action because the "date, time and incident involved were different from any previous claim." (Pl. Br. at 15). But Plaintiff has not identified in the Complaint or his briefing any factual basis for the reasonable accommodation claim other than the denial of an egg create mattress. (Compl. ¶ 55). Accordingly, the Seventh Claim for Relief is dismissed as duplicative Plaintiff's claim in the earlier filed action which dealt with nearly identical allegations. *See Rodriguez*, 2023 WL 3902705, at \*5-6.

    X.    <u>Eighth Claim for Relief: Supervisory Liability</u>

Plaintiff's Eighth Claim for Relief advances a theory of supervisory liability without identifying specific Defendants. (Compl. at pp. 68-69). In any event, allegations that individuals failed to supervise employees does not establish liability. *See Russell v. Stanford*, No. 21-CV-00296, 2021 WL 1565147, at \*5 (N.D.N.Y. Apr. 21, 2021) ("there is no special rule for supervisory liability . . . a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, had violated the Constitution."). Accordingly, Defendants' motion is granted as to the Eighth Claim for Relief.

    XI.    <u>Qualified Immunity</u>

Finally, Defendants argue that the claims against Burnett and Urbanski should be dismissed by operation of qualified immunity. (Def. Br. at 18-19). "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant

to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). If an official's belief that his action does not violate clearly established law is "objectively reasonable," he is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013); *see also al-Kidd*, 563 U.S. at 743 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments . . . .[I]t protects all but the plainly incompetent or those who knowingly violate the law." (internal quotation marks omitted)). However, on a motion to dismiss, Plaintiff's entitlement to qualified immunity must "appear on the face of the complaint." *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (internal quotation marks omitted). That is not the case here.

Defendants argue that the Plaintiff's allegations that Burnett and Urbanski "authoriz[ed] the deployment of C.E.R.T. without just cause" (Compl. ¶ 9) does not rise to the level of violating clearly established statutory or constitutional rights because "[d]eploying specialized security personnel does not alone violate the law." (Def. Br. at 18). This conclusory argument merely parrots the qualified immunity standard without meaningfully applying applicable case law to the facts of this case. Moreover, Defendants' argument ignores Plaintiffs' allegations that the C.E.R.T. Defendants were deployed for the improper purpose of assaulting prisoners, specifically Black and Hispanic prisoners. (Compl. ¶¶ 62-64). The Court cannot conclude from the four-corners of the Complaint and on the motion papers before it that Burnett and Urbanski are entitled to qualified

immunity at this early pleading stage. *See Dipinto v. Westchester Cty.*, No. 18-CV-00793, 2019 WL 4142493, at *4 n.4 (S.D.N.Y. Aug. 30, 2019). Although Burnett and Urbanski are "not entitled to qualified immunity on the face of the complaint . . . a factual basis for qualified immunity may arise as the proceedings develop." *Terranova v. New York*, 144 F. App'x 143, 146-47 (2d Cir. 2005) (internal quotation marks omitted). Defendants may revisit this argument after developing the record.

## **CONCLUSION**

For the foregoing reasons, the motion to dismiss is GRANTED in part and DENIED in part.

Defendants' motion is GRANTED as to: (i) First Claim for Relief (retaliation); (ii) Third Claim for Relief (deliberate indifference); (ii) Fourth Claim for Relief (Ninth Amendment); (iii) Seventh Claim for Relief (disability discrimination and reasonable accommodation); (iv) Eighth Claim for Relief (supervisory liability); and (v) any claims asserted against Reams, Mitchell, or Akinyombo.

Defendants' motion is DENIED as to: (i) First Claim for Relief (access to courts); (ii) Second Claim for Relief (unreasonable search); (iii) Third Claim for Relief (excessive force and failure to intervene); (iv) Fifth Claim for Relief (equal protection); (v) Sixth Claim for Relief (religious freedom); and (vi) the affirmative defense of qualified immunity.[7]

Defendants are directed to file an answer to the complaint within 14 days of the date of this Order. The Court will thereafter docket a Notice of Initial Conference.

---

[7] These claims proceed against the Defendants in their individual capacities only, since the Eleventh Amendment bars § 1983 claims against individual Defendants in their official capacities as DOCCS employees. *Phillips v. New York*, No. 13-CV-00927, 2013 WL 5703629, at *3 (N.D.N.Y. Oct. 17, 2013) (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)); *see also Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011).

The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. 43 and mail a copy of this Opinion and Order to Plaintiff.

**SO ORDERED.**

Dated: White Plains, New York
April 4, 2024

_____
PHILIP M. HALPERN
United States District Judge