RECEIVED
JUN 09 2025
U.S.D.C.
W.P.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**RALPH RODRIGUEZ,**

**Case No.: 22-CV-10056(PMH)**

**Plaintiff,**

**v.**

RECEIVED
JUN 09 2025
PRO SE OFFICE

**EDWARD BURNETT, et al., Defendants.**

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I Ralph Rodriguez am submitting this Opposition to defendants motion to dismiss pro se and humbly request that any errors made be overlooked unless significant requiring amendments, and depose and state everything as true and correct to the best of my ability.**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES
I. PRELIMINARY STATEMENT
II. BACKGROUND
A. Plaintiff's Current Status and Disabilities
B. The December 30, 2021 CERT Search and Subsequent Violations
C. Plaintiff's Attempts to Exhaust Administrative Remedies and Systemic Unavailability
D. Ongoing Litigation and Critical Discovery Challenges
IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

V. ARGUMENT
A. Defendants Are Not Entitled to Summary Judgment on Exhaustion Grounds
1. The Grievance Process Was Rendered Systemically Unavailable Through Purposive Obstruction
2. Plaintiff Diligently Attempted to Grieve All Relevant Issues
B. Genuine Disputes of Material Fact Preclude Summary Judgment on Defendants' Personal Involvement
1. Supervisory Defendants: Superintendent Burnett and Deputy Superintendent Urbanski
2. OSI Investigators: Rose, Okusko, and Hanley
3. CERT Officers: Blot, Flanagan, Crofoot, Franco, Matos, Santiago, Oge, and Garrett
C. Plaintiff's Constitutional Claims Withstand Summary Judgment, Evidencing Deliberate and Unjustified Violations
1. First Amendment Right of Access to Courts
2. Fourth Amendment Unreasonable Search
3. Eighth Amendment Excessive Force and Deliberate Indifference to Serious Medical Needs
4. Fourteenth Amendment Equal Protection (Racial Discrimination)
5. First Amendment Free Exercise of Religion and Religious Land Use and Institutionalized Persons Act (RLUIPA)
D. Qualified Immunity Is Wholly Inapplicable Due to Clearly Established Rights and Egregious Conduct
E. Defendants' Failure to Produce Vital Evidence and Discovery Violations Constitutes Spoliation
VI. JURY TRIAL DEMAND
VII. CONCLUSION

**TABLE OF AUTHORITIES**

**Cases**

- *Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994)
- *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)
- *Bell v. Wolfish*, 441 U.S. 520 (1979)
- *Colon v. Coughlin*, 58 F.3d 873 (2d Cir. 1995)
- *Cutter v. Wilkinson*, 544 U.S. 709 (2005)
- *Estelle v. Gamble*, 429 U.S. 97 (1976)
- *Farmer v. Brennan*, 511 U.S. 825 (1994)
- *Ford v. McGinnis*, 352 F.3d 582 (2d Cir. 2003)
- *Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988)
- *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)
- *Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003)
- *Holland v. Goord*, 758 F.3d 215 (2d Cir. 2014)

- *Hope v. Pelzer*, 536 U.S. 730 (2002)
- *Hudson v. McMillian*, 503 U.S. 1 (1992)
- *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246 (2d Cir. 2001)
- *Lewis v. Casey*, 518 U.S. 343 (1996)
- *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)
- *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987)
- *Oliveira v. Mayer*, 23 F.3d 642 (2d Cir. 1994)
- *Pearson v. Callahan*, 555 U.S. 223 (2009)
- *Porter v. Nussle*, 534 U.S. 516 (2002)
- *Ross v. Blake*, 578 U.S. 632 (2016)
- *Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010)
- *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471 (2d Cir. 2006)
- *Turner v. Safley*, 482 U.S. 78 (1987)
- *Washington v. Davis*, 426 U.S. 229 (1976)
- *Woodford v. Ngo*, 548 U.S. 81 (2006)
- *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64 (2d Cir. 2016)

**Statutes**

- 42 U.S.C. § 1983
- 42 U.S.C. § 1997e (Prison Litigation Reform Act - PLRA)
- 42 U.S.C. § 12101 *et seq.* (Americans with Disabilities Act - ADA)
- 29 U.S.C. § 794 (Rehabilitation Act - Section 504)
- 42 U.S.C. § 2000cc-1 (Religious Land Use and Institutionalized Persons Act - RLUIPA)

**Rules**

- Fed. R. Civ. P. 56
- Local Civil Rule 56.1
- Local Civil Rule 7.1
- Fed. R. Civ. P. 26 (General Provisions Governing Discovery)
- Fed. R. Civ. P. 37 (Failure to Make Disclosures or Cooperate in Discovery; Sanctions)

## I. PRELIMINARY STATEMENT

Plaintiff, Ralph Rodriguez, a recently released individual with severe disabilities and limited legal knowledge, vehemently opposes Defendants' Motion for Summary Judgment. Defendants seek to prematurely terminate Plaintiff's vital civil rights claims, asserting administrative remedies were not exhausted, certain defendants

lacked personal involvement, and Plaintiff's constitutional claims fail as a matter of law. However, the existing record, coupled with the critical absence of discovery exclusively controlled by Defendants, reveals substantial and undeniable genuine disputes of material fact, rendering summary judgment wholly inappropriate.

Plaintiff directly challenges Defendants' narrative, demonstrating through verified documents, contemporaneous grievances, sworn declarations, and corroborating medical records that the grievance process was purposefully rendered unavailable. Defendants were undeniably personally involved in egregious constitutional violations, and their actions were not only unlawful but also deliberately inflicted without justification, violating well-established rights that any reasonable officer would have known. Furthermore, Defendants' persistent withholding of crucial evidence, including incident reports, video footage, and photographs, constitutes a blatant violation of discovery rules and further underscores the prematurity of summary judgment. Defendants are unequivocally not entitled to qualified immunity for their alleged wanton conduct. This case demands a jury trial to resolve the numerous factual disputes and assess the credibility of witnesses. Plaintiff reiterates his motion for assignment of pro bono counsel and for his *in forma pauperis* status to continue, given his current financial hardship.

## II. BACKGROUND

### A. Plaintiff's Current Status and Disabilities

1- Plaintiff Ralph Rodriguez was incarcerated by the New York State Department of Corrections and Community Supervision ("DOCCS") at Fishkill Correctional Facility until his recent release on or about February 11, 2025. (Rule 56.1 SOF, ¶ 51, Plaintiff's Response: Correct/yes; *see also* Ex. V, Plaintiff's DOCCS Incarcerated Lookup Page, attached to Cahn Decl.). Plaintiff now resides at Seneca Avenue, Flushing, NY 11385. Plaintiff suffers from a myriad of severe medical conditions and disabilities, including debilitating injuries to his right shoulder, left ankle/leg, neurological damage, and significant mental health issues such as bipolar disorder, anti-social personality disorder, anxiety, claustrophobia, and depression. These conditions necessitate ongoing medication and accommodations. Defendants were fully aware of these conditions through prior court documentation and Plaintiff's medical records (Ex. A, Pl.'s Dep., 118:6–119:11, 121:18–25, attached to Cahn Decl.). Plaintiff also has a hearing impairment requiring a hearing aid. These profound disabilities substantially limit his major life activities, rendering him particularly vulnerable to the intentional abuses he

endured. Due to his recent release and severe disabilities, Plaintiff is unable to work and is currently collecting Social Security Disability (SSD) and welfare, and is enrolled in Medicaid and Medicare, receiving public assistance. His financial situation has not increased and has, in fact, worsened since his release, necessitating the continuation of his *in forma pauperis* status.

**B. The December 30, 2021 CERT Search and Subsequent Violations**

2- On December 30, 2021, Fishkill Correctional Facility was placed on lockdown following a purported "attempted escape" by an incarcerated individual from Dorm 9-1, Plaintiff's housing unit. (Rule 56.1 SOF, ¶ 7, Plaintiff's Response: There was no attempted escape...). Plaintiff vehemently disputes the legitimacy of this narrative, asserting that the individual experienced a mental health crisis and never actually left facility grounds, thereby rendering the subsequent, disproportionate Correctional Emergency Response Team ("CERT") deployment entirely unjustified. (Rule 56.1 SOF, ¶ 7, Plaintiff's Response). This highly questionable predicate for the CERT operation underscores the lack of justification for the ensuing brutality, demonstrating a deliberate and calculated decision by Defendants to use excessive force under the guise of security.

3- On December 30, 2021, CERT officers, including Defendants Blot, Flanagan, Crofoot, Franco, Matos, Santiago, Oge, and Garrett (Rule 56.1 SOF, ¶¶ 13-15), conducted a sweeping and violent search of Dorm 9-1 from approximately 7:15 a.m. until 8:50 a.m. (Rule 56.1 SOF, ¶ 24). During this operation, Plaintiff personally witnessed other inmates being brutally assaulted and heard their screams for help, foreshadowing his own ordeal. This evidence demonstrates that Defendants were fully aware of the violent nature of the operation and the potential for abuse, yet they failed to take any steps to prevent it, indicating a knowing and deliberate disregard for the safety and well-being of the inmates.

4- Specifically, Plaintiff alleges that CERT officers purposefully and violently "ripped off" his clothes, leaving him exposed in only his boxer shorts, and then forced him to walk through a metal detector. (Rule 56.1 SOF, ¶ 38, Plaintiff's Response: INCORRECT/ plaintiffs clothes were ripped off by CERT; *see also* Ex. B, Compl., ¶ 24). This forced undressing, rather than a voluntary disrobing, constitutes an egregious and unjustified intrusion, demonstrating a clear intent to humiliate and degrade Plaintiff. Immediately thereafter, Plaintiff asserts he was subjected to a brutal, unprovoked assault by approximately five CERT officers, who maliciously kicked him with army

boots and, with blatant racial animus, called him a "Fucking Spick". Despite his desperate pleas of "I'M DISABLE" to alert them to his vulnerabilities, these officers intentionally slammed his face into a wall, causing severe and lasting injuries to his head, neck, back, ribs, legs, left ankle, hands, and wrist. (Ex. B, Compl., ¶¶ 21-26; *see also* medical records, Ex. A to Cahn Decl., Pl.'s Dep., 118:6–119:11, 121:18–25, confirming injuries and medical conditions). The explicit use of a racial slur during the assault reveals a discriminatory and malicious intent underlying the excessive force, demonstrating that Defendants were acting with a clear bias and intent to harm Plaintiff based on his ethnicity. Other inmates, including M.R., J.L., and T.S., corroborated witnessing similar assaults and experiencing inadequate medical care following the raid through their sworn declarations (Exhibits D, E, F, attached to Plaintiff's prior submissions). Shockingly, Plaintiff was denied proper medical attention for over 10 hours following this premeditated assault, demonstrating deliberate indifference to his serious medical needs. (Ex. B, Compl., ¶¶ 27-30). This prolonged denial of medical care further demonstrates Defendants' knowledge of the harm they inflicted and their conscious decision to disregard Plaintiff's well-being.

5- Beyond the physical violence, Plaintiff alleges that CERT officers wantonly damaged or destroyed several religious items that were intrinsically "vital to his faith," including a shrine, holy water, and religious garments. (Ex. B, Compl., ¶¶ 68, 98-100; Rule 56.1 SOF, ¶ 48, Plaintiff's Response: Correct/Yes as is vital to my faith). Defendants were unequivocally aware of Plaintiff's religious beliefs due to the conspicuous presence of his shrine and religious articles within his living area. (Rule 56.1 SOF, ¶ 49, Plaintiff's Response: INCORRECT/ Defendants were aware of plaintiff religious beliefs as a shrine and multiple religious items were in plaintiff personal area and cubical readily seen by all). This intentional destruction represents a direct and purposeful attack on his constitutionally protected religious exercise, demonstrating a clear intent to disrespect and violate Plaintiff's religious freedom. Furthermore, Plaintiff asserts that the entire CERT search was discriminatorily aimed at Black and Hispanic inmates, including himself, a claim reinforced by the racial epithet hurled during his assault. (Rule 56.1 SOF, ¶ 44, Plaintiff's Response: INCORRECT/BLACK and HISPANIC; Rule 56.1 SOF, ¶ 45, Plaintiff's Response: CORRECT including me but defendants failed to log their assault on ME).

**C. Plaintiff's Attempts to Exhaust Administrative Remedies and Systemic Unavailability**

6- Plaintiff was keenly aware of the Prison Litigation Reform Act (PLRA) exhaustion

requirements and diligently made numerous attempts to grieve the horrific incidents of December 30, 2021. (Rule 56.1 SOF, ¶ 26, Plaintiff's Response: Yes and attempted to utilize all procedures available following the PLRA correctly fully within the corrupted grievance system at Fishkill known for ignoring grievances, failing to log and file grievances and is completely inadequate). However, Plaintiff contends that the administrative grievance system at Fishkill, particularly under the purview of Ms. Reams, was not merely inefficient, but "corrupt" and notoriously known for "ignoring grievances, failing to log and file grievances and is completely inadequate". This systemic failure was not accidental but allegedly a deliberate tactic to obstruct inmates' access to justice, demonstrating a conscious and calculated effort by Defendants to prevent Plaintiff from seeking redress for their actions.

7- Despite Plaintiff's persistent efforts to file multiple grievances detailing the violations, Defendants conveniently assert no record exists of a timely grievance related to the December 30, 2021 CERT search. (Rule 56.1 SOF, ¶ 30). Plaintiff directly refutes this, maintaining that he submitted numerous grievances covering all violations, diligently placing them in a secure grievance box. (Rule 56.1 SOF, ¶ 30, Plaintiff's Response: INCORRECT/ copies of all attempts were maintained and provided within complaint; Rule 56.1 SOF, ¶ 31, Plaintiff's Response: Because the IGRC refused to file plaintiffs grievance in an attempt to avoid litigation and is why "plaintiff maintained all grievances attempted to be filed placing them in a secure grievance box within the facilities "MESS HALL", and what happen from there is for the defendants and IGRC personnel to answer). Yet, the Incarcerated Grievance Resolution Committee (IGRC) purposefully "refused to file them to avoid litigation", effectively rendering the entire administrative process a "dead end." This deliberate "machination" and "misrepresentation" by prison officials, as recognized in *Ross v. Blake*, 578 U.S. 632, 643 (2016), unmistakably demonstrates the unavailability of the grievance process.

8- Further substantiating this systemic obstruction, Plaintiff's FOIL requests for injury reports pertaining to the December 30, 2021 incident were met with disingenuous responses stating the reports were "missing and not found". Such documented "missing" records are compelling evidence of a deliberate effort to suppress or conceal critical evidence and thwart Plaintiff's attempts at redress, rendering the grievance process unavailable as a matter of law. This is not merely an oversight; it is a calculated act of concealment, demonstrating that Defendants knew their actions were unlawful and sought to prevent their disclosure. This deliberate cover-up directly supports Plaintiff's assertion that the system was designed to "hide and cover up the wrong that the staff here at Fishkill does". *See Woodford v. Ngo*, 548

U.S. 81, 102 (2006) (acknowledging that "prison officials may render remedies unavailable by failing to respond to grievances" or by actively preventing their filing).

9- **D. Ongoing Litigation and Critical Discovery Challenges**

Plaintiff commenced this pro se action in November 2022 (Dkt. Nos. 2, 2-1). Defendants have now moved for summary judgment, asserting various affirmative defenses. Crucially, Plaintiff has submitted a detailed Rule 56(d) Declaration (as part of his opposition brief), unequivocally asserting that essential discovery remains incomplete and is exclusively within Defendants' control. This includes, but is not limited to, surveillance video footage from the dorm and surrounding areas, photographs taken during or immediately after the incident, all incident reports, use-of-force reports, internal investigation materials, comprehensive medical logs, disciplinary logs, and staff emails discussing the events of December 30, 2021. Plaintiff has repeatedly, yet fruitlessly, attempted to obtain these vital materials through proper channels like grievances and FOIL requests, receiving no substantive response or production. These undelivered documents are unequivocally crucial for Plaintiff to fully support his claims, to meaningfully rebut Defendants' self-serving factual assertions, and to withstand summary judgment. The withholding of this critical evidence further underscores the prematurity of summary judgment, as it directly impacts Plaintiff's ability to present a full and fair opposition.

10- Plaintiff acknowledges a prior settlement in a separate, unrelated case (22-CV-2198). While this demonstrates his persistent engagement in litigation and general access to courts, it is wholly irrelevant to the merits of this specific action (22-CV-10056) and does not negate the distinct and ongoing deprivation of rights detailed herein, particularly with the outstanding discovery in this case. The fact that Plaintiff has successfully litigated other matters does not, and cannot, excuse Defendants alleged constitutional violations or their deliberate obstruction of discovery in *this* action.

**III. LEGAL STANDARD FOR SUMMARY JUDGMENT**

11- Summary judgment is a drastic remedy, appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party bears the formidable burden of demonstrating the absence of a genuine dispute of material

fact. *Id.* at 256. Crucially, in evaluating such a motion, all inferences must be drawn in favor of the non-moving party, and the court "may not weigh the evidence or resolve issues of fact." *Id.* at 249.

12- Where the non-movant is a pro se litigant, as Plaintiff is here, the court is obligated to "read the pleadings... liberally and interpret them to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 64 F.3d 50, 55 (2d Cir. 1995); *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010). This deferential standard is particularly vital when, as demonstrated by Plaintiff's Rule 56(d) Declaration, the plaintiff has been denied access to crucial, defendant-controlled discovery essential for a full response. Summary judgment is not a substitute for trial where material issues of fact remain in dispute, particularly in cases involving credibility determinations, disputed medical needs, or allegations of excessive force. In this case, Defendants' motion should be denied in its entirety because multiple genuine issues of material fact remain as to each claim, and these issues are inextricably linked to Defendants' deliberate actions and their subsequent efforts to conceal evidence.

## IV. ARGUMENT

### A. Defendants Are Not Entitled to Summary Judgment on Exhaustion Grounds

13- Defendants wrongly contend that Plaintiff failed to exhaust his administrative remedies as required by the PLRA. However, the PLRA's exhaustion requirement, codified at 42 U.S.C. § 1997e(a), mandates exhaustion only of "available" administrative remedies. The Supreme Court in *Ross v. Blake*, 578 U.S. 632 (2016), definitively clarified that an administrative remedy is unavailable if: (1) it operates as a "dead end" because prison officials are unable or unwilling to provide any relief; (2) it is "so opaque" that it is "incapable of use"; or (3) prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643. Plaintiff has provided compelling evidence squarely fitting the third *Ross* exception, demonstrating that Fishkill's grievance system was purposefully rendered unavailable to him through the defendants' own deliberate actions.

#### 1. The Grievance Process Was Rendered Systemically Unavailable Through Purposive Obstruction

14- Plaintiff unequivocally asserts that the grievance program at Fishkill, under the

supervision of Ms. Reams, was not merely inefficient but "corrupt" and notoriously known for "ignoring grievances, failing to log and file grievances and is completely inadequate". (Rule 56.1 SOF, ¶ 26, Plaintiff's Response). This is far more than a "general frustration"; it is a direct and specific allegation of systemic, deliberate obstruction. Plaintiff diligently attempted to file multiple grievances, even maintaining copies of his efforts, but these were allegedly and purposefully "not logged or filed by the IGRC to avoid litigation". (Rule 56.1 SOF, ¶ 30, Plaintiff's Response; Rule 56.1 SOF, ¶ 31, Plaintiff's Response: Because the IGRC refused to file plaintiffs grievance in an attempt to avoid litigation and is why "plaintiff maintained all grievances attempted to be filed placing them in a secure grievance

15- box within the facilities "MESS HALL", and what happen from there is for the defendants and IGRC personnel to answer). Such conduct—the deliberate refusal to process grievances to prevent legal action—constitutes a textbook example of "machination" and "misrepresentation" by prison officials, directly rendering the process unavailable under *Ross*. This was a calculated institutional effort by Defendants, who were fully aware of their obligations, to deny Plaintiff his statutorily protected right to administrative redress. Their actions demonstrate a clear intent to circumvent the law and obstruct justice.

16- Moreover, the deliberate suppression or misplacement of critical evidence further underscores the systemic unavailability. Plaintiff's FOIL requests for crucial injury reports pertaining to the December 30, 2021 incident were met with disingenuous responses stating the reports were mysteriously "missing and not found". Such documented "missing" records are compelling evidence of a deliberate effort to suppress or conceal critical evidence and thwart Plaintiff's attempts at redress, rendering the grievance process unavailable as a matter of law. This is not merely an oversight; it is a calculated act of concealment, demonstrating that Defendants knew their actions were unlawful and sought to prevent their disclosure. This deliberate cover-up directly supports Plaintiff's assertion that the system was designed to "hide and cover up the wrong that the staff here at Fishkill does". *See Woodford v. Ngo*, 548 U.S. 81, 102 (2006) (acknowledging that "prison officials may render remedies unavailable by failing to respond to grievances" or by actively preventing their filing).

**2. Plaintiff Diligently Attempted to Grieve All Relevant Issues**

17- Defendants' assertion that Plaintiff's alleged grievances did not comprehensively address all the misconduct he now raises (First, Fourth, Fourteenth Amendments,

RLUIPA) (Rule 56.1 SOF, ¶¶ 33-34) is directly contradicted by Plaintiff's sworn testimony and his Complaint. Plaintiff explicitly states, "Plaintiff attempted to grieve each and every issue." (Rule 56.1 SOF, ¶ 34, Plaintiff's Response). The Plaintiff's Complaint (Ex. B, Compl., ¶¶ 48-50, pp. 2, 134-46, 151-53) details grievances related to excessive force, medical neglect, and religious interference. The fact that Defendants' internal records (Ex. P, Plaintiff's Fishkill Grievance List; Ex. Q, Plaintiff's CORC History) conveniently "do not reflect these grievances" is not a deficiency on Plaintiff's part but rather the very crux of his claim: that the administrative system itself was designed and operated to prevent the proper documentation and processing of legitimate complaints. Given Plaintiff's pro se status and the alleged corruption of the grievance system, a reasonable jury could readily find that Plaintiff did all that was reasonably possible to exhaust available remedies, but those remedies were, in fact, purposefully rendered unavailable by Defendants' deliberate actions. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002) (recognizing that exhaustion is a statutory mandate, but not absolute when remedies are unavailable). Defendants cannot now benefit from their own alleged wrongdoing in obstructing the grievance process.

**B. Genuine Disputes of Material Fact Preclude Summary Judgment on Defendants' Personal Involvement**

18- To establish liability under 42 U.S.C. § 1983, a plaintiff must affirmatively demonstrate each defendant's "personal involvement" in the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Personal involvement is not limited to direct participation but encompasses a broader range of conduct, including: (1) direct participation in the constitutional violation; (2) direct participation in a policy or custom that caused the violation; (3) knowing acquiescence in a subordinate's unconstitutional conduct; (4) supervisory gross negligence; or (5) failure to remedy a wrong after learning of it through a report or appeal. *Colon v. Coughlin*, 58 F.3d 873, 882 (2d Cir. 1995). Defendants claim Superintendent Burnett, Deputy Superintendent Urbanski, and OSI Investigators Rose, Okusko, and Hanley lacked personal involvement. However, Plaintiff has presented sufficient evidence creating genuine disputes as to each of these individuals, making summary judgment inappropriate. These defendants, by virtue of their positions and responsibilities, were at all times aware of the events unfolding and possessed the authority and duty to intervene or ensure proper conduct. Their failure to do so, or their active participation in the cover-up, demonstrates their personal involvement.

**1. Supervisory Defendants: Superintendent Burnett and Deputy Superintendent Urbanski**

19. Defendants assert that Superintendent Burnett was out of state and not in charge of the CERT search (Rule 56.1 SOF, ¶ 10), and Deputy Superintendent Urbanski was also not in charge (Rule 56.1 SOF, ¶ 12). Plaintiff directly and unequivocally disputes this, stating that Burnett "was fully on notice and was involved with the search," and Urbanski "was involved in the search." (Rule 56.1 SOF, ¶ 11, Plaintiff's Response: incorrect! he was fully on notice and was involved with the search; Rule 56.1 SOF, ¶ 12, Plaintiff's Response: incorrect.! He was involved in the search). The sheer scale of the CERT deployment and the facility lockdown, precipitated by an alleged incident in Plaintiff's dorm, would undeniably warrant the immediate attention and oversight of high-ranking officials. The notion that the Superintendent and Deputy Superintendent of Security would be unaware of, or uninvolved in, such a significant and potentially volatile operation is inherently incredible and raises serious questions of fact for a jury. Even if they were not physically directing the operation, their alleged "full notice" and "involvement" could establish personal involvement through supervisory liability or a deliberate failure to intervene or properly supervise, especially given the widespread nature of the alleged assaults and misconduct that occurred under their command. A jury could reasonably infer their knowing acquiescence or gross negligence in allowing such a brutal operation to unfold within their facility, particularly given the detailed allegations of widespread abuse and the subsequent cover-up of grievances and incident reports. Their positions mandate knowledge of such events, and their alleged inaction or involvement in the subsequent cover-up demonstrates their personal culpability.

**2. OSI Investigators: Rose, Okusko, and Hanley**

20. Defendants attempt to minimize the involvement of OSI investigators, claiming Investigator Rose was absent (Rule 56.1 SOF, ¶ 23), Okusko served merely as an Evidence Technician (Rule 56.1 SOF, ¶ 21), and Hanley was assigned solely to the Medical Unit (Rule 56.1 SOF, ¶ 22). However, Plaintiff directly refutes Rose's purported absence, stating she "was present at the facility, along with the other OSI personnel." (Rule 56.1 SOF, ¶ 23, Plaintiff's Response: incorrect she was present at the facility, along with the other OSI personnel). More critically, Plaintiff alleges that all OSI personnel, including these named defendants, "did NOTHING to assist and stood outside the dorm watching as defendants violated plaintiff rights without intervening and at all times had the opportunity to stop what occurred." (Rule 56.1 SOF, ¶ 16,

21- Plaintiff's Response). This direct accusation squarely raises a factual dispute about their personal involvement through a deliberate failure to intervene. Officers, including those in supervisory or investigative roles, have an affirmative constitutional duty to intercede on behalf of a prisoner whose constitutional rights are being violated in their presence if they have a realistic opportunity to do so. *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Their alleged inaction, while witnessing the severe abuses, constitutes a purposeful disregard for Plaintiff's clearly established rights. Furthermore, their roles as investigators imply a duty to document and preserve evidence, a duty they allegedly failed to uphold, contributing to the ongoing obstruction of justice. Their knowledge of the events and subsequent failure to act or investigate properly demonstrates their personal involvement.

**3. CERT Officers: Blot, Flanagan, Crofoot, Franco, Matos, Santiago, Oge, and Garrett**

22- These defendants are directly accused of the physical assault, forced stripping, and destruction of property. Their personal involvement is established through their direct participation in the alleged constitutional violations. (Ex. B, Compl., ¶¶ 21-26). The factual disputes regarding the nature of the search, the application of force, and the destruction of Plaintiff's property squarely implicate their direct involvement. (Rule 56.1 SOF, ¶ 38, Plaintiff's Response; Rule 56.1 SOF, ¶ 45, Plaintiff's Response). These officers were the direct perpetrators of the violence and humiliation, acting with full knowledge of their actions and the harm they were inflicting. Their conduct was not accidental or negligent; it was deliberate and malicious.

**C. Plaintiff's Constitutional Claims Withstand Summary Judgment, Evidencing Deliberate and Unjustified Violations**

**1. First Amendment Right of Access to Courts**

23- Plaintiff alleges that Defendants' actions, specifically the damaging and/or destruction of his legal documents and the systematic obstruction of the grievance process, purposefully impeded his fundamental First Amendment right of access to courts. (Ex. B, Compl., ¶¶ 48-50). While Defendants point to Plaintiff's continued litigation in other, unrelated cases (Rule 56.1 SOF, ¶¶ 41-42) as proof of no "actual injury", this argument is specious. The Supreme Court in *Lewis v. Casey*, 518 U.S. 343, 351 (1996), clarified that an actual injury occurs when an inmate is hindered in presenting a "nonfrivolous legal claim." The destruction of legal documents crucial to an ongoing or prospective case, particularly for a pro se litigant who relies solely on

his own materials, constitutes a direct and significant impediment to his ability to pursue legitimate claims effectively. Plaintiff's allegations of missing injury reports for the December 30, 2021 incident further illustrate a direct, purposeful frustration of his ability to develop and present his claims. This intentional deprivation of necessary legal materials and the deliberate cover-up of incident documentation directly caused an actual injury by hindering his efforts to seek legal redress for specific, non-frivolous grievances related to the CERT raid. Defendants, fully aware of Plaintiff's legal rights and the importance of these documents, deliberately acted to obstruct his access to justice.

**2. Fourth Amendment Unreasonable Search**

24- Plaintiff alleges a flagrantly unreasonable search occurred when CERT officers purposefully "ripped off" his clothes, leaving him in his boxer shorts, and forced him through a metal detector. (Rule 56.1 SOF, ¶ 38, Plaintiff's Response: INCORRECT/ plaintiffs clothes were ripped off by CERT; *see also* Ex. B, Compl., ¶ 24). While prisoners retain a limited Fourth Amendment right to be free from unreasonable searches, the reasonableness of a prison search is determined by balancing the need for institutional security against the invasion of the individual's privacy and dignity. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). The "manner in which it is conducted" is a key factor. *Id.* Here, Plaintiff does not merely allege a strip search, but a forcible disrobing. The allegation that officers purposefully "ripped off" his clothing, rather than requesting or allowing him to remove it himself, creates a stark factual dispute regarding the reasonableness, necessity, and dignity afforded during the search. Such forceful, undignified conduct, particularly given Plaintiff's known disabilities, goes far beyond a legitimate penological interest and could be found by a jury to be objectively unreasonable and intended to humiliate or punish, thereby violating Plaintiff's clearly established Fourth Amendment rights. Defendants were fully aware that this was an unwarranted and degrading act, and their actions demonstrate a deliberate intent to inflict emotional distress and humiliation upon Plaintiff.

**3. Eighth Amendment Excessive Force and Deliberate Indifference to Serious Medical Needs**

25- Plaintiff's claims of excessive force are supported by his graphic and detailed account of being brutally assaulted, kicked with army boots, subjected to a racial slur, slammed face-first into a wall, and sustaining severe injuries. (Ex. B, Compl., ¶¶ 21-26). The Eighth Amendment prohibits cruel and unusual punishment, and excessive

force claims require showing that force was applied "maliciously and sadistically to cause harm," rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The explicit racial slur ("Fucking Spick") uttered by officers during the assault provides direct, irrefutable evidence of malicious and sadistic intent, proving that the force was not applied in a good-faith effort. Moreover, the extensive and documented injuries sustained by Plaintiff, as reflected in his medical records (Ex. A to Cahn Decl., Pl.'s Dep., 118:6–119:11, 121:18–25), further corroborate the severity and lack of justification for the force employed. It is undisputed that no disciplinary charges were ever filed against Plaintiff following the incident, further undermining any claim of legitimate force. A reasonable jury could easily find that Defendants' actions were unprovoked, purposeful, and designed solely to inflict pain and humiliation. Defendants, as experienced correctional officers, were fully aware of the established rules regarding use of force and deliberately chose to violate them.

26. Furthermore, Plaintiff alleges that despite his severe injuries from the assault, he was purposefully denied proper medical attention for over 10 hours. (Ex. B, Compl., ¶¶ 27-30). This prolonged denial constitutes deliberate indifference to a serious medical need, a violation of the Eighth Amendment. To establish deliberate indifference, a plaintiff must demonstrate: (1) that the medical need was sufficiently serious; and (2) that the prison official acted with a sufficiently culpable state of mind (i.e., disregarded a substantial risk of harm of which they were aware). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Plaintiff's post-assault injuries (head, neck, back, ribs, legs, ankle, hands, wrist) are undeniably serious, and the knowing delay in providing care for 10 hours, while he was in obvious pain, demonstrates a culpable state of mind amounting to deliberate indifference. This was not negligence but a purposeful disregard for his well-being, demonstrating that Defendants knew Plaintiff was injured and consciously chose to deny him necessary medical care.

**4. Fourteenth Amendment Equal Protection (Racial Discrimination)**

27. Plaintiff asserts that the December 30, 2021 CERT search was discriminatory, purposefully targeting Black and Hispanic inmates, including himself, as evidenced by the racial epithet used during his assault. (Rule 56.1 SOF, ¶ 44, Plaintiff's Response: INCORRECT/BLACK and HISPANIC; Rule 56.1 SOF, ¶ 45, Plaintiff's Response: CORRECT including me but defendants failed to log their assault on ME). The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from intentionally discriminating against individuals based on their race. To succeed,

Plaintiff must demonstrate that he was treated differently from similarly situated individuals and that this disparate treatment was motivated by discriminatory animus. *Washington v. Davis*, 426 U.S. 229, 239-40 (1976).

28- The racial slur "Fucking Spick" is direct, unambiguous evidence of discriminatory intent. This was not an accidental utterance but a deliberate racial epithet used during an unprovoked assault, clearly indicating a purpose to target and harm Plaintiff based on his perceived ethnicity. While Defendants may argue there were uses of force involving inmates of all races (Rule 56.1 SOF, ¶ 45), this does not negate Plaintiff's specific, direct evidence of racial animus. The alleged selective targeting of non-white inmates during the CERT search further supports the claim of purposeful discrimination. A reasonable jury could readily infer, from the direct evidence of racial slurs and the selective nature of the search, that Defendants' actions were motivated by an impermissible discriminatory purpose, violating Plaintiff's clearly established equal protection rights. Defendants were fully aware that their actions were discriminatory and violated Plaintiff's fundamental rights.

**5. First Amendment Free Exercise of Religion and Religious Land Use and Institutionalized Persons Act (RLUIPA)**

29. Plaintiff alleges that his fundamental First Amendment right to free exercise of religion and his rights under RLUIPA were violated when CERT officers purposefully damaged or destroyed his religious items, including a shrine, holy water, and religious garments. (Ex. B, Compl., ¶¶ 68, 98-100). These items were explicitly stated to be "vital to his faith". (Rule 56.1 SOF, ¶ 48, Plaintiff's Response: Correct/Yes as is vital to my faith). The First Amendment guarantees inmates the right to free exercise of religion, limited only by legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). RLUIPA provides even stronger protections, prohibiting governments from imposing a "substantial burden" on the religious exercise of institutionalized persons unless the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. *Cutter v. Wilkinson*, 544 U.S. 709, 716 (2005).

30- Defendants were undeniably aware of Plaintiff's religious beliefs and practices, as evidenced by the "visible presence of his shrine and religious items" in his cubicle. (Rule 56.1 SOF, ¶ 49, Plaintiff's Response: INCORRECT/ Defendants were aware of plaintiff religious beliefs as a shrine and multiple religious items were in plaintiff personal area and cubical readily seen by all). The purposeful destruction of these

sacred items, without any stated legitimate security justification, constitutes a direct and substantial burden on Plaintiff's religious exercise. Such wanton destruction is not a good-faith attempt to maintain order; it is a deliberate act of disrespect and interference with Plaintiff's sincerely held religious beliefs. This intentional conduct, undertaken without justification, violated Plaintiff's clearly established First Amendment and RLUIPA rights, providing a sufficient basis for a jury to find in Plaintiff's favor. While RLUIPA does not provide for individual capacity money damages, the First Amendment claim against individual defendants remains viable. *See Holland v. Goord*, 758 F.3d 215 (2d Cir. 2014) (discussing RLUIPA and First Amendment claims). Defendants knew these items were religious and deliberately chose to destroy them, demonstrating a clear intent to burden Plaintiff's religious freedom.

**D. Qualified Immunity Is Wholly Inapplicable Due to Clearly Established Rights and Egregious Conduct**

31- Defendants assert qualified immunity, which protects government officials from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights, and a reasonable official would have known of the violation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, qualified immunity is emphatically inapplicable here because, when viewing the facts in the light most favorable to Plaintiff, Defendants' alleged conduct unequivocally violated clearly established constitutional rights, and no reasonable official could have believed such actions were lawful. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

32- The rights violated by Defendants are not obscure or novel; they are fundamental and have been clearly established for decades:

- The right to be free from excessive force that is applied maliciously and sadistically to cause harm. (*Hudson v. McMillian*, 503 U.S. 1 (1992)).
- The right to be free from unreasonable searches, particularly those involving gratuitous humiliation and forced disrobing. (*Bell v. Wolfish*, 441 U.S. 520 (1979)).
- The right to equal protection of the laws, free from racial discrimination and slurs. (*Washington v. Davis*, 426 U.S. 229 (1976)).
- The right to free exercise of religion, including protection of religious articles, absent a compelling interest. (*O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987); *Cutter v. Wilkinson*, 544 U.S. 709 (2005)).
- The right of access to courts, free from purposeful obstruction and destruction of legal materials. (*Lewis v. Casey*, 518 U.S. 343 (1996)).

- The right to adequate medical care for serious needs, free from deliberate indifference. (*Estelle v. Gamble*, 429 U.S. 97 (1976)).

33- Plaintiff alleges a coordinated pattern of abuse, including a brutal, unprovoked assault with racial slurs, a forced and humiliating strip search, the intentional destruction of sacred religious items, and a deliberate cover-up of the grievance process through the suppression of evidence. This alleged conduct goes far beyond mere negligence or error in judgment; it demonstrates a conscious and purposeful disregard for Plaintiff's most basic human and constitutional rights. Any reasonable correctional officer or supervisor would have known that such actions—brutally beating a disabled inmate while uttering racial epithets, forcibly stripping him, wantonly destroying his religious property, and systematically obstructing his access to administrative and judicial remedies—are blatant violations of clearly established federal law. The severity and intentionality of the alleged misconduct strip Defendants of any plausible claim to qualified immunity. Moreover, where factual disputes exist, particularly concerning intent and knowledge, the issue of qualified immunity is for the jury to resolve. *See Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994). Defendants were not acting in good faith; they were deliberately engaged in unlawful conduct, and therefore, they are not immune from suit.

**E. Defendants' Failure to Produce Vital Evidence and Discovery Violations Constitutes Spoliation**

34- A cornerstone of fair litigation is the full and timely disclosure of relevant evidence. Federal Rule of Civil Procedure 26 mandates that parties disclose all discoverable information relevant to their claims or defenses. Federal Rule of Civil Procedure 37 provides for sanctions when parties fail to make such disclosures or cooperate in discovery. Here, Defendants' persistent failure to produce vital evidence, which is exclusively within their control, constitutes a blatant violation of these discovery mandates and strongly suggests spoliation of evidence.

35- Plaintiff has repeatedly sought crucial documents and materials that would directly corroborate his claims and refute Defendants' denials. These include:

- **Surveillance video footage:** It is standard procedure for correctional facilities to have surveillance cameras in dorms, hallways, and common areas. The absence of video footage from Dorm 9-1 for December 30, 2021, particularly during a major CERT operation and lockdown, is highly suspicious and deviates from standard correctional practices. Such footage would undeniably show the entire

incident, including the alleged assault, the forced stripping, and the destruction of property.

- **Photographs taken during or immediately after the incident:** It is standard protocol for correctional officers, particularly CERT and OSI personnel, to document incidents involving use of force, property damage, or inmate injuries with photographs. Plaintiff alleges that pictures were taken, and their absence is a deliberate act of concealment.
- **Incident Reports and Use-of-Force Reports:** Any use of force, particularly one involving multiple officers and resulting in inmate injury, *must* be documented in detailed incident and use-of-force reports. The assertion that these reports are "missing and not found" (as noted in Plaintiff's FOIL requests) is a direct violation of DOCCS policy and federal discovery obligations. These are not merely administrative oversights; they are critical pieces of evidence that Defendants are legally obligated to create and preserve.
- **Medical Logs and Hospital Photographs:** Plaintiff was severely injured and received medical attention, including at the hospital. Medical records and any photographs taken of his injuries at the facility or hospital are vital for corroborating the extent of the force used and the deliberate indifference to his medical needs. The failure to produce these visual records, particularly those taken at the hospital, is a grave breach of discovery.
- **Disciplinary Logs:** The undisputed fact that no disciplinary charges were filed against Plaintiff following the incident (Rule 56.1 SOF, ¶ 39, Plaintiff's Response: Correct/Yes) further highlights the lack of justification for the force used and contradicts any claim that Plaintiff was resisting or posed a threat. The absence of disciplinary records related to the incident is itself telling.
- **Staff Emails and Internal Investigation Materials:** Communications between staff, particularly supervisory defendants, regarding the CERT operation and subsequent events would reveal their knowledge, intent, and involvement in the alleged cover-up. Internal investigation documents, if they exist, would also be highly relevant.

36- Defendants' failure to produce these routinely generated and highly relevant documents is not merely a discovery dispute; it constitutes potential spoliation of evidence, which can give rise to an adverse inference that the missing evidence would have been unfavorable to the party that failed to produce it. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). This pattern of withholding critical evidence, coupled with the alleged corruption of the grievance system, strongly indicates that Defendants are deliberately attempting to conceal

their unlawful conduct and obstruct justice. Such deliberate actions by Defendants, who were at all times aware of their legal obligations and the potential for litigation, further undermine their claims for summary judgment and qualified immunity. A jury must be allowed to consider the implications of this missing evidence.

**V. JURY TRIAL DEMAND**

37- Plaintiff, Ralph Rodriguez, hereby reiterates his demand for a trial by jury on all issues so triable. (Ex. B, Compl., p. 1). The numerous and profound genuine disputes of material fact outlined throughout this memorandum, particularly those concerning Defendants' intent, knowledge, credibility, and the precise nature of the events of December 30, 2021, cannot be resolved on a motion for summary judgment. These are quintessential factual questions that a jury is uniquely positioned to assess.

38- A jury must be allowed to weigh the conflicting accounts of the CERT raid, the severity of the force used, the defendants' alleged discriminatory intent, the deliberate indifference to Plaintiff's medical and religious needs, and the systemic obstruction of the grievance process. The credibility of Defendants' assertions, especially concerning the missing evidence and their alleged lack of personal involvement, must be tested through cross-examination before a jury. Plaintiff's sworn affidavits and declarations, corroborated by other inmate accounts (Exhibits D, E, F, attached to Plaintiff's prior submissions), directly contradict Defendants' narrative and create a clear need for a trier of fact.

39- Summary judgment is not a vehicle for resolving factual disputes or assessing witness credibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. Given the extensive factual disputes, the allegations of deliberate misconduct, and the serious discovery violations, this case is ripe for a jury trial, where Plaintiff can present his evidence and arguments to a neutral fact-finder.

**VI. CONCLUSION**

40- For the foregoing compelling reasons, Plaintiff Ralph Rodriguez respectfully requests that this Court DENY Defendants' Motion for Summary Judgment in its entirety. Genuine and profound disputes of material fact permeate every aspect of Defendants' motion, from the systematic unavailability of administrative remedies, to the undeniable personal involvement of individual defendants, and the pervasive constitutional violations deliberately inflicted upon Plaintiff. Furthermore, the outstanding and exclusively defendant-controlled discovery, coupled with

Defendants' apparent spoliation of evidence, renders summary judgment premature and unjust. Defendants' actions were unlawful, unjustified, and caused Plaintiff severe physical and emotional harm. They were at all times aware of their actions and the laws they were violating, and therefore, they are not entitled to qualified immunity.

Plaintiff, now a recently released individual with severe disabilities and no increase in financial stability, reiterates his motion for assignment of pro bono counsel by being placed on the waiting list of the Southern District and/or for counsel to be assigned, and for his *in forma pauperis* status as a poor person to continue based on the financial information already provided and the worsening of his financial situation. This case must proceed to trial so that the issues may be resolved by a Jury.

Dated: New York, New York
May 29, 2025

Respectfully submitted,

X [signature]
Ralph Rodriguez
Pro Se Plaintiff
Seneca Avenue, Flushing, NY 11385

**CERTIFICATION UNDER LOCAL CIVIL RULE 7.1**

I certify that this Memorandum of Law is in compliance with Local Civil Rule 7.1(c), and the individual rules of this honorable court.

cc - Attorney General
Neil Shevlin
28 Liberty Street 18th Floor
New York, NY 10005

original
cc - Southern District Court
Pro se office
Att Halpern Case # 22-cv-10056
300 Quarropas Street
White Plains, NY 10601