UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RALPH RODRIGUEZ,

                            Plaintiff,

            -against-

EDWARD R. BURNETT, *et al*.,

                            Defendants.

**OPINION & ORDER**

22-CV-10056 (PMH)

PHILIP M. HALPERN, United States District Judge:

Ralph Rodriguez ("Plaintiff") brings this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, predicated upon violations of the First, Fourth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., Section 504 of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*., which occurred during his confinement at Fishkill Correctional Facility ("Fishkill"). The matter initially proceeded against eleven named employees and several other John and Jane Doe employees of the New York State Department of Corrections and Community Supervision ("DOCCS") in their individual and official capacities, the County of Dutchess, and the State of New York. (Doc. 2, "Compl." at 3-4).

The Court, in a February 1, 2023 Order, dismissed all claims against the State of New York, Commissioner Annucci, and Governor Hochul. (Doc. 6). On April 4, 2024, the Court granted in part defendants' motion to dismiss Plaintiff's Complaint, dismissing the following claims: (i) First

Claim for Relief (retaliation); (ii) Third Claim for Relief (deliberate indifference theory);[1] (iii) Fourth Claim for Relief (Ninth Amendment); (iv) Seventh Claim for Relief (disability discrimination and reasonable accommodation); (v) Eighth Claim for Relief (supervisory liability); as well as any claims asserted against Sally A. Reams, Robert Mitchell, and Akinola Akinyombo. (Doc. 56, the "Prior Order").[2] As a result, the Court dismissed all claims against Reams, Mitchell, Akinyombo, Mahnaz Sullivan-Davachi, Oujas Gifty, and Sangeethe L. Mukkat. (*Id.*). The sole remaining Defendants are Edward Burnett, Stephen Urbanski, Michael Blot a/k/a Sgt. Block ("Blot"), Mohammad A. Bhuiyan, Richard Flanagan, Jonathan Franco, Angel Matos, Vincent Santiago, Jean Marc Oge, Jason Crofoot, Carlton Garrett, Christopher Ciaccio, Shawn Hanley, Alexis Cherry, Jan Okusko, and Aleshia Rose (collectively, "Defendants"). The following remaining claims for relief proceeded to discovery and remain at issue now: (i) First Claim for Relief (access to courts); (ii) Second Claim for Relief (unreasonable search); (iii) Third Claim for Relief (excessive force and failure to intervene theories); (iv) Fifth Claim for Relief (equal protection); and (v) Sixth Claim for Relief (religious freedom violations under the First Amendment and RLUIPA). (*Id.*).

Pending presently before the Court is Defendants' motion for summary judgment on their first, second, and eighth affirmative defenses and seeking dismissal of the Complaint under Federal Rule of Civil Procedure 56. (Doc. 105; Doc. 107, "Def. Br."; Doc. 108, "Cahn Decl."; Doc. 109).

---

[1] Plaintiff, despite his deliberate indifference claim being dismissed as part of the Court's Opinion and Order on Defendants' prior motion to dismiss, includes argument in his opposition concerning this claim. (Pl. Br. at 15). The Court declines to consider these arguments in light of the Court's Prior Order.

[2] The Prior Order is available on commercial databases. *See Rodriguez v. Burnett*, No. 22-CV-10056, 2024 WL 1466880 (S.D.N.Y. Apr. 4, 2024).

Plaintiff opposed Defendants' motion (Doc. 111, "Pl. Br.")[3] and the motion was fully submitted with the filing of Defendants' reply brief (Doc. 112, "Reply"; Doc. 113, "Reply Decl.").

For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendants' Rule 56.1 statement with Plaintiff's responses thereto,[4] and the admissible evidence proffered by the parties.

---

[3] Plaintiff, in his opposition, also implies that Defendants committed discovery violations resulting in spoliation of evidence. (*See* Pl. Br. at 18-19). Defendants oppose in their Reply, construing Plaintiff's arguments as requesting additional discovery under Federal Rule of Civil Procedure 56(d). (S*ee* Reply at 2-4). Any Rule 56(d) or spoliation "motion" is denied as improper because Plaintiff failed to file an associated notice of motion. *Keesh v. Quick*, No. 19-CV-08942, 2022 WL 2160127, at *7 (S.D.N.Y. June 15, 2022); *see also Corr. Officers Benevolent Ass'n of Rockland Cnty. v. Kralik*, No. 04-CV-02199, 2011 WL 1236135, at *1 n.2 (S.D.N.Y. Mar. 30, 2011). Further, as to Rule 56(d) relief, discovery has long-since closed, and Plaintiff has failed to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," as Plaintiff's "conclusory allegations of incomplete discovery" are insufficient to raise a genuine issue of material fact. *See Rector v. U.S. Dep't of Justice*, No. 14-CV-01883, 2016 WL 7188135, at *4 (S.D.N.Y. Nov. 22, 20216). Plaintiff's allegations of "potential spoliation of evidence" are insufficient, considering both Defendants' responses with supporting evidence as to the fulsome exchange of existing discovery (Reply at 3-4), and as Plaintiff's "conclusory allegations, without any basis in fact, cannot sustain a claim of spoliation without more." *Mazza v. Dist. Council for New York & Vicinity United Bhd. Of Carpenters & Joiners of Am.*, No. 00-CV-6854, 2008 WL 11411849, at *5 (E.D.N.Y. July 2, 2008).

[4] On May 19, 2025, Defendants filed a Rule 56.1 Statement, which included Plaintiff's responses thereto. (Doc. 106, "56.1 Stmt."). Plaintiff, however, fails to cite to any evidence in responding to the Rule 56.1 Statement. While "*pro se* litigants are [ ] not excused from meeting the requirements of Local Rule 56.1 . . . where a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009); *see also Gadson v. Goord*, No. 96-CV-07544, 2000 WL 328879, at *3 (S.D.N.Y. Mar. 28, 2000). The Court considers the information in Plaintiff's responses to the Rule 56.1 Statement only where such responses are supported by evidence in the record. The Court is mindful that bald and conclusory statements do not constitute opposition to the Rule 56.1 Statement. *See Woods v. Acampora*, No. 08-CV-04854, 2009 WL 1835881, at *3 (S.D.N.Y. June 24, 2009) ("[A] *pro se* party's 'bald assertion' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." (quoting *Odom v. Keane*, 1997 WL 576088, at *3 (S.D.N.Y. Sept. 17, 1997))).

Unless otherwise indicated, the facts cited herein are undisputed.

Plaintiff alleges that he while he was incarcerated by DOCCS at Fishkill, he was assaulted by several officers of DOCCS Correctional Emergency Response Team ("C.E.R.T.")—namely Flanagan, Franco, Matos, Santiago, Oge, Crofoot, and Garrett (together with Blot, the "C.E.R.T. Defendants")—during their search of his housing unit on the morning of December 30, 2021 between the hours of 7:15 a.m. and 8:50 a.m. (the "C.E.R.T. Search"). (56.1 Stmt. ¶¶ 1-2, 13-15, 24; Compl. ¶¶ 13-15). On or about December 27, 2021, Fishkill had previously been placed on lockdown and subjected to this facility-wide C.E.R.T. Search on or about December 27, 2021, due to an attempted escape by an incarcerated individual at Fishkill. (56.1 Stmt. ¶ 7). As part of the facility-wide search, officers from Fishkill and other correctional facilities who came to Fishkill to assist, searched the incarcerated individuals, housing units, cubicles, and common areas for contraband. (*Id.* ¶¶ 7-9).

Plaintiff alleges that during the C.E.R.T. Search he was lifted out of his bed, "slammed . . . head first into the floor" and beaten with closed fists all over his body, including his "head, back, face, ribs, stomach, legs, and testicles." (Compl. ¶ 15; Cahn Decl., Ex. A at 68:9-69:25, 79:3-25). During the C.E.R.T. Search on December 30, 2021, there was also documented use of force involving other "Black, Latino, and white" incarcerated individuals. (56.1 Stmt. ¶ 18). Plaintiff alleges that Blot led the C.E.R.T. Search and made disparaging and racist remarks to Plaintiff during the assault. (Compl. ¶¶ 16-17, 19-21; Cahn Decl., Ex. A at 31:11-24). Plaintiff further alleges that five Office of Special Investigation ("OSI") officers—Ciaccio, Hanley, Cherry, Okusko, and Rose ("OSI Defendants")—were present outside the dorm during the assault and did nothing to stop it. (Compl. ¶ 21). It is undisputed that Rose, however, was not present at Fishkill

on December 30, 2021. (56.1 Stmt. ¶ 23).[5] Hanley was assigned to the Medical Unit at Fishkill, and Okusko served as an Evidence Technician. (*Id.* ¶¶ 21-22). Plaintiff alleges that his housing unit officer, Bhuiyan, was present on the date of the C.E.R.T. Search but did not intervene. (Compl. ¶ 23; Cahn Decl., Ex. A at 109:17-111:12). However, it is undisputed that neither Burnett, the Superintendent of Fishkill, nor Urbanski, the Deputy Superintendent of Fishkill, were involved with or in charge of the C.E.R.T. Search. (56.1 Stmt. ¶¶ 4-5, 10-12).[6]

While Plaintiff alleges that the C.E.R.T. Defendants ripped off his clothes during the raid, left him naked on the floor with only his boxers on, and then searched him, Defendants claim that Plaintiff was on the bed waiting to be searched, and removed his own clothes, other than his boxer shorts. (Compl. at p. 51; 56.1 Stmt. ¶ 38). Plaintiff did not undergo any type of cavity search during the C.E.R.T. Search. (56.1 Stmt. ¶ 40). Plaintiff also alleges that his personal property was destroyed during the C.E.R.T. Search—namely, his legal documents, letters, artwork, electronics, art supplies, a diary, two books written by Plaintiff, and numerous religious items, including a religious shrine in his room. (Compl. ¶¶ 27, 68; 56.1 Stmt. ¶ 50). Plaintiff identifies as a type of Protestant Christian, attending religious services while at Fishkill, and also practices Santeria. (56.1 Stmt. ¶¶ 46-48).

Plaintiff, as of February 11, 2025, is no longer incarcerated by DOCCS (*Id.* ¶ 51).

---

[5] Defendants provide documentary evidence as to Rose's whereabouts on the date of the C.E.R.T. Search, along with her responses to Plaintiff's Interrogatories, which detail that she was not at Fishkill on the date in question. (Cahn Decl., Exs. M, N). Plaintiff disputes this, stating, "incorrect she was present at the facility," but provides no evidence to support such statement. Accordingly, the Court deems that statement undisputed.

[6] Plaintiff disputes this, stating only that such statements are "incorrect" and that both Burnett and Urbanski were "involved with the search." As Plaintiff provides no evidence controverting these facts, the Court deems each statement undisputed.

**STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-03875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[7] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023) (citing *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney*, 49 F.4th at 738 (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of

---

[7] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

6

the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at *4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

The Court is, of course, mindful that "[p]ro se litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by admissible evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment"); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

## ANALYSIS

Plaintiff proceeds under 42 U.S.C. § 1983 on the following remaining claims for relief: (i) First Claim for Relief (access to courts); (ii) Second Claim for Relief (unreasonable search); (iii) Third Claim for Relief (excessive force and failure to intervene); (iv) Fifth Claim for Relief (equal protection); and (v) Sixth Claim for Relief (religious freedom violations under the First Amendment and RLUIPA). Section 1983 provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create

8

substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (alteration in original)).

Defendants also move for summary judgment on their affirmative defenses of failure to state a claim for relief, Prison Litigation Reform Act ("PLRA") administrative exhaustion as to all of Plaintiff's remaining claims, and qualified immunity.[8]

Defendants maintain that their affirmative defenses of exhaustion and failure to state a claim for relief require that the claims subject to this motion be dismissed.

## I. Defendants' Eighth Affirmative Defense: PLRA Administrative Exhaustion

Defendants argue that summary judgment is appropriate because Plaintiff failed to exhaust his administrative remedies under the PLRA. (Def. Br. at 6-12). While it is undisputed that Defendants have no record of Plaintiff timely filing grievances and thus arguably did not properly exhaust his administrative remedies (56.1 Stmt. ¶¶ 30-31; Pl. Br. at 9-11), Plaintiff argues that his failure to exhaust should be excused because there are genuine factual disputes regarding whether the administrative remedies were available to him. (Pl. Br. at 9-11).

The PLRA states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are exhausted." 42 U.S.C. § 1997e(a). This provision "applies to all inmate suits about prison life, whether they involve general

---

[8] Defendants are not moving for summary judgment as to the third claim for relief or on the affirmative defense of qualified immunity as to the third claim for relief. (*See* Reply at 2 n.3, 7-11; *see also* Def. Br. at 21-23). Thus, Plaintiff's third claim for relief premised on excessive force and failure to intervene in violation of the Eighth Amendment shall proceed to trial.

circumstances or particular episodes," *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)); and it is "'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies," *Ross v. Blake*, 578 U.S. 632, 638 (2016) (citation omitted). Moreover, the PLRA requires "proper exhaustion" which means "using all steps that the prison grievance system holds out." *Caraballo v. Pliler*, No. 21-CV-10476, 2023 WL 3467185, at *5 (S.D.N.Y. May 15, 2023). Specifically, "complete exhaustion to the highest level is required for each claim." *Singh v. Goord*, 520 F. Supp. 2d 487, 495 (S.D.N.Y. 2007).

The PLRA's mandatory exhaustion requirement may be excused when the administrative remedies are unavailable to the inmate, or where "officials prevented him from utilizing a grievance procedure." *Arnold v. Goetz*, 245 F. Supp. 2d 527, 537 (S.D.N.Y. 2003); *see also Ross*, 578 U.S. at 642-45 ("interference with an inmate's pursuit of relief renders the administrative process unavailable"). Specifically, an administrative remedy is considered unavailable in three situations: (1) when the remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 123-24 (2d Cir. 2016) (quoting *Ross*, 578 U.S. at 642-45). Complete exhaustion must be done "prior to commencing suit," as it is insufficient to "take only limited steps toward exhaustion before commencing suit, or even to exhaust a claim entirely during the pendency of the case." *Schwartz v. Dennison*, 518 F. Supp. 2d 560, 568 (S.D.N.Y. 2007).

10

Here, Plaintiff relies on the third unavailability exception and argues that the "grievance system was purposefully rendered unavailable to him through the defendants' own deliberate actions." Specifically, Plaintiff alleges, without documentary support, that despite attempting to file multiple grievances and "maintaining copies of his efforts," such grievances were "not logged or filed by the IGRC to avoid litigation." (Pl. Br. at 9-10; 56.1 Stmt. ¶¶ 30-31). Plaintiff also claims that "copies of all attempts were . . . provided within [the] complaint," and it should not be seen as a "deficiency on his part" that Defendants' internal records "conveniently" did not reflect any grievances associated with the C.E.R.T. Search. (Pl. Br. at 11).

Defendants argue that Plaintiff has failed to sufficiently exhaust his administrative remedies under the PLRA (56.1 Stmt. ¶¶ 30-31), and in any event, his grievance history of successfully filing other unrelated grievances both before and after the C.E.R.T. Search evidences that Plaintiff's contentions that the grievance system was "unavailable to him," is unsupported by the record (Def. Br. at 11-12; Reply at 4-6). Defendants also argue that even if Plaintiff had attempted to comply with the PLRA exhaustion requirements, the grievances he allegedly attempted to file and subsequently attached to his Complaint, could only be construed to relate to his eighth amendment claims. (Def. Br. at 9).

As an initial matter, a "grievant need not lay out the facts, articulate legal theories, or demand particular relief," as administrative grievances are comparable to a "notice pleading system." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (internal quotation marks omitted). However, it is important to note that a grievance must "object intelligibly to some asserted shortcoming" and "provide enough information about the conduct of which [a grievant] complain[s] to allow prison officials to take appropriate responsive measures." *Id.* Here, Plaintiff claims that he attempted to "grieve each and every issue," and attached "copies of all attempts

11

[that] were maintained" to the Complaint. (Pl. Br. at 11; 56.1 Stmt. ¶ 30). The Court, taking Plaintiff's claims as true that he attached "all attempts" to the Complaint, and upon thorough review thereof, finds that the only claims that could reasonably be construed to be addressed by the grievances he attempted to file are his First Claim for Relief (access to courts) and Third Claim for Relief (excessive force and failure to intervene). (*See, e.g.*, Compl. at 134-46, 151-53[9] ("On 12-30-21 C.E.R.T. came into my housing unit and Brutally maliciously assaulted me . . . . They destroyed my legal papers as well."); 56.1 Stmt. ¶¶ 33-34). There is nothing contained within Plaintiff's purported grievances that could reasonably be construed to put the prison officials on notice of Plaintiff's Second Claim for Relief (unreasonable search), Fifth Claim for Relief (equal protection), or Sixth Claim for Relief (religious freedom violations under the First Amendment and RLUIPA). Bearing in mind that the "grievance pleading standard" is "liberal," *Brownell*, 446 F.3d at 310, the Court concludes that, giving Plaintiff every benefit of the doubt that he attempted to file his grievances concerning the December 30, 2021 C.E.R.T. Search, Plaintiff did not put officials on notice that Plaintiff was grieving his unreasonable search, equal protection, or religious freedom violations under the First Amendment or RLUIPA. *See Harriott v. Annucci*, No. 15-CV-06135, 2019 WL 5291004, at *4-5 (W.D.N.Y. Oct. 18, 2019) (inmate's complaint that bunkmate was a smoker did not put officials on notice that bunkmate smoked inside the cell and in the recreation yard). Consequently, even assuming Plaintiff had properly submitted the grievances he is claiming (all of which are annexed to his Complaint), he did not exhaust administrative remedies in accordance with the PLRA, as he failed to put Defendants on notice concerning his second, fifth

---

[9] Plaintiff's Complaint is 204 pages long, the latter 54 pages of which are docketed on ECF as Doc. 2-1, with page numbers ranging from 1 through 54. (*See* Doc. 2-1). Thus, for ease of reference, and to the extent cited, pages 1 through 54 of Doc. 2-1, will be cited as pages 151 through 204 of the Complaint.

and sixth claims for relief. Thus, the action must be dismissed as to his Second Claim for Relief (unreasonable search), Fifth Claim for Relief (equal protection) and Sixth Claim for Relief (religious freedom violations under the First Amendment and RLUIPA).

Equally clear, the Court must decline, at this stage, to dismiss Plaintiff's First Claim for Relief (access to courts) or Third Claim for Relief (eighth amendment claims) on exhaustion grounds. To be sure, Plaintiff's undisputed record of filing grievances before and after the incident at issue here lends credence to Defendants' argument. (Reply at 5). In fact, Plaintiff himself acknowledges that he is extremely well-versed on the PLRA grievance procedure, as he "practically wrote the book on that." (Cahn Decl., Ex. A at 147:19-149:20). However, this Court, at the summary judgment stage, will not weigh in on the factual dispute or make credibility determinations regarding Plaintiff's allegations that the alleged grievances he attached to the complaint were "attempted to be filed placing them in a secure grievance [sic] box within the facilities 'MESS HALL . . . .'" (56.1 Stmt. ¶¶ 30-31). Such factual disputes and credibility determinations are to be resolved by the fact-finder, not this Court on a summary judgment motion. The Court finds, "drawing all inferences in Plaintiff's favor, there is a dispute of material fact regarding whether Plaintiff's grievance[s] went unfiled," *Terry v. Hulse*, No. 16-CV-00252, 2018 WL 4682784, at *10 (S.D.N.Y. Sept. 28, 2018), and because Plaintiff "need not exhaust remedies if they are not 'available,'" *Ross*, 578 U.S. at 635-36, Defendants' motion for summary judgment based upon lack of exhaustion is denied as to Plaintiff's access to courts and eighth amendment

excessive force and failure to intervene claims.[10] As detailed above, however, Defendants' motion for summary judgment based upon failure to exhaust is granted as to Plaintiff's Second Claim for Relief (unreasonable search), Fifth Claim for Relief (equal protection) and Sixth Claim for Relief (religious freedom violations under the First Amendment and RLUIPA) because the grievances that Plaintiff claims were filed did not put Defendants on notice of facts associated with these claims.[11]

II.     Defendants' First Affirmative Defense: Failure to State a Claim

A.  Personal Involvement

Defendants argue that Plaintiff fails to plead the personal involvement of Burnett, Urbanski, Rose, Okusko, and Hanley in any of the claims for relief. (Def. Br. at 13-14; *see also* Reply at 6-7). The Court agrees.

Plaintiff states that he sufficiently alleged personal involvement as to Burnett and Urbanski, alleging, without documentary support, that they were both involved in the C.E.R.T. Search, and as the "sheer scale of the CERT deployment and facility lockdown" would "undeniably warrant the immediate attention and oversight of high-ranking officials." (Pl. Br. at 12; 56.1 Stmt. ¶¶ 11,

---

[10] There appears to be a dispute between the parties as to whether the PLRA administrative exhaustion affirmative defense is an issue to be determined by a jury, or by the Court through an evidentiary hearing. (*See* Def. Br. at 12-13; Reply at 6 n.8; Pl. Br. at 11, 20). The parties fail, however, to analyze this issue in light of the Supreme Court's recent holding in *Perttu v. Richards*, 605 U.S. 460 (2025) that "parties have a right to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment." *Id.* at 468. The issue will be addressed during the pre-trial preparation to take place herein.

[11] The Court, in light of the holdings herein, need not and does not reach Defendants' alternative arguments as to the merits of these claims or their qualified immunity affirmative defense, except as otherwise detailed, *infra*. The Court does note that Plaintiff appears to abandon his RLUIPA claim, conceding in his opposition that the "RLUIPA does not provide for individual capacity money damages." (Pl. Br. at 17). Accordingly, the Court deems Plaintiff's RLUIPA claim abandoned and dismisses it on this ground as well. *Cf. Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 645 (S.D.N.Y. 2015) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument" (internal quotation marks omitted)).

12). Similarly, Plaintiff claims that Rose, Okusko, and Hanley were "present at the facility" during the C.E.R.T. Search, but fails to rebut Defendants' documentary evidence with anything but unsupported and conclusory allegations of their respective knowledge of the events at hand and failures to intervene. (Pl. Br. at 12-13; 56.1 Stmt. ¶¶ 16, 21-23).

Initially, it is important to note that "[s]imply being a supervisor is not enough to impute personal involvement onto a defendant; liability exists only where the 'defendant, through the official's own individual actions, has violated the Constitution.'" *See Keesh*, 2022 WL 2160127, at *5. Plaintiff does not proffer evidence for any actions taken by Burnett and Urbanski with respect to Plaintiff's claims, let alone, evidence to support that they were even present at Fishkill or involved during the C.E.R.T. Search. (Pl. Br. at 12). Thus, Plaintiff's claims against Burnett and Urbanski, as supervisors at Fishkill, must fail for lack of personal involvement. Additionally, Plaintiff claims in his opposition and in responses to Defendants' 56.1 Statement, without evidentiary support, that Rose, Okusko, and Hanley were "present at the facility" during the C.E.R.T. Search, and also falls back into group pleading, stating that "all OSI personnel, including [Rose, Okusko, and Hanley], 'did nothing to assist and stood outside the dorm watching." (Pl. Br. at 12; 56.1 Stmt. ¶¶ 16, 23). Such "conclusory allegations alone," are insufficient to sustain a § 1983 claim against any of these Defendants. *See Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017); *Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009); *see also Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Therefore, all claims are dismissed to the extent they are asserted against Burnett, Urbanski, Rose, Okusko, or Hanley.

### B.  First Claim for Relief: Access to Courts

Plaintiff's remaining claim for relief alleges denial of access to courts in violation of the First Amendment. (Compl. at pp. 47-49). Plaintiff alleges that the C.E.R.T. Defendants destroyed his personal property, including, as relevant here, legal documents. (*Id.* at ¶ 27).

To establish a denial of access to courts claim grounded in the First Amendment, "plaintiff must demonstrate not only that defendants deliberately or maliciously 'took or w[ere] responsible for actions that hindered plaintiff's efforts to pursue a legal claim,' but 'that the defendant[s'] actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim.'" *Stewart v. Richardson*, No. 15-CV-09034, 2019 WL 719638, at *8 (S.D.N.Y. Feb. 20, 2019) (quoting *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)); *see also Gunn v. Doe*, No. 20-CV-00730, 2020 WL 1140746, at *2 (S.D.N.Y. Mar. 6, 2020).

The record is devoid of any evidence of actual injury. Plaintiff claims in the Complaint and in his opposition, without documentary support, that the destruction of legal documents "impeded" his active court proceedings. (Compl. at 48-49; Pl. Br. at 13-14). However, Plaintiff subsequently concedes that he was able to proceed with litigating the appeal of his criminal conviction and a separate civil action pending in the Western District of New York. (*See* 56.1 Stmt. ¶¶ 41-42).[12] In any event, confiscation or destruction of legal documents on a single occasion, especially where it is undisputed that such loss did not impede the prosecution of the associated claims, is insufficient to establish actual injury for an access to courts claim. *See Stewart*, 2019 WL 719638, at *8

---

[12] Plaintiff, in his opposition, appears to argue that the "systematic obstruction of the grievance process" and "missing injury reports for the December 30, 2021 incident," also frustrated his ability to "develop and present his claims." (Pl. Br. at 13-14). Even if the Court were willing to consider these improper new allegations pled for the first time in Plaintiff's opposition, Plaintiff provides no support for such allegations. Accordingly, Plaintiff fails to show an "actual injury" sufficient to raise a genuine dispute of material fact. *See Stewart*, 2019 WL 719638, at *8.

(granting summary judgment dismissing an inmate's access to courts claim where officers confiscated and destroyed plaintiff's legal papers, and plaintiff alleged that he lost lawsuits because of the missing paperwork); *Herrera v. Scully*, 815 F. Supp. 713, 724-25 (S.D.N.Y. 1993) (granting summary judgment on an access to courts claim where prison officials confiscated and withheld inmate's legal mail because plaintiff failed to show the documents at issue would have had "any impact on the outcome of that proceeding"). Accordingly, as Plaintiff was not actually injured or prejudiced in any of his legal actions because of Defendants' conduct, Plaintiff's access to courts claim fails as a matter of law.

The Court therefore grants Defendants' motion for summary judgment as to Plaintiff's access to courts claim.[13]

III.    Plaintiff's Application for Pro Bono Counsel

On June 2, 2025, Plaintiff filed a letter (Doc. 110, the "June 2, 2025 Letter") providing the Court information in support of a renewed application for in forma pauperis ("IFP") status as he was "recently released from incarceration." Plaintiff, therein, also requested that the Court "consider [his] genuine need for legal assistance." (*Id.*). Giving the *pro se* Plaintiff all the solicitude to which he is entitled, the Court will construe the June 2, 2025 Letter as both a renewed application for IFP status and an application for the Court to request *pro bono* counsel. For the following reasons, Plaintiff's applications are granted.

The *in forma pauperis* statute provides that the courts "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Unlike in criminal cases, in civil cases, there is no requirement that courts supply indigent litigants with counsel. *Hodge v. Police*

---

[13] The Court, in light of the holdings herein, need not and does not reach Defendants' alternative exhaustion or qualified immunity affirmative defenses as to this access to courts claim.

*Officers*, 802 F.2d 58, 60 (2d Cir. 1986). Instead, the courts have "broad discretion" when deciding whether to seek *pro bono* representation for a civil litigant. *Id.* Even if a court does believe that a litigant should have a free lawyer, under the *in forma pauperis* statute, a court has no authority to "appoint" counsel, but instead, may only "request" that an attorney volunteer to represent a litigant. *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 301–310 (1989). Moreover, courts do not have funds to pay counsel in civil matters. Courts must therefore request the services of *pro bono* counsel sparingly, and with reference to public benefit, in order to preserve the "precious commodity" of volunteer-lawyer time for those litigants whose causes are truly deserving. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

The Second Circuit Court of Appeals in *Hodge* set forth the factors a court should consider in deciding whether to grant a litigant's request for *pro bono* counsel. 802 F.2d at 61-62. Of course, the litigant must first demonstrate that he or she is indigent, for example, by successfully applying for leave to proceed *in forma pauperis*. The court must then consider whether the litigant's claim "seems likely to be of substance" – "a requirement that must be taken seriously." *Id.* at 60–61. If these threshold requirements are met, the court must next consider such factors as:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues[,] and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Id.*; *see also Cooper*, 877 F.2d at 172 (listing factors courts should consider, including litigant's efforts to obtain counsel). District courts, in considering these factors, should neither apply bright-line rules nor automatically deny the request for counsel until the application has survived a dispositive motion. *See Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Rather, each application must be decided on its own facts. *See Hodge*, 802 F.2d at 61.

Plaintiff, as an incarcerated individual at the outset of this case, filed a Request to Proceed IFP, which the Court granted. (*See* Order dated December 1, 2022, Doc. 4.) Plaintiff therefore qualified as indigent at that time. Subsequently, Plaintiff informed the Court that he was "recently released from incarceration" and as a result "his financial circumstances have become significantly more challenging and dire since [his] return home." (Doc. 110). Upon review of the June 2, 2025 Letter, and considering that 28 U.S.C. § 1915(a)(1) does not require a showing of absolute destitution to qualify for IFP status, *Eliacin v. Cty. of Broome, New York*, No. 09-CV-0438, 2009 WL 10721277, at *2 (N.D.N.Y. June 11, 2009), the Court finds that Plaintiff qualifies as indigent. Accordingly, the Court grants Plaintiff's renewed application for IFP status.

Plaintiff's single remaining claim, the Third Claim for Relief (excessive force and failure to intervene theories), is proceeding to trial and has survived both a motion to dismiss and summary judgment motion practice. The Court acknowledges that Defendants did not move on the merits as to this remaining claim, but considering the record before the Court and the special solicitude afforded *pro se* litigants, the Court finds that Plaintiff's eighth amendment claim constituting allegations of excessive force and failure to intervene, may "likely [] be of substance. *Hodge*, 802 F.2d 61-62. The Court also finds that the other *Hodge* factors weigh in favor of granting Plaintiff's application, given that certain factual issues turn on credibility, and a trained attorney will be in a better position than Plaintiff to present the case to a jury. Representation, in this case, would "lead to a quicker and more just result by sharpening the issues and shaping examination." *Hodge*, 802 F.2d at 61.

For the foregoing reasons, Plaintiff's application for the Court to request counsel is granted. The Court advises Plaintiff that there are no funds to retain counsel in civil cases and the Court relies on volunteers. Due to a scarcity of volunteer attorneys, some time may pass before counsel

volunteers to represent Plaintiff. Nevertheless, this litigation will progress at a normal pace. If an attorney volunteers, the attorney will contact Plaintiff directly. There is no guarantee, however, that a volunteer attorney will decide to take the case, and plaintiff should be prepared to proceed with the case *pro se*. Of course, if an attorney offers to take the case, it is entirely Plaintiff's decision whether to retain that attorney or not. The Court has established a Pro Bono Fund to encourage greater attorney representation of *pro se* litigants. *See* http://www.nysd.uscourts.gov/sites/default/files/2025-03/2nd%20amended%20standing%20order%2016mc78.pdf.

### CONCLUSION

For the foregoing reasons, Defendants' summary judgment motion is GRANTED in part and DENIED in part. Separately, both Plaintiff's renewed application for IFP status and application for *pro bono* counsel are GRANTED.

Defendants' summary judgment motion is GRANTED as to: (i) First Claim for Relief (access to courts); (ii) Second Claim for Relief (unreasonable search); (iii) Fifth Claim for Relief (equal protection); (iv) Sixth Claim for Relief (religious freedom and RLUIPA violations); and (v) any claims asserted against Burnett, Urbanski, Rose, Okusko, or Hanley.

Defendants' summary judgment motion is DENIED as to: (i) Third Claim for Relief (excessive force and failure to intervene theories only); and (ii) the affirmative defenses of qualified immunity and PLRA administrative exhaustion as applicable to this remaining claim for relief.

Accordingly, Plaintiff's Third Claim for Relief (excessive force and failure to intervene) against Defendants Flanagan, Franco, Matos, Santiago, Oge, Crofoot, Garrett, Blot, Ciaccio, Cherry, and Bhuiyan; and Defendants' affirmative defenses will proceed to trial. The parties shall,

by April 30, 2026, file those materials required by Rules 6(A) and 6(B) of this Court's Individual Practices.

The Clerk of the Court is respectfully directed to: (i) terminate the motion pending at Doc. 105; (ii) terminate Edward R. Burnett, Stephen Urbanski, Aleshia Rose, Jan Okusko, and Shawn Hanley as defendants herein; and (iii) mail a copy of this Opinion and Order to Plaintiff.

**SO ORDERED.**

Dated:   White Plains, New York
         March 10, 2026

PHILIP M. HALPERN
United States District Judge

21