Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

RALPH RODRIGUEZ,

    Plaintiff,

V                                    Index No.: 22-CV-10056-PMH

EDWARD BURNETT, et al.,

    Defendants.

_____X

DEPOSITION OF: RALPH RODRIGUEZ

DATE:          October 21, 2024

TIME:          10:11 a.m. to 1:14 p.m.

VENUE:         Microsoft Teams

Reported by Cari Roraback

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

APPEARANCES:

    FOR THE PLAINTIFF:

        PRO SE

    FOR THE DEFENDANT:

        OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL

        BY:  NEIL SHEVLIN, A.A.G.

        28 Liberty Street

        New York, New York 10005

    ALSO PRESENT:

        J. WETSELL, CORRECTION OFFICER

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 3

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

I N D E X   O F   P R O C E E D I N G S

RALPH RODRIGUEZ Sworn

Direct Examination by Mr. Shevlin                    10

800-523-7887                                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

E X H I B I T   I N D E X

Marked as

Described as

One                                                                  40

Complaint

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

STIPULATIONS

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the respective parties hereto that:

All rights provided by the Civil Practice Law and Rules, including the right to object to any question, except as to form, or to move to strike any testimony at this examination is reserved. And, in addition, the failure to object to any question or to move to strike testimony at this examination shall not be a bar or waiver to make such motion at, and is reserved for the trial of this action;

IT IS FURTHER STIPULATED AND AGREED by and between counsel for the respective parties hereto, that this examination may be sworn to by the witness being examined before a Notary Public, other than the Notary Public before whom this examination was begun, but the failure to do so, or to return the original of this examination to counsel, shall not be deemed a waiver of the rights provided by Rule 3116 and 3117 of the Civil Practice Law and Rules, and shall be controlled thereby;

IT IS FURTHER STIPULATED AND AGREED by

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

and between counsel for the respective parties hereto, that this examination may be utilized for all purposes as provided by the Civil Practice Law and Rules;

IT IS FURTHER STIPULATED AND AGREED by and between counsel for the respective parties hereto, that the filing and certification of the original of this examination shall be, and the same hereby are waived;

IT IS FURTHER STIPULATED AND AGREED by and between counsel for the respective parties hereto, that a copy of the within examination shall be furnished to counsel representing the witness testifying without charge;

IT IS FURTHER STIPULATED AND AGREED by and between counsel for the respective parties hereto, that all rights provided by the Civil Practice Law and Rules, and Part 221 of the Uniform Rules for the Conduct of Depositions, including the right to object to any question, except as to form, or to move to strike any testimony at this examination, is reserved.  And, in addition, the failure to object to any question, or to move to strike any testimony, at this examination, shall not

800-523-7887                    ARII@courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

be a bar or waiver to make such motion at, and is reserved to, the trial of this action.

IT IS HEREBY STIPULATED AND AGREED by and between counsel for all parties present that pursuant to CPLR section 3113(d) this deposition is to be conducted by video conference, that the court reporter, all counsel, and the witness are all in separate remote locations (except the witness and his counsel are in the same physical location) and participating via videoconference meeting under the control of Associated Reporters International, Inc. (ARII), that the officer administering the oath to the witness need not be in the place of the deposition and the witness shall be sworn in remotely by the court reporter after confirming the witness's identity, that this videoconference will not be recorded in any manner and that any recording without the express written consent of all parties shall be considered unauthorized, in violation of law, and shall not be used for any purpose in this litigation or otherwise.

IT IS FURTHER STIPULATED that exhibits may be marked by the attorney presenting the exhibit to the witness, and that a copy of any exhibit

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez presented to a witness shall be e-mailed to or otherwise in possession of all counsel prior to any questioning of a witness regarding the exhibit in question.  Unless otherwise agreed upon, all parties shall bear their own costs in the conduct of this deposition by video conference, notwithstanding the obligation by CPLR to supply a copy of the transcript to the deposed party by the taking party in civil litigation matters.

CPLR § 3113 Conduct of Examination (d) states:

(d) The parties may stipulate that a deposition be taken by telephone or other remote electronic means and that a party may participate electronically. The stipulation shall designate reasonable provisions to ensure that an accurate record of the deposition is generated, shall specify, if appropriate, reasonable provisions for the use of exhibits at the deposition; shall specify who must and who may physically be present at the deposition; and shall provide for any other provisions appropriate under the circumstances. Unless otherwise stipulated to by the parties, the officer administering the oath shall be physically present at

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

the place of the deposition and the additional costs of conducting the deposition by telephonic or other remote electronic means, such as telephone charges, shall be borne by the party requesting that the deposition be conducted by such means.

800-523-7887                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

(The deposition commenced at 10:11 a.m.)

THE REPORTER:  .

The time is ten eleven. We are on the record.  And you have your right hand raised.  Do you swear to tell the truth, the whole truth, and nothing but the truth today?

MR. RODRIGUEZ:  Yes, I do.

WITNESS; RALPH RODRIGUEZ; Sworn

THE REPORTER:  You may put your hand down.  Can you please state and spell your name for the record?

THE WITNESS:  Ralph Rodriguez, R-A-L-P-H R-O-D-R-I-G-U-E-Z.

THE REPORTER:  And state your DIN, please.

THE WITNESS:  Seventeen alpha zero nine two eight.

THE REPORTER:  Thank you.  The witness has been sworn.

MR. SHEVLIN:  Okay.  Thank you very much.

DIRECT EXAMINATION

BY MR. SHEVLIN:

Q.  Good morning, Mr. Rodriguez.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

A.    Yes.

Q.    As we discussed, my name is Neil Shevlin.  I'm an Assistant Attorney General for the State of New York, and I represent the Defendants in the federal action that you've brought, captioned Rodriguez versus Burnett, with a DIN -- with a CV number of twenty-two C.V. one zero zero five six.

Also present remotely is a court reporter.  The court reporter will be taking down my questions to you and your responses to me.  Because we're doing this by -- by video, which is very important for both of us to keep in mind, we need to give a little bit of time for the -- the voice to travel.

So I'll do my best to wait for you to finish your answer fully before I ask a question. And if you could try to do the same, I'd appreciate it in terms of my questions before you answer, okay?

A.    Understood.

Q.    Okay.  It's also important when responding that you verbalize your response.  So a nod of your head or a shrug of your shoulders can't -- can't be recorded by the court reporter.  So it's important when you respond that you, in fact, do

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

verbalize or state your answer, okay?

A.   Yes.

Q.   Okay.  If, at any time, you don't understand the question that I've asked, let me know and I'll do my best to rephrase the question.  I don't want you to have to guess at anything, okay?

A.   Okay.

Q.   Okay.  If you need to take a break at any point, again, that's fine, we'll try to accommodate.  The only request I have is that we not take a break while the question is actually pending.  So once -- once you've responded to a question, we can then take a break, okay?

A.   Okay.

Q.   Okay.  Now before we -- we went on the record, you -- you noted for me a concern that you have.  Why don't you -- you specify on the record what that concern is?

A.   What my concern is, like, I'm being told to testify on the record and I've never had DOCCS personnel have to physically sit in a room with me and I've been doing this quite a long time.  Now this had happened prior.  And I brought this up in the grievance and it was a big issue.

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

And I mean they just disregarded the grievance as you already well aware, Mr. Neil.  And my remedy was just, okay, the next time I have this hearing instead of having me from the laptop where I have to have a DOCCS personnel, I don't feel comfortable testifying in front of, especially an ex-officer.  This is the second time now.

And they're not -- they're not -- it is what it is, Mr. Shevlin, like, you already know how they do here, which is, don't care.

Q.   Right.  So -- so listen, I -- I appreciate your concern.  Unfortunately, this -- this is what we have to work with for today.  So I guess, at any point in time you feel uncomfortable with anything, let's just put it on the record.

Otherwise, we're going to assume that that your testimony is, in fact, complete and truthful, okay?

A.   Okay.

Q.   Okay.  Now Mr. Rodriguez, you understand that you've just taken an oath that requires you to tell the truth, the whole truth, and nothing but the truth?

A.   Yes, sir.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 14

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   Okay.  Do you understand that even though we're not in an actual Courtroom, the oath that you took is the same as the one you will take as a witness if we go to trial in this case?

A.   Yes, sir.

Q.   Okay.  If you don't understand or hear a question, please let me know and I will repeat it, okay?

A.   Okay.

Q.   Okay.  Unless you tell me otherwise, I'm going to assume that you've understood and heard the entire question as I've asked it.  Do you understand?

A.   Understood.

Q.   Okay.  Okay.  If I ask you a question that you don't know the answer to, will you tell me you do not know the answer and not guess at the answer unless I ask you to do so?

A.   Okay.

Q.   Similarly, if I ask you a question that you can now no longer remember, will you tell me you cannot remember and not guess at the answer unless I ask you to do so?

A.   Understood.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

Q.   Okay.  Again, if you ever feel like you need a break, let me know, we can take one. However, we can't take a break while the question is pending.  So you'll have to answer first and then we can take the break, okay?

A.   Understood.

Q.   Okay.  If, at any, point in time during the deposition you realize that an earlier answer that you told me is inaccurate or incomplete and you want to supplement it, let me know that and I'll give you a chance to do so, okay?

A.   Okay.

Q.   Okay.  Are you aware of any physical or mental issues or conditions that you have that could interfere with your ability to testify today?

A.   No, sir.

Q.   Have you taken any medication prescription or otherwise in the past twenty-four hours?

A.   Yes.

Q.   Okay.  And what medications have you taken?

A.   Lyrica for nerve damage and

Associated Reporters Int'l., Inc.                          www.courtsteno.com

Page 16

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Suboxone for pain management.

Q.   Okay.  Do either of those medications make you drowsy?

A.   The Lyrica, but I don't take that till later on.

Q.   Okay.  What -- when did you take it last?

A.   Last night.

Q.   Last night.  Do you remember on what time that was?

A.   Eight thirty.

Q.   Okay.  Okay.  So sitting here today, you feel that you're awake enough and aware enough to understand my questions and responds truthfully, correct?

A.   Yes.

Q.   Okay.  Were there any medications that you were supposed to take in the past twenty-four hours that you didn't?

A.   No.

Q.   Okay.  Have you consumed any alcohol or drugs in the past twenty-four hours?

A.   No.

Q.   Are you at all sick today?

800-523-7887                                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

A. No.

Q. Okay. Are you currently under a doctor's care for any kind of illness?

A. I'm under a doctor's care.

Q. For -- for what?

A. Just in general. It's just a general doctor.

Q. Okay. So is there any reason you can't testify fully and accurately today?

A. No.

Q. Okay. You mentioned before that you had been deposed by a colleague of mine previously in another matter. Let me ask you, if you could list for me, how many times have you, in fact, been deposed? In any case, be it DOCCS or any other kind of case?

A. I believe twice in my life.

Q. Okay. And so one of those was the case handled by my former colleague, Andrew Blancato, correct?

A. Yes.

Q. Okay. And that's also captioned Rodriguez versus Burnett?

A. Yes.

800-523-7887                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                           www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q. Okay. And what was the second time?

A. Was with Eileen -- I can't remember her name. It was for the new -- it was for a different issue case in 2015.

Q. Okay. Was it a DOCCS case?

A. Yeah.

Q. Okay. So you were suing DOCCS?

A. Yeah.

Q. Okay. And do you remember what the issue was?

A. Not off the top of my head.

Q. Okay.

A. The only thing I remember was the New York City, Rodriguez versus City of New York. And it had to do with my medical issues and stuff like that upon coming to DOCCS and them not honoring my disability, my medication, my medical equipment. Until this day, they're still doing it ten years later, so.

Q. Okay. Do you recall how that case ended? Well, let me back up. Has that case ended or is it still ongoing?

A. That case was over a long, long

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

time ago.

Q.   And how did that -- how did that resolve itself?

A.   The city copped out.

Q.   So they settled with you?

A.   Yeah.

Q.   Okay.  Other than the three cases we've been discussing, have you ever been a plaintiff in a -- in a civil lawsuit of any kind?

A.   No.

Q.   Okay.  Have you ever been a Defendant in any lawsuit?

A.   No.

Q.   Have you ever served as a witness in a civil or criminal lawsuit?

A.   My own criminal matter.

Q.   Okay.  What's your full legal name?

A.   Ralph Rodriguez.

Q.   Okay.  Have you ever been known by any other name or an alias?

A.   No.

Q.   Okay.  What's your date of birth?

A.   ████/78.

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   Okay.  And where were you born?

A.   New York State -- city.

Q.   What's your social security number?

A.   I don't feel comfortable giving that over the internet.

Q.   Okay.

A.   Well, with so many people present, we could do --.

Q.   Sure.  Okay.  We'll leave a blank space in -- in the record.  That's fine.  What's your marital status?

A.   I'm single.

Q.   Were you ever married before?

A.   Long, long time ago.

Q.   Okay.  Do you have any children?

A.   I have a son.

Q.   Okay.  How old's your son?

A.   Twenty-five.

Q.   Are you in contact with your son?

A.   Currently, right now, no.

Q.   Okay.  Have you discussed this case with -- with him?

A.   No.

800-523-7887                          ARII@courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   Other -- other than your son, have you discussed the allegations in this case with anyone?

A.   Only you and possibly Robert Knoer.

Q.   I'm sorry, who?

A.   You and possibly Robert Knoer, the -- my other civil lawyer attorney that -- that's handling me at Five Points.

Q.   Okay.  So Robin Knoer, R-O-B-I-N?

A.   Robert Knoer, K --

Q.   Oh, Robert?

A.   Yeah.  Robert.

Q.   Robert Knoer.  And what -- what is he doing for you?

A.   He's a civil rights attorney.

Q.   Okay.  And he's handling a lawsuit for you?

A.   He's handling a case against Five Points.

Q.   Okay.  And what is that case about?

A.   Dental.

Q.   And is that in Federal Court?

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

A.    Yes, sir.

Q.    Okay.  And what's -- what's the status of that case?

A.    They want to settle, but I'm holding out.

Q.    And is that matter being defended by the Attorney General's Office?

A.    Say again?

Q.    Is that matter being defended by an Attorney General's Office?

A.    Yes.

Q.    Okay.  And do you know the name of the attorney from the office that's defending it?

A.    Dentry.  Pamela Dentry, I believe it is.

Q.    Okay.  And do you know the -- the caption of the case?

A.    Rodriguez versus Tom's.

Q.    Okay.  And have they made you a settlement offer?

A.    Well, we just had the pre-settlement meeting and now we're going to have the actual conference, but numbers has been thrown around.

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 23

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q. Okay. What's your highest level of education, Mr. Rodriguez?

A. I'm currently in college.

Q. Okay. What college are you in?

A. Right now I'm in N.Y.U.

Q. Okay. And where are you in the college process?

A. I'm almost done with my double A.

Q. Okay. And what is that degree going to be in?

A. Well, it's going to be a regular associate's degree, but I'm going to be majoring in biology and microbiology chemistry.

Q. Okay. Okay. And at some point, I think you've said in the past you -- you would like to go to law school?

A. Oh, yeah, that too. Politics, civil rights. I'm doing a lot.

Q. Okay. Did you attend high school anywhere?

A. Yeah.

Q. And where did you go to high school?

A. I graduated from City as in Lower

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez Manhattan Outreach.

Q.   Other than the high school degree, did you get -- did you get -- get a high school degree from that high school?

A.   Yeah.

Q.   Okay.  So other than the high school degree and -- and the associates you're working on, do you have any other kind of training or education?

A.   I worked with New York State Health and Hospital Corporation for like ten years before I got disabled.

Q.   Okay.  And what did you -- what did you do for -- for them?

A.   Environmental service aide.

Q.   Okay.  Have you ever served in the military?

A.   No.

Q.   Okay.  I want to go through your -- your history of incarceration.  When did your current incarceration begin?

A.   2015, January 10th.

Q.   Okay.  And what were you convicted of?

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

A.    Robbery in the second degree.

Q.    And what was your sentence?

A.    Twelve years.

Q.    I believe you've -- you've said in the past that you have a chance to be paroled this coming April.  Is that accurate?

A.    April is my release date and my actual date that I could be leaving, honestly, it's a -- it's a toss up in the air.

Q.    So is that -- is that some kind of early release date?  What do you mean by -- by release date?

A.    Yeah, I earned an early release by attending college and getting credits and all that.  Right now I've been in college almost three years.  I have graduated from Christian pre-college, Rising Hope.  I enrolled in Alliance, NIAC.  I enrolled in Bard.  I enrolled in N.Y.U.

I've been in all these colleges. G.P.A. three point seven five.  Never failed a class. A pluses, A's.

Q.    Okay.  Other than -- than the current period of incarceration, have you ever been incarcerated before?

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 26

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

A.   One time, yeah.

Q.   And -- and where -- where was that incarceration?

A.   New York.

Q.   So New York State or New York City?

A.   Well, I -- I live in the city.

Q.   Okay.  And so did you -- did you end up in a State facility at some point as part of that incarceration?

A.   It was a -- it was a fight.  So it was an assault and yeah, I did three years for it.

Q.   Okay.  And did you plead guilty in connection with any of these periods of incarceration or were you found guilty by a jury?

A.   Well, the first one I pleaded guilty because I did the, you know, I did the fight. I had the fight.  This one, I've been crying and screaming innocent since the first day of arrest, and hopefully, I take my education.

I have to prove my own freedom. Because unless you're someone of fame or have money, you're going to be in here.

Q.   Okay.  Okay.  While you've been

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez incarcerated, have you ever received any kind of a misbehavior report or a ticket?

A.   Yeah, I receive like, I believe two or three disciplinaries in almost ten years. That's almost phenomenal if you need to know.

Q.   Okay.  And what -- what were those for?  Do you remember?

A.   Disobeying a direct order.  They had told me a lock in with a mentally unstable inmate and I refused.  Another one was having a contraband or item that didn't have my DIN number, and I don't remember the other one.  Frivolous, basically.

Q.   Right.  Have you ever been on parole or probation?

A.   Yeah.

Q.   Okay.  And when -- when was that?

A.   When I did my -- when I was released for my first sentence.

Q.   Okay.  And so when -- when you were released from your first sentence and were involved with -- with the current period of incarceration, were you on parole when you were arrested for that?

A.   Yeah, they arrested me nine

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

months later for this crime that I didn't commit. Yeah.

Q.   Have you ever been adjudicated as second felony offender or persistent or violent felony offender?

A.   Well, this is the second time I've been arrested.

Q.   Have you ever been placed in -- in SHU as part of this period of incarceration?

A.   Say again?

Q.   Were you -- have you ever been placed in SHU?

A.   Everyone gets placed in SHU in DOCCS.  Yes.

Q.   Yes.  Okay.  How many -- how many times?

A.   I believe -- I can't remember, honestly.

Q.   Prior to your period of incarceration, were you ever a member of any kind of a gang?

A.   No.

Q.   Are you currently a member of any kind of a gang?

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 29

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

A. No.

Q. So I'm going to turn to the -- the allegations in the complaint. I want to ask you some -- some background questions, and then I'm going to try technologically to pull the complaint up and show it to you as an exhibit.

But let's start off very generally. In your own words, what is your case about?

A. Violations on my civil rights.

Q. Okay. And what do you mean by that?

A. Exactly as I stated, violating my civil rights.

Q. Okay. In what way were they violated?

A. I wasn't given proper medical care. I mean, it's all in the complaint. I can't verbatim say every allegation. So I think a general violating my civil rights should be appropriate, being that we know all the claims involved, but I can't reiterate every single issue.

Q. Okay. Who is Mohammad Bhuiyan and why are you suing him?

A. He was the officer who was

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                        www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez present when this CERT team came into the unit.  He was the authority figure in the housing unit.  Who is supposed to be the authority figure to say, no, you cannot assault these guys.  No, you can't harm him.  You can't physically assault him.  It should have been someone.

And if that's my housing unit officer, and you allowed a bunch of guys to jump me, then you're going to be involved in the situation if you didn't stop it because you had a chance to stop it.  And what did you do?  Nothing.

He cowered in the corner in the office and allowed them to attack me.  So yes, he's involved in the suit.

Q.   Okay. And do you recall what -- what he looks like physically?

A.   Yes.  I remember everything, yes.

Q.   And what does he look like?

A.   He looks Indian.

Q.   He looks Indian.  Okay.  Tall, short?

A.   Tall.  Everyone is taller than me.  I'm five five.

Q.   Okay.  Skinny, heavy set?

800-523-7887                                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

A.   He's a little on the skinny side, older man, you know, he's not a bad person.  Grayish hair.  You know, he speaks with an accent.  You know, he was in shock at what happened.  He couldn't believe it and that's why he's part of the equation.

Because if I could get him on the stand, I think I could get the truth to come out.  And he -- he kind of knew what was going to happen after the incident occurred.  He knew who I was.

Q.   Okay.  Who is Michael Block or Block and why are you suing him?

A.   Mr. Shevlin, you're asking me questions about Defendants that are clearly depicted in the paperwork.  I mean, Mr. Block was the sergeant that came in and orchestrated the whole incident.

Q.   Right.  And do you recall what the sergeant looks like physically?

A.   Yes, I do.  A black man, way taller than me, built like a tank and have no mercy.

Q.   Okay.  Prior to the alleged assault here, had you ever had any kind of dealing with -- with this Defendant, Sergeant Block?

A.   No.

Q.   Okay.  Okay.  Who is Edward

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Burnett and why are you suing him?

A.   Edward Burnett is the superintendent.  The superintendent is in charge of all aspects of DOCCS.  So when something happens, he's the first name on the list.  We know this, Mr. Neil.

Q.   Right.  I'm asking you outside -- questions that are outside the complaint because I want to -- I want to get whatever is not necessarily written in -- in the paperwork, and then we're going to turn to the paperwork.

So I'm not wasting your time, Mr. Rodriguez.  There is a method --

A.   Okay.

Q.   -- to the questions, okay?  Okay. Who is Alexis Cherry and why are you suing her?

A.   O.S.I.  Alexis Cherry and the rest of the O.S.I. personnel stood outside the -- the room as they allowed these individuals to come and attack me.  They're -- O.S.I.'s the Office of Special Investigation, they're the ones who's not supposed to let this happen.  So --

Q.   Okay.

A.   -- if we're going to go through

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

every single person that's on that paperwork, they all a part of the situation because they all had a chance to stop it and didn't.  That's why they're named in the suit.  They had an opportunity to stop it but didn't.

Q.   Okay.  Do you have any recollection of what Investigator Cherry looks like physically?

A.   I mean, yeah, shorter than me, long hair, Latin looking.

Q.   Okay.  Okay.  Who is Christopher Ciaccio and why are you suing him?

A.   I can't remember.  There's a lot of Defendants, so we're going to go by every Defendant's actions.  I don't have -- everything is in the claim as far as who did what.

Q.   Okay.

A.   And I don't have any --

Q.   Do you have any -- sure.

A.   You're asking me a question that's clearly depicted on the claim and you're asking me the same question.  It's like you're trying to have me give you a different story.  So if you're going to ask me a question it's on the claim, that's

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez clearly self-explanatory.

I'm not really going to answer that. It makes self-explanatory on the claim because I feel like you're going to try to have me mix up my words.

Q.    Okay.

A.    So I just wanted to put that out there.

Q.    Okay.  So do you have any recollection of what Investigator Ciaccio looks like physically?

A.    I mean there was a lot of people in that room.  I would have to see everybody individually.  That's why -- the next question to every one of your clients, we could use that.  I'm going to have to see them all personally so we can get rid -- past the stage because there's a lot of Defendants.

Q.    Okay.  Who's Jason Crofoot and why are you suing him?

A.    He's part of the Defendants. He's part of the guys that were there.  He's part of the guys who put hands on me.  They're there.

Q.    Okay.

A.    The names are clearly depicted

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 35

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez and what they did.

Q.   Okay.  Do you have any recollection of -- of what that officer looks like?

A.   Mr. Neil, I can identify each and every person that went in that room.  Yes, I can.

Q.   Okay.  So what -- what is -- what does Officer Crofoot look like?

A.   He was a white man, a little taller than me.  I know you're asking me this because they all have certain uniforms on, but yeah, I could possibly identify him, especially with the fact that his shirt slip was like directly in front of my area.

Now the names I have given you that's part of my suit are the names of the individuals who was in my immediate area of me being assaulted.  So all these individuals was the ones involved.

Q.   Okay.  So who is Richard Flanagan and why are you suing him?

A.   Same reason.

Q.   Okay.  Do you have any recollection of what Richard Flanagan looks like?

A.   If I saw him, yes.

Q.   But sitting here today, you don't?

800-523-7887                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

A.   I can't remember right now.

Q.   Who's Jonathan Franco and why are you suing him?

A.   Same excuse, same reason.  All part of the lawsuit, all had a chance to intervene and didn't.  Do I know what he looked like if I saw him, I could possibly identify him, yes.  Do I remember right off the top of my head?

I mean, after four or five years later, I'm seeing this man one time while my face is on the floor being plummeted in.  It's kind of hard, Mr. Shevlin.  So you're threading on a kind of thin ice with these questions with these people or remembering when my face is on the ground being plummeted.

Q.   Right.  All right.  Who's Carlton Garrett and why are you suing him?

A.   I'm -- everybody's name is there for a reason.

Q.   Okay.  Do you have any recollection of what Officer Garrett looks like?

A.   If I saw a picture, yeah.

Q.   Okay.  How about Shawn Hanley? Who is he and why is he being sued?

800-523-7887                                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

A.   Once again, he's one of the Defendants who had a situation -- who had an opportunity to stop what was going on and didn't.

Q.   Okay.  Do you have any recollection of what Shawn Hanley looks like?

A.   Not sure.

Q.   Okay.  Who's Angel Matos and why are you suing him?

A.   He's one of the Defendants in the claim and he was capable of doing something and intervening and didn't.

Q.   Okay.  And do you have any recollection of what Officer Matos looks like?

A.   If I saw him, yeah.

Q.   Okay.  Who's Jean -- Jean Marc Oge?

A.   Another one of the Defendants who was present.

Q.   Okay.  And do you have any recollection of what Mr. Oge looks like?

A.   Yeah.  I got to see a picture.

Q.   Okay.  How about Jan Okusko?  Why are you suing him?

A.   I mean, it's self -- it's in the

800-523-7887                                ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

claim, isn't it?  I'm not going to reiterate the claim.  I told you this, Mr. Neil.

Q.   Okay.  Do you have any recollection of what Jan Okusko looks like?

A.   White guy.

Q.   Okay.  Any -- anything else?

A.   Taller than me.

Q.   And any -- any facial hair, hair on his head?

A.   It's hard to see when they have a helmet on.  So it --

Q.   Okay.

A.   -- really had to get definitive, you know, features and all that stuff.

Q.   Okay.  Who's Aleshia Rose and why are you suing her?

A.   You have to check the claim.

Q.   Okay.  Do you have any recollection of what Aleshia Rose looks like?

A.   Aleshia Rose should be another one of the O.S.I., if I'm not mistaken.  Another woman, another -- there was -- yeah.  I can't.  I got to see a picture of her.

Q.   Okay.  Who's Vincent Santiago and

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 39

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

why are you suing him?

A.   He was one of the Defendants.

Q.   Okay.  Do you have any recollection of what Mr. Santiago looks like?

A.   Maybe if I could see him.

Q.   Okay.  And last, who is Stephen Urbanski and why are you suing him?

A.   Oh, that's the dep, I believe, the dep of security.  He's being sued because I don't think CERT should have been deployed onto Fishkill Correctional.  CERT is only deployed when there's a riot or someone escaped.

Guess what?  Nobody escaped and there was no riot.  So why was CERT deployed on the Fishkill population?  Why did CERT come and manhandled half the facility?  Well, Mr. Burnett, Mr. Urbanski, these are the officials who at the top of the pole.  So you start from the bottom up, right, Mr. Shevlin?

Q.   Okay.  I'm going to try to access the complaint.  So give me a second.

A.   Okay.  Oh, Mr. Shevlin, real quick.  I had to send you the witness listing and all that, but I've been having a problem and stuff

800-523-7887                                ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez getting into the area.  I needed to try to print out the stuff I needed to send you.

Q.   Okay.  We -- we can talk about that after, Mr. Rodriguez.  That's not a -- that's not a big deal.

A.   Okay.

Q.   Okay.  So can you see the complaint?

A.   Yes, sir.

Q.   You can.  Okay.  So I'm going to direct your attention -- well, first, do you recognize this document?

A.   Yes, it's my claim.

Q.   Okay.  And you wrote this -- this complaint?

A.   Yes, sir, I typed it up pro se. Proud of my work.

Q.   Okay.  I'm going to scroll on down to pages five and six.  And on these two pages, if you could take a look at them.

A.   Yeah.

Q.   You list a number of injuries that you had prior to entering DOCCS custody.  So take a look and just let me know once you've had a

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

chance to --.

A.    Right.  Yeah, I'm familiar.

Q.    You're familiar?  Okay.  So I just want to go through the list of these -- of these injuries with you to -- to find out what they're about.  So you'd mentioned that you -- your spleen and intestine were removed.

A.    Portions.

Q.    Portions.  Okay.  So -- so what happened with that?

A.    Well, I was -- the case that I did the time for when I said I was involved in assault, unfortunately, I was attacked and stabbed multiple times by an individual.  And I fought back to defend myself and not be killed.

And because I fought back from being stabbed so many times, I had to be sent to prison, but that's New York.

Q.    Okay.  You also mentioned having nerve damage in your right arm and wrist?

A.    Yes.

Q.    Pain, numbness, tingling and weakness in your arm.  What -- what is that about?

A.    That's from being stabbed.

800-523-7887                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

Q.   Okay.  Again, nerve damage, permanent pain, and numbness in your left arm.  Is that also from being stabbed?

A.   I was cut on the top part of my muscle, on the left arm, I was -- my hand was chopped on my right hand.

Q.   Okay.  Now you also mentioned that in the early 2000s, you were in a car accident.  Is that correct?

A.   Yeah.

Q.   Okay.  And that as a result, you have lower back pain and pain in your neck?

A.   I mean, yeah, that accident started, you know, started the injury back then.

Q.   Okay.  You also mentioned having flat feet and that -- that causes pain.

A.   Yeah.

Q.   Okay.  How long has that been going on for?

A.   Born with that.

Q.   Born with that.  Okay.  You also mentioned a number of -- of, I guess, mental health type of issues.  One being bipolar disorder.  Have you -- have you officially been diagnosed with

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

bipolar disorder by a mental health practitioner?

A.   Mr. Shevlin, all the diagnosis I put on the paper was done by professionals.  It wasn't a self-diagnosed situation here.

Q.   Okay.  And when --.

A.   So all those bipolar, anti-social disorder, anxiety, claustrophobia, depression, and on and on, yes, it's been diagnosed by a person.

Q.   Okay.  And do you recall when -- around when you were diagnosed with these -- with these conditions?

A.   You'd have to take a look at my medical records.

Q.   Okay.  Would it have been as like a teenager or as an adult?

A.   It's broken up.

Q.   And do you take any kind of medication for these -- these issues?

A.   I'm kind of like an anti-medication guy.  I really don't take it unless it's a hundred percent necessary.  So like, with these mental health medications, I tend to stay clear.

Q.   Okay.

A.   I'm more of a holistic person.

Associated Reporters Int'l., Inc.  www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

Q. Okay. Now you also mentioned a hearing impairment. Can you tell me about that?

A. I damaged my ear. I messed up, Mr. Shevlin.

Q. Okay. Well, everybody's got some issues, Mr. Rodriguez. So where -- which ear do you have the impairment in?

A. It's like I have hard hearing on the left side.

Q. Okay. Is that -- is that a result of some kind of an accident?

A. To be honest with you, I don't know how that happened. It just -- I guess as I'm getting older, I'm breaking down. I can't answer that.

Q. Okay.

A. But it wasn't because I got hit in the ear or anything.

Q. Okay.

A. That I know of. It probably could be. Could have been one of your Defendants who messed up my rattling ear now.

Q. Well, when -- when did the hearing impairment start?

800-523-7887  ARII@courtsteno.com

Associated Reporters Int'l., Inc.                         www.courtsteno.com

Page 45

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

A.    Well, it started, I can't really recall when, but it definitely got worse.

Q.    Okay.  And have you seen, like an audiologist for it?  Have they told you you need a hearing aid?

A.    Yeah, I've done all that.

Q.    Okay.  Are -- are you in fact wearing a hearing aid or -- or no?

A.    No, no, no, no.

Q.    Okay.  So with respect to all these -- these issues that we just discussed, you allege that the impact means, your life activities such as caring for yourself, eating, sleeping, lifting, communicating, writing, typing, walking, and working.  Is that accurate?

A.    Yeah.  There's more to it.  Yeah.

Q.    Okay.  So why don't you tell me what -- sure.

A.    You know, it was just difficult to -- to do anything.

Q.    Okay.  So sitting here today, are your major life activities impacted by these conditions?

A.    I mean, it interferes, but it's

800-523-7887                                        ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

not a, you know, not as bad as it was then.

Q.   Okay.  And when you say then, what do you -- what do you mean?

A.   Regarding the -- the incident.

Q.   So since -- since 2021, these issues have -- have gotten better or worse?

A.   Worse.

Q.   Worse.  Across the board worse, or specific ones?

A.   Across the board worse.  Your Defendants did a doozy on me.

Q.   Okay.  So what -- what major life activities, sitting here today, are you not able to perform because of these -- these issues?

A.   Well, like, I -- I'm in fear to go to rec.  I'm in fear to be around certain officials.  I'm -- I'm in fear to go to certain services, certain events, anything dealing with DOCCS personnel being there present, I tend to shy away from.

And I think that kind of hinders anybody's rehabilitation when their sole purpose is to stay away from the people who are supposed to be the ones to help them.

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 47

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   Okay.

A.   So --.

Q.   So when -- when's the last time you went to rec?

A.   I haven't been to rec ever in this facility.

Q.   Now you did testify earlier that you -- you are taking some schooling, some college courses.  Does that involve interacting with officers in any way?

A.   No.  That's only N.Y.U. personnel.

Q.   Okay.  Do you -- I'm sorry, I didn't hear that.

A.   That's only N.Y.U. personnel. Nothing to do with officers.

Q.   Okay.  Do you attend classes in a -- a school building or school area?

A.   Yes.

Q.   Okay.  Are there officers located in that area?

A.   There's one officer located in the law library for the whole unit.  There's supposed to be two, but there's not.

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 48

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q. Now on page six of the complaints -- let me scroll there. Can you -- all right. So can you see that now, Mr. Rodriguez? Do you agree with that?

A. Yeah. Yup.

Q. Okay. So you allege that as a result of the use of force in this case, you suffered severe damage to your lower jaw that required surgery and installation of a permanent piece of metal in your jaw. Can you describe that for me?

A. Wait a minute, wait a minute. Mr. Shevlin, did you just say that my jaw was an incident that occurred with the claim? Did I just use --

Q. Is that -- well, let me ask you, do -- do you have any injury to your jaw?

A. Yeah, but the injury to my jaw was -- had nothing to do with the claim. That's a -- what you're reading here is a history of my injuries and all that stuff. That don't mean that that incident occurred in the claim. It's not.

Q. But that's a -- that's a different assault?

A. That -- that is my social

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 49

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez security administration disability breakdown of everything that has happened to me.  But this is --

Q.    Okay.

A.    -- part of the claim.  Believe me, if this guy broke my jaw and I had metal in it, we wouldn't be having a subtle conversation.

Q.    Right.  So let me ask you, so sitting here today, do you have a piece of metal in your jaw?

A.    Yeah, I have metal in my jaw.

Q.    Okay.  And what happened with that?

A.    What happened?

Q.    Yeah.  How did it come about that you -- you have a piece of metal in your jaw?

A.    Officers slammed my face to the concrete and shattered my jaw.

Q.    And when did that happen?

A.    That happened in my first arrest.

Q.    Okay.  So it doesn't involve these Defendants?

A.    Mr. Shevlin, it says it right there.  2010.  Everything is self-explanatory.

Q.    Okay.  Well, it says in the top,

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 50

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez during the assault on Plaintiff, there's also severe damage to the lower jaw which required surgery and has permanent metal installed within Plaintiff's jaw. So I just want to try to understand what you're talking about there.

A.   Yeah, because it says here, this is about September of 2010.  All that is prior incidents that had occurred.

Q.   Okay. Okay.  Thank you for clarifying.  Now also on page six, you alleged that the Defendants were made aware of your medical and psychiatric condition when you arrived in 2015 and throughout your incarceration.  Is that accurate?

A.   Yes.

Q.   Okay.  So take a look at this -- the Defendant, the specific Defendants in this case. So how do you know that they were aware of your medical and mental health history?

A.   How were they aware?

Q.   Yeah.

A.   When you come to see the people who are in charge of dealing with you they must know your entire history.

Q.   Okay.

800-523-7887                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

A.    That's how they supposed to know. That's how they should have been aware.

Q.    Okay.

A.    You don't come to DOCCS under these people's care and they have not a clue as to your medical mental health.  I mean, some of the questions is kind of self-explanatory.  I know you're asking, but it's a little frustrating when these questions, it's just like almost common sense, Mr. Shevlin.

Q.    Well, I understand what you're saying with respect to, maybe, DOCCS as an entity, but I'm asking you about the specific Defendants here.  How do they know what your medical and mental health issues are?

A.    That's their job to know what's wrong with the people who they're watching, right or wrong.

Q.    You tell -- you tell me, Mr. Rodriguez.

A.    Yes, sir.  Mr. Shevlin, that's their job to know, if they come to a unit, the officer's job is to know who's in the unit and what issues that person had if that person has medical

800-523-7887                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 52

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez issues, mental health issues.

I think a security personnel coming to work at unit should have full knowledge of every inmate in that housing unit and what's going on.  And in their office, there's a board that tells them what inmate has what.  It's a clipboard.

And on that clipboard, it has Mr. Rodriguez's medical status and everything wrong with me.  So yeah, they should know.  They come to work the unit.  They log in their logbook.  They have to look at all of these documents so they can know what's wrong with the inmates.

They don't just come and take care of us without having any firsthand knowledge of this guy's an addict or this guy needs blood pressure medication or this guy needs heart medication.  They need to know this stuff.

So how do they know?  That's how they know.  Each and every one of them.

Q.  Okay.

A.  So we don't have to do every one individually.

Q.  So now when you say there's a clipboard, is there a name for the document that's

800-523-7887                              ARII@courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

contained on the -- on the clipboard?

A.   Oh, yeah.  Yeah.

Q.   What is that called?

A.   You're going to have to ask your Defendants because that's stuff that they won't give to me, you know, privilege.

Q.   Okay.

A.   You know that word privilege.

Q.   Okay.  And -- and where -- where -- so -- strike that.  So at the time of the incident issue in this case, is it accurate that you were in Housing Unit Nine dash One?

A.   Yeah.  That was my housing unit for years.

Q.   Okay.  So -- so taking Housing Unit Nine dash One, where would that -- that clipboard have been maintained?

A.   The minute you enter the unit, to the right side is the officer's bubble.  It's inside the officer's bubble, right on the wall.

Q.   Okay.  And again, when you say officer's bubble, what -- what do you mean by that?

A.   That's their office in the unit.

Q.   Okay.  Is it -- is it surrounded

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 54

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

by some kind of fencing or a wall or is it an open office?

A.   It's a -- it's a closed office with a door.

Q.   Okay.  Are there windows in the office?

A.   Yeah.  I mean, you see through. They have the plastic -- that plastic mirror, glass, or whatever.

Q.   Okay.  Are -- are -- are there bars on -- on the windows?

A.   I mean, bars on the windows to the outside, but not bars in the office of the officer.

Q.   Okay.

A.   It's a regular office.

Q.   Okay.  Is -- is -- is that office a place where incarcerated individuals can go into or -- or -- or not?

A.   No, that's only the officials. We don't go in there.

Q.   Okay.  So now on pages eight through twenty of the complaint, so you attach a number of -- or maybe it's one document, but a number

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                     www.courtsteno.com

Page 55

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

of -- it looks like a number of documents from the Social Security Administration.

A.   Yup.

Q.   I think it's entitled a notice of decision dash fully favorable from the Social Security Administration from March, looks like March 14th of 2013.  Is that correct?

A.   Yup.

Q.   Okay.  And it looks like a favorable decision was issued by, I guess, perhaps some kind of Administrative Law Judge regarding getting social security disability benefits.  Is that what the document is?

A.   Yeah.  That -- that was my application for disability.  They had refused me because they said that my disability occurred during my commission of a crime.  But after the Administrative Law Judge, we went to trial on the issue.

The truth came out that I was a victim of the incident.  I was attacked.  So the incident that Social Security Administration was being informed, that I committed the crime during the commission of my crime, I got disabled.  It wasn't

800-523-7887                                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 56

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

true.  I defended myself, so I was attacked first.

I was assaulted first.  I got disabled first before my crime of fighting back occurred.  So the Administrative Law Judge came to the reasonable, honest conclusion that, okay, you cannot take that away from him because he didn't commit the crime.

He was assaulted before the injury.  And that's where we are here now.

Q.  Okay.  And so is it accurate -- again, looking at these documents, that the -- the determination ran from September 19th of 2008.  Is that the commencement date of the disability?

A.  That's when I applied.  Yes.

Q.  Okay.  And so as a result of this -- of this document, did you, in fact, begin to receive social security disability payments?

A.  As a result of the document, I was fully deemed disabled.

Q.  And you received benefits of some kind?

A.  Right now I receive nothing.

Q.  Before you were incarcerated?

A.  Yeah.  They -- they give me medical, yes.

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

Q.   Okay.

A.   They give me.

Q.   Now when you get out in April, is it your assumption that you're going to continue once again to receive these -- these payments?  How does that work?

A.   Well, I'm disabled for life.  So I am entitled to lifetime social security benefits, medical and everything.  Disability works -- the way they work is we're still allowed to work, but only certain amount of hours.

So when I go home, I guess it's all determining on my financial situation, my schooling.  If I want to continue to collect that thirteen hundred dollars or actually work to make a hundred thousand dollars is my -- is -- I mean, I haven't came to that issue yet.  When I go home, I will.

Q.   Okay.  Have you ever applied for or received Medicare benefits?

A.   Yeah.  You have to when you go home.

Q.   Okay.  And when -- when did you begin receiving Medicare benefits?

A.   I can't recall.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.    Okay.  And was that part of -- or was that different from the -- the social security disability benefits?

A.    I don't recall.

Q.    Okay.  Again, same question as before.  Is it your anticipation that when you get out in April, you'll once again be receiving Medicare benefits?

A.    Prisoner, yeah.  When we're released, we -- we get everything we need.

Q.    Okay.

A.    So I'm guessing yeah.  I mean, like, right now I should have about ninety days and less to be home.  And I haven't done my social security, my birth certificate, my address, nothing has been done.  So I can't honestly answer anything you're asking about that stuff.

Q.    Okay.  So now on page twenty-one of the complaint, scroll down.  Okay.  Now I believe you state that Fishkill was unlike any other facility that you had ever been in.

A.    That's right.

Q.    And so what -- what do you mean by that?

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

A.    I've been in a few facilities and that -- that facility was different.  It was -- I could -- I could relate it to being locked in Rikers Island, and I'm sure you heard about how Rikers Island is.

Q.    Okay.  Well, for the record, why don't you just explain what you mean by that?

A.    It's a very violent jail.  The officers in the jail are physical firsthand -- hands on.  Administration isn't worth the -- the -- the paper they're hired on.  Counseling isn't worth the -- the paper they're hired on.

The pay stuff should be revoked.  They shouldn't be -- I could go on Shevlin, but that's a very touchy situation when we start talking about DOCCS officials and counseling and administration because I have a sore spot for that, because these are the people who are supposed to make sure we have a positive rehabilitation.

These are the people who are supposed to make sure we're not assaulted and we're not beat up and we're given the proper medication and care.  Let's be honest, this prison isn't rehabilitation, it's to punish.  It's not about rehabilitating.

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

So I have a problem when these people who are sent to help us are actually punishing us. And they're under the rules that they're helping us, but they're not.

They take out date away from us, like, I'm supposed to be home last week. Why am I still in prison? I earned my limited time credit allowance. I should have been released last week. Why am I still here? Why?

Because when I came to this facility, the officials' administration said that it was more important to put me in a drug program that I've never needed in ten years. They said it's more important to put me in a drug program that I have to take again when I'm released.

Instead of putting me in college, which would have got me home last week, they had a whole year to do this. But instead, they put me in RSAT, Mr. Neil. So I lost my date. These people know my mother's dying.

They know my mother's stage four cancer. They know I lost my father to COVID-19. You think they care that I gave them three years of college? I gave them multiple colleges. Alliance,

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

Rising Hope, Bard, N.Y.U., Rising Hope.  You think they care that I graduated?

I'm probably the only inmate in the State with five colleges under his belt.  Forty-six credits and I still don't have my own C.T.A.?  I can't be released?  You don't think there's something wrong with that, Mr. Shevlin?

So when you come across someone like me that has a state of mind or half a brain, do you think I'm going to just let these people walk over me?  Take away my liberty, take away my rights, especially for a crime that I'm innocent of?

Yeah, I'm very passionate.  And this is the only way I have to argue.  This is the only way I have to fight, because there's no other remedies in DOCCS.  You saw the deposition.  I have a deposition from a superintendent, Mr. Toms.

From Rodriguez versus Toms by Robert Knoer, where the superintendent says, the grievance is a sham.  It don't exist.  When the grievance comes in, he don't do investigations.  He don't review anything.  He signs off.

He has no idea what happens in the grievances.  I have this in the deposition.  So --

800-523-7887                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

Q. Right. Well --.

A. -- I have DOCCS officials saying that the grievance is a sham, that the Prison Litigation Reform Act is a sham. So yeah, I'm getting passionate --

Q. Well, then --.

A. I get very emotional when we talk about these officials that should be helping, but they're standing right by the same people who's beating us down.

Q. Right. Well, let me ask you, at Fishkill, are there any cells in Fishkill, or is everything cubicles in -- in the housing dorm?

A. That's a really big jail. That jail has some cells for some units. Some units open dorm, some you -- it's -- it -- that jail is different. It's like a mental institution jail.

Q. Okay. And the housing unit that you were on nine-one, were those cubicles like a dorm style?

A. Cubicles. It was --.

Q. Cubicles. Okay. So now in paragraphs four to five of the complaint, you assert that on December 24th of '21, an inmate named

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Christopher Gaudiello attempted to escape, which resulted in the facility being placed on lockdown for a single day.  Is that correct?

A.    Yeah.  The kid --

Q.    Okay.

A.    -- just tried to walk out the gate.  Like I said, Fishkill's a mental health jail.  This kid was having a mental health issue.  He walked to the front of the gate.  And because of that CERT came.  You don't call CERT for that.

I got thirteen years of my bill unfortunately of prison time.  You do not call CERT for a mentally unstable inmate walking to the gate.  So those are --.

Q.    Well, let me ask you, what -- what -- what -- what is your understanding?  To your understanding, what is the -- the process to put a facility on lockdown?  How does that happen?

A.    The facility gets put on lockdown if there's a riot or someone -- it is a riot, a revolt, or someone escaped.

Q.    Okay.  And who --

A.    That's it.

Q.    -- who puts it on lockdown?

800-523-7887                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 64

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

A.   Your Defendants.

Q.   So it doesn't come from central office?  It's -- it's the facility itself?

A.   You will have to ask your Defendants on the deposition because I plan to ask them myself.

Q.   Okay.  Okay.  So moving -- moving along in paragraph six of the complaint, you allege that on December 27th of '21, that by order of D.S.S. Urbanski and Superintendent Burnett to this Admin facility administration, Fishkill was again placed on lockdown for quote, no just cause, closed quote, and CERT teams were deployed.  Is that correct?

A.   Yes, sir.

Q.   Okay.  So now again, same question as I just asked you.  How do you know that it was Urbanski and Burnett who put the facility on lockdown as opposed to, let's say, central office?

A.   Because Urbanski is the dep of security and the other one is the superintendent.  So you're going to have to ask them those questions because if you want a definitive answer who is in charge of locking that down, I'm not going to give you a false answer.

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.    Okay.

A.    You're going to have to ask them.

Q.    And when you say it wasn't -- it wasn't justified, so what do -- what do you mean by that?

A.    When I say it wasn't justified, I just gave you a couple of reasons, which are the main reasons of shutting down a facility.  None of those reasons occurred, so it was unjustified.  If you shut down a facility, why you shut it down?  There has to be a reason.

So my thing is, what was the reason?  Nobody escaped.  There was no riot.  There was no insurrection.  So why was CERT deployed to come into the facility and injured seven hundred inmates?  The -- the numbers don't even -- it doesn't even sound real, but it is.

The -- the facility holds almost fifteen hundred inmates.  When I was wheelchaired into medical, we have a whole building medical.  There was not one room available for an inmate to be shoved in.

You know what they did with me?  Instead of putting me into emergency care, they sent

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

me back to my housing unit because they didn't have no one -- no room, they didn't have no bed, they didn't have nothing. They're going to have a lot of questions to answer for.

Q. But when you just testified that that seven hundred inmates were injured, how -- how do you know that number?

A. Well, that's a number I'm just throwing up there. There is no definitive number because they hide everything. They lie about everything. This is DOCCS. Now me myself, I got about ten affidavits. So I do my own homework.

And I -- I take care of myself. So if I expect DOCCS to tell you how many people they really hurt that day, don't expect to get the real answer. You could times that by a hundred, but I was there. I was in the medical ward.

Ask them how many rooms are in a medical unit and how many medical per -- how many inmates can the medical unit hold, and you'll get your answer of how many --

Q. Okay.

A. -- people they hurt and assaulted.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 67

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   What do you mean when you say you have ten declarations?

A.   Like, affidavits.  It's all in the -- it's all in the claim.  You got it in the claim, Mr. Shevlin, you got them as exhibits.  There's all these, sworn affidavits, claims, verbatim, witnesses.  They're all there in the claim.  You should know.

Q.   Okay.  Now you say in paragraph nine, that's the next page, let me scroll down.  That D.S.S. Urbanski was removed from his position and is no longer at Fishkill because I guess he improperly authorized the deployment of his CERT team.  Is that accurate?

A.   That could be one of the reasons.

Q.   Okay.  Well, you said that was the reason so I'm -- my question to you is how -- how do you know that?

A.   Well, how do I know that?  Well, maybe their officers shouldn't be divulging so much information freely.  So you got to act dumb, how did that information was revealed to inmates?

Q.   Okay.  So is that something that you were told by one of the officers?

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

A.    Yeah.  I don't remember their name.

Q.    Okay.  That was at Fishkill?  I'm sorry?

A.    I don't remember their name.

Q.    Okay.  But that was at Fishkill?

A.    Yeah.

Q.    Okay.  Okay.  So in paragraph ten, you allege that the intent of the CERT team from the time that it arrived, that Fishkill was malicious, correct?

A.    Yes.

Q.    Okay.  And how -- how do you know that?

A.    How do I know?  Ask me the question again.  How did I know that the CERT team's actions were malicious, right?

Q.    When you say their -- that their intent was malicious, so I'm asking, how do you -- how do you know that?

A.    Because when you come into a housing unit, your first intentions isn't to physically assault and manhandle everybody.  So if you're there for law or order, why did you

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez
immediately assaulted half the staff -- half the --
half the nine-one unit?

There was thirty of us.  Half of us was assaulted.  Mr. Shevlin, was that not malicious?  We wasn't --

Q.   Okay.

A.   -- we wasn't revolting.  We was all on our beds waiting to be searched.  Mr. Shevlin, you read my complaint.  Do you think these guys lifted me off my bed and slammed me head first and assaulted me with close fists?  You're going to ask me how do I know their intentions wasn't malicious, I'd rather talk on the stand, to be honest with you.  I'd rather go on the stand.

I understand --

Q.   Okay.

A.   -- this is a deposition, but I'd rather do this on the stand.

Q.   Okay.  Well, you might -- you may get the chance, Mr. Rodriguez.  We'll have to see.

A.   I will get the chance because I'm not going to allow this action to go unanswered.  They assaulted me.  They put hands on me for no reason.  They hurt me.

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   Okay.  Okay.  So I'm turning to paragraph eleven.  And you say that from housing unit to housing unit, from the program building down to the I.I.'s living quarters, they destroyed both property of the facility as well as private property.

And then in twelve, you say, almost every housing unit where I.I.s. were, where -- where they came in and brutally and maliciously attacked and severely injured prisoners.  Did you see that?

A.   Yes.

Q.   Okay.  And can -- can you clarify what you mean by that?

A.   Can I clarify what I mean about what?

Q.   About those statements.  Well, how do you know what they did in other housing units and other parts of the facility?

A.   Because we could see, we see through the windows, through the doors, we see through the next unit, everything is there.  I can look through the -- I can look out the window and see the next floor.  We heard everyone screaming from the -- the mess hall when they were being dragged.

Then we looked at them through the

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 71

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

windows and the officers was dragging them by their feet.

Q.   Okay.  And do you have any -- do you have any understanding in terms of how many members of CERT teams came to Fishkill during that period of time?

A.   A lot.

Q.   Sitting here today, other than what you just testified to in terms of looking out the window and seeing things, do you have any -- any knowledge from speaking with other incarcerated --

A.   Yes.

Q.   -- individuals, not on your unit, but other units in the facility, in terms of being assaulted?

A.   Yes.

Q.   And you recall the names of those individuals?

A.   Everything is in the claim.  The names are in the claim.  The sworn affidavits are in the claim.  Everything is self-explanatory on the claim.  Please don't ask me questions that I will have to review the claim to give you a definitive answer because you'll be asking me to lie.

Associated Reporters Int'l., Inc.                     www.courtsteno.com

Page 72

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   Okay.  How about in terms of destroyed property?

A.   They --.

Q.   What kinds of -- I'm sorry?

A.   Destroyed property?

Q.   Yeah.  What kind of property was destroyed from these other -- for these -- with respect to these other inmates?

A.   Everybody's stuff was destroyed, including the facility stuff.  These guys came and broke T.V.s., microwaves, pots, pans, beds.  Mr. Shevlin, you never seen the outcome of a CERT raid?

Q.   Well, Mr. Rodriguez, you were there, I wasn't.  So I'm asking questions about that.

A.   I'm asking you for a reason because if you've never heard of it or seen it, that kind of explains to me why you're asking me the questions.  Then -- then maybe I could be more detailed to give you more graphic accounts of what happened.

Q.   Well, I did.  Sure.  Why don't you do that?

A.   Okay.  What do you want to know?

Q.   Well, give me the graphic details

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

in terms of what happened.

A.    Okay.  So while I'm in nine-one unit, right, we can see through the windows.  And when we see through the windows, we can see the mess hall.  We can see the other units and floors.  We physically saw them dragging inmates, dragging them on the floor knocked out, unconscious, wheel-chairing people out to medical.

I mean like, it was bad.  So there's a lot of stuff that could be said, but I'd rather just save it for trial.  Let the people see what really happened.  I'd rather give them a real gory graphic account than to talk about it.

Q.    Okay.  So from your -- from your vantage point in your housing unit, you were able to clearly see out of the window into other housing units and you saw inmates being dragged on the floor by CERT team members?

A.    Yup, I saw it.  Other inmates saw it.  We heard the screams.  We heard the cries.  We heard the shouts for help.  We saw it.  It happened. They violated.  They assaulted half the prison for no reason.  Oh, no.  They did have a reason, I'm sorry. They said that that kid that tried to

800-523-7887                              ARII@courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez walk to the gate messed up their Christmas weekend. That's why they did what they did to us.  I remember. Since we messed up some of those guys weekend, they decided to come and physically assault half the facility.

Q.   Okay.  So now walk me through when -- the housing unit that you were on, is there a door or a gate that leads into -- into the housing unit?  How -- how do you access the unit?

A.   You walk into the unit.

Q.   Okay.  Is there a gate or -- or a door?

A.   There's doors everywhere.  That's a -- the door has a glass where you could look through it.  Yes.

Q.   Okay.  Now when you say that -- that, you know, you saw these -- these CERT team members dragging inmates and attacking them, are you referring -- referring specifically to the date of December 30th of '21 or are you -- are you referring to the larger date referenced in your complaint, which I think spans approximately December 27th of '21 to about January 5th of '22.

So you explain to me what you mean.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 75

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

A.    From that day, from whenever they packed it up, from day one, that occurred and it never stopped till they were ready to leave.

Q.    Okay.

A.    So that whole time period, we was being assaulted all those days.  That's when they -- oh, yeah, they -- they shut down the phones and they shut down the kiosks, so we couldn't contact our families to tell them what was going on.

Yeah, I remember that time, yeah.  All that happened.

Q.    Okay.  So if you could just walk us through, and again, Mr. Rodriguez, I know -- I know you put this down on paper, but I would like to hear it in your own words.  Walk me through step by step what happened on December 30th, '21 when you claim you were assaulted?

A.    Mr. Shevlin, I'm not going to go verbatim on everything that happened.  If you want, I'll read to you back the claim.  I'm not going to switch my words.  I know how this deposition goes.  So if you want a proper deposition to be given on truth and facts, you have the claim.

If you want me to reintegrate what

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez occurred when -- when I got assaulted, then I'll read off the claim, so we could not have any misspoken words or something like that. We're going to stay professional on the line of what was written.

Q. Right. So -- all right. So why don't we break it down? So what happened -- when did you first notice that the CERT team members entered your housing unit?

A. It's on the claim.

Q. Okay.

A. Mr. Shevlin, wait, before we continue. I got to pick up medication. So I don't know if you want to take a ten, five?

Q. That's fine. We can take a break.

A. Let me just make sure they know, because before anything, I was supposed to take it at eleven. It's eleven twenty. So I -- I don't want to miss it.

Q. Okay. Why don't -- let's go off the -- let's go off the record for a minute.

A. Okay.

Q. Once you find out and then come back and tell us what you need.

800-523-7887                                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 77

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

(Off the record; 11:19 a.m.)

(On the record; 11:29 a.m.)

BY MR. SHEVLIN:  (Cont'g.)

Q.   So Mr. Rodriguez, before --
before the break, you and I were having a discussion
about the types of questions that I -- I've been
asking.  So let me just say on the record, you know,
I appreciate that you were very detailed in your
complaint and it was a very detailed complaint.

But the federal rules do permit me to
ask questions at a deposition because sometimes
people don't put things into the actual written
document or they remember things.  So my intent is
not to annoy you or to waste your time, but the
federal rules do -- do permit me to take a deposition
and ask you questions about what's being alleged.

If -- if the response was always just
look at the complaint, it's very detailed, then the
federal rules wouldn't require there to be
depositions or allow them.  So I'm hoping you'll
cooperate in the process.

Again, I don't want to waste your time
or annoy you, but I am entitled to go through the
claims and -- and ask questions.

800-523-7887                    ARII@courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

But again, if -- if your position is, you know, you just don't want to answer the question, that's fine.  That's your position.  We'll -- we'll have to, I guess address it with Judge Halpern, but I can tell you, I -- I think he's probably going to say -- not -- not to speak for him.

But I think he's going to say you have to answer questions about your allegations.  So what -- what do you say?

A.    Let's go.

Q.    Okay.  Great.  Thank you.  Okay.  So before we broke, I was trying to do paragraphs fifteen and sixteen of the complaint when you start talking about the CERT team coming on to the housing unit.  So now just explain to me when they came on the unit, were they -- were they quiet?  Were they screaming?  What's your recollection of -- of your first being aware of their presence?

A.    Mr. Shevlin, line number fourteen clearly depicts that they came in screaming.

Q.    Okay.  Okay.  So they came in screaming, and did you hear what they were screaming, or could you not tell what they were saying?

A.    No.  You couldn't tell.  They

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

were screaming, shouting, everything.

Q.    Okay.  Now when they came into the dorm, you were lying down at that point?

A.    I was in bed.  We was in bed. Everybody was sleeping.

Q.    Okay.  And you allege that by the time you got up, or sat up from your bed, an officer grabbed you from behind the back of your shirt.

A.    Yup.

Q.    While another grabbed hold of your neck and forcefully lifted you up off your bed and slammed your head first into the floor.  Is that accurate?

A.    That's perfectly accurate.

Q.    Okay.  Do you recall which of the Defendants were involved in that?

A.    I don't recall.

Q.    Okay.  You then say that before you knew what was happening, there were about five officers beating you down with closed fists, all over your body, which included your head, back, face, ribs, stomach, legs, and testicles.  Is that accurate?

A.    Yeah.

800-523-7887                                        ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   Okay.  Do you recall the identities of any of the officers who were allegedly assaulting you at that time?

A.   The identities is put inside the claim.

Q.   Okay.

A.   If you want me to tell you every name, I can't do that.  I don't remember.

Q.   Okay.

A.   But that's going to be the majority of my answers now.  I don't remember, yes, no.

Q.   Okay.

A.   Because everything is there.

Q.   Did you -- did you see any badge or identifying numbers --

A.   I don't recall.

Q.   Don't recall.  Okay.  So then how did you come up with -- with the badge numbers that are listed in the complaint?

A.   I made this -- I told you prior that these officers leave a form -- all right.  My cubicle area with the other beds, the officers that came have to leave a document saying their name and

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

their badge.  That's how I got their name and badge number.

So all the officers that were surrounding me had to leave their information to the cubicles next to me.  That's how I got all their information.

Q.   So the officers who are part of the CERT team have to identify the cube that they go into?

A.   I don't know how they do that, Mr. Shevlin.  You're asking a security question.  I don't know how they do it.  All I know is that they're supposed to leave their information; the way they do it, how, you're going to have to ask them.

Q.   Okay.  And -- but how did you identify these specific individuals by -- by their badge number?

A.   By the documents left in the area.

Q.   Okay.  And was that a log -- a logbook?

A.   No.  I just told you, Mr. Shevlin.  The officer has to leave a documentation of his information to the cubicle or area that they're

Associated Reporters Int'l., Inc.                          www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez searching or ransacking, so they can know who was responsible for that area, which is the officers I gave you who was responsible for the area where I was assaulted.

Q.   Okay.  And at what point in time did you have a chance to review that document?

A.   I don't recall.

Q.   Okay.  Would it have been the same day as -- as the alleged assault?

A.   I don't recall.

Q.   Okay.  Do you recall whether someone showed it to you or did you happen to see it on a desk somewhere?

A.   I recall seeing it all over the place.  There was a -- everywhere they -- they write.  Like I said, there was thirty beds and every one of those beds had to have documentation to them.

Q.   Okay.  Is it -- is it your recollection that a single CERT team came to your housing unit or was it more than one CERT team that day?

A.   I don't -- I don't know.  I -- I don't know how they moved.  Like, I don't know if that was a squadron, a battalion.  I don't know how

800-523-7887                                        ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez CERT reacts.  That's a security thing.  I am merely a prisoner.  You're asking me how does CERT operate their operations.

Q.    Okay.  Well, you alleged in the complaint that after being assaulted for about five minutes, and while continuing to assault you, at least one of the officers in the CERT team made racist remarks such as quote, you fucking spic, closed quote.  Is that accurate?

A.    That's one hundred percent accurate.

Q.    Okay.  And do you recall who -- who made that comment?

A.    I honestly don't recall.  My face was smashed to the wall.  And whoever this was, their face was in my ear.  So it's kind of hard to look at the guy who's got your face on the wall.  And if you turn, they're going to physically assault you even worse.

Q.    Okay.  How long --

A.    Before we start, I want you to understand that you're -- you're -- you're rattling up a cage right now of a traumatic experience that occurred to me.  So you're going to start getting

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez responses and actions that I'm normally not going to give you as a human being.

But you're rattling a cage that I'm very passionate about and about -- and about -- and what happened to me is sincere.  It's severe.  It wasn't small.  So I want you to understand that you're going to get some backlash from me; it isn't personal, but you're rattling a cage that I'm uncomfortable about.

Q.  Right.  I -- I understand, Mr. Rodriguez.

A.  What we're talking about is right there in front of you.  Now I know you have a right to ask me these questions, but you don't have a right to continuously ask me the same question that I already answered.

Q.  Okay.

A.  So if we --.

Q.  Well, let me -- let me ask you this.  Other than that -- that comment that I just -- that I just read you from the complaint, were any other racist comments made to you by members of the CERT team while they were allegedly assaulting you?

A.  Yeah, you should talk to Sergeant

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

Block about all those racist comments he makes.

Q.   Well, I'm asking you, were any other comments made to you at that time while you're being assaulted?  Is that a yes?

A.   Yes.

Q.   And what -- can you recall what those other comments were?

A.   It was mostly from Sergeant Block, who was talking that racist stuff.

Q.   Okay.

A.   I can't recall verbatim.

Q.   Was -- was -- okay.  Was Sergeant Block himself involved in the assault, or was he -- he directing it or standing behind the officers?

A.   Mr. Shevlin, my face was on the floor being plummeted by five different officers. You're asking me if I saw what was going on with Mr. Block.  That's hard to tell you, Mr. Shevlin.  And that answer isn't going to change my -- I was on the floor, face down being assaulted by five football style correctional officers and you're asking me if I saw this and saw that, no.

I didn't see what he said, where Mr. Block made these racist comments in the unit.  He

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

made it.  I know he made it because he was the only one screaming and yelling as his minions assaulted us.

Q.   Okay.  How long would you say the -- the assault lasted from beginning to end?

A.   I don't even recall.  I don't even want to recall.

Q.   Okay.  Now you alleged in -- in the complaint that while you were being assaulted, six other inmates were also being assaulted at the same time.  Is that accurate?

A.   Yeah.

Q.   Okay.  And do you recall their identities?

A.   I requested in the discovery, but I never got their identities and they are witnesses.  So unless the Defendants decide to give me these witnesses information, I can't give you their information.

The only information I could give you was a sworn affidavits.  I already applied to the complaint, which was multiple inmates' recollection of what occurred.  So it's there.

Q.   Okay.  Do you recall while the

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

assault was taking place whether Superintendent Burnett or D.S.S. Urbanski were present?

A.   I -- I -- I can't answer that.  I was too busy being assaulted.  I don't know if they were there or not.  They could have been outside the room with the O.S.I. people, because there was a lot of captains, sergeants, lieutenants.

I don't know who was who because my face was being plummeted.  My body was being struck multiple times.  I had my face squashed against the -- the wall saying, if I turn around, I'm going to be assaulted.  And you're asking me who did I see.

Q.   Okay.  Now in paragraph sixteen, you -- you alleged that after a few minutes, you screamed out quote, I'm disabled, I'm disabled, closed quote.  And shortly after, the beating stopped.  And I was lifted up from the floor and slammed into the wall and ordered to keep my hands up while another officer checked my identification and program card, which states I'm medical idle and disabled.  You see that?

A.   Yes.

Q.   So again, I'm just trying to get a set of a fix with the time.  You -- you said that

800-523-7887                                    ARII@courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

after about five minutes, a racist comment was made to you.  And then you say, further in that paragraph, after a few minutes, you just screamed, I'm disabled, I'm disabled.

Was that after the racist comment had been made?

A.   Yeah.

Q.   Okay.  So any sense, how many minutes after the racist comment?

A.   I don't recall.

Q.   Okay.  Did the members of the CERT team have batons?

A.   I believe so.

Q.   And -- and were they using those on you?

A.   I mean like, I really don't know, honestly, I can't even remember what was used against me.  I was being assaulted so badly, I could have been being hit with a pipe and I couldn't even tell you because it was so forceful and traumatic that I don't know if I was getting hit with a pipe or a bat or just a fist.

Q.   Okay.  Do you recall who the officer was who -- who checked your -- your -- your

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez
I.D. card?

A.    No, I don't know.

Q.    Okay.

A.    You got to understand, these officers aren't from my facility, none of these officers that came to assault us are our officers. What I say by our officers is, like I've been in this jail a year, and I'm familiar with a couple of these officers from around the system.

These officers that they got aren't the officers from my facility, they're from Sing Sing, they're from Green Haven. So they don't have no personal recollection with us. So when they assault us, we don't know who they are because they're not from our jail, you get what I'm saying?

Q.    Okay.

A.    So a lot of the stuff that -- that you're asking me about, who's this guy -- this guy -- this guy -- this guy, you got to ask the Defendants. I actually don't know why they did what they did.

Q.    Okay.

A.    Because if I did something that was wrong, I should have gotten a disciplinary ticket

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

and I never did, so that means they were in the wrong.

Q.   Okay.  So --

A.   Maybe they would have to cover that up.

Q.   So moving on paragraph seventeen, you allege that the officer who checked your I.D. then told you to, quote, just shut the fuck up and stay with your hands up and don't look back, closed quote.  Because other I.I.s were being beaten up at that time, correct?

A.   Exactly.

Q.   Okay.  Do -- do you recall which officer told you that?

A.   I just told you I didn't recall the officer that said that.

Q.   Okay.  Were you saying anything that elicited the response to shut up, or were you sitting there or standing there quietly?

A.   I didn't say nothing except I was disabled.

Q.   Okay.  Now, when you say that other I.I.s were being assaulted at that time, were you able to see those assaults taking place?

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

A.   Yes -- yes.

Q.   And what -- what did you see?

A.   I saw them getting assaulted as well.

Q.   Okay.  And had the officers told you when they said get up against the wall, right, is that accurate, they told you to stand up against the wall?

A.   I don't recall them telling me anything.  I do recall them slamming me against the wall.  I mean, didn't I put it down there exactly what they did?

Q.   Okay.  Was that face first?

A.   I -- you're going to have to refer to the claim for the exact details.

Q.   Well, do -- do you have any recollection whether it's face first?

A.   I don't remember.

Q.   Okay.  To the best of your recollection, other than the CERT team members, are you aware of any other DOCCS staff that were present during the alleged assault?

A.   There's a lot of DOCCS staff present.

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 92

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

Q.   Okay.  Do you remember any of them?

A.   Not off the back of my head.  Mr. Shevlin, real quick, I want to ask you one quick question.  Would I be able to depose any of these Defendants?

Q.   Let's -- we can talk about that after, okay?

A.   Okay.

Q.   Let's talk about that off the - off the record.

A.   Okay.  Because we're only up to number sixteen out of two hundred and twenty-three something.

Q.   Okay.  Well, we'll be moving Mr. Rodriguez, I'm not going to keep you here all day, okay?

A.   Okay.  I'm getting frustrated, I'm going to be honest with you.

Q.   Okay.  Paragraph seventeen of the complaint, you further alleged that at the time you were quote, severely bleeding, close quote, from your mouth, nose, and head.  There's multiple lacerations throughout your body, and you were handcuffed, but

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

the officer who read your I.D. card directed that your handcuffs were being removed, and in fact they were removed, correct?

A. Correct.

Q. I'm sorry?

A. Correct.

Q. Correct, okay. Again, do you recall who removed the handcuffs?

A. If I didn't depict -- if I didn't put their name there, no.

Q. Okay. So -- and you don't recall who -- who gave the direction that you were going to have -- that your handcuffs would be removed.

A. Mr. Shevlin, I told you I don't know these officers. These officers I don't know them, I don't know their name. I don't know who they are. I know who they are based on the information they left in the area where I was assaulted, you asking me who said what -- what's this guy's name? I'm -- you're going to get the same answer. I do not know these officers. I do not know his name. I do not know who spoke into my ears shut the fuck up, you spic. I don't know who these people are and you're not going to get a different answer.

800-523-7887                                    ARII@courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   Okay.  Paragraph eighteen of the complaint, you assert that the CERT team only attacked black or Hispanic I.I.s.  And that these other I.I.s were taken to medical on the SHU, but you were left behind, correct?

A.   Correct.

Q.   Okay.  Now, do you have any understanding whether in any other housing dorms throughout the facility, white inmates were attacked as well?

A.   My -- my allegations isn't concerning other dorms, it's regarding my dorm, my situation.  In my situation it was only black and Hispanics who was assaulted, not one white person.  Now, whatever happened in any other dorm, you're going to have to ask your Defendants.

Q.   Okay.  Is it your recollection from that day, were there in fact white I.I.s present in the housing dorm at that time?

A.   Of course, there was.

Q.   How many would you say they were there?

A.   Well, I gave you some of their sworn affidavits inside the claim, so I can't really

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

tell you who was white and who's black.

Q.   Okay.  Do you have any recollection of -- of numbers, how many -- how many white I.I.s were there?

A.   I have an idea, but I'm not going to give you a false number.  I know how many was there and I know who put their paperwork in and who gave me sworn affidavits, but you got all that stuff.

Q.   Okay.  Do you know how many I.I.s are able to be housed in your housing unit?

A.   About thirty.

Q.   About thirty.  And do you have any recollection as to the date in question, December 30th of '21, how many I.I.'s were in fact in the unit?

A.   It was about -- about twenty-nine, thirty.

Q.   Okay.  Do -- do you have any -- again, you may not, but sitting here today, do you have any recollection in terms of the -- the racial breakdown in terms of how many I.I.s were white, Hispanic, black?

A.   Nope, I would say one third, everybody's split even maybe.

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                        www.courtsteno.com

Page 96

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.    Okay.  I'm turning to paragraph nineteen.

A.    Nineteen, the CERT -- the CERT team was led to -- okay.

Q.    Okay.  So you're referencing now Sergeant Block.

A.    Yes -- yes.

Q.    And you say he's well known for his excessive force and abusive behavior towards inmates, and he had been under investigation a number of times, even -- even said for murdering an inmate in the past.  Do you see that?

A.    Yes, sir.

Q.    Okay.  So now how do you know that the sergeant is well known for excessive force?

A.    Because when you're an inmate of the State of New York, you tend to move around.  You remember, I've been here years, you learn who's who in DOCCS  And names go -- get tossed around so you can know if you enter a certain facility, they want to make sure you know exactly who's there that you shouldn't be dealing with or even talking to and you better be careful with.

So you -- you got to ask the

800-523-7887                                  ARII@courtsteno.com

Associated Reporters Int'l., Inc.                                www.courtsteno.com

Page 97

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Defendants how everybody knows that this man's a murderer.

Q.   Okay.  Well, other than -- than the incident that we're talking about today, during your career of incarceration with DOCCS, either the first or current incarceration.  Did you ever see Sergeant Block assault at any inmates?

A.   Not personally.

Q.   Okay.  They're saying he murdered someone; do you know who he murdered?

A.   He murdered an inmate.  I'm not going to get into that because that has nothing to do with me, let -- let the -- the detectives do their job --

Q.   Okay.

A.    -- but yes.

Q.   Was he found -- was he found --

A.   They know -- they know.

Q.    -- was he found liable of having murdered someone by O.S.I.?

A.   I mean, you -- you refuse to divulge his records to me so I could give you this information.

Q.   Okay.  Do you know the identity

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

of the -- of the incarcerated individual or I.I. that was killed?

A.   I would have gotten this information upon discovery, but I haven't gotten anything regarding Mr. Block's disciplinary history. And Mr. Neil Shevlin, like, well, these guys got twenty years in and I can't do a discovery request, that you don't give me anything on their personnel file, disciplinary records, talking about privilege.

I can't give you the information you're asking me if you're not giving me the information I requested.

Q.   Okay.  Turning to -- turn to paragraph twenty of the complaint.  You alleged Sergeant Block said to you quote, that was to show you motherfuckers that we run this shit -- I'm sorry?

A.   That they run this shit, right?

Q.   Right.  Don't make us have to come in again or one of you will be dragged out of here in a body bag, closed quote.  Is that accurate?

A.   That's a hundred percent accurate.

Q.   Okay.  And now who -- who did the sergeant say this to?

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

A.   In general, to us.

Q.   Okay.  Now, at that time were you -- were you up against the wall?

A.   I don't remember where I was when he made this comment three years ago, four years ago, in the middle of the dorm.  After I just got jumped by five officers and I'm bleeding and I'm all messed up, you're asking me where he was during this conversation?

Q.   Yes.

A.   I don't remember.

Q.   Okay.  Did you see other inmates at that time that may have been his target audience?

A.   We was there, the -- the house unit was there, that's what I'm saying.  When you ask me witnesses, the entire house was a witness.  So like when you send me documents to provide you with the names of the witnesses and you don't give me the name of the individuals that was present, how can they give you the names of the witness if you won't tell me who was there.

Q.   Okay.  Did anybody respond to Sergeant Block's statement?

A.   I don't recall.

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   Okay.  So moving on to O.S.I. so you alleged again in paragraph twenty, that after Sergeant Block's statement O.S.I. personnel who had been outside the door while the assaults -- assaults had taken place came in and the officer was recording everything after the assault happened, and they all knew what was going on and failed to protect you, correct?

A.   I want that video, Mr. Shevlin.

Q.   Okay.  So let me ask you some questions about that.

A.   Yes.

Q.   So now when you said the O.S.I. personnel were outside the dorm.  So again, this -- this goes back to the question I asked you about a door.  Was -- were they standing outside of a door, I -- I don't under -- I don't know the layout of the housing unit, so if you could explain to me.

A.   Hold on, I got you.  Give me one second.  Okay.  Mr. Shevlin, can you see this?

Q.   I -- so you -- you've drawn a picture, it looks like a square box, and then two smaller boxes on the upper right.

A.   That's the door into the unit,

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 101

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

right, that's the glass that you can see in and out. That's the C.O.'s bubble, and then we have our unit -- our beds are in the middle, on the side. So this would be the dorm.

Q.   So the door -- based on the picture you just drew --

A.   Yeah.

Q.    -- it seems like the door to the -- the housing unit is right next to the officer's bubble?

A.   Yes.

Q.   Okay. And was the door -- again, if you remember, was the door to the housing unit open or closed while you were being assaulted?

A.   It was open because they kind of rushed in, how are you going to have fifty guys coming through a door and the door's closed?

Q.   Okay. Well, what I mean is after the CERT team came in, did the door close or did it remain open because you said the O.S.I. people were outside, so I need to know from you --.

A.   Yup, I remember. I was being plummeted, I'm -- I'm being beat up and you're asking me what did they do, while I was being assaulted,

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

what did they do?

Q.   Okay.  So now do you recall who - - who -- who came in from O.S.I.?

A.   All the -- the -- the Defendants that I named was the ones that came in --

Q.   Okay.  And --.

A.    -- I assume to be that's -- those people.

Q.   Okay.  Now, you say that an officer was recording everything, so tell me about that.  Do you know who that officer was?

A.   It was the O.S.I. personnel, they had a camera, they recorded everything that occurred.

Q.   Okay.  And that was after the assault?

A.   That was during the whole incident from the beginning to the end, it's not like they only caught the end, they recorded the whole incident.

Q.   Okay.  But the way it's drafted, you say that the O.S.I. personnel came in from outside after you were already out of -- out of your cubicle and up against the wall.  So I'm trying to understand from you when they entered -- actually

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez entered the housing unit.

A.    But you just read it.

Q.    What -- what I read makes it -- make it seem that they came in after the alleged assault, but you're saying they were there for everything.

A.    They saw everything, but them coming in -- them coming in, they can't come in, they O.S.I.  So if CERT is assaulting us, O.S.I. cannot go in the room, they have to stay at the door until we're being -- until we're done being assaulted then they can come in, it's procedure.

Q.    Okay.  And --.

A.    You don't send a fire department into a blaze, but there's a murder going on, so that's what's going on here.  You get what I'm saying, they're not going to come in until after CERT was done beating us up.  Where were they?  They were there at the door recording everything, seeing everything, hearing everything.

They knew what was going on, they saw us house by house get assaulted and they did nothing.  Any more questions?

Q.    Now, do you -- I know you -- you

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez
said you don't know the identity of the O.S.I.
investigator who was doing the filming.  Do you
recall any -- any physical characteristics of that
individual, like, was it a man or a woman?

A.   It was mostly females, I believe,
it was a couple of females, I believe it was two or
three females.

Q.   Okay.  So two or three O.S.I.
investigators who were female came in to the housing
unit?

A.   Yes.

Q.   Okay.  And one of them -- one of
them was holding the camera?

A.   No, I don't know if that was
O.S.I. holding the camera or an officer, I don't know
who held that camera.

Q.   Okay.  Well, you saw a camera.

A.   That's -- that's O.S.I., that's
what they do, that's their job, they're supposed to
investigate.  So it could have been an officer
holding the camera, I don't know who that person was
holding the camera.

If he was O.S.I. or an officer, like I
told you, we -- I don't know these people, they never

Associated Reporters Int'l., Inc.                      www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

-- they've never been to my jail, they're not officials from my jail.  This is why they use officials from other prisons because when we're in a prison for two, three years, we kind of get a rapport with individuals.

So if I'm in a prison for three years and if I'm with a certain officer that knows who I am and knows I'm a respectable guy, I'm doing my education, I'm doing everything I'm supposed to do.  I don't think that officer would be very -- very willing to assault me like those were because they don't know me.

Those people don't know who I am and what I'm capable of, taking their jobs, taking their houses, and their mortgages because they want to violate the law under the -- the facade of a badge, come on, man, like we're not going to do this --

Q.   Okay.

A.    -- we're not going to do this.  We're not going to have these people assaulting American citizens with a -- with a badge.  They using a badge to do this on your watch because these are your Defendants.  So yeah, I'm getting into politics because I'm going to make all of them answer for

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

this, this isn't going to go unheard of --

Q.   Right.  Now, in paragraph twenty-one, so you allege that in addition to the CERT team members who came in, other staff members came in including someone named Sergeant Morres or Morres, other sergeants, and lieutenants.

So let me ask you, who is Sergeant Morres, is that how you pronounce it?

A.   I really don't know like how to --.

Q.   Okay.  Do you know who -- who is Sergeant Morres?

A.   You're asking me who this sergeant is?

Q.   Yes.

A.   Is it not in the complaint?

Q.   You identified the sergeant -- you identified the sergeant in particular so I want to know how do you know who this sergeant is?

A.   Can you please read verbatim, what does the claim say regarding that sergeant so I won't misspeak?

Q.   Sure.

A.   Because I -- I can tell you

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 107

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez
there's a lot of Defendants and you're asking me
about people I don't really know.

Q.   Okay.  So it says in paragraph
twenty-one, the CERT team was led by Sergeant Block
and on or about five O.S.I. paren -- parentheses
Office of Special Investigation, close paren, along
with Sergeant Morres and other sergeants.

Lieutenant from the facility came in
and all were -- was present outside the dorm while
the CERT team physically beaten and assaulted me.

A.   Okay.  Now -- what question?

Q.   So you -- you specify Sergeant
Morres, so did you know who he was at that time?

A.   I really don't know who he is,
like as a person.  Like you're asking me as a person
who he is?

Q.   Well, had you -- had you dealt
with that sergeant before the alleged assault?

A.   I can't even remember.  I don't
even know who this person is right now.  I don't know
if that's one of the if I -- honestly, I don't know
if that's the tall, light skin, dark sergeant that
worked up the hill, I don't recall like there's so
many people involved in this case.

800-523-7887                         ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

It's hard to determine which sergeant is this and which sergeant is that, Mr. Shevlin, they all wear the whites.  They wear the same color uniform; the only difference is their skin complexion.  So if you have two people wearing the same shirt and they both black, how can I distinguish which one did what?

Q.   Okay.  So then would it be fair to say that with respect to the other white shirts who came in, sergeants and lieutenants, you don't know who they are?

A.   As far as -- as I'm saying, when you say you don't know who they are, what are you asking me if I know them personally?

Q.   Can you -- can you identify them by name?

A.   I could possibly do that, yes.

Q.   Okay.  So who -- who -- who are they, sitting here today, I mean, can you identify -- .

A.   Like I said, Morres -- I believe that's -- he looks black, he's African-American, I believe that's him, but you're asking me questions that I can't definitively answer.  And you're asking

Associated Reporters Int'l., Inc.                           www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

me to answer that, so you're asking me to lie.

Q.   Okay.  I don't want you to lie, Mr. Rodriguez, I just want you to tell the truth.  So if you don't know -- if you don't know you can just say, I don't know.

A.   I gave you the answer, I told you I'm not sure who these people are more than once.  I don't know who they are, they're not from my facility.  If they are from my facility, I do know who they are, I do not really recall who this Morres is, I don't know the O.S.I. people.

I don't know Sergeant Block, I don't know these sergeants that came in there or the officers that came to assault me because if they knew who I was, that would have never happened.

Q.   Sure.  Okay.  Moving on to paragraph twenty-three, now we're talking about Officer Bhuiyan.  Now, I know you've testified about him earlier today -- I'm sorry?

A.   I know him, yes.

Q.   Right.  So now -- so now when the CERT team members came into the housing unit, was he situated in -- in the bubble?

A.   He was around there.

800-523-7887                                    ARII@courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

Q.   Okay.  Would you recall whether he was in the bubble or outside the bubble?

A.   How can I tell you where this officer was if I'm laying in my bed and CERT comes in screaming and yelling, how am I going to know where this officer was when I'm not caring about Officer Bhuiyan, I'm caring about this attack squad that just came in.

Q.   Okay.

A.   Now, you're asking me where was Sergeant Bhuiyan during all this?  I told you; he was near the bubble.  Where?  I'm not sure.

Q.   Okay.  Now, you're saying that he -- he told you that he had never seen anything like this before, correct?

A.   Yes, verbatim.

Q.   Okay -- okay.  And do you know what -- what prompted that statement from -- from the officer?

A.   Yes.

Q.   What was that?

A.   Him seeing everybody's face smashed in, cut up, bleeding, getting dragged out of the -- the -- the housing unit.  I'm going to be

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

honest with you, that officer is not a bad officer, he's a decent officer, you know what I mean?

It bothers me that I have to put their names and stuff like this because I'm not a -- I'm not an A-S-S, I'm not here to take jobs because I'm not here for that.  But if you violate me, you're going to find out who I am.

But it's sad because he witnessed everything and he's not a bad guy, and he would have stopped it, but he couldn't because he would have got assaulted by CERT.

Q.   Okay.  So now, do you -- when -- when did he make that statement to you, was that after the CERT team members had left?

A.   Yes.

Q.   Was it the same day?

A.   Yes.

Q.   Was anyone else present when he made that statement?

A.   Yeah, all of us was there -- all right.  After CERT -- let me make this clear.  After CERT left, Officer B is our officer for the unit, that's my officer.  So when these people left and you got half the unit is gone because they got beat up

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

and the other half is like in the unit, fixing everything and cleaning everything.

We're talking amongst each other, we're not left alone, he's there with us and things are being said back and forth. And of course, he never seen nothing like that in his life, no. And that's why he's in this claim because out of all those people he's the only person that's going to honestly say what happened.

That's why I can't -- I need him, I'm going to trial he's going to be one of my witnesses. So verbatim, put it on the record, he's one of your Defendants, but he's a witness as well. I need him on that stand because he's going to say what happened and he's not going to lie, he's not going to cover it up because he has -- he has nothing to do with these people.

These people just came and destroyed your house, like you don't call a policeman to your house to handle something and he go see your house and destroy your house. You didn't call him for that and that's what happened.

Q.    Right.

A.    Those people came to their house

Associated Reporters Int'l., Inc.                     www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez and destroyed it and left.  And not only did you leave half the inmate population bleeding, you left half the facility in shambles.  At the end of the day, that's still your jail, not mine because I come and go, that's your house so you deal with that -- that's your friends, those are your co-workers, those are the people you're defending.

Q.   Okay.  Moving to paragraph twenty-four.  So you say that all the prisoners, including yourself were ordered to strip down to your boxers and sent to the seven one area recreation room and were ordered to pass a metal detector and then ordered to stand in front of the windows, which were purposely opened --

A.   Freezing cold.

Q.    -- with freezing -- I'm sorry, it's paragraph twenty-four.

A.   Yeah, it was freezing cold, yeah -- yeah.

Q.   Okay.  So when you say all the prisoners, who are you referring to?

A.   It's the -- when I say all the prisoners, I am referring to the housing unit, the housing unit is nine-one, like I said, it should have

Associated Reporters Int'l., Inc.                                www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

been thirty of us, but by the time they was done beating us up, there was only maybe half of the house left.  So that's what I'm talking about, us, who was left standing.

Q.   Now, when you --.

A.   When they did that -- when they sent us to the day room that were the area we're talking about, the fifteen of us they were still standing, O.S.I. was there, they recorded every one of us individually.

And when I came to the -- I remember verbatim because I remember I made sure to put this on the record when that person was there recording me and they looked me up and down and they saw me all bloody and bleeding and bruised up limping because I was manhandled.

I made sure that video recorded every inch of me and saw everything that happened.  So that video is very important and I'm not hearing nothing regarding discovery of any video being found or nothing.

Q.   Okay.  Who -- who escorted you and the other I.I.s to the seven one area recreation room, was it the CERT team members or other officers?

800-523-7887                                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

A.    It was the CERT.  It was CERT.

Q.    Was it the same Defendants who allegedly assaulted you or different CERT team members?

A.    Mr. Shevlin, there were so many of them, Mr. Shevlin, you're asking me to distinguish like, four or five people out of a room of fifty wearing helmets and gear.

Q.    Okay.  Now, you say that at the end of that paragraph all while the CERT team within the dorm unit destroyed the housing unit and all the prisoner's personal property, myself included.  Do you see that?

A.    Yes.

Q.    Okay.  So now with respect to the -- the issue of -- of property that was destroyed, did that happen during the physical assault on you, or did that happen after once you had been removed from the housing unit?

A.    I mean, Shevlin, we got beat up first and then they destroyed our area.

Q.    Okay.  Were you present when they destroyed it or had you been taken to the recreation room?

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

A.    They took us to the recreation room.

Q.    Okay.  And while you were there for hours your property was destroyed, is that accurate?

A.    Yes.  You know, they destroyed my book, I was writing a book, I was almost done and they destroyed my book.  I don't know if you ever tried writing a book, that's not easy.  So when you devote two years into writing a novel and these people just come and destroy it, people was --.

Q.    I want to make sure.  How -- how far was this seven one recreation room from your housing unit, like how long did it take to walk there?

A.    Like a minute, it's right outside the housing unit.

Q.    Okay.  Is there a window -- well, strike that.  Is it possible from the seven-one recreation room to see into the nine-one housing unit?

A.    No, that's a different area, it's like a different room, the seven-one is with the recreational room.

800-523-7887                    ARII@courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   Okay.  Now, you -- you mentioned in the complaint that a number of items were destroyed, including religious books, a shrine with Jesus and items on it and -- let me just take you to that, I'm looking at paragraph sixty-eight, so I'm going to scroll on down.

A.   That's awesome, the farther you could go, the better we are.  Sixty-eight, you sure it wasn't one sixty-eight?

Q.   Let -- let me take a look, maybe I'm wrong.

A.   No that's it.

Q.   So you say in the middle of sixty-eight, also damage religious books and shrine, infringed on Claimant's right to practice religion, being unable to recreate the shrine due to the fear of retaliation and further damages done to religious items.

So if you could just spell out for me what -- what other religious items that were destroyed?

A.   What was the religious items that were destroyed?

Q.   But you mentioned the shrine and

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

some books.

A.   And you're asking me to tell you what was destroyed when you just read what was destroyed?

Q.   Well, what religious books were -- were destroyed, what -- what were they?

A.   Like I had a Santeria book, I had a Protestant book, I had -- what was the name, it's -- I think it was Catholicism, man I forgot.  I had a -- I have a lot of books; I have a lot of stuff.

Q.   Okay.

A.   I mean, they destroyed everything man.  Mr. Shevlin, they destroyed everything, I mean, I don't really have much left and that happened three four years ago, I just don't have --.

Q.   And when you -- when you mention a shrine, can you just describe to me like what -- what did that look like?

A.   Okay.  It'll be like, it would be a shrine, you'll have like a sheet, it'll be like a red -- it'll be a red -- I have a red silk sheet.  I have my Bible, I have my water, my holy water, my -- my -- my religious garments.

I have everything, everything, I have

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 119

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

my -- I have my Santeria, I have my angels, my -- my candles, my paintings, I mean, come on, you know what a shrine is.

Q.   When you say religious garments, what -- what are those?

A.   Like -- like, you know, it's like really like a -- it's a Santeria thing, it's like -- it's like -- we -- we have certain things that we -- we -- it's not like we pray to them, but it's part of the religion.

It's like -- it's -- it's -- I can't get into that, like, that's too -- that's religious wise I don't want to talk about that.

Q.   Well, in what way once those items were -- were destroyed, were you still able to engage in -- in religious worship in any way?

A.   Mr. Shevlin, I was in fear of retaliation, I didn't want nothing to do with any of that stuff after what happened to me.  So they stopped my ability to practice my religious right, come on, we're here together, aren't we buddy?

Q.   And -- and at the time at Fishkill, were you attending congregate services of any kind?

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

A.   I'd said everything and did anything I could, I'm a very religious person, I'm very spiritual, yes.

Q.   Okay.  And in DOCCS do you have to specify what -- what your religion is in order to attend congregate services?

A.   Yeah, you don't just go, you got to write down your religious --.

Q.   And so what -- what religion did you -- did you put down at that time?

A.   What religion?  I am only one religion; I am a Protestant Santero.

Q.   Okay.  And so did they have Protestant Santero religious services at Fishkill?

A.   I mean, yeah, but you got to understand that, Santeria isn't like one of the major ones for the jail to recognize like Islam or Christian, right, it's one of the -- they consider one of the lesser religions, so to say.

But as a Protestant, Santero basically -- I'm a Christian, except I have other beliefs that it's not just -- there's more to the -- there's more to the show than what we've seen, you know what I'm saying?

800-523-7887                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Like there's different planes of existence, there's different levels like, you know, where the bottom, you know, there's a heavenly body, earthly body.  It gets really deep into that, that's why I really didn't want to get into that.  We could -- I could sit here and talk to you for hours if you want an education about Santeria.

Q.   Well, what I need to understand for purposes of the lawsuit is what was destroyed and how did that impact on your ability to observe your religion, that's -- that's what I need to know.

A.   That's what I'm saying, I put I -- I -- I made it very clear in my complaint exactly what happened.  I had a shrine -- listen, right now if this officer or this official from DOCCS was to go and check my room, I have a shrine in my room.

What is it?  It's a picture of Babalorisha (phonetic spelling) who's a priest, I have my beads, I have -- I had a bunch of stuff that really -- you shouldn't be knowing about because it's not really your area and I don't really want to talk to you about it because it's almost in the realm of voodoo, you know, so I mean, you don't want to talk about that stuff.

800-523-7887                                          ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 122

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

But yes, I had a shrine, I had pictures, I had my books, they destroyed everything, okay. They destroyed everything, they destroyed my -- my -- my -- they hampered my faith. You want to get more into it?

Q. Well, I -- I guess I -- I -- I -- I'm not a member of that religion, so you will have to educate me. My question is, once -- well, let me just ask the question. Once -- once these items were destroyed, were you actually able to engage in any kind of religious worship --?

A. I stopped -- I stopped.

Q. You stopped?

A. They stripped me of my religious belief.

Q. And is that because you -- you were scared to engage in your religious belief, or because you didn't have those items?

A. I was scared, I didn't have the items, I was in fear of retaliation. Listen, that was serious, you don't go and destroy a man's religious altar, especially someone that's very religious. Listen, I'm a -- I'm a -- like I said, I'm a Protestant Santero, I believe highly in what I

800-523-7887                              ARII@courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

believe in.

If you go -- if you come and tamper with that, you're not just tampering with my faith, you're tampering with my beliefs.  The only thing you tamper with that, everything I believe has been destroyed.  Why?  Because what I was praying for didn't happen, you know what happened?  The opposite.

So was I released?  No, I was assaulted.  Was I given an education?  No, you know what they did?  An officer sent someone to cut me, that's what happens.  You know about this, I sent you a detailed letter, right?

These are one of your Defendants that's why I'm in this jail now.  Mr. Shevlin, this is going to be something big, I hope -- I hope you really have a stomach to defend these people, man.

Q.   Okay.  So now -- again, turning back to the time you spent in the recreation room, and let me scroll back.

A.   Okay.

Q.   Okay.  So I'm looking at twenty-five, so you allege there that you were forced to sit for hours in the freezing temperatures with -- while you had pain and your request for medical attention

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez was ignored.

And one of the officers told you to quote, shut the fuck up before you're -- you will really need medical attention, closed quote, and that you complied, correct?

A.   Yes, sir.

Q.   Okay.  Now, again do you know who that officer was who made that statement?

A.   I can't recall right now.

Q.   Okay.  It sounds like from based on the allegations there that you had requested medical attention.  Is that correct?

A.   Yeah.

Q.   Do you recall who you requested attention from?

A.   The officials in the area.

Q.   Do --?

A.   I asked him --.

Q.   I didn't hear you, Mr. Rodriguez.  What?

A.   Mr. Bhuiyan, the officer.  I went to him personally and he said, Mr. Rodriguez, you see what's going on right now, we're going to have to do this much later, not right now please -- please, not

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

right now.  You see everything going on right now, verbatim.

Q.   Right.  Well, I'm just asking before you -- before you get to that interaction it sounds like when you were in the recreation area you'd also requested medical attention and didn't get it, correct?

A.   Yeah, that was --

Q.   Okay.

A. -- that was when we was like this naked in front of the windows at zero degrees weather.  I told him my ankle was destroyed and all that stuff.  And he -- yes, you're absolutely right, yeah -- yeah.

Q.   Okay.  And do you recall who you asked for medical attention at that time?

A.   It was -- it was the O.S.I. people.

Q.   Okay.  Again, if you know, do you know -- do you know who you directed your request to?

A.   Yeah, I believe it was the black O.S.I. female, she was -- her, it was a Spanish lady -- it was a black lady, a Spanish lady, and there was a guy.  When I asked for the medical care, it was in

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 126

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

front of them.  So from there, you take it from there.

Q.   And did -- did they respond in any way or -- or they just stood there?

A.   They not --- they didn't, no, they wasn't giving me nothing.  They said, just wait.

Q.   Okay.

A.   They just disregarded me, Mr. Shevlin, they just said, go over there, get the fuck out of here, go over there.  That's all they do --

Q.   Okay.

A.    -- get out of here, go over there.

Q.   Now again, you said that you were in that rec room in very cold temperatures for several hours in your boxer shorts, correct?

A.   Only my boxer shorts.

Q.   Okay.  Was -- was any kind of frisk done or search done by the officers there?

A.   Yeah, we had to go through a metal detector and -- I mean, it's really -- I mean, like you're -- what are you going to search, I'm in my boxers.

Q.   Well, did they -- did they do any

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 127

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

kind of a cavity search or no?

A.   Hell no, they didn't do no cavity search.  I got thirteen years; isn't no one went up this cavity.

Q.   Okay --

A.   Oh, man --?

Q.   -- okay.  So again, in paragraph twenty-seven you specify a number of the items that were -- were destroyed when you got back to your cell, correct?

A.   Yeah, basically almost everything.

Q.   Okay.  So I just want to ask you a few questions, so with respect to the legal -- the legal work, so I want to explore with you what exactly was destroyed.  Now, in paragraph sixty-seven you do specify a number of the items that were destroyed, I'm just going to go to that paragraph and ask you to just clarify for me.

A.   Sure.

Q.   Okay.  So based on this paragraph, it seems that a number of items directed or dealing with your appeal from your criminal conviction were destroyed, including an affidavit,

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez
pictures, court minutes, trial exhibits, case law
notes, and legal references.  Is that -- is that
everything?

A.   I mean, there's a lot more, but I
can't remember verbatim everything.

Q.   Okay.  Now --.

A.   I'll just say everything was
destroyed.

Q.   Okay.  Now at that time, were you
representing yourself as part of that appeal, or did
you have a lawyer?

A.   No, I have a lawyer because
that's the direct appeal so --

Q.   Okay.  So --.

A.    -- yeah, I have a lawyer.

Q.   Okay.  And did you address to
that attorney -- and again, I don't want to -- I
don't want you to tell me anything about attorney-
client communications, but after all these items were
allegedly destroyed, did you ask for replacements
from the attorney, did you get replacements?

A.   Did I ask the attorney to replace
the items?

Q.   Well, this -- this was -- this

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

was attorney representing you on your appeal, correct?

A.    Yeah, she's just representing me on my criminal appeal.

Q.    Okay.  So did she have any of these items in her possession?

A.    I -- I don't know, I can't answer that.

Q.    Okay.

A.    I don't know what she had and didn't have.

Q.    Okay.  Well, after -- after these items were -- were destroyed and -- and when you say destroyed, you mean that they were ripped up?

A.    Ripped up, unlegible (sic), destroyed, coffee, everything, cigarettes, spit, you know, they chew, you know, you don't chew, right, you know, these guys was chewing and they spit that chew all over our beds, all over our legal work.  So yeah, my stuff was messed up, yeah.

Q.    Do -- do you remember the name of the attorney who represented you?

A.    The attorney that represents -- yeah, yeah, Amy -- Amy Donner, isn't it Amy Donner?

Associated Reporters Int'l., Inc.                        www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Yeah, Amy Donner.

Q.   Okay.  And if you know, how did the destruction of these legal materials impact on your appeal?  Meaning, was the attorney able to go forward with the appeal?

A.   I mean, the -- the attorney was able to go forward with the appeal, but not with the information I had available prior to it being destroyed.  So the stuff I had that would have helped me prove my innocence was part of the items destroyed.

Q.   Okay.  And at -- at this point in time, has the appeal been decided or is it still pending?

A.   I blew -- I -- I was arrested January 10th of 2015, I blew trial in 2016 of October and in February of this year, just this February, they'd affirmed my conviction but -- but they sent it up to Judge Rowan, you know, Mr. Rowan Wilson?  I know him very well, the Court of Appeals Judge.

Q.   Okay.

A.   Well, he's got my case now, so he got involved.

Q.   So when you say he got -- did --

800-523-7887                                   ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

did your attorney appeal the appellate division determination, is that what you mean?

A.   Yes, and it went -- and right now Judge Rowan is taking care of it, he took the case himself and he's doing whatever he's got to do.

Q.   Okay.

A.   I hope it's the right thing, but you know, that doesn't happen.

Q.   Just I -- I don't know a lot of the judges in New York State, that's -- that's a judge who's currently a judge or he used to be a judge and now he represents you?

A.   Who, Mr. Wilson?

Q.   Yeah.

A.   No, Judge Rowan Wilson is the Supreme Court Judge, you got to know who he is, there's only like eleven of them.

Q.   This is New York State Supreme Court?

A.   Yeah, I mean, it's -- it's -- in general, the Court of Appeals, you know, they have a panel, you know, Judge Kavanagh and all of them, come on, politics, come on now.  Well, Judge Rowan is the black judge.

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 132

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   Okay.

A.   So right now, he's got my case, which is not a bad thing because he's a fair person. So hopefully he can see what nobody else wants to see.

Q.   Okay.  Now, scrolling back down. So I'm looking at paragraph twenty-eight, so there you allege that at some point you get back to your housing unit from recreation -- the recreation room, and you -- you speak to Officer Bhuiyan and you ask him for medical and he responds quote, You see everything that is going on, right?  You'll have to wait, closed quote.  Is that correct?

A.   That's -- yes.

Q.   Okay.

A.   Verbatim.

Q.   Okay.  When -- now obviously he made that statement, but do you have any sense of what he was talking about when he said, do you see anything that's going on?

A.   You're asking me if I'm -- if I'm trying to figure out what he's talking about?

Q.   Well, he said he can't send you for medical because you see what's going on, so my

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

question to you is, what --- what was going on?  Why couldn't he send you?

A.   Well, maybe because CERT was beating the crap out of us, that's the whole heart of the claim, Mr. Shevlin.

Q.   Okay.  Well, this was at about twelve o'clock, correct, so was CERT still on -- on your housing unit?

A.   CERT -- CERT was there from the day I -- I gave you to the day that they left, that whole time period.  What was it?  Maybe a week or more, they were there that whole time.  So even after they came to my unit and beat up half the unit and put us in hospitals, then they left.

The area was still messed up, do you not see what's going on, meaning, do you not see the catastrophe in front of you, Mr. Rodriguez, do you not see the other people who was taken out of here in stretchers?

Well, my thing was what about me, what about me?  I was the only one that was jump assaulted and I'm the only one still here.  I didn't get sent to medical, I didn't get sent to get medical attention, nothing.  They told me, go back to my

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez housing unit.

Q.    Was anybody else present when you had that conversation with the officer?

A.    The inmates that were in the unit was there, the ones that survived the attack, they were still there, they heard it.  Matter of fact, you got a sworn affidavit from one of the Burbanski (phonetic spelling)--

Q.    Okay.

A.     -- William Burbanski, he saw all of it.  I mean, I gave inside my complaint, you got sworn affidavits, sworn testimony, and statement.  Those people that I provided sworn affidavits for, which were witnesses of the incident were there and seen everything that occurred.

So like, you had these -- these people, right, do I have to resend you a listing of all these people that you already have?

Q.    All right.  Okay.  We'll move on to the next question.  So you allege in paragraphs twenty-eight and twenty-nine that about several hours later the lieutenant walked by your cubicle and you told him what happened, correct?

A.    Yes, sir.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   Okay.  Do you remember who that lieutenant was?

A.   I don't -- I don't recall.

Q.   Okay.

A.   Did -- did I put his name down or no?

Q.   No.

A.   I don't recall.

Q.   Turn to -- okay.  Turn to paragraph twenty-nine --

A.   Okay.

Q.    -- you allege that when you arrived at medical, the Medical Sergeant Jason Riggins --

A.   Yeah, Riggins.

Q.    -- asked what had happened and this escort told him to which Riggins respond, quote, Well, someone fucked up, take him to the I.C.U., closed quote, and you were then taken to the I.C.U. Do you see that?

A.   Yes, sir.

Q.   Okay.  So do you recall who -- who escorted you to medical?

A.   A black officer, I don't remember

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 136

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

him.

Q.   Do you recall whether anyone else was present when this officer, this black officer spoke with Sergeant Riggin -- Riggins?

A.   Wait, wait, wait, who said that -- no, you asked me who took me to medical, I said that it was a black officer.

Q.   Right.

A.   That officer had nothing to do with Riggins, Riggins is Riggins, Riggins -- when I went into the medical with this officer, Riggins, who's here, he's in this jail now, a matter of fact --

Q.   Okay.

A.   -- he's a lieutenant.  So he's here now in this jail, he's a lieutenant --

Q.   Okay.

A.   -- he was a sergeant when I was being escorted into medical.  Now, Mr. Riggins knows me for a little while, and this is why he said that comment --

Q.   Okay.

A.   -- because he kind of knows that, you know, some, you know, some things -- you

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                          www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

can't just do anything you want and there not be repercussions.  So unfortunately, with me, there was repercussions and Mr. Riggins knew the extent of my repercussions.

Q.  Okay.

A.  So like he's -- he says you messed up and he sent me to get medical care.

Q.  Now, at any point in time did -- did Sergeant Riggins complete any kind of -- again, if you know, any kind of use of force packet or take pictures of you as part of the use of force workup?

A.  Mr. Shevlin, everything was done the way it was supposed to.  They took pictures, they did a U.I. report, an injury report.  Where is everything though?

Q.  Okay.  Was it the sergeant, Sergeant Riggins, who did the report?

A.  I can't tell you who did the report, I don't know.

Q.  Okay.  So it was not -- it was completed but not in -- in your presence, is that what you're saying?

A.  No, it gets completed -- all right.  Mr. Shevlin, there's -- there's multiple

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 138

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

documents, you got documents that is filled out in front of me with medical, you got documents that the security team does.

Like some of the questions you asked me, you can't get an answer to because I got no business with that area of what he had to do, like, that's his stuff.  So if I'm injured, the officer, the sergeant, they got to do a U.I. report.

They got to do all that, they got to investigate, they got -- nothing was done, but they took pictures.  They had a video, they had the U.I. report, but right now, nothing -- everything is missing, that's kind of --.

Q.  Okay.  Do you recall who took the pictures?

A.  Officer -- yes, I believe it was Officer B.

Q.  Do you know how to spell that?

A.   His -- his name is Officer B., I don't know his full name.  He works in the medical unit, he's about six foot two, bald, black, he's one of the regular officers in the medical unit.  He usually takes pictures and if not other people take pictures and --

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   Okay.  When you say Officer B., are you referring to the -- the first letter or his last name?

A.   Yes.

Q.   Okay.

A.   He has a weird name Boujou, Bouya (phonetic spellings), I don't know.

Q.   Okay.

A.   But there was pictures taken, there was U.I. reports made, everything was done.  I don't know why I didn't get nothing but it is what it is.

Q.   Okay.  So now, starting with paragraph thirty-one you -- you relate how you were seen medical by a nurse Sangeetha, is that correct?

A.   Yeah.

Q.   Okay.

A.   Sangeetha, yeah, I saw her.

Q.   Okay.  And it's your allegation -- it's your allegation that nothing was done to help you, is that correct?

A.   Nothing was done to help me?  I mean, what could have been done?  There was nothing they could do, what could they do?  I got beat up; I

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez got assaulted.  They only had one thing to do, their only one job was to make sure that there was an accurate record of the incident, right, that's all I asked them.

Make sure all of this is in black and white, make sure you do your job.  But unfortunately, the medical records is missing, the U.I. report is missing, the pictures are missing, the video is missing.  Why haven't I gotten any of this stuff, Mr. Shevlin?

Q.    Right.  So let me ask you, so looking at thirty-seven, so --.

A.    You just completely ignored that whole question.

Q.    No, I -- I heard what you were saying, Mr. Rodriguez, I'm moving on.

A.    Okay.

Q.    In paragraph thirty-seven, so it says that you asked that pictures be taken, but you were denied.  Did you see that?

A.    Yeah.

Q.    Okay.  But you did testify that at some point pictures were -- were taken, correct?

A.    Yeah.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 141

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   Okay.  So did you ask for additional pictures to be taken, or this was before the pictures -- the first set of pictures were taken?

A.   Well, the first ask I got denied, and then --

Q.   Okay.

A.    -- whatever happened --.

Q.   Okay.  And then it says you were given bandages and aspirin, correct?

A.   Yeah.

Q.   I'm sorry, I didn't hear that.

A.   Yes.

Q.   Yes, okay.  Was anything else done for you?

A.   Nope.

Q.   Okay.  And was that Nurse Sangeetha who -- who gave you that, was that nurse -- let's see, there's a Nurse Sullivan.

A.   Yeah, I mean, you can say -- the Nurse Sullivan was my primary care provider and Nurse Mukkatt (phonetic spelling), she was just a regular nurse in the unit.  So whatever -- whatever happens, yeah, it happens.

Q.   Okay -- okay.  I'm turning to

800-523-7887                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 142

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez paragraph forty-five, so you see when I arrive back at my housing unit, again, my personal property was thrown around, legal documents disordered done by Officer Gibbons and I made a grievance about her and multiple inmates seeing what happened and what she did.  Do you see that?

A.    Yeah.

Q.    Okay.  So can you tell me what -- what legal documents were disordered?

A.    I can't recall.

Q.    Did it have to do with that appeal?

A.    Yeah, how to do my appeal, had to do with vital documents, exhibits, affirmations, sworn testimony, all that stuff was destroyed.  And --.

Q.    Now, when -- when you say, just to clarify, you used the word disordered, do you mean it was destroyed or do you mean that it was -- it was -- the papers were messed up?

A.    All of the above, Mr. Shevlin.

Q.    Okay.

A.    It was destroyed, it was disordered, it was manhandled.  Some of my papers was

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 143

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

on the other side of the unit, some of my documents was in the hallway.

Q.   Okay.  Let's go off the record for a second.

(Off the record; 12:39 p.m.)

(On the record; 12:44 p.m.)

THE REPORTER:  We're on the record.

MR. SHEVLIN:  Thank you.

BY MR. SHEVLIN:  (Cont'g.)

Q.   So Mr. Rodriguez, we're going to switch gears a little bit.  I want to talk to you about the topic of grievances.

A.   Oh, my God.  All right, Mr. Shevlin.

Q.   So let me pull up the --

A.   That's imaginary --

Q.    -- the complaint.

A.    -- that don't exist.

Q.   Let's see here.

A.   That -- what we shall not made.

Q.   All right.  So in paragraphs forty to fifty-one, I'm going to just scroll down if you want to look at it.  You don't have to, but if you want to read it, let me know.

800-523-7887                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

A.    No, no, no.  I -- I'm familiar with it.

Q.    Okay.  And then you want to see sixty-one?

A.    Yeah, you can shoot down.

Q.    Okay.

A.    I can't wait to have my own little computer.  If you thought I was a problem in prison, Mr. Shevlin, I can't wait for me, you are going back and forth in front of court.

Q.    All right.  Okay.

A.    Because I won't be working with the D.A.

Q.    Just let me know when you've got a chance to read that paragraph.

A.    All right, we're ready.  Let's go.

Q.    All right.  So in these -- in these paragraphs, you essentially allege, that you try to file grievances pertaining to the issues that are -- that are in your complaint, but that you were blocked from doing so by someone named Mr. Reams.

You also alleged that you spoke to Superintendent Burnett at some point and told him

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

about your grievance issues and he told you to write to him and that he will look into it, correct?

A.    Yeah.

Q.    So question one, how many grievances did you -- did you in fact try to -- try to file that you were blocked from doing so?

A.    The number is impossible to give you.  In other words, whatever I have to do to resolve a situation I attempt to grieve.  As part of the prison's litigation reform act, you can't move forward with anything unless you grieve first.

Q.    Okay.

A.    So I --

Q.    And --

A.    -- grieve everything.

Q.    -- how -- in what way did Ms. -- Ms. Reams stop you or prevent you from -- from filing grievances?

A.    She don't file them.

Q.    So you said she didn't -- she did not file them?

A.    Yes.  Grievance -- oh, man.  The grievance -- respectfully, Mr. Shevlin, like I testified earlier, the grievance is nothing but a

800-523-7887                                ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 146

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

formality that the federal government implemented against prisoners to make it harder for us to move forward on civil suits.

That's all that is because every, you know, the harder you make it, the better results you're going to get.  But does the grievance really exist?  I mean, do they really try to resolve situations?  I just told you I got a sworn deposition from the superintendent saying that the grievance is a sham.

I have it in the deposition sworn testimony, which is going to be part of all my cases because that's going to be part of the issue of, you know, when you try to motion to dismiss, or summary judgment, or whatever, you know, I'm going to, you know, that's part of -- that's part of the information.

Q.   Right.  So let me just break down a little bit what you said.  So how would you typically file a grievance?  I know there are a few different ways you could drop it off in a -- in like a mailbox, you could hand deliver it, correct?

A.   Yeah.

Q.   Okay.  So how did you try to file

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

your grievances?

A.    Every way possible.

Q.    Okay.  And what you're saying today is that Ms. Reams never accepted any of those grievances.  Is that -- is that fair?

A.    What I'm saying is, any and all grievance personnel is not going to help anybody.  Okay?  Their job is to make sure that if we come with an issue that it's resolved without it going anywhere further.  That's their job.

Their job isn't to help us.  What are you talking about?  They're not here to help me.  They're here to --

Q.    But you --.

A.     -- for the -- I don't have the information I need to do what I have to do to -- to get any type of remedy.  That's their job.

Q.    Do you have any understanding of the different steps that are required to be met before someone fully exhausts his -- his administrative remedies?

A.    You are asking me about the procedure?

Q.    Yes.

800-523-7887                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

A.   What do you want to know?  I practically wrote the book on that.  What do you want?

Q.   Well, how -- how many -- how many different steps are there as part of the grievance process?

A.   All right.  You filed a grievance.  They supposed to investigate and give you a to and from and, you know.  And that's another thing.  You gave me a bunch of stuff in my -- in the discovery.  You didn't comp -- you didn't send me all the stuff.

Now, every grievance, this is very important for you to know.  Like, let's say I file a grievance.  Now this grievance, all right, let's say I -- I complain about a counselor.  The grievance person is supposed to investigate.  No, that's not what they do.

They give the person I'm grieving my grievance to answer.  Okay?  Then that person answers their own grievance against them and then they respond.  So basically, what I'm saying is that when I request my -- my -- my discovery and you give me my grievances, you're not giving me everything.

800-523-7887                                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 149

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

What I'm saying is you might not even know inside the grievance they do their own investigation.  They do their own stuff, right?  Like I said, if I'm grieving someone, that person has to do a to and from.  That's basically their side of the version, what's going on, pa pa pa pa pa.

All grievances has to/froms -- investigation reports.  None of my grievances from any of my cases have any of that stuff, including what you sent me.  So my thing is, why am -- am I not receiving the documents from my grievance?

Q.   Right.  So would it be fair to say that there's a three- step grievance process?  Would you agree with that?

A.   You filed a grievance, then you go to the hearing, either they agree or they don't agree.  Then you appeal, then you appeal to the superintendent, which doesn't exist.  And then you appeal to Albany, which don't respond for years.

Q.   Okay.  So now, was it ever the case that you -- you attempted to file a grievance with Mr. Reams, you didn't hear back, and then you -- you went to the next step to the superintendent?

A.   I've done everything imaginable.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

I've been in -- I was in that jail almost six years, Mr. Shevlin.  So believe me when I tell you, I've tried every way possible to remedy a situation before I had to scream, shout, and drop my lawsuits.

So it's not like I just -- I just try to, you know, skip by, and just try to not resolve the situation.  I try, they refuse, and this is where we are now.  So don't cry now.  Tell them don't cry now.

Q.   Well, when you say they refuse, what -- what do you mean by that?

A.   What I'm saying is they refuse to acknowledge my grievance.  They refuse to investigate.  They refuse to give me a grievance number.  They refuse to do anything to help.  That's with every grievance.  So we don't have to go to everyone individually.

Q.   Okay.

A.   They all the same, same outcome --

Q.   Okay.

A.    -- same people, same scenario.

Q.   Okay.  And that was true across the board with respect to the I.G.R.C., the

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez superintendent, as well as CORC?

A.   All of them; all a sham.

Q.   Did anybody prevent you or scare you off of filing --

A.   Right.

Q.    -- grievances?

A.   Of course.

Q.   I'm sorry?

A.   Of course.

Q.   And who -- who was that?

A.   Officials.

Q.   Like who?

A.   The officers in the -- in the -- in the facility.

Q.   Okay.  And in what way did they prevent you from filing a grievance?

A.   Well, you want some names?  You want names?

Q.   Well, I want you -- I want you to tell me what did they do?  In what way were you --

A.   They --

Q.    -- were you scared?

A.    -- talked to me.  They threatened me.  They -- they -- they -- they come and

800-523-7887                              ARII@courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez searched my cube.  They destroy my property.  I got a package.  I don't receive my package.  Mr. Shevlin, the sky's the limit.  You got a bunch of people with power that don't know how to act with power, and then you giving them -- sky's the limit.  So what do you think they're going to do now?

Q.    Now, is that -- is -- is your experience with -- with the grievance process limited to Fishkill, or is that across the DOCCS in its entirety?

A.    That's across my thirteen years of prison time.  In every facility, in every I.G.R.C. personnel I've ever come across.  They're all --

Q.    Okay.

A.     -- the same.

Q.    Now, you say in this -- in these paragraphs that you spoke to Superintendent Burnett at some point, correct?

A.    Right in front of the hospital.

Q.    Okay.  And do you recall when that conversation took place?

A.    I remember the conversation.  I don't remember the date.

Q.    Okay.  And did you, in fact,

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 153

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

follow up with him by sending him some kind of a letter?

A.   Yes, I write, they don't answer.

Q.   Okay.  Do you happen to have a copy of -- of that letter that you sent to Superintendent Burnett?

A.   It should be in -- it should be in my file of the claim.

Q.   Which -- which file?  Your -- your guidance file?  The grievance file?  Which -- which file?

A.   Well, it should be part of the exhibits --

Q.   Uh-huh.

A.    -- all documents that I provided to you, like --

Q.   Okay.

A.    -- like when you asked me to -- to give you all the information I'm going to use at trial and all that stuff.  I -- I -- I'm -- I'm kind of confused because you're asking me to give you stuff that you are supposed to give me.  So how do I do that?

Q.   Okay.  Okay.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 154

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

A.    I don't know.  I don't understand that.  That's weird.  I don't know how to give you that information, basically.

Q.    Okay.  Now, scrolling ahead, let's see here.  It's to paragraph sixty-nine.

A.    Mr. Shevlin, I have something quickly ask you.

Q.    Do we need to go off the record for that Mr. Rodriguez?

A.    Yes, I think we should.  Real quick.

Q.    Okay.  Let me go off the record. Yes, sir.  Thank you.

(Off the record; 12:55 p.m.)

(On the record; 12:56 p.m.)

THE REPORTER:  On the record.

BY MR. SHEVLIN:  (Cont'g.)

Q.    Okay, so in paragraph sixty-nine to seventy, let me -- let me pull that up again. Sixty-nine to seventy, just take a look.  Let me know when you had a chance to look at that.

A.    All right, sixty-nine.  Okay, let's go.

Q.    Okay.  So you allege a conspiracy

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez between Superintendent Burnett and the Defendants, including Sergeant Block who had a list of the I.I.s to be assaulted.  And then Block told the CERT team members to take -- quote, take that motherfucker down, closed quote, including, and you give a list of names, Bailey, Roberts, Guman, Wilder, Boyd, Maginn.  Do you see that?

A.   Yes.

Q.   Okay.  So let -- let me ask you this.  So first, can you -- can you elaborate what, what is this conspiracy that -- that you're alleging here?

A.    Exactly what I said there.  Mr. Block came to the housing unit with a list of inmates whose names was on the list.  Now, the inmates whose name was on the list was for different reasons.  This guy was on the list because he's a gang member and he's an asshole.

This guy is on the list because he likes grieving people.  This guy is on the list because he likes suing us.  Well, unfortunately I was on that list.

Q.   And why do you think you were on that list?

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

A.    I just told you why, because I'm -- I gave you a couple of reasons why.

Q.    Okay.  And -- and did you see this list?

A.    Oh!  Yeah, I saw the list.

Q.    Okay.  And did the list have the actual reasons next to the names of these --

A.    There was no reason --

Q.     -- I.I.s?

A.    -- it just had our name on it.

Q.    Okay.  And Sergeant Block had that list?

A.    Yes, sir.

Q.    Okay.  Did that list have any kind of like a title as the document that -- that it would -- no?

A.    It was a regular piece of paper with a bunch of our names on it.  Now, if you want to know who can corroborate this allegation then speak to the officers.  I could give you two officers' names right now.  Go talk to --

Q.    Okay.

A.     -- Officer Boyd.  Go talk to officer -- let's see, let me give you the ones

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

that'll actually tell you the truth.  All right, go speak to Officer Julian in Fishkill.

Q.    Julian?

A.    Julian is one of the main security guys.  He's the guy that beats everybody up.  Why don't you ask him about that?  He'll tell you.

Q.    Okay.  So now was -- was there a -- when you say that -- that the superintendent was involved in this, is that -- is that an assumption on your part where he's the superintendent?  Or did you see his name in a to from, from Burnett to Block listing these names?

A.    Mr. Shevlin, how would I be able to see that document like that?  There's no way I'm going to be able to get a document like that because if I did, he wouldn't be in a lawsuit.  He'll be looking at criminal charges.

So it's fair to say that what you're asking is highly improbable that I'm going to be able to get that information, but if I did, it would've been in your hand immediately expedited.  So how do I know?  Because you're talking to a convict.  I know how they move.  I know how they work.

I know how they get around.  I know

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

all this stuff, man.  Like the difference between a convict and an inmate, people got to start looking that up because there's a very big difference.

Q.   Okay, I'm turning to paragraph seventy-three.  Okay.  Do you see that?

A.   Yeah.

Q.   Okay.  And now in that paragraph you assert that Defendants conspired to stop you from acquiring information to proceed on a claim against Defendants such as forging documents, forging medical records.  Can you clarify what you mean and who was involved in that?

A.   Oh!  I'm -- I'm going to clarify. Defendants had conspired to stop Plaintiff's attempts.  You want me to read it or what?

Q.   Well, I'm asking you outside who -- what -- what -- what -- what can you tell me?  Who were the Defendants, and -- and what did they do in particular?

A.   What did they do?

Q.   Yes.

A.   Okay.  How about this?  You're asking me what did they do to conspire against me?

Q.   Well, you said they conspired to

Associated Reporters Int'l., Inc.                                www.courtsteno.com

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

stop you from acquiring the information to proceed on a claim --

A. Okay.

Q. -- against them --

A. So I said --

Q. -- such as forging documents, forging medical records. That's what I'm asking.

A. Well, that's right there. Self-explanatory, Mr. Shevlin. You're asking me what documents that you just answered. They forged the medical documents. They forged the injury. Where's my injury report? Mr. Shevlin, I got injured that day. Where's my injury report? I'm asking you personally.

Q. Yeah, I -- I -- well, I -- I'm the one asking the questions. So injury report is one such document. What else? What else do you got?

A. I'm telling you what it is. I'm telling you what they forged. I'm telling you they forged my documents, everything. And you are asking me what did they forge?

Q. Okay.

A. Come on, Mr. Shevlin.

Q. How about med -- medical records,

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez

you said they forged?

A.    They forged the medical records. They forged the -- the -- the incident report.  It's in the -- it's in the claim.  I go to medical because I got injured.  You know what the nurse puts down that I said I fell on my butt.  Did you hear what she just said?

She said that I went to medical reported falling on my ass when in reality, I hit my head and reported falling on the floor.  Where do you get that statement from that I said I fell on my butt and admitted to not being hurt?

Mr. Shevlin, I think you've been dealing with me long enough to know that, that's not going to come out my mouth.

Q.    Okay.

A.    So who -- who made these allegations?

Q.    Okay.

A.    It was made by the Defendants. How did they do this?  By fraudulating their information.  Please don't ask me what did they fraud again.

Q.    So now turning to injuries that

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

you are alleging.  So I'm looking at paragraphs eighty-four --

A.  Okay.

Q.   -- eighty-five and eighty-seven. Now, following when you have a chance to take a look at those.

A.  Okay, what do you want to know?

Q.  Okay.  So in these paragraphs you list the injuries caused by the Defendants.  I just want to go through those with you.

A.  Okay.

Q.  So loss of sleep.  Is that correct?

A.  More than correct.  You don't see the bags --

Q.  Okay.

A.   -- of my eyes.  You can't see what these people put me through, Mr. Shevlin?

Q.  Okay.

A.  Ten years I've been sleeping with the enemy.

Q.  Okay.

A.  It's time to go.

Q.  And when you say loss of sleep,

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

are you still not able to sleep as a result of -- of this incident?

A.   Listen, these people mentally messed me up for life.  I have bags on my eyes.  I can't -- I can't sleep at night.  Anxiety, everything is -- is --.

Q.   Okay.  You also mentioned weight loss.  How much weight have you lost since December 30th of '21?

A.   One eighty-five -- I came to prison one eighty-five, I am now one hundred and thirty pounds.

Q.   And you lost -- you lost your appetite after the incident?  Is that what you're alleging?

A.   Mr. Shevlin, I haven't eaten and I've been sitting down here with you for hours.  I think that's safe to say that my appetite is little to none because of the mental stress and -- and acerbation and I've been going through.  It's crazy.  So yeah, I'm mentally messed up.  Thank your Defendants.

Q.   Okay.  And you mentioned again, mental anguish, swelling of right wrist and left

800-523-7887                              ARII@courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez ankle and foot, severe migraines slash changes in eyesight.  How often do you get migraines?

A.    It comes and goes.  It comes and goes.

Q.    And how many times a week would you say you get migraines?

A.    It is not a week.  It comes and goes.  It might be a week, it might be a couple of weeks later, it comes and goes.

Q.    Okay.  And when you say you have changes in eyesight, what -- what does that mean?

A.    Yeah, it's like my vision starts blurring.  It's like -- it's like -- like my vision starts messing up and like I start seeing like flashes of light.  I don't know.  It's weird.

Q.    Okay.  You also mentioned neck pain, back pain, leg pain, rib pain, dizziness, burning, numbness and tingling feelings to right wrist and left ankle, upset stomach, joint pain, swelling and bruises to leg and feeling nervous.  Is there anything else you want to add to -- to the list?

A.    There's a lot more I would like to add to the list, but I would need --

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 164

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   What -- what is that?

A.    -- professional involved.
Because I'm not a professional to me making all of these clinical allegations and analysis --

Q.   Okay.

A.    -- I'm not certified.

Q.   Okay.  Now, since -- since December 30th of '21, at which time you alleged you were assaulted, have you sought medical treatment for any of these issues?

A.   Yeah.

Q.   Okay.  And which -- which of these issues have you sought treatment for?

A.   You're going to have to review the medical records.

Q.   Okay.  Now, a lot of these issues you had prior to coming into DOCCS custody, correct?

A.   Nope.

Q.   No.  So you didn't have back pain or neck pain or leg pain?

A.   No.  You said a lot of these issues you had, I said no.

Q.   Okay.

A.   That doesn't -- that --.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 165

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.   Okay.  Well, you had neck pain and back pain before coming to DOCCS, correct?

A.   Yes.

Q.   Okay.  And in what way have -- have those gotten worse as a result of the --?

A.   Acerbated and further injured.

Q.   I'm sorry, I didn't hear that.  What?

A.   They acerbated and further injured already in -- in -- they acerbated and further injured already injured areas.

Q.   Okay.  How about upset stomach?  How often is your stomach upset?

A.   My stomach is upset right now.

Q.   Okay.  And would you say that, is that a -- a daily occurrence?  Weekly?  Monthly?

A.   It comes and goes.  It comes and goes.

Q.   Have the injuries that you suffered impacted any of your daily life activities?

A.   Yeah, that's what I put in the claim.  I explained fully how much this affects me.

Q.   Okay.  Has it impacted your ability to complete your coursework for school?

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

A.    Yeah.  Right now.

Q.    In what way?  In --

A.    In --.

Q.    -- in what way, Mr. Rodriguez?

A.    In what way is my injuries preventing me?  Like right now, you got me sitting in the seat for hours and my back is on fire.  So like when I go, I'm not going to be able to go in another classroom and sit there for three hours listening to the teacher because of my injuries.  It's like --

Q.    Okay.

A.    -- it's a cycle.  Cycle of --

Q.    Okay.

A.    -- life.  Ying-yang.

Q.    How long -- how long is a typical class that you take?

A.    Three hours.

Q.    Three hours?

A.    Yeah.

Q.    And how many times a week do you take that class -- those classes?

A.    Well, I take two classes a week. The class is supposed to be three hours long, but they don't open the area, so I'm not getting three

Page 167

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

hours.  I grieved it.  Like I said, I grieved it and like everything in grievance don't work.

I said, listen, the school is supposed to be open at twelve fifteen p.m. they tell me.  I grieved it because they only open at one fifteen. Their response was, we open at twelve fifteen.  If I'm grieving you because you're not opening the school building at twelve fifteen, so I could get my three hours of class.

And your response is, oh no, we opened it at twelve fifteen, you're a liar.  And that's the -- that's -- that's -- that's what -- that's the -- that's what I've been dealing with my entire bid. Nothing but lies.  They say we the liars, yeah.

Q.   Now, I know you testified earlier when we first started the deposition that you don't like taking medication.  Has any mental health provider recommended to you that you take mental health medication for feeling nervous or anxiety or any other mental health issues?

A.   Mr. Shevlin, you're asking me if see a doctor, right?  Has a doctor ever prescribed me medication for mental health?

Q.   Since -- since the -- the

Rodriguez v Burnett, et al - 10-21-24 - Ralph Rodriguez December 30th, 2021 incident?

A.   I'm not -- I'm not too sure. You're going to have to go into the -- to the medical records for that.  I'm not sure if I did or don't.  I don't know.  It's years ago.

Q.   Okay.

A.   But yeah, I was seeing -- I was seeing mental health.  I was seeing them for depression.  I mean, you're going to have to look at the records.

Q.   Okay.  Okay.  One of your claims in the case is unreasonable search, correct?

A.   Yes, sir.

Q.   Okay.  Can you describe in what way -- what -- what are you talking about when you say unreasonable search?

A.   An unreasonable search is a search.  Why are you searching me?  That's an unreasonable search.  Why are you searching me?  If you don't have a reason, then it's an unreasonable search.

Q.   Okay.

A.   So ask the Defendants --

Q.   I --.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 169

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

A.    -- why they did that to me.

Q.    Does that refer to the -- the several hours that you were standing in -- in your boxer shorts?

A.    Repeat that question?

Q.    Sure.  When you refer to an unreasonable search, are you referring to the time that you were made to stand in the recreation room for several hours in the cold or something else?

A.    I'm -- I'm referring to the entire situation, including the window, including everything.  That whole incident.  The entire incident.

Q.    Okay.  You also have a claim for RLUIPA, is that correct?

A.    Say again?

Q.    RLUIPA.  Are you familiar with RLUIPA?

A.    What is -- what is -- what is a RLUIPA?

Q.    RLUIPA is a law.  The Religious Land Use --

A.    Oh!  Religious Land Act.  Okay, yeah.  Yeah, yeah, yeah.

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

Q.    -- Incarcerated Persons Act.

A.    Yes, I got it.  I was thinking --

Q.    Okay.  What --

A.    -- of --.

Q.    -- what's your RLUIPA claim?

A.    I -- I -- you're going to have to read the claim itself, Mr. Shevlin.  I'm not going to reintegrate the claim.  It's there, self-explanatory.  If you would like me to read it, I'll read it.

Q.    Okay.  All right.  I'm turning to the -- the last topic of damages.  So what damages are you seeking in the case?

A.    I put it down, pain, suffering, anguish, mental health, loss of liberty, everything, everything, everything.

Q.    And do -- do you have a number in mind?

A.    A number?

Q.    A number, how much are you seeking?

A.    I mean yeah, I got a number in mind, but we don't really have to talk about that right now.

Q.    Okay.  Okay.  Mr. Rodriguez, is

800-523-7887                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 171

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

there anything you want to add today that --

A.   I --.

Q.    -- that I haven't -- that I haven't asked you yet?

A.   No.  Wait, wait, wait.  Yes, there is something, I want to put this on the record. I need this on the record.  It has to be on the record.  I'm going to say this again.  I am in Wallkill Correctional Facility.  I was in the RSAT program, which is the drug programs KSAT, RSAT.

I was in a drug program.  I requested to stay a little longer because I am not receiving the help I am supposed to receive.  Listen, I am in the M.A.T. program.  I'm not receiving nothing.  I'm not receiving therapy, counseling, nothing.

I've been in the M.A.T. program over two years.  I've received nothing.  I go into the RSAT program and I tell them I need to stay a little longer.  I just had a friend of mine die on the unit two weeks ago, and they denied me.

So I need this on the record so it could be there that I requested to stay in RSAT longer because I don't feel comfortable being told I have to leave, and they still told me I have to

800-523-7887                    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

leave.  So I want to put down the record that if something happens to me because they're refusing to -- to give me the help I requested, then it was put -- it was put on the record right here, right now.

Q.   Okay.  So what's going to happen, Mr. Rodriguez, is I'm going to get a copy of the transcript from today and I'm going to send it to you to review and to sign and then to send it back to me. Okay?

A.   Yeah.

Q.   Okay.  So I think we are finished.

A.   Oh!  One thing, Mr. Shevlin?

Q.   Well, one second.  Let's just go off the record and then we can talk, okay?

A.   Okay.

Q.   Are -- are we off.

(The deposition concluded at 1:14 p.m.)

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 173

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

STATE OF                    )

COUNTY OF                   )

            I, RALPH RODRIGUEZ, have read the foregoing record of my testimony taken at the time and place noted in the heading hereof and do hereby acknowledge:

(Please check one)

            ( ) That it is a true and correct transcript of same.

            ( ) With the exceptions noted in the attached errata sheet, it is a true and correct transcript of same.

                              X_____

                              RALPH RODRIGUEZ

Sworn to before me this _____day of _____, 2024.

X_____

NOTARY PUBLIC

My Commission Expires:

_____

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez

I, CARI RORABACK, do hereby certify that the foregoing testimony of RALPH RODRIGUEZ was taken by me, in the cause, at the time and place, and in the presence of counsel, as stated in the caption hereto, at Page 1 hereof; that before giving testimony said witness was duly sworn to testify the truth, the whole truth and nothing but the truth; that the foregoing typewritten transcription, consisting of pages number 1 to 172, inclusive, is a true record prepared by me and completed by Associated Reporters Int'l., Inc. from materials provided by me.

CARI RORABACK, Reporter

800-523-7887                    ARII@courtsteno.com

Rodriguez v Burnett, et al – 10-21-24 – Ralph Rodriguez
            ASSOCIATED REPORTERS INTERNATIONAL, INC.
                    (800) 523-7887

Date:
Case Name:  Rodriguez v Burnett, et al
Index Number:  22-CV-10056-PMH
Deponent:  Ralph Rodriguez
Deposition Date:  10-21-24
Examining Attorney:  Neil Shevlin, A.A.G.
Dear Mr. Rodriguez:

Please read and make any changes and/or corrections in
your testimony and sign the transcript in the presence of
a notary public.  Please do so within thirty (30) days.
If you fail to sign the transcript within thirty (30)
days, it will be delivered to the appropriate parties
without signature.  Return the transcript with
corrections, if any, to:

            OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL
            BY:  NEIL SHEVLIN, A.A.G.
            28 Liberty Street
            New York, New York 10005

CORRECTIONS:

_____        Word or phrase:  _____
                Corrected to:    _____

_____        Word or phrase:  _____
                Corrected to:    _____
_____        Word or phrase:  _____
                Corrected to:    _____
_____        Word or phrase:  _____
                Corrected to:    _____
_____        Word or phrase:  _____
                Corrected to:    _____
_____        Word or phrase:  _____
                Corrected to:    _____
_____        Word or phrase:  _____

                Corrected to:    _____
_____

Date Signed                              _____
                                         RALPH RODRIGUEZ

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 176

## A

**A's** 25:22
**A-S-S** 111:6
**A.A.G** 2:7 175:6,13
**a.m** 1:12 10:3 77:2,3
**ability** 15:16 119:21 121:11 165:25
**able** 46:14 73:16 90:25 92:6 95:11 119:16 122:11 130:5 130:8 157:14,16,20 162:2 166:9
**absolutely** 125:14
**abusive** 96:10
**accent** 31:4
**accepted** 147:5
**access** 39:21 74:10
**accident** 42:9,14 44:12
**accommodate** 12:11
**account** 73:14
**accounts** 72:20
**accurate** 8:17 25:7 45:16 50:14 53:12 56:10 67:15 79:14,15,24 83:10,12 86:12 91:8 98:21,23 116:6 140:4
**accurately** 17:10
**acerbated** 165:7,10,11
**acerbation** 162:21
**acknowledge** 150:14 173:4
**acquiring** 158:10 159:2
**act** 62:5 67:22 145:11 152:5 169:24 170:2
**action** 5:14 7:3 11:6 69:23
**actions** 33:16 68:18 84:2
**activities** 45:13,23 46:14 165:21
**actual** 14:3 22:24 25:9 77:13 156:8
**add** 163:22,25 171:2
**addict** 52:16
**addition** 5:10 6:23 106:4
**additional** 9:2 141:3
**address** 58:16 78:5 128:17
**adjudicated** 28:4
**Admin** 64:11
**administering** 7:13 8:25
**administration** 49:2 55:3,7

55:23 59:11,17 60:12 64:12
**administrative** 55:12,19 56:5 147:22
**admitted** 160:13
**adult** 43:16
**affidavit** 127:25 134:8
**affidavits** 66:13 67:4,7 71:21 86:22 94:25 95:9 134:13,14
**affirmations** 142:15
**affirmed** 130:19
**African-American** 108:23
**ago** 19:2 20:16 99:6,6 118:16 168:6 171:21
**agree** 48:4 149:15,17,18
**agreed** 5:3,15,25 6:6,11,16 7:4 8:5
**ahead** 154:5
**aid** 45:6,9
**aide** 24:16
**air** 25:10
**al** 1:1,7 2:1 3:1 4:1 5:1 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1 107:1 108:1 109:1 110:1 111:1 112:1 113:1 114:1 115:1 116:1 117:1 118:1 119:1 120:1 121:1 122:1 123:1 124:1 125:1 126:1 127:1 128:1 129:1

130:1 131:1 132:1 133:1 134:1 135:1 136:1 137:1 138:1 139:1 140:1 141:1 142:1 143:1 144:1 145:1 146:1 147:1 148:1 149:1 150:1 151:1 152:1 153:1 154:1 155:1 156:1 157:1 158:1 159:1 160:1 161:1 162:1 163:1 164:1 165:1 166:1 167:1 168:1 169:1 170:1 171:1 172:1 173:1 174:1 175:1,4
**Albany** 149:20
**alcohol** 16:23
**Aleshia** 38:16,20,21
**Alexis** 32:17,18
**alias** 19:22
**allegation** 29:19 139:20,21 156:20
**allegations** 21:3 29:4 78:9 94:12 124:12 160:19 164:5
**allege** 45:13 48:7 64:9 68:10 79:7 90:8 106:4 123:23 132:9 134:21 135:13 144:20 154:25
**alleged** 31:21 50:11 77:17 82:10 83:5 86:9 87:15 91:23 92:22 98:15 100:3 103:5 107:19 144:24 164:9
**allegedly** 80:3 84:24 115:4 128:21
**alleging** 155:12 161:2 162:16
**Alliance** 25:18 60:25
**allow** 69:23 77:21
**allowance** 60:8
**allowed** 30:9,14 32:20 57:11
**alpha** 10:17
**altar** 122:23
**American** 105:22
**amount** 57:12
**Amy** 129:25,25,25 130:2
**analysis** 164:5
**and/or** 175:8
**Andrew** 17:20
**Angel** 37:8
**angels** 119:2
**anguish** 162:25 170:15

ankle 125:13 163:2,20
annoy 77:15,24
answer 11:17,19 12:2 14:17
    14:18,19,24 15:5,10 34:3
    44:15 58:17 64:23,25 66:5
    66:17,22 71:25 78:3,9
    85:20 87:4 93:22,25 105:25
    108:25 109:2,7 129:8 138:6
    148:21 153:4
answered 84:17 159:11
answers 80:12 148:21
anti- 43:20
anti-social 43:7
anticipation 58:7
anxiety 43:8 162:6 167:20
anybody 99:23 134:3 147:8
    151:4
anybody's 46:23
appeal 127:24 128:11,14
    129:2,5 130:5,6,8,14 131:2
    142:13,14 149:18,18,20
Appeals 130:21 131:22
APPEARANCES 2:2
appellate 131:2
appetite 162:15,19
application 55:16
applied 56:14 57:19 86:22
appreciate 11:18 13:13 77:9
appropriate 8:19,23 29:20
    175:10
approximately 74:23
April 25:7,8 57:4 58:8
area 35:13,16 40:2 47:19,22
    80:24 81:20,25 82:3,4
    93:19 113:12 114:8,24
    115:22 116:23 121:22
    124:17 125:6 133:16 138:7
    166:25
areas 165:12
argue 61:15
ARII 7:13
arm 41:21,24 42:3,6
arrest 26:20 49:20
arrested 27:24,25 28:8
    130:16
arrive 142:2
arrived 50:13 68:11 135:14

asked 12:5 14:13 64:17
    100:16 124:19 125:17,25
    135:17 136:7 138:5 140:5
    140:20 153:19 171:5
asking 31:13 32:8 33:21,23
    35:10 51:9,14 58:18 68:20
    71:25 72:15,16,18 77:8
    81:12 83:3 85:3,18,22
    87:13 89:19 93:20 98:12
    99:9 101:24 106:14 107:2
    107:16 108:15,24,25 109:2
    110:11 115:7 118:3 125:4
    132:22 147:23 153:22
    157:20 158:17,24 159:8,10
    159:14,17,21 167:22
aspects 32:5
aspirin 141:10
ass 160:10
assault 26:13 30:5,6 31:22
    41:14 48:24 50:2 68:24
    74:5 82:10 83:7,19 85:14
    86:6 87:2 89:7,15 91:23
    97:8 100:7 102:16 103:6
    105:12 107:19 109:15
    115:18
assaulted 35:16 56:3,8 59:22
    66:25 69:2,5,12,24 71:16
    73:23 75:7,18 76:2 82:5
    83:6 85:5,21 86:3,10,11
    87:5,13 88:19 90:24 91:4
    93:19 94:15 101:15,25
    103:12,23 107:11 111:12
    115:4 123:10 133:22 140:2
    155:4 164:10
assaulting 80:4 84:24 103:10
    105:21
assaults 90:25 100:5,5
assert 62:24 94:3 158:9
asshole 155:19
Assistant 11:4
associate's 23:13
Associated 7:12 174:11
    175:2
associates 24:8
assume 13:17 14:12 102:8
assumption 57:5 157:10
attach 54:24

attached 173:6
attack 30:14 32:21 110:8
    134:6
attacked 41:14 55:22 56:2
    70:9 94:4,10
attacking 74:19
attempt 145:10
attempted 63:2 149:22
attempts 158:16
attend 23:20 47:18 120:7
attending 25:15 119:24
attention 40:12 123:25 124:5
    124:13,16 125:7,17 133:25
attorney 2:6 7:24 11:4 21:9
    21:17 22:8,11,14 128:18,22
    128:23 129:2,23,24 130:5,7
    131:2 175:6,12
attorney- 128:19
audience 99:14
audiologist 45:5
authority 30:3,4
authorized 67:14
available 65:22 130:9
awake 16:14
aware 13:3 15:14 16:14
    50:12,18,20 51:3 78:19
    91:22
awesome 117:8

**B**

B 4:2 111:23 138:18,20
    139:2
Babalorisha 121:19
back 18:23 41:15,17 42:13
    42:15 56:4 66:2 75:21
    76:25 79:9,22 90:10 92:4
    100:16 112:6 123:19,20
    127:10 132:7,9 133:25
    142:2 144:11 149:23
    163:18 164:20 165:3 166:8
    172:9
background 29:5
backlash 84:8
bad 31:3 46:2 73:10 111:2,10
    132:4
badge 80:16,20 81:2,2,18
    105:17,22,23

Associated Reporters Int'l., Inc.                    www.courtsteno.com

**badly** 88:19
**bag** 98:21
**bags** 161:16 162:5
**Bailey** 155:7
**bald** 138:22
**bandages** 141:10
**bar** 5:12 7:2
**Bard** 25:19 61:2
**bars** 54:12,13,14
**based** 93:18 101:6 124:11
   127:22
**basically** 27:13 120:21
   127:12 148:23 149:6 154:4
**bat** 88:22
**batons** 88:13
**battalion** 82:25
**beads** 121:20
**bear** 8:6
**beat** 59:22 101:24 111:25
   115:21 133:14 139:25
**beaten** 90:11 107:11
**beating** 62:11 79:21 87:17
   103:19 114:3 133:5
**beats** 157:6
**bed** 66:3 69:11 79:5,5,8,12
   110:5
**beds** 69:9 72:12 80:24 82:17
   82:18 101:4 129:20
**beginning** 86:6 102:18
**begun** 5:20
**behavior** 96:10
**belief** 122:16,18
**beliefs** 120:22 123:5
**believe** 17:18 22:15 25:5
   27:4 28:18 31:6 39:9 49:5
   58:20 88:14 104:6,7 108:22
   108:24 122:25 123:2,6
   125:22 138:17 150:3
**belt** 61:5
**benefits** 55:13 56:20 57:9,20
   57:24 58:4,9
**best** 11:16 12:6 91:20
**better** 46:7 96:24 117:9
   146:6
**Bhuiyan** 29:23 109:19 110:8
   110:12 124:22 132:11
**Bible** 118:23

**bid** 167:14
**big** 12:25 40:6 62:15 123:16
   158:4
**bill** 63:12
**biology** 23:14
**bipolar** 42:24 43:2,7
**birth** 19:24 58:16
**bit** 11:14 143:12 146:20
**black** 31:19 94:4,14 95:2,23
   108:7,23 125:22,24 131:25
   135:25 136:4,8 138:22
   140:6
**Blancato** 17:21
**blank** 20:11
**blaze** 103:16
**bleeding** 92:23 99:8 110:24
   113:3 114:16
**blew** 130:16,17
**Block** 31:11,12,15,23 85:2
   85:10,14,19,25 96:7 97:8
   98:16 107:5 109:13 155:3,4
   155:15 156:12 157:12
**Block's** 98:6 99:24 100:4
**blocked** 144:23 145:7
**blood** 52:16
**bloody** 114:16
**blurring** 163:14
**board** 46:9,11 52:6 150:25
**body** 79:22 87:10 92:25
   98:21 121:4,5
**book** 116:8,8,9,10 118:8,9
   148:3
**books** 117:4,15 118:2,6,11
   122:3
**born** 20:2 42:21,22
**borne** 9:5
**bothers** 111:4
**bottom** 39:19 121:4
**Boujou** 139:7
**Bouya** 139:7
**box** 100:23
**boxer** 126:17,18 169:5
**boxers** 113:12 126:24
**boxes** 100:24
**Boyd** 155:7 156:24
**brain** 61:10
**break** 12:10,12,14 15:3,4,6

   76:7,16 77:6 146:19
**breakdown** 49:2 95:22
**breaking** 44:15
**broke** 49:6 72:12 78:13
**broken** 43:17
**brought** 11:6 12:24
**bruised** 114:16
**bruises** 163:21
**brutally** 70:9
**bubble** 53:20,21,23 101:3,11
   109:24 110:3,3,13
**buddy** 119:22
**building** 47:19 65:21 70:4
   167:9
**built** 31:20
**bunch** 30:9 121:20 148:11
   152:4 156:19
**Burbanski** 134:8,11
**Burnett** 1:1,7 2:1 3:1 4:1 5:1
   6:1 7:1 8:1 9:1 10:1 11:1,7
   12:1 13:1 14:1 15:1 16:1
   17:1,24 18:1 19:1 20:1 21:1
   22:1 23:1 24:1 25:1 26:1
   27:1 28:1 29:1 30:1 31:1
   32:1,2,3 33:1 34:1 35:1
   36:1 37:1 38:1 39:1,17 40:1
   41:1 42:1 43:1 44:1 45:1
   46:1 47:1 48:1 49:1 50:1
   51:1 52:1 53:1 54:1 55:1
   56:1 57:1 58:1 59:1 60:1
   61:1 62:1 63:1 64:1,11,18
   65:1 66:1 67:1 68:1 69:1
   70:1 71:1 72:1 73:1 74:1
   75:1 76:1 77:1 78:1 79:1
   80:1 81:1 82:1 83:1 84:1
   85:1 86:1 87:1,3 88:1 89:1
   90:1 91:1 92:1 93:1 94:1
   95:1 96:1 97:1 98:1 99:1
   100:1 101:1 102:1 103:1
   104:1 105:1 106:1 107:1
   108:1 109:1 110:1 111:1
   112:1 113:1 114:1 115:1
   116:1 117:1 118:1 119:1
   120:1 121:1 122:1 123:1
   124:1 125:1 126:1 127:1
   128:1 129:1 130:1 131:1
   132:1 133:1 134:1 135:1

800-523-7887                              ARII@courtsteno.com

136:1 137:1 138:1 139:1
140:1 141:1 142:1 143:1
144:1,25 145:1 146:1 147:1
148:1 149:1 150:1 151:1
152:1,18 153:1,7 154:1
155:1,2 156:1 157:1,12
158:1 159:1 160:1 161:1
162:1 163:1 164:1 165:1
166:1 167:1 168:1 169:1
170:1 171:1 172:1 173:1
174:1 175:1,4
**burning** 163:19
**business** 138:7
**busy** 87:5
**butt** 160:7,12

**C**

**C** 3:2
**C.O.'s** 101:3
**C.T.A** 61:6
**C.V** 11:8
**cage** 83:24 84:4,9
**call** 63:11,13 112:20,22
**called** 53:4
**camera** 102:14 104:14,16,17
104:18,22,23
**can't** 145:11
**cancer** 60:23
**candles** 119:3
**capable** 37:11 105:15
**captains** 87:8
**caption** 22:18 174:5
**captioned** 11:6 17:23
**car** 42:9
**card** 87:21 89:2 93:2
**care** 13:11 17:4,5 29:18 51:6
52:14 59:23 60:24 61:3
65:25 66:14 125:25 131:5
137:8 141:21
**career** 97:6
**careful** 96:24
**Cari** 1:18 174:2,14
**caring** 45:14 110:7,8
**Carlton** 36:17
**case** 14:5 17:16,17,20 18:6,7
18:23,23,25 20:24 21:3,20
21:22 22:4,18 29:9 41:12

48:8 50:17 53:12 107:25
128:2 130:23 131:5 132:3
149:22 168:13 170:13
175:4
**cases** 19:8 146:13 149:10
**catastrophe** 133:18
**Catholicism** 118:10
**caught** 102:19
**cause** 64:13 174:4
**caused** 161:10
**causes** 42:17
**cavity** 127:2,3,5
**cell** 127:11
**cells** 62:13,16
**central** 64:3,19
**CERT** 30:2 39:11,12,15,16
63:10,11,13 64:14 65:15
67:14 68:10,17 71:6 72:13
73:19 74:18 76:8 78:15
81:9 82:20,21 83:2,3,8
84:24 88:13 91:21 94:3
96:4,4 101:20 103:10,18
106:4 107:5,11 109:23
110:5 111:12,15,22,23
114:25 115:2,2,4,11 133:4
133:8,10,10 155:4
**certain** 35:11 46:17,18,19
57:12 96:21 105:8 119:9
**certificate** 58:16
**certification** 6:8
**certified** 164:7
**certify** 174:2
**chance** 15:12 25:6 30:11
33:4 36:6 41:2 69:21,22
82:7 144:16 154:22 161:6
**change** 85:20
**changes** 163:2,12 175:8
**characteristics** 104:4
**charge** 6:15 32:4 50:23
64:24
**charges** 9:4 157:18
**check** 38:18 121:17 173:5
**checked** 87:20 88:25 90:8
**chemistry** 23:14
**Cherry** 32:17,18 33:8
**chew** 129:18,18,19
**chewing** 129:19

**children** 20:17
**chopped** 42:6
**Christian** 25:17 120:19,22
**Christmas** 74:2
**Christopher** 33:12 63:2
**Ciaccio** 33:13 34:10
**cigarettes** 129:17
**circumstances** 8:23
**citizens** 105:22
**city** 18:16,16 19:5 20:3 23:25
26:7,8
**civil** 5:6,23 6:4,18 8:9 19:10
19:16 21:9,17 23:19 29:10
29:14,20 146:4
**claim** 33:17,22,25 34:4 37:11
38:2,3,18 40:14 48:14,19
48:22 49:5 67:5,6,8 71:20
71:21,22,23,24 75:18,21,24
76:3,10 80:6 91:16 94:25
106:22 112:8 133:6 153:9
158:10 159:3 160:5 165:23
169:15 170:6,8,9
**Claimant's** 117:16
**claims** 29:21 67:7 77:25
168:12
**clarify** 70:12,14 127:20
142:19 158:12,14
**clarifying** 50:11
**class** 25:21 166:17,22,24
167:10
**classes** 47:18 166:22,23
**classroom** 166:10
**claustrophobia** 43:8
**cleaning** 112:3
**clear** 43:23 111:22 121:14
**clearly** 31:14 33:22 34:2,25
73:17 78:21
**client** 128:20
**clients** 34:15
**clinical** 164:5
**clipboard** 52:7,8,25 53:2,18
**close** 69:12 92:23 101:20
107:7
**closed** 54:4 64:13 79:21
83:10 87:17 90:10 98:21
101:15,18 124:5 132:14
135:20 155:6

**clue** 51:6
**co-workers** 113:7
**coffee** 129:17
**cold** 113:16,19 126:16
  169:10
**colleague** 17:13,20
**collect** 57:15
**college** 23:4,5,8 25:15,16
  47:9 60:17,25
**colleges** 25:20 60:25 61:5
**color** 108:4
**come** 31:8 32:20 39:16 49:15
  50:22 51:5,23 52:10,14
  61:9 64:3 65:15 68:22 74:5
  76:24 80:20 98:20 103:9,13
  103:18 105:18 113:5
  116:12 119:3,22 123:3
  131:23,24 147:9 151:25
  152:14 159:24 160:16
**comes** 61:21 110:5 163:4,4,8
  163:10 165:18,18
**comfortable** 13:7 20:6
  171:24
**coming** 18:18 25:7 52:3
  78:15 101:18 103:9,9
  164:18 165:3
**commenced** 10:2
**commencement** 56:13
**comment** 83:14 84:21 88:2,6
  88:10 99:6 136:22
**comments** 84:23 85:2,4,8,25
**commission** 55:18,25 173:13
**commit** 28:2 56:7
**committed** 55:24
**common** 51:10
**communicating** 45:15
**communications** 128:20
**comp** 148:12
**complain** 148:17
**complaint** 4:6 29:4,6,18 32:9
  39:22 40:9,16 54:24 58:20
  62:24 64:9 69:10 74:22
  77:10,10,19 78:14 80:21
  83:6 84:22 86:10,23 92:22
  94:3 98:15 106:17 117:3
  121:14 134:12 143:18
  144:22

**complaints** 48:2
**complete** 13:18 137:10
  165:25
**completed** 137:22,24 174:10
**completely** 140:14
**complexion** 108:6
**complied** 124:6
**computer** 144:9
**concern** 12:17,19,20 13:13
**concerning** 94:13
**concluded** 172:19
**conclusion** 56:6
**concrete** 49:18
**condition** 50:13
**conditions** 15:15 43:12 45:24
**conduct** 6:20 8:6,11
**conducted** 7:7 9:6
**conducting** 9:3
**conference** 7:7 8:7 22:24
**confirming** 7:16
**confused** 153:22
**congregate** 119:24 120:7
**connection** 26:15
**consent** 7:19
**consider** 120:19
**considered** 7:20
**consisting** 174:9
**conspiracy** 154:25 155:12
**conspire** 158:24
**conspired** 158:9,15,25
**consumed** 16:22
**Cont'g** 77:4 143:10 154:18
**contact** 20:21 75:9
**contained** 53:2
**continue** 57:5,15 76:13
**continuing** 83:7
**continuously** 84:16
**contraband** 27:11
**control** 7:12
**controlled** 5:24
**conversation** 49:7 99:10
  134:4 152:22,23
**convict** 157:23 158:3
**convicted** 24:25
**conviction** 127:25 130:19
**cooperate** 77:22
**copped** 19:5

**copy** 6:13 7:25 8:8 153:6
  172:7
**CORC** 151:2
**corner** 30:13
**Corporation** 24:12
**correct** 16:16 17:21 42:10
  55:8 63:4 64:14 68:12
  90:12 93:4,5,7,8 94:6,7
  100:9 110:16 124:6,13
  125:8 126:17 127:11 129:3
  132:14 133:8 134:24
  139:16,22 140:24 141:10
  145:3 146:23 152:19
  161:14,15 164:18 165:3
  168:13 169:16 173:5,7
**Corrected** 175:16,18,19,20
  175:21,22,23
**CORRECTION** 2:11
**correctional** 39:12 85:22
  171:10
**corrections** 175:8,11,15
**corroborate** 156:20
**costs** 8:6 9:2
**counsel** 5:4,16,21 6:2,7,12,14
  6:17 7:5,8,10 8:3 174:5
**counseling** 59:12,17 171:16
**counselor** 148:17
**COUNTY** 173:2
**couple** 65:8 89:9 104:7 156:3
  163:9
**course** 94:21 112:6 151:8,10
**courses** 47:10
**coursework** 165:25
**court** 1:2 7:7,16 11:9,10,24
  21:25 128:2 130:21 131:17
  131:20,22 144:11
**Courtroom** 14:3
**cover** 90:5 112:16
**COVID-19** 60:23
**cowered** 30:13
**CPLR** 7:6 8:8,11
**crap** 133:5
**crazy** 162:21
**credit** 60:8
**credits** 25:15 61:6
**cries** 73:21
**crime** 28:2 55:18,24,25 56:4

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

56:7 61:13
**criminal** 19:16,17 127:24
  129:5 157:18
**Crofoot** 34:19 35:8
**cry** 150:9,9
**crying** 26:19
**cube** 81:9 152:2
**cubicle** 80:24 81:25 102:24
  134:23
**cubicles** 62:14,20,22,23 81:6
**current** 24:22 25:24 27:22
  97:7
**currently** 17:3 20:22 23:4
  28:24 131:12
**custody** 40:24 164:18
**cut** 42:5 110:24 123:11
**CV** 11:7
**cycle** 166:13,13

**D**

**d** 3:2,2 4:2 8:11,13
**D.A** 144:14
**D.S.S** 64:10 67:12 87:3
**daily** 165:17,21
**damage** 15:25 41:21 42:2
  48:9 50:3 117:15
**damaged** 44:4
**damages** 117:18 170:12,12
**dark** 107:23
**dash** 53:13,17 55:6
**date** 1:11 19:24 25:8,9,12,13
  56:13 60:6,20 74:20,22
  95:14 152:24 175:3,5,24
**day** 18:20 26:20 63:4 66:16
  75:2,3 82:10,22 92:17
  94:19 111:17 113:5 114:8
  133:11,11 159:14 173:11
**days** 58:14 75:7 175:9,10
**deal** 40:6 113:6
**dealing** 31:22 46:19 50:23
  96:23 127:24 160:15
  167:14
**dealt** 107:18
**Dear** 175:7
**December** 62:25 64:10 74:21
  74:23 75:17 95:14 162:9
  164:9 168:2

**decent** 111:3
**decide** 86:18
**decided** 74:5 130:14
**decision** 55:6,11
**declarations** 67:3
**deemed** 5:22 56:19
**deep** 121:5
**defend** 41:16 123:17
**Defendant** 2:5 19:13 31:23
  50:17
**Defendant's** 33:16
**Defendants** 1:8 11:5 31:14
  33:15 34:18,21 37:3,10,18
  39:3 44:22 46:12 49:22
  50:12,17 51:14 53:6 64:2,6
  79:17 86:18 89:21 92:7
  94:17 97:2 102:5 105:24
  107:2 112:14 115:3 123:14
  155:2 158:9,11,15,19
  160:21 161:10 162:23
  168:24
**defended** 22:7,10 56:2
**defending** 22:14 113:8
**definitely** 45:3
**definitive** 38:14 64:23 66:10
  71:24
**definitively** 108:25
**degree** 23:10,13 24:4,5,8
  25:2
**degrees** 125:12
**deliver** 146:23
**delivered** 175:10
**denied** 140:21 141:5 171:21
**Dental** 21:24
**Dentry** 22:15,15
**dep** 39:9,10 64:20
**department** 103:15
**depict** 93:10
**depicted** 31:14 33:22 34:25
**depicts** 78:21
**deployed** 39:11,12,15 64:14
  65:15
**deployment** 67:14
**Deponent** 175:5
**depose** 92:6
**deposed** 8:9 17:13,16
**deposition** 1:10 7:6,15 8:7,14

8:18,20,21 9:2,3,6 10:2
  15:9 61:17,18,25 64:6
  69:18 75:22,23 77:12,16
  146:9,12 167:17 172:19
  175:5
**depositions** 6:20 77:21
**depression** 43:8 168:10
**describe** 48:11 118:18
  168:15
**Described** 4:4
**designate** 8:16
**desk** 82:14
**destroy** 112:22 116:12
  122:22 152:2
**destroyed** 70:5 72:3,6,8,10
  112:19 113:2 115:12,17,22
  115:24 116:5,7,9 117:4,22
  117:24 118:4,5,7,13,14
  119:16 121:10 122:3,4,4,11
  123:7 125:13 127:10,17,19
  127:25 128:9,21 129:14,15
  129:17 130:10,12 142:16
  142:20,24
**destruction** 130:4
**detailed** 72:20 77:9,10,19
  123:13
**details** 72:25 91:16
**detectives** 97:14
**detector** 113:13 126:22
**determination** 56:12 131:3
**determine** 108:2
**determining** 57:14
**devote** 116:11
**diagnosed** 42:25 43:9,11
**diagnosis** 43:3
**die** 171:20
**difference** 108:5 158:2,4
**different** 18:6 33:24 48:24
  58:3 59:3 62:18 85:17
  93:25 115:4 116:23,24
  121:2,3 146:22 147:20
  148:6 155:17
**difficult** 45:20
**DIN** 10:15 11:7 27:12
**direct** 3:4 10:23 27:9 40:12
  128:14
**directed** 93:2 125:21 127:23

**directing** 85:15
**direction** 93:13
**directly** 35:13
**disability** 18:19 49:2 55:13
   55:16,17 56:13,17 57:10
   58:4
**disabled** 24:13 55:25 56:3,19
   57:8 87:16,16,22 88:4,5
   90:22
**disciplinaries** 27:5
**disciplinary** 89:25 98:6,10
**discovery** 86:16 98:5,8
   114:21 148:12,24
**discussed** 11:3 20:23 21:3
   45:12
**discussing** 19:9
**discussion** 77:6
**dismiss** 146:15
**Disobeying** 27:9
**disorder** 42:24 43:2,8
**disordered** 142:4,10,19,25
**disregarded** 13:2 126:9
**distinguish** 108:7 115:7
**DISTRICT** 1:2,3
**division** 131:2
**divulge** 97:23
**divulging** 67:21
**dizziness** 163:18
**DOCCS** 12:22 13:6 17:16
   18:7,9,18 28:15 32:5 40:24
   46:19 51:5,13 59:17 61:17
   62:3 66:12,15 91:22,24
   96:20 97:6 120:5 121:16
   152:10 164:18 165:3
**doctor** 17:8 167:23,23
**doctor's** 17:4,5
**document** 40:13 52:25 54:25
   55:14 56:16,18 77:14 80:25
   82:7 156:16 157:15,16
   159:18
**documentation** 81:24 82:18
**documents** 52:12 55:2 56:11
   81:19 99:18 138:2,2,3
   142:4,10,15 143:2 149:12
   153:16 158:11 159:7,11,12
   159:21
**doing** 11:12 12:23 18:20

   21:16 23:19 37:11 104:3
   105:9,10 131:6 144:23
   145:7
**dollars** 57:16,17
**don't** 121:22 157:7
**Donner** 129:25,25 130:2
**door** 54:5 74:9,13,15 100:5
   100:17,17,25 101:6,9,13,14
   101:18,20 103:11,20
**door's** 101:18
**doors** 70:20 74:14
**doozy** 46:12
**dorm** 62:14,17,20 79:4 94:13
   94:16,20 99:7 100:15 101:5
   107:10 115:12
**dorms** 94:9,13
**double** 23:9
**drafted** 102:21
**dragged** 70:24 73:18 98:20
   110:24
**dragging** 71:2 73:7,7 74:19
**drawn** 100:22
**drew** 101:7
**drop** 146:22 150:5
**drowsy** 16:4
**drug** 60:13,15 171:11,12
**drugs** 16:23
**due** 117:17
**duly** 174:6
**dumb** 67:22
**dying** 60:21

───────────────
**E**
───────────────
**E** 3:2,2,2 4:2,2
**e-mailed** 8:2
**ear** 44:4,7,19,23 83:17
**earlier** 15:9 47:8 109:20
   145:25 167:16
**early** 25:12,14 42:9
**earned** 25:14 60:8
**ears** 93:23
**earthly** 121:5
**easy** 116:10
**eaten** 162:17
**eating** 45:14
**educate** 122:9
**education** 23:3 24:10 26:21

   105:10 121:8 123:10
**Edward** 1:7 31:25 32:3
**eight** 10:18 16:12 54:23
**eighteen** 94:2
**eighty-five** 161:5 162:11,12
**eighty-four** 161:3
**eighty-seven** 161:5
**Eileen** 18:4
**either** 16:3 97:6 149:17
**elaborate** 155:11
**electronic** 8:15 9:4
**electronically** 8:16
**eleven** 10:4 70:3 76:19,19
   131:18
**elicited** 90:19
**emergency** 65:25
**emotional** 62:8
**ended** 18:23,24
**enemy** 161:22
**engage** 119:17 122:11,18
**enrolled** 25:18,19,19
**ensure** 8:17
**enter** 53:19 96:21
**entered** 76:8 102:25 103:2
**entering** 40:24
**entire** 14:13 50:24 99:17
   167:14 169:12,13
**entirety** 152:11
**entitled** 55:5 57:9 77:24
**entity** 51:13
**Environmental** 24:16
**equation** 31:6
**equipment** 18:19
**errata** 173:7
**escape** 63:2
**escaped** 39:13,14 63:22
   65:14
**escort** 135:18
**escorted** 114:23 135:24
   136:20
**especially** 13:7 35:12 61:13
   122:23
**essentially** 144:20
**et** 1:1,7 2:1 3:1 4:1 5:1 6:1
   7:1 8:1 9:1 10:1 11:1 12:1
   13:1 14:1 15:1 16:1 17:1
   18:1 19:1 20:1 21:1 22:1

23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1 107:1 108:1 109:1 110:1 111:1 112:1 113:1 114:1 115:1 116:1 117:1 118:1 119:1 120:1 121:1 122:1 123:1 124:1 125:1 126:1 127:1 128:1 129:1 130:1 131:1 132:1 133:1 134:1 135:1 136:1 137:1 138:1 139:1 140:1 141:1 142:1 143:1 144:1 145:1 146:1 147:1 148:1 149:1 150:1 151:1 152:1 153:1 154:1 155:1 156:1 157:1 158:1 159:1 160:1 161:1 162:1 163:1 164:1 165:1 166:1 167:1 168:1 169:1 170:1 171:1 172:1 173:1 174:1 175:1,4
**events** 46:19
**everybody** 34:13 68:24 79:6 97:2 157:6
**everybody's** 36:19 44:6 72:10 95:25 110:23
**ex-** 13:7
**exact** 91:16
**exactly** 29:13 90:13 91:12 96:22 121:14 127:17 155:14
**examination** 3:4 5:9,12,17 5:19,21 6:3,9,13,23,25 8:11

10:23
**examined** 5:18
**Examining** 175:6
**exceptions** 173:6
**excessive** 96:10,16
**excuse** 36:5
**exhausts** 147:21
**exhibit** 7:24,25 8:4 29:7
**exhibits** 7:23 8:20 67:6 128:2 142:15 153:14
**exist** 61:21 143:19 146:8 149:19
**existence** 121:3
**expect** 66:15,16
**expedited** 157:22
**experience** 83:24 152:9
**Expires** 173:13
**explain** 59:8 74:25 78:16 100:19
**explained** 165:23
**explains** 72:18
**explanatory** 159:10
**explore** 127:16
**express** 7:19
**extent** 137:4
**eyes** 161:18 162:5
**eyesight** 163:3,12

---
**F**

**F** 3:2
**facade** 105:17
**face** 36:11,15 49:17 79:22 83:15,17,18 85:16,21 87:10 87:11 91:14,18 110:23
**facial** 38:9
**facilities** 59:2
**facility** 26:10 39:17 47:7 58:21 59:3 60:11 63:3,19 63:20 64:4,12,18 65:9,11 65:16,19 70:6,18 71:15 72:11 74:6 89:6,12 94:10 96:21 107:9 109:10,10 113:4 151:15 152:13 171:10
**fact** 11:25 13:18 17:15 35:12 45:8 56:16 93:3 94:19 95:15 134:7 136:13 145:6

152:25
**facts** 75:24
**fail** 175:10
**failed** 25:21 100:8
**failure** 5:10,20 6:24
**fair** 108:9 132:4 147:6 149:13 157:19
**faith** 122:5 123:4
**falling** 160:10,11
**false** 64:25 95:7
**fame** 26:23
**familiar** 41:3,4 89:9 144:2 169:18
**families** 75:10
**far** 33:17 108:13 116:14
**farther** 117:8
**father** 60:23
**favorable** 55:6,11
**fear** 46:16,17,18 117:17 119:18 122:21
**features** 38:15
**February** 130:18,18
**federal** 11:6 21:25 77:11,16 77:20 146:2
**feel** 13:6,15 15:2 16:14 20:6 34:4 171:24
**feeling** 163:21 167:20
**feelings** 163:19
**feet** 42:17 71:3
**fell** 160:7,12
**felony** 28:5,6
**female** 104:10 125:23
**females** 104:6,7,8
**fencing** 54:2
**fifteen** 65:20 78:14 114:9 167:5,6,7,9,12
**fifty** 101:17 115:8
**fifty-one** 143:23
**fight** 26:12,18,19 61:16
**fighting** 56:4
**figure** 30:3,4 132:23
**file** 98:10 144:21 145:7,20,22 146:21,25 148:15 149:22 153:9,10,11,11,12
**filed** 148:8 149:16
**filing** 6:8 145:18 151:5,17
**filled** 138:2

Associated Reporters Int'l., Inc.                    www.courtsteno.com

**filming** 104:3
**financial** 57:14
**find** 41:6 76:24 111:8
**fine** 12:10 20:12 76:15 78:4
**finish** 11:17
**finished** 172:13
**fire** 103:15 166:8
**first** 15:5 26:17,20 27:19,21
  32:6 40:12 49:20 56:2,3,4
  68:23 69:11 76:8 78:19
  79:13 91:14,18 97:7 115:22
  139:3 141:4,5 145:12
  155:11 167:17
**firsthand** 52:15 59:10
**Fishkill** 39:11,16 58:21
  62:13,13 64:12 67:13 68:4
  68:7,11 71:6 119:24 120:15
  152:10 157:3
**Fishkill's** 63:8
**fist** 88:23
**fists** 69:12 79:21
**five** 11:8 21:10,20 25:21
  30:24,24 36:10 40:20 61:5
  62:24 76:14 79:20 83:6
  85:17,21 88:2 99:8 107:6
  115:8 123:23
**fix** 87:25
**fixing** 112:2
**Flanagan** 35:18,22
**flashes** 163:16
**flat** 42:17
**floor** 36:12 70:23 73:8,18
  79:13 85:17,21 87:18
  160:11
**floors** 73:6
**follow** 153:2
**following** 161:6
**foot** 138:22 163:2
**football** 85:21
**force** 48:8 96:10,16 137:11
  137:12
**forced** 123:23
**forceful** 88:21
**forcefully** 79:12
**foregoing** 173:3 174:3,8
**forge** 159:22
**forged** 159:11,12,20,21

160:2,3,4
**forging** 158:11,11 159:7,8
**forgot** 118:10
**form** 5:8 6:21 80:23
**formality** 146:2
**former** 17:20
**forth** 112:6 144:11
**forty** 143:23
**forty-five** 142:2
**Forty-six** 61:5
**forward** 130:6,8 145:12
  146:4
**fought** 41:15,17
**found** 26:16 97:18,18,20
  114:21
**four** 16:20 36:10 60:22 62:24
  99:6 115:8 118:16
**fourteen** 78:20
**Franco** 36:3
**fraud** 160:23
**fraudulating** 160:22
**freedom** 26:22
**freely** 67:22
**freezing** 113:16,17,19
  123:24
**friend** 171:20
**friends** 113:7
**frisk** 126:20
**Frivolous** 27:13
**front** 13:7 35:13 63:10 84:14
  113:14 125:12 126:2
  133:18 138:3 144:11
  152:20
**frustrated** 92:19
**frustrating** 51:9
**fuck** 90:9 93:24 124:4
  126:10
**fucked** 135:19
**fucking** 83:9
**full** 19:18 52:4 138:21
**fully** 11:17 17:10 55:6 56:19
  147:21 165:23
**furnished** 6:14
**further** 5:15,25 6:6,11,16
  7:23 88:3 92:22 117:18
  147:11 165:7,10,12

**G**

**G** 3:2
**G.P.A** 25:21
**gang** 28:22,25 155:18
**garments** 118:24 119:5
**Garrett** 36:18,22
**gate** 63:8,10,14 74:2,9,12
**Gaudiello** 63:2
**gear** 115:9
**gears** 143:12
**general** 2:6 11:4 17:7,8
  29:19 99:2 131:22 175:12
**General's** 22:8,11
**generally** 29:8
**generated** 8:18
**getting** 25:15 40:2 44:15
  55:13 62:6 83:25 88:22
  91:4 92:19 105:24 110:24
  166:25
**Gibbons** 142:5
**give** 11:14 15:12 33:24 39:22
  53:6 56:24 57:3 64:24
  71:24 72:20,25 73:13 84:3
  86:18,19,21 95:7 97:23
  98:9,11 99:19,21 100:20
  145:8 148:9,20,24 150:15
  153:20,22,23 154:3 155:6
  156:21,25 172:4
**given** 29:17 35:14 59:23
  75:23 123:10 141:10
**giving** 20:6 98:12 126:7
  148:25 152:6 174:6
**glass** 54:9 74:15 101:2
**go** 14:5 23:17,23 24:20 32:25
  33:15 41:5 46:17,18 54:19
  54:22 57:13,18,21 59:15
  69:15,23 75:19 76:21,22
  77:24 78:11 81:9 96:20
  103:10 106:2 112:21 113:6
  117:9 120:8 121:16 122:22
  123:3 126:10,11,13,21
  127:19 130:5,8 133:25
  143:4 144:18 149:17
  150:17 154:9,13,24 156:22
  156:24 157:2 160:5 161:11
  161:24 166:9,9 168:4

800-523-7887                                    ARII@courtsteno.com

171:18 172:15
**God** 143:14
**goes** 75:22 100:16 163:4,5,9
163:10 165:18,19
**going** 13:17 14:12 22:23
23:11,12,13 26:24 29:3,5
30:10 31:9 32:11,25 33:15
33:25 34:3,5,16 37:4 38:2
39:21 40:11,19 42:20 52:5
53:5 57:5 61:11 64:22,24
65:3 66:4 69:12,23 75:10
75:19,21 76:4 78:6,8 80:11
81:15 83:19,25 84:2,8
85:18,20 87:12 91:15 92:17
92:20 93:13,21,25 94:17
95:6 97:13 100:8 101:17
103:16,17,18,22 105:18,20
105:21,25 106:2 110:6,25
111:8 112:9,12,12,15,16,16
117:7 123:16 124:24,24
125:2 126:23 127:19
132:13,21,25 133:2,17
143:11,23 144:11 146:7,13
146:14,16 147:8,10 149:7
152:7 153:20 157:16,20
158:14 160:16 162:21
164:15 166:9 168:4,10
170:7,8 171:9 172:6,7,8
**Good** 10:25
**gory** 73:13
**gotten** 46:7 89:25 98:4,5
140:10 165:6
**government** 146:2
**grabbed** 79:9,11
**graduated** 23:25 25:17 61:3
**graphic** 72:20,25 73:13
**Grayish** 31:3
**Great** 78:12
**Green** 89:13
**grievance** 12:25 13:3 61:20
61:21 62:4 142:5 145:2,23
145:24,25 146:7,10,21
147:8 148:6,9,14,16,16,17
148:21,22 149:3,12,14,16
149:22 150:14,15,17
151:17 152:9 153:11 167:3
**grievances** 61:25 143:13

144:21 145:6,19 147:2,6
148:25 149:8,9 151:7
**grieve** 145:10,12,16
**grieved** 167:2,2,6
**grieving** 148:20 149:5
155:21 167:8
**ground** 36:15
**guess** 12:7 13:14 14:18,23
39:14 42:23 44:14 55:11
57:13 67:13 78:5 122:7
**guessing** 58:13
**guidance** 153:11
**guilty** 26:14,16,18
**Guman** 155:7
**guy** 38:6 43:21 49:6 52:16,17
83:18 89:19,20,20,20 105:9
111:10 125:25 155:18,20
155:21 157:6
**guy's** 52:16 93:20
**guys** 30:5,9 34:22,23 69:10
72:11 74:4 98:7 101:17
129:19 157:6

---

**H**

**H** 4:2
**hair** 31:4 33:11 38:9,9
**half** 39:17 61:10 69:2,2,3,4
73:23 74:5 111:25 112:2
113:3,4 114:3 133:14
**hall** 70:24 73:6
**hallway** 143:3
**Halpern** 78:5
**hampered** 122:5
**hand** 10:5,10 42:6,7 146:23
157:22
**handcuffed** 92:25
**handcuffs** 93:3,9,14
**handle** 112:21
**handled** 17:20
**handling** 21:10,18,20
**hands** 34:23 59:10 69:24
87:19 90:10
**Hanley** 36:24 37:6
**happen** 31:9 32:23 49:19
63:19 82:13 115:18,19
123:8 131:9 153:5 172:6
**happened** 12:24 31:5 41:11

44:14 49:3,12,14,20 72:21
73:2,13,22 75:12,17,20
76:7 84:6 94:16 100:7
109:16 112:10,15,23
114:19 118:15 119:20
121:15 123:8 134:24
135:17 141:8 142:6
**happening** 79:20
**happens** 32:5 61:24 123:12
141:23,24 172:3
**hard** 36:12 38:11 44:9 83:17
85:19 108:2
**harder** 146:3,6
**harm** 30:5
**Haven** 89:13
**He'll** 157:7,17
**head** 11:23 18:13 36:9 38:10
69:11 79:13,22 92:4,24
160:11
**heading** 173:4
**health** 24:12 42:23 43:2,23
50:19 51:7,16 52:2 63:8,9
167:18,20,21,24 168:9
170:15
**hear** 14:8 47:15 75:16 78:23
124:20 141:12 149:23
160:7 165:8
**heard** 14:13 59:5 70:23
72:17 73:21,21,22 134:7
140:16
**hearing** 13:5 44:3,9,25 45:6
45:9 103:21 114:20 149:17
**heart** 52:17 133:5
**heavenly** 121:4
**heavy** 30:25
**held** 104:17
**Hell** 127:3
**helmet** 38:12
**helmets** 115:9
**help** 46:25 60:3 73:22 139:21
139:23 147:8,12,13 150:16
171:14 172:4
**helped** 130:10
**helping** 60:4 62:9
**hereof** 173:4 174:6
**hereto** 5:4,17 6:3,8,13,18
174:5

Associated Reporters Int'l., Inc.                        www.courtsteno.com

hide 66:11
high 23:20,23 24:3,4,5,7
highest 23:2
highly 122:25 157:20
hill 107:24
hinders 46:22
hired 59:12,13
Hispanic 94:4 95:23
Hispanics 94:15
history 24:21 48:20 50:19,24
    98:6
hit 44:18 88:20,22 160:10
hold 66:21 79:11 100:20
holding 22:6 104:14,16,22
    104:23
holds 65:19
holistic 43:25
holy 118:23
home 57:13,18,22 58:15 60:7
    60:18
homework 66:13
honest 44:13 56:6 59:24
    69:14 92:20 111:2
honestly 25:9 28:19 58:17
    83:15 88:18 107:22 112:10
honoring 18:18
hope 25:18 61:2,2 123:16,16
    131:8
hopefully 26:21 132:5
hoping 77:21
hospital 24:12 152:20
hospitals 133:15
hours 15:21 16:20,23 57:12
    116:5 121:7 123:24 126:17
    134:22 162:18 166:8,10,18
    166:19,24 167:2,10 169:4
    169:10
house 99:15,17 103:23,23
    112:20,21,21,22,25 113:6
    114:3
housed 95:11
houses 105:16
housing 30:3,8 52:5 53:13,14
    53:16 62:14,19 66:2 68:23
    70:3,4,8,17 73:16,17 74:8,9
    76:9 78:15 82:21 94:9,20
    95:11 100:19 101:10,14

103:2 104:10 109:23
    110:25 113:24,25 115:12
    115:20 116:15,18,21
    132:10 133:9 134:2 142:3
    155:15
human 84:3
hundred 43:22 57:16,16
    65:16,20 66:7,17 83:11
    92:14 98:22 162:12
hurt 66:16,24 69:25 160:13

## I

I.C.U 135:19,20
I.D 89:2 90:8 93:2
I.G.R.C 150:25 152:13
I.I 98:2
I.I.'s 70:5 95:15
I.I.s 70:8 90:11,24 94:4,5,19
    95:5,10,22 114:24 155:3
    156:10
I'll 128:8
ice 36:14
idea 61:24 95:6
identification 87:20
identified 106:18,19
identify 35:5,12 36:8 81:9,17
    108:16,20
identifying 80:17
identities 80:3,5 86:15,17
identity 7:17 97:25 104:2
idle 87:21
ignored 124:2 140:14
illness 17:4
imaginable 149:25
imaginary 143:17
immediate 35:16
immediately 69:2 157:22
impact 45:13 121:11 130:4
impacted 45:23 165:21,24
impairment 44:3,8,25
implemented 146:2
important 11:13,21,25 60:13
    60:14 114:20 148:15
impossible 145:8
improbable 157:20
improperly 67:13
inaccurate 15:10

incarcerated 25:25 27:2
    54:19 56:23 71:12 98:2
    170:2
incarceration 24:21,22
    25:24 26:4,11,16 27:23
    28:10,21 50:14 97:6,7
inch 114:19
incident 31:10,16 46:5 48:14
    48:22 53:11 55:22,22 97:5
    102:18,20 134:15 140:4
    160:4 162:3,15 168:2
    169:13,14
incidents 50:9
included 79:22 115:13
including 5:7 6:20 72:11
    106:6 113:11 117:4 127:25
    149:10 155:3,6 169:12,12
inclusive 174:10
incomplete 15:10
Index 1:6 175:4
Indian 30:20,21
individual 41:15 98:2 104:5
individually 34:14 52:23
    114:11 150:18
individuals 32:20 35:15,17
    54:19 71:14,19 81:17 99:20
    105:6
information 67:22,23 81:5,7
    81:14,25 86:19,20,21 93:18
    97:24 98:5,11,13 130:9
    146:18 147:17 153:20
    154:4 157:21 158:10 159:2
    160:23
informed 55:24
infringed 117:16
injured 65:16 66:7 70:10
    138:8 159:13 160:6 165:7
    165:11,12,12
injuries 40:23 41:6 48:20
    160:25 161:10 165:20
    166:6,11
injury 42:15 48:17,18 56:8
    137:15 159:12,13,14,17
inmate 27:10 52:5,7 61:4
    62:25 63:14 65:22 96:12,17
    97:12 113:3 158:3
inmates 52:13 65:16,20 66:7

66:21 67:23 72:9 73:7,18
73:20 74:19 86:11 94:10
96:11 97:8 99:13 134:5
142:6 155:15,16
**inmates'** 86:23
**innocence** 130:11
**innocent** 26:20 61:13
**inside** 53:20 80:5 94:25
134:12 149:3
**installation** 48:10
**installed** 50:4
**institution** 62:18
**insurrection** 65:15
**Int'l** 174:11
**intent** 68:10,20 77:14
**intentions** 68:23 69:13
**interacting** 47:10
**interaction** 125:5
**interfere** 15:16
**interferes** 45:25
**International** 7:12 175:2
**internet** 20:7
**intervene** 36:6
**intervening** 37:12
**intestine** 41:8
**investigate** 104:21 138:11
148:9,18 150:15
**investigation** 32:22 96:11
107:7 149:4,9
**investigations** 61:22
**investigator** 33:8 34:10
104:3
**investigators** 104:10
**involve** 47:10 49:21
**involved** 27:22 29:21 30:10
30:14 35:17 41:13 79:17
85:14 107:25 130:24
157:10 158:13 164:3
**Islam** 120:18
**Island** 59:5,6
**issue** 12:25 18:6,12 29:22
53:12 55:20 57:18 63:9
115:17 146:14 147:10
**issued** 55:11
**issues** 15:15 18:17 42:24
43:19 44:7 45:12 46:7,15
51:16,25 52:2,2 144:21

145:2 164:11,14,17,23
167:21
**it'll** 118:20,21,22
**it's** 40:14 170:9
**item** 27:12
**items** 117:3,5,19,21,23
119:16 122:10,19,21 127:9
127:18,23 128:20,24 129:7
129:14 130:11

---

**J**

**J** 2:11
**jail** 59:9,10 62:15,16,17,18
63:8 89:9,16 105:2,3 113:5
120:18 123:15 136:13,17
150:2
**Jan** 37:23 38:5
**January** 24:23 74:24 130:17
**Jason** 34:19 135:14
**jaw** 48:9,11,13,17,18 49:6,10
49:11,16,18 50:3,4
**Jean** 37:16,16
**Jesus** 117:5
**job** 51:17,23,24 97:15 104:20
140:3,7 147:9,11,12,18
**jobs** 105:15 111:6
**joint** 163:20
**Jonathan** 36:3
**judge** 55:12,19 56:5 78:5
130:20,21 131:5,12,12,13
131:16,17,23,24,25
**judges** 131:11
**judgment** 146:16
**Julian** 157:3,4,5
**jump** 30:9 133:22
**jumped** 99:7
**jury** 26:16
**justified** 65:5,7

---

**K**

**K** 21:12
**Kavanagh** 131:23
**keep** 11:13 87:19 92:17
**kid** 63:5,9 73:25
**killed** 41:16 98:3
**kind** 17:4,17 19:10 24:9
25:11 27:2 28:21,25 31:9

31:22 36:12,13 43:18,20
44:12 46:22 51:8 54:2
55:12 56:21 72:7,18 83:17
101:16 105:5 119:25
122:12 126:19 127:2
136:24 137:10,11 138:14
153:2,21 156:16
**kinds** 72:5
**kiosks** 75:9
**knew** 31:9,10 79:20 100:8
103:22 109:15 137:4
**knocked** 73:8
**Knoer** 21:6,8,11,12,15 61:20
**know** 12:5 13:10 14:8,17,18
15:3,11 22:13,17 26:18
27:6 29:21 31:3,4,4 32:6
35:10 36:7 38:15 40:25
42:15 44:14,21 45:20 46:2
50:18,23 51:2,8,15,17,23
51:24 52:10,12,18,19,20
53:7,9 60:21,22,23 64:17
65:24 66:8 67:9,19,20
68:14,16,17,21 69:13 70:17
72:24 74:18 75:14,15,22
76:14,17 77:8 78:3 81:11
81:13,13 82:2,23,24,24,25
84:14 86:2 87:5,9 88:17,22
89:3,15,21 93:16,16,17,17
93:18,22,22,23,24 95:7,8
95:10 96:15,21,22 97:11,19
97:19,25 100:18 101:22
102:12 103:25 104:2,15,16
104:22,25 105:13,14
106:10,12,20,20 107:3,14
107:15,21,21,22 108:12,14
108:15 109:5,5,6,9,10,12
109:13,14,19,21 110:6,18
111:3 116:7,9 119:3,7
120:24 121:3,4,12,24 123:8
123:10,12 124:8 125:20,21
125:21 129:8,11,18,18,19
130:3,20,21 131:9,10,17,22
131:23 136:25,25 137:11
137:20 138:19,21 139:8,12
143:25 144:15 146:6,15,16
146:17,21 148:2,10,15
149:3 150:7 152:5 154:2,3

Associated Reporters Int'l., Inc.                          www.courtsteno.com

154:21 156:20 157:23,23 157:24,25,25 160:6,15 161:8 163:16 167:16 168:6
**knowing** 121:21
**knowledge** 52:4,15 71:12
**known** 19:21 96:9,16
**knows** 97:2 105:8,9 136:20 136:24
**KSAT** 171:11

**L**

**lacerations** 92:24
**lady** 125:23,24,24
**Land** 169:23,24
**laptop** 13:5
**larger** 74:22
**lasted** 86:6
**Latin** 33:11
**law** 5:7,23 6:4,19 7:20 23:17 47:24 55:12,19 56:5 68:25 105:17 128:2 169:22
**lawsuit** 19:10,13,16 21:19 36:6 121:10 157:17
**lawsuits** 150:5
**lawyer** 21:9 128:12,13,16
**laying** 110:5
**layout** 100:18
**leads** 74:9
**learn** 96:19
**leave** 20:11 75:4 80:23,25 81:5,14,24 113:3 171:25 172:2
**leaving** 25:9
**led** 96:5 107:5
**left** 42:3,6 44:10 81:19 93:19 94:6 111:15,23,24 112:5 113:2,3 114:4,5 118:15 133:11,15 162:25 163:20
**leg** 163:18,21 164:21
**legal** 19:18 127:15,16 128:3 129:20 130:4 142:4,10
**legs** 79:23
**lesser** 120:20
**let's** 13:16 29:8 59:24 64:19 76:21,22 78:11 92:8,11 141:19 143:4,20 144:17 148:15,16 154:6,24 156:25

172:15
**letter** 123:13 139:3 153:3,6
**level** 23:2
**levels** 121:3
**liable** 97:20
**liar** 167:12
**liars** 167:15
**liberty** 2:8 61:12 170:15 175:13
**library** 47:24
**lie** 66:11 71:25 109:2,3 112:16
**lies** 167:15
**lieutenant** 107:9 134:23 135:3 136:16,17
**lieutenants** 87:8 106:7 108:11
**life** 17:18 45:13,23 46:13 57:8 112:7 162:5 165:21 166:15
**lifetime** 57:9
**lifted** 69:11 79:12 87:18
**lifting** 45:15
**light** 107:23 163:16
**likes** 155:21,22
**limit** 152:4,6
**limited** 60:8 152:9
**limping** 114:16
**line** 76:5 78:20
**list** 17:15 32:6 40:23 41:5 155:3,6,15,16,17,18,20,21 155:23,25 156:5,6,7,13,15 161:10 163:23,25
**listed** 80:21
**listen** 13:12 121:15 122:21 122:24 162:4 167:4 171:14
**listening** 166:10
**listing** 39:24 134:18 157:13
**litigation** 7:21 8:10 62:5 145:11
**little** 11:14 31:2 35:9 51:9 136:21 143:12 144:9 146:20 162:19 171:13,19
**live** 26:8
**living** 70:5
**located** 47:21,23
**location** 7:10

**locations** 7:9
**lock** 27:10
**lockdown** 63:3,19,20,25 64:13,19
**locked** 59:4
**locking** 64:24
**log** 52:11 81:21
**logbook** 52:11 81:22
**long** 12:23 18:25,25 20:16,16 33:11 42:19 83:21 86:5 116:15 160:15 166:16,16 166:24
**longer** 14:22 67:13 171:13 171:20,24
**look** 30:19 35:8 40:21,25 43:13 50:16 52:12 70:22,22 74:15 77:19 83:17 90:10 117:11 118:19 143:24 145:3 154:21,22 161:6 168:10
**looked** 36:7 70:25 114:15
**looking** 33:11 56:11 71:10 117:6 123:22 132:8 140:13 157:18 158:3 161:2
**looks** 30:17,20,21 31:18 33:8 34:10 35:4,22 36:22 37:6 37:14,21 38:5,20 39:5 55:2 55:7,10 100:23 108:23
**loss** 161:13,25 162:9 170:15
**lost** 60:20,23 162:9,14,14
**lot** 23:19 33:14 34:12,17 66:4 71:8 73:11 87:7 89:18 91:24 107:2 118:11,11 128:5 131:10 163:24 164:17,22
**lower** 23:25 42:13 48:9 50:3
**lying** 79:4
**Lyrica** 15:25 16:5

**M**

**M.A.T** 171:15,17
**Maginn** 155:7
**mailbox** 146:23
**main** 65:8 157:5
**maintained** 53:18
**major** 45:23 46:13 120:17
**majoring** 23:13

**majority** 80:12
**making** 164:4
**malicious** 68:12,18,20 69:5 69:13
**maliciously** 70:9
**man** 31:3,19 35:9 36:11 104:5 105:18 118:10,14 123:17 127:7 145:23 158:2
**man's** 97:2 122:22
**management** 16:2
**manhandle** 68:24
**manhandled** 39:17 114:17 142:25
**Manhattan** 24:2
**manner** 7:18
**Marc** 37:16
**March** 55:7,7
**marital** 20:13
**marked** 4:3 7:24
**married** 20:15
**materials** 130:4 174:11
**Matos** 37:8,14
**matter** 17:14 19:17 22:7,10 134:7 136:13
**matters** 8:10
**mean** 13:2 25:12 29:11,18 31:15 33:10 34:12 36:10 37:25 42:14 45:25 46:4 48:21 51:7 53:23 54:8,13 57:17 58:13,24 59:8 65:5 67:2 70:13,14 73:10 74:25 88:17 91:12 97:22 101:19 108:20 111:3 115:21 118:13,14 119:3 120:16 121:24 126:22,22 128:5 129:15 130:7 131:3,21 134:12 139:24 141:20 142:19,20 146:8 150:12 158:12 163:12 168:10 170:22
**meaning** 130:5 133:17
**means** 8:15 9:4,6 45:13 90:2
**med** 159:25
**medical** 18:17,19 29:17 43:14 50:12,19 51:7,15,25 52:9 56:25 57:10 65:21,21 66:18,20,20,21 73:9 87:21

94:5 123:25 124:5,13 125:7 125:17,25 132:12,25 133:24,24 135:14,14,24 136:7,12,20 137:8 138:3,21 138:23 139:16 140:8 158:11 159:8,12,25 160:3,5 160:9 164:10,16 168:4
**Medicare** 57:20,24 58:8
**medication** 15:19 18:19 43:19,21 52:17,17 59:23 76:13 167:18,20,24
**medications** 15:23 16:4,18 43:23
**meeting** 7:11 22:23
**member** 28:21,24 122:8 155:18
**members** 71:6 73:19 74:19 76:8 84:23 88:12 91:21 106:5,5 109:23 111:15 114:25 115:5 155:5
**mental** 15:15 42:23 43:2,23 50:19 51:7,15 52:2 62:18 63:8,9 162:20,25 167:18,19 167:21,24 168:9 170:15
**mentally** 27:10 63:14 162:4 162:22
**mention** 118:17
**mentioned** 17:12 41:7,20 42:8,16,23 44:2 117:2,25 162:8,24 163:17
**mercy** 31:20
**merely** 83:2
**mess** 70:24 73:5
**messed** 44:4,23 74:2,4 99:8 129:21 133:16 137:8 142:21 162:5,22
**messing** 163:15
**met** 147:20
**metal** 48:10 49:6,9,11,16 50:4 113:13 126:22
**method** 32:14
**Michael** 31:11
**microbiology** 23:14
**Microsoft** 1:13
**microwaves** 72:12
**middle** 99:7 101:4 117:14
**migraines** 163:2,3,7

**military** 24:18
**mind** 11:13 61:10 170:18,23
**mine** 17:13 113:5 171:20
**minions** 86:3
**minute** 48:12,12 53:19 76:22 116:17
**minutes** 83:7 87:15 88:2,4,10 128:2
**mirror** 54:9
**misbehavior** 27:3
**missing** 138:14 140:8,9,9,10
**misspeak** 106:23
**misspoken** 76:3
**mistaken** 38:22
**mix** 34:5
**Mohammad** 29:23
**money** 26:23
**Monthly** 165:17
**months** 28:2
**morning** 10:25
**Morres** 106:6,6,9,13 107:8 107:14 108:22 109:11
**mortgages** 105:16
**mother's** 60:21,22
**motherfucker** 155:5
**motherfuckers** 98:17
**motion** 5:13 7:2 146:15
**mouth** 92:24 160:16
**move** 5:8,11 6:22,24 96:18 134:20 145:11 146:3 157:24
**moved** 82:24
**moving** 64:8,8 90:7 92:16 100:2 109:17 113:9 140:17
**Mukkatt** 141:22
**multiple** 41:15 60:25 86:23 87:11 92:24 137:25 142:6
**murder** 103:16
**murdered** 97:10,11,12,21
**murderer** 97:3
**murdering** 96:12
**muscle** 42:6

---

**N**

**N** 3:2,2 4:2
**N.Y.U** 23:6 25:19 47:12,16 61:2

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

**naked** 125:12
**name** 10:11 11:3 18:5 19:19
   19:22 22:13 32:6 36:19
   52:25 68:3,6 80:9,25 81:2
   93:11,17,20,23 99:20
   108:17 118:9 129:22 135:6
   138:20,21 139:4,7 155:17
   156:11 157:12 175:4
**named** 33:5 62:25 102:6
   106:6 144:23
**names** 34:25 35:14,15 71:18
   71:21 96:20 99:19,21 111:5
   151:18,19 155:7,16 156:8
   156:19,22 157:13
**near** 110:13
**necessarily** 32:10
**necessary** 43:22
**neck** 42:13 79:12 163:17
   164:21 165:2
**need** 7:14 11:13 12:9 15:3
   27:6 45:5 52:18 58:11
   76:25 101:22 112:11,14
   121:9,12 124:5 147:17
   154:9 163:25 171:8,19,22
**needed** 40:2,3 60:14
**needs** 52:16,17
**Neil** 2:7 11:3 13:3 32:7 35:5
   38:3 60:20 98:7 175:6,13
**nerve** 15:25 41:21 42:2
**nervous** 163:21 167:20
**never** 12:21 25:21 60:13
   72:13,17 75:4 86:17 90:2
   104:25 105:2 109:16
   110:15 112:7 147:5
**new** 1:3 2:6,9,9 11:5 18:5,16
   18:16 20:3 24:11 26:5,6,6
   41:19 96:18 131:11,19
   175:12,14,14
**NIAC** 25:18
**night** 16:9,10 162:6
**nine** 10:18 27:25 53:13,17
   67:11 95:18
**nine-one** 62:20 69:3 73:3
   113:25 116:21
**nineteen** 96:3,4
**ninety** 58:14
**nod** 11:23

**Nope** 95:24 141:16 164:19
**normally** 84:2
**nose** 92:24
**notary** 5:18,19 173:12 175:9
**noted** 12:17 173:4,6
**notes** 128:3
**notice** 55:5 76:8
**notwithstanding** 8:7
**novel** 116:11
**number** 11:8 20:5 27:12
   40:23 42:23 54:25,25 55:2
   66:8,9,10 78:20 81:3,18
   92:14 95:7 96:11 117:3
   127:9,18,23 145:8 150:16
   170:17,19,20,22 174:9
   175:4
**numbers** 22:24 65:17 80:17
   80:20 95:4
**numbness** 41:23 42:3 163:19
**nurse** 139:16 141:17,18,19
   141:21,21,23 160:6

---
### O

**O** 3:2,2
**o'clock** 133:8
**O.S.I** 32:18,19,21 38:22 87:7
   97:21 100:2,4,14 101:21
   102:4,13,22 103:10,10
   104:2,9,16,19,24 107:6
   109:12 114:10 125:18,23
**oath** 7:13 8:25 13:22 14:4
**object** 5:7,10 6:21,24
**obligation** 8:8
**observe** 121:11
**obviously** 132:18
**occurred** 31:10 48:14,22
   50:9 55:17 56:4 65:10 75:3
   76:2 83:25 86:24 102:14
   134:16
**occurrence** 165:17
**October** 1:11 130:17
**offender** 28:5,6
**offer** 22:21
**office** 2:6 22:8,11,14 30:13
   32:21 52:6 53:24 54:3,4,7
   54:14,17,18 64:4,19 107:7
   175:12

**officer** 2:11 7:13 8:24 13:8
   29:25 30:8 35:4,8 36:22
   37:14 47:23 54:15 79:8
   81:24 87:20 88:25 90:8,15
   90:17 93:2 100:6 102:11,12
   104:16,21,24 105:8,11
   109:19 110:5,7,7,20 111:2
   111:2,3,23,23,24 121:16
   123:11 124:9,22 132:11
   134:4 135:25 136:4,4,8,10
   136:12 138:8,17,18,20
   139:2 142:5 156:24,25
   157:3
**officer's** 51:24 53:20,21,23
   101:10
**officers** 47:10,17,21 49:17
   59:10 67:21,25 71:2 79:21
   80:3,23,24 81:4,8 82:3 83:8
   85:15,17,22 89:6,7,7,8,10
   89:11,12 91:6 93:16,16,22
   99:8 109:15 114:25 124:3
   126:20 138:23 151:14
   156:21,21
**official** 121:16
**officially** 42:25
**officials** 39:18 46:18 54:21
   59:17 62:3,9 105:3,4
   124:17 151:12
**officials'** 60:12
**Oge** 37:17,21
**oh** 21:13 23:18 39:9,23 53:3
   73:24 75:8 127:7 143:14
   145:23 156:6 158:14
   167:11 169:24 172:14
**okay** 10:21 11:19,21 12:2,4,7
   12:8,9,14,15,16 13:4,19,20
   13:21 14:2,7,9,10,11,16,16
   14:20 15:2,6,8,12,13,14,23
   16:3,7,13,13,18,22 17:3,9
   17:12,19,23 18:2,7,9,11,14
   18:22 19:8,12,18,21,24
   20:2,8,11,17,19,23 21:11
   21:18,22 22:3,13,17,20
   23:2,5,7,10,15,15,20 24:7
   24:14,17,20,24 25:23 26:9
   26:14,25,25 27:7,17,20
   28:16 29:11,15,23 30:16,21

800-523-7887                                         ARII@courtsteno.com

Associated Reporters Int'l., Inc.    www.courtsteno.com

30:25 31:11,21,25,25 32:15 32:16,16,24 33:7,12,12,18 34:6,9,19,24 35:3,7,18,21 36:21,24 37:5,8,13,16,20 37:23 38:4,7,13,16,19,25 39:4,7,21,23 40:4,7,8,11,15 40:19 41:4,10,20 42:2,8,12 42:16,19,22 43:6,10,15,24 44:2,6,11,17,20 45:4,8,11 45:18,22 46:3,13 47:2,14 47:18,21 48:7 49:4,12,21 49:25 50:10,10,16,25 51:4 52:21 53:8,10,16,22,25 54:6,11,16,18,23 55:10 56:6,10,15 57:2,19,23 58:2 58:6,12,19,20 59:7 62:19 62:23 63:6,23 64:8,8,16 65:2 66:23 67:10,17,24 68:4,7,9,9,14 69:7,17,20 70:2,2,12 71:4 72:2,24 73:3 73:15 74:7,12,17 75:5,13 76:11,21,23 78:12,12,22,22 79:3,7,16,19 80:2,7,10,14 80:19 81:16,21 82:6,9,12 82:19 83:5,13,21 84:18 85:11,13 86:5,9,14,25 87:14 88:9,12,24 89:4,17 89:23 90:4,14,18,23 91:6 91:14,20 92:2,9,10,13,16 92:18,19,21 93:8,12 94:2,8 94:18 95:3,10,19 96:2,5,6 96:15 97:4,10,16,25 98:14 98:24 99:3,13,23 100:2,11 100:21 101:13,19 102:3,7 102:10,15,21 103:14 104:9 104:13,18 105:19 106:12 107:4,12 108:9,19 109:3,17 110:2,10,14,18,18 111:13 113:9,21 114:23 115:10,16 115:23 116:4,19 117:2 118:12,20 120:5,14 122:4 123:18,21,22 124:8,11 125:10,16,20 126:8,12,19 127:6,8,14,22 128:7,10,15 128:17 129:6,10,13 130:3 130:13,22 131:7 132:2,7,16 132:18 133:7 134:10,20

135:2,5,10,12,23 136:15,18 136:23 137:6,17,21 138:15 139:2,6,9,14,18,20 140:18 140:23 141:2,7,9,14,17,25 141:25 142:9,23 143:4 144:4,7,12 145:13 146:25 147:4,9 148:21 149:21 150:19,22,24 151:16 152:15,21,25 153:5,18,25 153:25 154:5,13,19,23,25 155:10 156:4,7,12,15,23 157:8 158:5,6,8,23 159:4 159:23 160:17,20 161:4,8,9 161:12,17,20,23 162:8,24 163:11,17 164:6,8,13,17,24 165:2,5,13,16,24 166:12,14 168:7,12,12,15,23 169:15 169:24 170:4,11,25,25 172:6,10,12,16,17

**Okusko** 37:23 38:5
**old's** 20:19
**older** 31:3 44:15
**once** 12:13,13 37:2 40:25 57:5 58:8 76:24 109:8 115:19 119:15 122:9,10,10
**ones** 32:22 35:17 46:10,25 102:6 120:18 134:6 156:25
**ongoing** 18:24
**open** 54:2 62:16 101:15,16 101:21 166:25 167:5,6,7
**opened** 113:15 167:11
**opening** 167:8
**operate** 83:3
**operations** 83:4
**opportunity** 33:5 37:4
**opposed** 64:19
**opposite** 123:8
**orchestrated** 31:16
**order** 27:9 64:10 68:25 120:6
**ordered** 87:19 113:11,13,14
**original** 5:21 6:9
**outcome** 72:13 150:20
**Outreach** 24:2
**outside** 32:8,9,19 54:14 87:6 100:5,15,17 101:22 102:23 107:10 110:3 116:17

158:17

---
---
**P**

**P** 3:2
**P-H** 10:14
**p.m** 1:12 143:6,7 154:15,16 167:5 172:20
**pa** 149:7,7,7,7,7
**package** 152:3,3
**packed** 75:3
**packet** 137:11
**page** 48:2 50:11 58:19 67:11 174:5
**pages** 40:20,20 54:23 174:9
**pain** 16:2 41:23 42:3,13,13 42:17 123:25 163:18,18,18 163:18,20 164:20,21,21 165:2,3 170:14
**paintings** 119:3
**Pamela** 22:15
**panel** 131:23
**pans** 72:12
**paper** 43:4 59:12,13 75:15 156:18
**papers** 142:21,25
**paperwork** 31:15 32:11,12 33:2 95:8
**paragraph** 64:9 67:10 68:9 70:3 87:14 88:3 90:7 92:21 94:2 96:2 98:15 100:3 106:3 107:4 109:18 113:9 113:18 115:11 117:6 127:8 127:17,19,23 132:8 135:11 139:15 140:19 142:2 144:16 154:6,19 158:5,8
**paragraphs** 62:24 78:13 134:21 143:22 144:20 152:18 161:2,9
**paren** 107:6,7
**parentheses** 107:6
**parole** 27:15,23
**paroled** 25:6
**part** 6:19 26:10 28:10 31:6 33:3 34:21,22,22 35:15 36:6 42:5 49:5 58:2 81:8 119:10 128:11 130:11 137:12 145:10 146:13,14

800-523-7887    ARII@courtsteno.com

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

146:17,17 148:6 153:13 157:11
**participate** 8:15
**participating** 7:11
**particular** 106:19 158:20
**parties** 5:4,16 6:2,7,12,17 7:5,19 8:5,13,24 175:10
**parts** 70:18
**party** 8:9,9,15 9:5
**pass** 113:13
**passionate** 61:14 62:6 84:5
**pay** 59:14
**payments** 56:17 57:6
**pending** 12:12 15:5 130:15
**people** 20:9 34:12 36:14 46:24 50:22 51:18 59:19,21 60:2,20 61:11 62:10 66:15 66:24 73:9,12 77:13 87:7 93:24 101:21 102:9 104:25 105:14,21 107:3,25 108:6 109:8,12 111:24 112:9,18 112:19,25 113:8 115:8 116:12,12 123:17 125:19 133:19 134:14,18,19 138:24 150:23 152:4 155:21 158:3 161:19 162:4
**people's** 51:6
**percent** 43:22 83:11 98:22
**perfectly** 79:15
**perform** 46:15
**period** 25:24 27:22 28:10,20 71:7 75:6 133:12
**periods** 26:15
**permanent** 42:3 48:10 50:4
**permit** 77:11,16
**persistent** 28:5
**person** 31:3 33:2 35:6 43:9 43:25 51:25,25 94:15 104:22 107:16,16,21 112:9 114:14 120:3 132:4 148:18 148:20,21 149:5
**personal** 84:9 89:14 115:13 142:3
**personally** 34:16 97:9 108:15 124:23 159:15
**personnel** 12:22 13:6 32:19 46:20 47:13,16 52:3 98:9

100:4,15 102:13,22 147:8 152:14
**Persons** 170:2
**pertaining** 144:21
**phenomenal** 27:6
**phones** 75:8
**phonetic** 121:19 134:9 139:8 141:22
**phrase** 175:16,17,18,19,20 175:21,22
**physical** 7:10 15:15 59:10 104:4 115:18
**physically** 8:21,25 12:22 30:6,17 31:18 33:9 34:11 68:24 73:7 74:5 83:19 107:11
**pick** 76:13
**picture** 36:23 37:22 38:24 100:23 101:7 121:18
**pictures** 122:3 128:2 137:12 137:14 138:12,16,24,25 139:10 140:9,20,24 141:3,4 141:4
**piece** 48:10 49:9,16 156:18
**pipe** 88:20,22
**place** 7:14 9:2 54:19 82:16 87:2 90:25 100:6 152:22 173:4 174:4
**placed** 28:9,13,14 63:3 64:12
**plaintiff** 1:5 2:3 19:9 50:2
**Plaintiff's** 50:4 158:15
**plan** 64:6
**planes** 121:2
**plastic** 54:9,9
**plead** 26:14
**pleaded** 26:17
**please** 10:11,16 14:8 71:23 106:21 124:25,25 160:23 173:5 175:8,9
**plummeted** 36:12,16 85:17 87:10 101:24
**pluses** 25:22
**point** 12:10 13:15 15:8 23:15 25:21 26:10 73:16 79:4 82:6 130:13 132:9 137:9 140:24 144:25 152:19
**Points** 21:10,21

**pole** 39:19
**policeman** 112:20
**politics** 23:18 105:24 131:24
**population** 39:16 113:3
**Portions** 41:9,10
**position** 67:12 78:2,4
**positive** 59:20
**possession** 8:3 129:7
**possible** 116:20 147:3 150:4
**possibly** 21:5,8 35:12 36:8 108:18
**pots** 72:12
**pounds** 162:13
**power** 152:5,5
**practically** 148:3
**practice** 5:7,23 6:4,19 117:16 119:21
**practitioner** 43:2
**pray** 119:10
**praying** 123:7
**pre-** 22:22
**pre-college** 25:17
**prepared** 174:10
**prescribed** 167:23
**prescription** 15:20
**presence** 78:19 137:22 174:4 175:8
**present** 2:10 7:5 8:21,25 11:9 20:10 30:2 37:19 46:20 87:3 91:22,25 94:19 99:20 107:10 111:19 115:23 134:3 136:4
**presented** 8:2
**presenting** 7:24
**pressure** 52:16
**prevent** 145:18 151:4,17
**preventing** 166:7
**previously** 17:14
**priest** 121:19
**primary** 141:21
**print** 40:2
**prior** 8:3 12:24 28:20 31:21 40:24 50:8 80:22 130:9 164:18
**prison** 41:18 59:24 60:8 62:4 63:13 73:23 105:5,7 144:10 152:13 162:12

**prison's** 145:11
**prisoner** 58:10 83:3
**prisoner's** 115:13
**prisoners** 70:10 113:10,22
  113:24 146:3
**prisons** 105:4
**private** 70:6
**privilege** 53:7,9 98:10
**pro** 2:4 40:17
**probably** 44:21 61:4 78:6
**probation** 27:15
**problem** 39:25 60:2 144:9
**procedure** 103:13 147:24
**proceed** 158:10 159:2
**process** 23:8 63:18 77:22
  148:7 149:14 152:9
**professional** 76:5 164:3,4
**professionals** 43:4
**program** 60:13,15 70:4
  87:21 171:11,12,15,17,19
**programs** 171:11
**prompted** 110:19
**pronounce** 106:9
**proper** 29:17 59:23 75:23
**property** 70:6,6 72:3,6,7
  115:13,17 116:5 142:3
  152:2
**protect** 100:8
**Protestant** 118:9 120:13,15
  120:21 122:25
**Proud** 40:18
**prove** 26:22 130:11
**provide** 8:22 99:18
**provided** 5:6,22 6:4,18
  134:14 153:16 174:12
**provider** 141:21 167:19
**provisions** 8:17,19,22
**psychiatric** 50:13
**public** 5:18,19 173:12 175:9
**pull** 29:6 143:16 154:20
**punish** 59:25
**punishing** 60:3
**purpose** 7:21 46:23
**purposely** 113:15
**purposes** 6:4 121:10
**pursuant** 7:6
**put** 10:10 13:16 34:7,23 43:4

60:13,15,19 63:18,20 64:18
  69:24 75:15 77:13 80:5
  91:12 93:11 95:8 111:4
  112:13 114:13 120:11
  121:13 133:15 135:6
  161:19 165:22 170:14
  171:7 172:2,4,5
**puts** 63:25 160:6
**putting** 60:17 65:25

**Q**

**quarters** 70:5
**question** 5:8,11 6:21,24 8:5
  11:17 12:5,6,12,13 14:8,13
  14:17,22 15:4 33:21,23,25
  34:14 58:6 64:17 67:18
  68:17 78:3 81:12 84:16
  92:6 95:14 100:16 107:12
  122:9,10 133:2 134:21
  140:15 145:5 169:6
**questioning** 8:4
**questions** 11:11,19 16:15
  29:5 31:14 32:9,16 36:14
  51:8,10 64:22 66:5 71:23
  72:15,19 77:7,12,17,25
  78:9 84:15 100:12 103:24
  108:24 127:15 138:5
  159:17
**quick** 39:24 92:5,5 154:12
**quickly** 154:8
**quiet** 78:17
**quietly** 90:20
**quite** 12:23
**quote** 64:13,13 83:9,10 87:16
  87:17 90:9,11 92:23,23
  98:16,21 124:4,5 132:12,14
  135:18,20 155:5,6

**R**

**R** 3:2
**R-A-L-** 10:13
**R-O-B-I-N** 21:11
**R-O-D-R-I-G-U-E-Z** 10:14
**racial** 95:21
**racist** 83:9 84:23 85:2,10,25
  88:2,6,10
**raid** 72:13

**raised** 10:6
**Ralph** 1:1,4,10 2:1 3:1,3 4:1
  5:1 6:1 7:1 8:1 9:1 10:1,9
  10:13 11:1 12:1 13:1 14:1
  15:1 16:1 17:1 18:1 19:1,20
  20:1 21:1 22:1 23:1 24:1
  25:1 26:1 27:1 28:1 29:1
  30:1 31:1 32:1 33:1 34:1
  35:1 36:1 37:1 38:1 39:1
  40:1 41:1 42:1 43:1 44:1
  45:1 46:1 47:1 48:1 49:1
  50:1 51:1 52:1 53:1 54:1
  55:1 56:1 57:1 58:1 59:1
  60:1 61:1 62:1 63:1 64:1
  65:1 66:1 67:1 68:1 69:1
  70:1 71:1 72:1 73:1 74:1
  75:1 76:1 77:1 78:1 79:1
  80:1 81:1 82:1 83:1 84:1
  85:1 86:1 87:1 88:1 89:1
  90:1 91:1 92:1 93:1 94:1
  95:1 96:1 97:1 98:1 99:1
  100:1 101:1 102:1 103:1
  104:1 105:1 106:1 107:1
  108:1 109:1 110:1 111:1
  112:1 113:1 114:1 115:1
  116:1 117:1 118:1 119:1
  120:1 121:1 122:1 123:1
  124:1 125:1 126:1 127:1
  128:1 129:1 130:1 131:1
  132:1 133:1 134:1 135:1
  136:1 137:1 138:1 139:1
  140:1 141:1 142:1 143:1
  144:1 145:1 146:1 147:1
  148:1 149:1 150:1 151:1
  152:1 153:1 154:1 155:1
  156:1 157:1 158:1 159:1
  160:1 161:1 162:1 163:1
  164:1 165:1 166:1 167:1
  168:1 169:1 170:1 171:1
  172:1 173:1,3,9 174:1,3
  175:1,5,25
**ran** 56:12
**ransacking** 82:2
**rapport** 105:5
**rattling** 44:23 83:23 84:4,9
**reacts** 83:2
**read** 69:10 75:21 76:2 84:22

93:2 103:3,4 106:21 118:4 143:25 144:16 158:16 170:8,10,10 173:3 175:8
**reading** 48:20
**ready** 75:4 144:17
**real** 39:23 65:18 66:16 73:13 92:5 154:11
**reality** 160:10
**realize** 15:9
**really** 34:3 38:14 43:21 45:2 62:15 66:16 73:12 88:17 94:25 106:10 107:3,15 109:11 118:15 119:8 121:5 121:6,21,22,22 123:17 124:5 126:22 146:7,8 170:23
**realm** 121:23
**Reams** 144:23 145:18 147:5 149:23
**reason** 17:9 35:20 36:5,20 65:12,13 67:18 69:25 72:16 73:24,24 156:9 168:21
**reasonable** 8:17,19 56:5
**reasons** 65:8,9,10 67:16 155:17 156:3,8
**rec** 46:17 47:5,6 126:16
**recall** 18:22 30:16 31:17 43:10 45:3 57:25 58:5 71:18 79:16,18 80:2,18,19 82:8,11,12,15 83:13,15 85:7,12 86:7,8,14,25 88:11 88:24 90:14,16 91:10,11 93:9,12 99:25 102:3 104:4 107:24 109:11 110:2 124:10,15 125:16 135:4,9 135:23 136:3 138:15 142:11 152:21
**receive** 27:4 56:17,22 57:6 152:3 171:14
**received** 27:2 56:20 57:20 171:18
**receiving** 57:24 58:8 149:12 171:13,15,16
**recognize** 40:13 120:18
**recollection** 33:8 34:10 35:4 35:22 36:22 37:6,14,21 38:5,20 39:5 78:18 82:20

86:23 89:14 91:18,21 94:18 95:4,14,21
**recommended** 167:19
**record** 8:18 10:5,12 12:17,18 12:21 13:16 20:12 59:7 76:22 77:2,3,8 92:12 112:13 114:14 140:4 143:4 143:6,7,8 154:9,13,15,16 154:17 171:7,8,9,22 172:2 172:5,16 173:4 174:10
**recorded** 7:18 11:24 102:14 102:19 114:10,18
**recording** 7:18 100:6 102:11 103:20 114:14
**records** 43:14 97:23 98:10 140:8 158:12 159:8,25 160:3 164:16 168:5,11
**recreate** 117:17
**recreation** 113:12 114:24 115:24 116:2,14,21 123:19 125:6 132:10,10 169:9
**recreational** 116:25
**red** 118:22,22,22
**refer** 91:16 169:3,7
**referenced** 74:22
**references** 128:3
**referencing** 96:6
**referring** 74:20,20,21 113:22 113:24 139:3 169:8,11
**reform** 62:5 145:11
**refuse** 97:22 150:8,11,13,14 150:15,16
**refused** 27:11 55:16
**refusing** 172:3
**regarding** 8:4 46:5 55:12 94:13 98:6 106:22 114:21
**regular** 23:12 54:17 138:23 141:22 156:18
**rehabilitating** 59:25
**rehabilitation** 46:23 59:20 59:24
**reintegrate** 75:25 170:9
**reiterate** 29:22 38:2
**relate** 59:4 139:15
**release** 25:8,12,13,14
**released** 27:19,21 58:11 60:9 60:16 61:7 123:9

**religion** 117:16 119:11 120:6 120:10,12,13 121:12 122:8
**religions** 120:20
**religious** 117:4,15,18,21,23 118:6,24 119:5,13,17,21 120:3,9,15 122:12,15,18,23 122:24 169:22,24
**remain** 101:21
**remarks** 83:9
**remedies** 61:17 147:22
**remedy** 13:4 147:18 150:4
**remember** 14:22,23 16:10 18:5,11,15 27:8,13 28:18 30:18 33:14 36:2,9 68:2,6 74:3 75:11 77:14 80:9,12 88:18 91:19 92:2 96:19 99:5,12 101:14,23 107:20 114:12,13 128:6 129:22 135:2,25 152:23,24
**remembering** 36:15
**remote** 7:9 8:14 9:4
**remotely** 7:15 11:9
**removed** 41:8 67:12 93:3,4,9 93:14 115:19
**repeat** 14:8 169:6
**repercussions** 137:3,4,5
**rephrase** 12:6
**replace** 128:23
**replacements** 128:21,22
**report** 27:3 137:15,15,18,20 138:9,13 140:8 159:13,14 159:17 160:4
**reported** 1:18 160:10,11
**reporter** 7:8,16 10:4,10,15 10:19 11:10,10,24 143:8 154:17 174:14
**Reporters** 7:12 174:11 175:2
**reports** 139:11 149:9
**represent** 11:5
**represented** 129:23
**representing** 6:14 128:11 129:2,4
**represents** 129:24 131:13
**request** 12:11 98:8 123:25 125:21 148:24
**requested** 86:16 98:13 124:12,15 125:7 171:12,23

172:4
**requesting** 9:5
**require** 77:20
**required** 48:9 50:3 147:20
**requires** 13:23
**resend** 134:18
**reserved** 5:9,13 6:23 7:3
**resolve** 19:4 145:10 146:8
    150:7
**resolved** 147:10
**respect** 45:11 51:13 72:9
    108:10 115:16 127:15
    150:25
**respectable** 105:9
**respectfully** 145:24
**respective** 5:4,16 6:2,7,12,17
**respond** 11:25 99:23 126:4
    135:18 148:23 149:20
**responded** 12:13
**responding** 11:22
**responds** 16:15 132:12
**response** 11:22 77:18 90:19
    167:7,11
**responses** 11:11 84:2
**responsible** 82:3,4
**rest** 32:19
**result** 42:12 44:12 48:8
    56:15,18 162:2 165:6
**resulted** 63:3
**results** 146:6
**retaliation** 117:18 119:19
    122:21
**return** 5:20 175:11
**revealed** 67:23
**review** 61:22 71:24 82:7
    164:15 172:9
**revoked** 59:14
**revolt** 63:22
**revolting** 69:8
**rib** 163:18
**ribs** 79:23
**Richard** 35:18,22
**rid** 34:17
**Riggin** 136:5
**Riggins** 135:15,16,18 136:5
    136:11,11,11,11,12,20
    137:4,10,18

**right** 5:7 6:21 10:5 13:12
    20:22 23:6 25:16 27:14
    31:17 32:8 36:2,9,17,17
    39:19 41:3,21 42:7 48:3
    49:8,23 51:18 53:20,21
    56:22 58:14,23 62:2,10,12
    68:18 73:4 76:6,6 80:23
    83:24 84:11,13,14,15 91:7
    98:18,19 100:24 101:2,10
    106:3 107:21 109:22
    111:22 112:24 116:17
    117:16 119:21 120:19
    121:15 123:13 124:10,24
    124:25 125:2,2,4,14 129:18
    131:4,8 132:3,13 134:18,20
    136:9 137:25 138:13 140:4
    140:12 143:14,22 144:12
    144:17,19 146:19 148:8,16
    149:4,13 151:6 152:20
    154:23 156:22 157:2 159:9
    162:25 163:19 165:15
    166:2,7 167:23 170:11,24
    172:5,5
**rights** 5:6,22 6:18 21:17
    23:19 29:10,14,20 61:12
**Rikers** 59:4,5
**riot** 39:13,15 63:21,21 65:14
**ripped** 129:15,16
**Rising** 25:18 61:2,2
**RLUIPA** 169:16,18,19,21,22
    170:6
**Robbery** 25:2
**Robert** 21:5,8,12,13,14,15
    61:19
**Roberts** 155:7
**Robin** 21:11
**Rodriguez** 1:1,1,4,10 2:1,1
    3:1,1,3 4:1,1 5:1,1 6:1,1 7:1
    7:1 8:1,1 9:1,1 10:1,1,8,9
    10:13,25 11:1,1,7 12:1,1
    13:1,1,21 14:1,1 15:1,1
    16:1,1 17:1,1,24 18:1,1,16
    19:1,1,20 20:1,1 21:1,1
    22:1,1,19 23:1,1,3 24:1,1
    25:1,1 26:1,1 27:1,1 28:1,1
    29:1,1 30:1,1 31:1,1 32:1,1
    32:14 33:1,1 34:1,1 35:1,1

36:1,1 37:1,1 38:1,1 39:1,1
40:1,1,5 41:1,1 42:1,1 43:1
43:1 44:1,1,7 45:1,1 46:1,1
47:1,1 48:1,1,4 49:1,1 50:1
50:1 51:1,1,21 52:1,1 53:1
53:1 54:1,1 55:1,1 56:1,1
57:1,1 58:1,1 59:1,1 60:1,1
61:1,1,19 62:1,1 63:1,1
64:1,1 65:1,1 66:1,1 67:1,1
68:1,1 69:1,1,21 70:1,1
71:1,1 72:1,1,14 73:1,1
74:1,1 75:1,1,14 76:1,1
77:1,1,5 78:1,1 79:1,1 80:1
80:1 81:1,1 82:1,1 83:1,1
84:1,1,12 85:1,1 86:1,1
87:1,1 88:1,1 89:1,1 90:1,1
91:1,1 92:1,1,17 93:1,1
94:1,1 95:1,1 96:1,1 97:1,1
98:1,1 99:1,1 100:1,1 101:1
101:1 102:1,1 103:1,1
104:1,1 105:1,1 106:1,1
107:1,1 108:1,1 109:1,1,4
110:1,1 111:1,1 112:1,1
113:1,1 114:1,1 115:1,1
116:1,1 117:1,1 118:1,1
119:1,1 120:1,1 121:1,1
122:1,1 123:1,1 124:1,1,20
124:23 125:1,1 126:1,1
127:1,1 128:1,1 129:1,1
130:1,1 131:1,1 132:1,1
133:1,1,18 134:1,1 135:1,1
136:1,1 137:1,1 138:1,1
139:1,1 140:1,1,17 141:1,1
142:1,1 143:1,1,11 144:1,1
145:1,1 146:1,1 147:1,1
148:1,1 149:1,1 150:1,1
151:1,1 152:1,1 153:1,1
154:1,1,10 155:1,1 156:1,1
157:1,1 158:1,1 159:1,1
160:1,1 161:1,1 162:1,1
163:1,1 164:1,1 165:1,1
166:1,1,5 167:1,1 168:1,1
169:1,1 170:1,1,25 171:1,1
172:1,1,7 173:1,1,3,9 174:1
174:1,3 175:1,1,4,5,7,25
**Rodriguez's** 52:9
**room** 12:22 32:20 34:13 35:6

65:22 66:3 87:7 103:11 113:12 114:8,25 115:8,25 116:3,14,21,24,25 121:17 121:17 123:19 126:16 132:10 169:9
**rooms** 66:19
**Roraback** 1:18 174:2,14
**Rose** 38:16,20,21
**Rowan** 130:20,20 131:5,16 131:24
**RSAT** 60:20 171:10,11,19,23
**Rule** 5:22
**rules** 5:7,23 6:5,19,20 60:4 77:11,16,20
**run** 98:17,18
**rushed** 101:17

**S**

**s** 3:2 32:21
**sad** 111:9
**safe** 162:19
**Sangeetha** 139:16,19 141:18
**Santeria** 118:8 119:2,8 120:17 121:8
**Santero** 120:13,15,21 122:25
**Santiago** 38:25 39:5
**sat** 79:8
**save** 73:12
**saw** 35:23 36:7,23 37:15 61:17 73:7,18,20,20,22 74:18 85:18,23,23 91:4 103:8,22 104:18 114:15,19 134:11 139:19 156:6
**saying** 51:13 62:3 78:24 80:25 87:12 89:16 90:18 97:10 99:16 103:6,18 108:13 110:14 120:25 121:13 137:23 140:17 146:10 147:4,7 148:23 149:2 150:13
**says** 49:23,25 50:7 61:20 107:4 137:7 140:20 141:9
**scare** 151:4
**scared** 122:18,20 151:23
**scenario** 150:23
**school** 23:17,20,24 24:3,5,5,8 47:19,19 165:25 167:4,9

**schooling** 47:9 57:14
**scream** 150:5
**screamed** 87:16 88:4
**screaming** 26:20 70:23 78:18 78:21,23,23 79:2 86:3 110:6
**screams** 73:21
**scroll** 40:19 48:3 58:20 67:11 117:7 123:20 143:23
**scrolling** 132:7 154:5
**se** 2:4 40:17
**search** 126:20,23 127:2,4 168:13,17,18,19,20,22 169:8
**searched** 69:9 152:2
**searching** 82:2 168:19,20
**seat** 166:8
**second** 13:8 18:2 25:2 28:5,7 39:22 100:21 143:5 172:15
**section** 7:6
**security** 20:4 39:10 49:2 52:3 55:3,7,13,23 56:17 57:9 58:3,16 64:21 81:12 83:2 138:4 157:6
**see** 34:13,16 37:22 38:11,24 39:6 40:8 48:4 50:22 54:8 69:21 70:10,19,19,20,22 73:4,5,5,6,12,17 80:16 82:13 85:24 87:13,22 90:25 91:3 96:13 97:7 99:13 100:21 101:2 112:21 115:14 116:21 124:23 125:2 132:5,6,12,20,25 133:17,17,19 135:21 140:21 141:19 142:2,7 143:20 144:4 154:6 155:8 156:4,25 157:12,15 158:6 161:15,18 167:23
**seeing** 36:11 71:11 82:15 103:20 110:23 142:6 163:15 168:8,9,9
**seeking** 170:13,21
**seen** 45:4 72:13,17 110:15 112:7 120:24 134:16 139:16
**self** 37:25
**Self-** 159:9

**self-diagnosed** 43:5
**self-explanatory** 34:2,4 49:24 51:8 71:22 170:9
**send** 39:24 40:3 99:18 103:15 132:24 133:3 148:12 172:8,9
**sending** 153:2
**sense** 51:10 88:9 132:19
**sent** 41:18 60:3 65:25 113:12 114:8 123:11,12 130:19 133:23,24 137:8 149:11 153:6
**sentence** 25:3 27:19,21
**separate** 7:9
**September** 50:8 56:12
**sergeant** 31:15,18,23 84:25 85:9,13 96:7,16 97:8 98:16 98:25 99:24 100:4 106:6,8 106:13,15,18,19,20,22 107:5,8,13,19,23 108:2,3 109:13 110:12 135:14 136:5,19 137:10,17,18 138:9 155:3 156:12
**sergeants** 87:8 106:7 107:8 108:11 109:14
**serious** 122:22
**served** 19:15 24:17
**service** 24:16
**services** 46:19 119:24 120:7 120:15
**set** 30:25 87:25 141:4
**settle** 22:5
**settled** 19:6
**settlement** 22:21,23
**seven** 25:21 65:16 66:7 113:12 114:24 116:14
**seven-one** 116:20,24
**seventeen** 10:17 90:7 92:21
**seventy** 154:20,21
**seventy-three** 158:6
**severe** 48:9 50:2 84:6 163:2
**severely** 70:10 92:23
**sham** 61:21 62:4,5 146:11 151:3
**shambles** 113:4
**shattered** 49:18
**Shawn** 36:24 37:6

**sheet** 118:21,22 173:7
**Shevlin** 2:7 3:4 10:21,24
   11:4 13:10 31:13 36:13
   39:20,23 43:3 44:5 48:13
   49:23 51:11,22 59:15 61:8
   67:6 69:5,9 72:13 75:19
   76:12 77:4 78:20 81:12,24
   85:16,19 92:5 93:15 98:7
   100:10,21 108:3 115:6,7,21
   118:14 119:18 123:15
   126:10 133:6 137:13,25
   140:11 142:22 143:9,10,15
   144:10 145:24 150:3 152:3
   154:7,18 157:14 159:10,13
   159:24 160:14 161:19
   162:17 167:22 170:8
   172:14 175:6,13
**shirt** 35:13 79:9 108:7
**shirts** 108:10
**shit** 98:17,18
**shock** 31:5
**shoot** 144:6
**short** 30:22
**shorter** 33:10
**shortly** 87:17
**shorts** 126:17,18 169:5
**shoulders** 11:23
**shout** 150:5
**shouting** 79:2
**shouts** 73:22
**shoved** 65:23
**show** 29:7 98:16 120:24
**showed** 82:13
**shrine** 117:4,15,17,25 118:18
   118:21 119:4 121:15,17
   122:2
**shrug** 11:23
**SHU** 28:10,13,14 94:5
**shut** 65:10,11 75:8,9 90:9,19
   93:23 124:4
**shutting** 65:9
**shy** 46:20
**sic** 129:16
**sick** 16:25
**side** 31:2 44:10 53:20 101:4
   143:2 149:6
**sign** 172:9 175:8,10

**signature** 175:11
**Signed** 175:24
**signs** 61:23
**silk** 118:22
**Similarly** 14:21
**sincere** 84:6
**Sing** 89:12,13
**single** 20:14 29:22 33:2 63:4
   82:20
**sir** 13:25 14:6 15:18 22:2
   40:10,17 51:22 64:15 96:14
   124:7 134:25 135:22
   154:14 156:14 168:14
**sit** 12:22 121:7 123:23
   166:10
**sitting** 16:13 35:24 45:22
   46:14 49:9 71:9 90:20
   95:20 108:20 162:18 166:7
**situated** 109:24
**situation** 30:10 33:3 37:3
   43:5 57:14 59:16 94:14,14
   145:10 150:4,8 169:12
**situations** 146:9
**six** 11:8 40:20 48:2 50:11
   64:9 86:11 138:22 150:2
**sixteen** 78:14 87:14 92:14
**sixty-eight** 117:6,9,10,15
**sixty-nine** 154:6,19,21,23
**sixty-one** 144:5
**sixty-seven** 127:17
**skin** 107:23 108:5
**skinny** 30:25 31:2
**skip** 150:7
**sky's** 152:4,6
**slammed** 49:17 69:11 79:13
   87:19
**slamming** 91:11
**slash** 163:2
**sleep** 161:13,25 162:2,6
**sleeping** 45:14 79:6 161:21
**slip** 35:13
**small** 84:7
**smaller** 100:24
**smashed** 83:16 110:24
**social** 20:4 48:25 55:3,6,13
   55:23 56:17 57:9 58:3,15
**sole** 46:23

**son** 20:18,19,21 21:2
**sore** 59:18
**sorry** 21:7 47:14 68:5 72:5
   73:24 93:6 98:17 109:20
   113:17 141:12 151:9 165:8
**sought** 164:10,14
**sound** 65:17
**sounds** 124:11 125:6
**SOUTHERN** 1:3
**space** 20:12
**Spanish** 125:23,24
**spans** 74:23
**speak** 78:7 132:11 156:20
   157:3
**speaking** 71:12
**speaks** 31:4
**Special** 32:21 107:7
**specific** 46:10 50:17 51:14
   81:17
**specifically** 74:20
**specify** 8:18,20 12:18 107:13
   120:6 127:9,18
**spell** 10:11 117:20 138:19
**spelling** 121:19 141:22
**spelling)--** 134:9
**spellings** 139:8
**spent** 123:19
**spic** 83:9 93:24
**spiritual** 120:4
**spit** 129:17,19
**spleen** 41:7
**split** 95:25
**spoke** 93:23 136:5 144:24
   152:18
**spot** 59:18
**squad** 110:8
**squadron** 82:25
**square** 100:23
**squashed** 87:11
**stabbed** 41:14,18,25 42:4
**staff** 69:2 91:22,24 106:5
**stage** 34:17 60:22
**stand** 31:8 69:14,15,19 91:8
   112:15 113:14 169:9
**standing** 62:10 85:15 90:20
   100:17 114:5,10 169:4
**start** 29:8 39:19 44:25 59:16

78:14 83:22,25 158:3 163:15
**started** 42:15,15 45:2 167:17
**starting** 139:14
**starts** 163:13,15
**state** 2:6 10:11,15 11:5 12:2 20:3 24:11 26:6,10 58:21 61:5,10 96:18 131:11,19 173:2 175:12
**stated** 29:13 174:5
**statement** 99:24 100:4 110:19 111:14,20 124:9 132:19 134:13 160:12
**statements** 70:16
**states** 1:2 8:12 87:21
**status** 20:13 22:4 52:9
**stay** 43:23 46:24 76:4 90:10 103:11 171:13,19,23
**step** 75:16,17 149:14,24
**Stephen** 39:7
**steps** 147:20 148:6
**stipulate** 8:13
**stipulated** 5:3,15,25 6:6,11 6:16 7:4,23 8:24
**stipulation** 8:16
**STIPULATIONS** 5:2
**stomach** 79:23 123:17 163:20 165:13,14,15
**stood** 32:19 126:5
**stop** 30:11,11 33:4,5 37:4 145:18 158:9,15 159:2
**stopped** 75:4 87:18 111:11 119:21 122:13,13,14
**story** 33:24
**Street** 2:8 175:13
**stress** 162:20
**stretchers** 133:20
**strike** 5:9,11 6:22,25 53:11 116:20
**strip** 113:11
**stripped** 122:15
**struck** 87:10
**stuff** 18:17 38:15 39:25 40:3 48:21 52:18 53:6 58:18 59:14 72:10,11 73:11 85:10 89:18 95:9 111:5 118:11 119:20 121:20,25 125:14

129:21 130:10 138:8 140:10 142:16 148:11,13 149:4,10 153:21,23 158:2
**style** 62:21 85:22
**Suboxone** 16:2
**subtle** 49:7
**sued** 36:25 39:10
**suffered** 48:8 165:21
**suffering** 170:14
**suing** 18:9 29:24 31:12 32:2 32:17 33:13 34:20 35:19 36:4,18 37:9,24 38:17 39:2 39:8 155:22
**suit** 30:15 33:5 35:15
**suits** 146:4
**Sullivan** 141:19,21
**summary** 146:15
**superintendent** 32:4,4 61:18 61:20 64:11,21 87:2 144:25 146:10 149:19,24 151:2 152:18 153:7 155:2 157:9 157:11
**supplement** 15:11
**supply** 8:8
**supposed** 16:19 30:4 32:22 46:24 47:24 51:2 59:19,21 60:7 76:18 81:14 104:20 105:10 137:14 148:9,18 153:23 166:24 167:4 171:14
**Supreme** 131:17,19
**sure** 20:11 33:20 37:7 45:19 59:5,19,22 72:22 76:17 96:22 106:24 109:8,17 110:13 114:13,18 116:13 117:9 127:21 140:3,6,7 147:9 168:3,5 169:7
**surgery** 48:9 50:3
**surrounded** 53:25
**surrounding** 81:5
**survived** 134:6
**swear** 10:6
**swelling** 162:25 163:21
**switch** 75:22 143:12
**sworn** 3:3 5:17 7:15 10:9,20 67:7 71:21 86:22 94:25 95:9 134:8,13,13,14 142:16

146:9,12 173:11 174:7
**system** 89:10

---

**T**

**T** 4:2
**T.V.s** 72:12
**take** 12:9,12,14 14:5 15:3,4,6 16:5,7,19 26:21 40:21,25 43:13,18,21 50:16 52:14 56:6 60:6,15 61:12,12 66:14 76:14,15,18 77:16 111:6 116:15 117:5,11 126:2 135:19 137:11 138:24 154:21 155:5,5 161:6 166:17,22,23 167:19
**taken** 8:14 13:22 15:19,24 94:5 100:6 115:24 133:19 135:20 139:10 140:20,24 141:3,4 173:4 174:3
**takes** 138:24
**talk** 40:4 62:8 69:14 73:14 84:25 92:8,11 119:14 121:7 121:22,24 143:12 156:22 156:24 170:23 172:16
**talked** 151:24
**talking** 50:6 59:16 78:15 84:13 85:10 96:23 97:5 98:10 109:18 112:4 114:4,9 132:20,23 147:13 157:23 168:16
**tall** 30:21,23 107:23
**taller** 30:23 31:20 35:10 38:8
**tamper** 123:3,6
**tampering** 123:4,5
**tank** 31:20
**target** 99:14
**teacher** 166:11
**team** 30:2 67:14 68:10 73:19 74:18 76:8 78:15 81:9 82:20,21 83:8 84:24 88:13 91:21 94:3 96:5 101:20 106:4 107:5,11 109:23 111:15 114:25 115:4,11 138:4 155:4
**team's** 68:17
**teams** 1:13 64:14 71:6
**technologically** 29:6

**teenager** 43:16
**telephone** 8:14 9:4
**telephonic** 9:3
**tell** 10:6 13:23 14:11,18,23
  44:3 45:18 51:20,20 66:15
  75:10 76:25 78:6,24,25
  80:8 85:19 88:20 95:2
  99:22 102:11 106:25 109:4
  110:4 118:3 128:19 137:19
  142:9 150:3,9 151:21 157:2
  157:7 158:18 167:5 171:19
**telling** 91:10 159:19,20,20
**tells** 52:6
**temperatures** 123:24 126:16
**ten** 10:4 18:20 24:12 27:5
  60:14 66:13 67:3 68:10
  76:14 161:21
**tend** 43:23 46:20 96:18
**terms** 11:19 71:5,10,15 72:2
  73:2 95:21,22
**testicles** 79:23
**testified** 66:6 71:10 109:19
  145:25 167:16
**testify** 12:21 15:16 17:10
  47:8 140:23 174:7
**testifying** 6:15 13:7
**testimony** 5:9,11 6:22,25
  13:18 134:13 142:16
  146:13 173:4 174:3,6 175:8
**Thank** 10:19,21 50:10 78:12
  143:9 154:14 162:22
**that's** 117:13
**therapy** 171:16
**There's** 47:24
**they'd** 130:19
**thin** 36:13
**thing** 18:15 65:13 83:2 119:8
  123:5 131:8 132:4 133:21
  140:2 148:11 149:11
  172:14
**things** 71:11 77:13,14 112:5
  119:9 136:25
**think** 23:16 29:19 31:8 39:11
  46:22 52:3 55:5 60:24 61:2
  61:7,11 69:10 74:23 78:6,8
  105:11 118:10 152:7
  154:11 155:24 160:14

162:19 172:12
**thinking** 170:3
**third** 95:24
**thirteen** 57:15 63:12 127:4
  152:12
**thirty** 16:12 69:4 82:17
  95:12,13,18 114:2 162:13
  175:9,10
**thirty-one** 139:15
**thirty-seven** 140:13,19
**thought** 144:9
**thousand** 57:17
**threading** 36:13
**threatened** 151:25
**three** 19:8 25:16,21 26:13
  27:5 60:24 99:6 104:8,9
  105:5,7 118:15 166:10,18
  166:19,24,25 167:10
**three-** 149:14
**throwing** 66:10
**thrown** 22:24 142:4
**ticket** 27:3 89:25
**till** 16:6 75:4
**time** 1:12 10:4 11:14 12:4,23
  13:4,8,15 15:8 16:11 18:3
  19:2 20:16 26:2 28:7 32:13
  36:11 41:13 47:4 53:11
  60:8 63:13 68:11 71:7 75:6
  75:11 77:15,23 79:8 80:4
  82:6 85:4 86:12 87:25
  90:12,24 92:22 94:20 99:3
  99:14 107:14 114:2 119:23
  120:11 123:19 125:17
  128:10 130:14 133:12,13
  137:9 152:13 161:24 164:9
  169:8 173:4 174:4
**times** 17:15 28:17 41:15,18
  66:17 87:11 96:12 163:6
  166:21
**tingling** 41:23 163:19
**title** 156:16
**to/froms** 149:8
**today** 10:7 13:14 15:17
  16:14,25 17:10 35:24 45:22
  46:14 49:9 71:9 95:20 97:5
  108:20 109:20 147:5 171:2
  172:8

**told** 12:21 15:10 27:10 38:3
  45:5 67:25 80:22 81:23
  90:9,15,16 91:6,8 93:15
  104:25 109:7 110:12,15
  124:3 125:13 133:25
  134:24 135:18 144:25
  145:2 146:9 155:4 156:2
  171:24,25
**Tom's** 22:19
**Toms** 61:18,19
**top** 18:13 36:9 39:18 42:5
  49:25
**topic** 143:13 170:12
**toss** 25:10
**tossed** 96:20
**touchy** 59:16
**training** 24:9
**transcript** 8:8 172:8 173:5,7
  175:8,10,11
**transcription** 174:9
**traumatic** 83:24 88:21
**travel** 11:15
**treatment** 164:10,14
**trial** 5:13 7:3 14:5 55:19
  73:12 112:12 128:2 130:17
  153:21
**tried** 63:7 73:25 116:10
  150:4
**true** 56:2 150:24 173:5,7
  174:10
**truth** 10:6,7,7 13:23,23,24
  31:8 55:21 75:24 109:4
  157:2 174:7,7,8
**truthful** 13:19
**truthfully** 16:16
**try** 11:18 12:10 29:6 34:5
  39:21 40:2 50:5 144:21
  145:6,6 146:8,15,25 150:6
  150:7,8
**trying** 33:23 78:13 87:24
  102:24 132:23
**turn** 29:3 32:12 83:19 87:12
  98:14 135:10,10
**turning** 70:2 96:2 98:14
  123:18 141:25 158:5
  160:25 170:11
**twelve** 25:4 70:7 133:8 167:5

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

167:7,9,12
**twenty** 54:24 76:19 98:8,15 100:3
**twenty-** 16:19 95:17 106:3 123:22
**twenty-eight** 132:8 134:22
**Twenty-five** 20:20
**twenty-four** 15:20 16:23 113:10,18
**twenty-nine** 134:22 135:11
**twenty-one** 58:19 107:5
**twenty-seven** 127:9
**twenty-three** 92:14 109:18
**twenty-two** 11:8
**twice** 17:18
**two** 10:18 27:5 40:20 47:25 92:14 100:23 104:7,9 105:5 108:6 116:11 138:22 156:21 166:23 171:18,21
**type** 42:24 147:18
**typed** 40:17
**types** 77:7
**typewritten** 174:8
**typical** 166:16
**typically** 146:21
**typing** 45:15

**U**

**U.I** 137:15 138:9,12 139:11 140:8
**Uh-huh** 153:15
**unable** 117:17
**unanswered** 69:23
**unauthorized** 7:20
**uncomfortable** 13:15 84:10
**unconscious** 73:8
**understand** 12:5 13:22 14:2 14:7,14 16:15 50:5 51:12 69:16 83:23 84:7,11 89:5 102:25 120:17 121:9 154:2
**understanding** 63:17,18 71:5 94:9 147:19
**understood** 11:20 14:12,15 14:25 15:7
**unfortunately** 13:13 41:14 63:13 137:3 140:7 155:22
**unheard** 106:2

**uniform** 6:19 108:5
**uniforms** 35:11
**unit** 30:2,3,8 47:24 51:23,24 52:4,5,11 53:13,14,17,19 53:24 62:19 66:2,20,21 68:23 69:3 70:3,4,8,21 71:14 73:4,16 74:8,10,10 74:11 76:9 78:16,17 82:21 85:25 95:11,16 99:16 100:19,25 101:3,10,14 103:2 104:11 109:23 110:25 111:23,25 112:2 113:24,25 115:12,12,20 116:15,18,22 132:10 133:9 133:14,14 134:2,5 138:22 138:23 141:23 142:3 143:2 155:15 171:20
**UNITED** 1:2
**units** 62:16,16 70:17 71:15 73:6,18
**unjustified** 65:10
**unlegible** 129:16
**unreasonable** 168:13,17,18 168:20,21 169:8
**unstable** 27:10 63:14
**upper** 100:24
**upset** 163:20 165:13,14,15
**Urbanski** 39:8,18 64:11,18 64:20 67:12 87:3
**use** 8:19 34:15 48:8,15 105:3 137:11,12 153:20 169:23
**usually** 138:24
**utilized** 6:3

**V**

**v** 1:1,6 2:1 3:1 4:1 5:1 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1

64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1 107:1 108:1 109:1 110:1 111:1 112:1 113:1 114:1 115:1 116:1 117:1 118:1 119:1 120:1 121:1 122:1 123:1 124:1 125:1 126:1 127:1 128:1 129:1 130:1 131:1 132:1 133:1 134:1 135:1 136:1 137:1 138:1 139:1 140:1 141:1 142:1 143:1 144:1 145:1 146:1 147:1 148:1 149:1 150:1 151:1 152:1 153:1 154:1 155:1 156:1 157:1 158:1 159:1 160:1 161:1 162:1 163:1 164:1 165:1 166:1 167:1 168:1 169:1 170:1 171:1 172:1 173:1 174:1 175:1,4
**vantage** 73:16
**VENUE** 1:13
**verbalize** 11:22 12:2
**verbatim** 29:19 67:8 75:20 85:12 106:21 110:17 112:13 114:13 125:3 128:6 132:17
**version** 149:7
**versus** 11:7 17:24 18:16 22:19 61:19
**victim** 55:21
**video** 7:7 8:7 11:12 100:10 114:18,20,21 138:12 140:9
**videoconference** 7:11,17
**Vincent** 38:25
**violate** 105:17 111:7
**violated** 29:16 73:23
**violating** 29:13,20
**violation** 7:20
**Violations** 29:10

**violent** 28:5 59:9
**vision** 163:13,14
**vital** 142:15
**voice** 11:14
**voodoo** 121:24

**W**

**wait** 11:16 48:12,12 76:12
  126:7 132:14 136:6,6,6
  144:8,10 171:6,6,6
**waiting** 69:9
**waived** 6:10
**waiver** 5:12,22 7:2
**walk** 61:11 63:7 74:2,7,11
  75:13,16 116:15
**walked** 63:9 134:23
**walking** 45:15 63:14
**wall** 53:21 54:2 83:16,18
  87:12,19 91:7,9,12 99:4
  102:24
**Wallkill** 171:10
**want** 12:7 15:11 22:5 24:20
  29:4 32:10,10 41:5 50:5
  57:15 64:23 72:24 75:20,23
  75:25 76:14,19 77:23 78:3
  80:8 83:22 84:7 86:8 92:5
  96:21 100:10 105:16
  106:19 109:3,4 116:13
  119:14,19 121:6,8,22,24
  122:5 127:14,16 128:18,19
  137:2 143:12,24,25 144:4
  148:2,4 151:18,19,20,20
  156:19 158:16 161:8,11
  163:22 171:2,7 172:2
**wanted** 34:7
**wants** 132:5
**ward** 66:18
**wasn't** 29:17 43:5 44:18
  55:25 65:4,5,7 69:6,8,13
  72:15 84:7 117:10 126:7
**waste** 77:15,23
**wasting** 32:13
**watch** 105:23
**watching** 51:18
**water** 118:23,23
**way** 29:15 31:19 47:11 57:10
  61:15,16 81:14 102:21

119:15,17 126:5 137:14
  145:17 147:3 150:4 151:16
  151:21 157:15 165:5 166:3
  166:5,6 168:16
**ways** 146:22
**we'll** 12:10 20:11 69:21 78:4
  78:4 92:16 134:20
**we're** 11:12 13:17 14:3 22:23
  32:11,25 33:15 57:11 58:10
  59:22,22,23 76:4 84:13
  92:13 97:5 103:12,12 105:4
  105:18,20,21 109:18 112:4
  112:5 114:8 119:22 124:24
  143:8,11 144:17
**we've** 19:9 120:24
**weakness** 41:24
**wear** 108:4,4
**wearing** 45:9 108:6 115:9
**weather** 125:13
**week** 60:7,9,18 133:12 163:6
  163:8,9 166:21,23
**weekend** 74:2,4
**Weekly** 165:17
**weeks** 163:10 171:21
**weight** 162:8,9
**weird** 139:7 154:3 163:16
**went** 12:16 35:6 47:5 55:19
  124:22 127:4 131:4 136:12
  149:24 160:9
**WETSELL** 2:11
**wheel-chairing** 73:8
**wheelchaired** 65:20
**when's** 47:4
**white** 35:9 38:6 94:10,15,19
  95:2,5,22 108:10 140:7
**whites** 108:4
**Wilder** 155:7
**William** 134:11
**willing** 105:12
**Wilson** 130:20 131:14,16
**window** 70:22 71:11 73:17
  116:19 169:12
**windows** 54:6,12,13 70:20
  71:2 73:4,5 113:14 125:12
**wise** 119:14
**witness** 5:18 6:14 7:8,9,14,15
  7:25 8:2,4 10:9,13,17,19

14:5 19:15 39:24 99:17,21
  112:14 174:6
**witness's** 7:16
**witnessed** 111:9
**witnesses** 67:8 86:17,19
  99:17,19 112:12 134:15
**woman** 38:23 104:5
**word** 53:9 142:19 175:16,17
  175:18,19,20,21,22
**words** 29:9 34:5 75:16,22
  76:4 145:9
**work** 13:14 40:18 52:4,10
  57:7,11,11,16 127:16
  129:20 157:24 167:3
**worked** 24:11 107:24
**working** 24:9 45:16 144:13
**works** 57:10 138:21
**workup** 137:12
**worse** 45:3 46:7,8,9,9,11
  83:20 165:6
**worship** 119:17 122:12
**worth** 59:11,12
**would've** 157:21
**wouldn't** 49:7 77:20 157:17
**wrist** 41:21 162:25 163:20
**write** 82:16 120:9 145:2
  153:4
**writing** 45:15 116:8,10,11
**written** 7:19 32:11 76:5
  77:13
**wrong** 51:18,19 52:9,13 61:8
  89:25 90:3 117:12
**wrote** 40:15 148:3

**X**

**X** 1:9 3:2 4:2,2 173:8,12

**Y**

**yeah** 18:8,10 19:7 21:14
  23:18,22 24:6 25:14 26:2
  26:13 27:4,16,25 28:3
  33:10 35:11 36:23 37:15,22
  38:23 40:22 41:3 42:11,14
  42:18 45:7,17,17 48:6,18
  49:11,15 50:7,21 52:10
  53:3,3,14 54:8 55:15 56:24
  57:21 58:10,13 61:14 62:5

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

63:5 68:2,8 72:7 75:8,11,11
79:25 84:25 86:13 88:8
101:8 105:24 111:21
113:19,19,20 120:8,16
124:14 125:9,15,15,22
126:21 127:12 128:16
129:4,20,21,25,25 130:2
131:15,21 135:16 139:17
139:19 140:22,25 141:11
141:20,24 142:8,14 144:6
145:4 146:24 156:6 158:7
159:16 162:22 163:13
164:12 165:22 166:2,20
167:15 168:8 169:25,25,25
169:25 170:22 172:11
**year** 60:19 89:9 130:18
**years** 18:20 24:12 25:4,17
26:13 27:5 36:10 53:15
60:14,24 63:12 96:19 98:8
99:6,6 105:5,7 116:11
118:16 127:4 149:20 150:2
152:12 161:21 168:6
171:18
**yelling** 86:3 110:6
**Ying-yang** 166:15
**York** 1:3 2:6,9,9 11:5 18:16
18:16 20:3 24:11 26:5,6,6
41:19 96:18 131:11,19
175:12,14,14
**Yup** 48:6 55:4,9 73:20 79:10
101:23

---
**Z**
**zero** 10:17 11:8,8 125:12

---
**0**
**08/25/78** 19:25

---
**1**
**1** 174:5,9
**1:14** 1:12 172:19
**10** 3:4
**10-21-24** 1:1 2:1 3:1 4:1 5:1
6:1 7:1 8:1 9:1 10:1 11:1
12:1 13:1 14:1 15:1 16:1
17:1 18:1 19:1 20:1 21:1
22:1 23:1 24:1 25:1 26:1

27:1 28:1 29:1 30:1 31:1
32:1 33:1 34:1 35:1 36:1
37:1 38:1 39:1 40:1 41:1
42:1 43:1 44:1 45:1 46:1
47:1 48:1 49:1 50:1 51:1
52:1 53:1 54:1 55:1 56:1
57:1 58:1 59:1 60:1 61:1
62:1 63:1 64:1 65:1 66:1
67:1 68:1 69:1 70:1 71:1
72:1 73:1 74:1 75:1 76:1
77:1 78:1 79:1 80:1 81:1
82:1 83:1 84:1 85:1 86:1
87:1 88:1 89:1 90:1 91:1
92:1 93:1 94:1 95:1 96:1
97:1 98:1 99:1 100:1 101:1
102:1 103:1 104:1 105:1
106:1 107:1 108:1 109:1
110:1 111:1 112:1 113:1
114:1 115:1 116:1 117:1
118:1 119:1 120:1 121:1
122:1 123:1 124:1 125:1
126:1 127:1 128:1 129:1
130:1 131:1 132:1 133:1
134:1 135:1 136:1 137:1
138:1 139:1 140:1 141:1
142:1 143:1 144:1 145:1
146:1 147:1 148:1 149:1
150:1 151:1 152:1 153:1
154:1 155:1 156:1 157:1
158:1 159:1 160:1 161:1
162:1 163:1 164:1 165:1
166:1 167:1 168:1 169:1
170:1 171:1 172:1 173:1
174:1 175:1,5
**10:11** 1:12 10:2
**10005** 2:9 175:14
**10th** 24:23 130:17
**11:19** 77:2
**11:29** 77:3
**12:39** 143:6
**12:44** 143:7
**12:55** 154:15
**12:56** 154:16
**14th** 55:8
**172** 174:9
**19th** 56:12

---
**2**
**2000s** 42:9
**2008** 56:12
**2010** 49:24 50:8
**2013** 55:8
**2015** 18:6 24:23 50:13
130:17
**2016** 130:17
**2021** 46:6 168:2
**2024** 1:11 173:11
**21** 1:11 62:25 64:10 74:21,24
75:17 95:15 162:10 164:9
**22** 74:24
**22-CV-10056-PMH** 1:6
175:4
**221** 6:19
**24th** 62:25
**27th** 64:10 74:23
**28** 2:8 175:13

---
**3**
**30** 175:9,10
**30th** 74:21 75:17 95:15
162:10 164:9 168:2
**3113** 8:11
**3113(d)** 7:6
**3116** 5:22
**3117** 5:23

---
**4**
**40** 4:5

---
**5**
**523-7887** 175:2
**5th** 74:24

---
**6**

---
**7**

---
**8**
**800** 175:2

---
**9**